## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) LESLIE BRIGGS, as next friend of T.W. and B.S; (2) EVAN WATSON, as next friend of C.R.; and, (3) HENRY A. MEYER, III, as next friend of A.M., for themselves and for others similarly situated, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 23-cv-00081-GKF-JFJ |
| v. | ) ) | |
| (1) CARRIE SLATTON-HODGES, in her official capacity as the Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services; and (2) CRYSTAL HERNANDEZ, in her official capacity as Executive Director of the Oklahoma Forensic Center, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, for themselves and others similarly situated, bring this class action under 42 U.S.C. § 1983, the due process clauses of the Fourteenth Amendment of the Unites States Constitution and Article 2, Section 7 of the Constitution of the State of Oklahoma, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

### Nature of the Action

1.     Oklahoma's competency restoration system is broken.[1] Scores of presumed-innocent Oklahomans who experience severe mental illness are

---

[1] Competency restoration refers to the process by which persons who have been declared incompetent to stand trial in criminal proceedings are provided treatment to attempt to restore their mental competency.

languishing in county jails awaiting competency restoration treatment for prolonged periods that far exceed constitutional limits. Many have waited several months to receive the restorative treatment required by law.  Some have waited more than a year.  Almost all are indigent.

2.      Plaintiffs are persons declared incompetent in Oklahoma state court criminal proceedings, but who are denied restoration services in excess of constitutionally permissible time limits.  Caged in county jails, which have neither the resources nor expertise to provide effective restoration treatment, Plaintiffs' mental health deteriorates while their criminal cases are suspended.  Plaintiffs, through their next friends, bring this action for themselves and on behalf of a Class of scores of similarly situated persons, seeking declaratory and injunctive relief to rectify their constitutionally intolerable plight.

3.      Due process forbids a state from trying, convicting, or sentencing a mentally incompetent person. When a criminal defendant is declared incompetent to stand trial, their criminal case is suspended and the Oklahoma Department of Mental Health and Substance Abuse Services (the "Department") is ordered to provide restoration treatment within a reasonable time.  If the defendant cannot be restored to competency, the criminal charges must be dismissed and the defendant may be civilly committed to obtain treatment.  Oklahoma has only one state-run facility that provides competency restoration services for defendants in all 77 Oklahoma counties — the Oklahoma Forensic Center ("OFC") in Vinita.

4.     Many stakeholders in Oklahoma's criminal justice system recognize that Oklahoma's competency restoration system is, and has been, in crisis. For example, in October of 2022, Custer County Special District Judge Donna Dirickson told a state House of Representatives interim study committee:

> "This is a crisis. And it's not just a crisis for the defendants. It's a crisis for all of our county jails. It's difficult right now for them to find folks to work in the county jail, but it's compounded when they have to deal with mentally ill people . . . when their behaviors escalate. [Jail employees] are not trained, they don't have the knowledge to deal with the types of behaviors they're seeing."[2]

5.     For many years, Defendants have failed to provide restoration treatment for incompetent defendants in a constitutionally timely manner. Through Defendants' acts and inaction, the OFC maintains a waitlist of persons for whom the Department has been court-ordered to provide restorative treatment services. In some instances, these presumed innocent defendants wait in jail nearly a year (or more) before receiving restoration treatment.  Often, these people are accused of misdemeanors or low-level felonies, and their time spent incarcerated awaiting restorative services exceeds the sentence they would have otherwise received.

6.     Defendants have publicly acknowledged the problem, albeit in understated terms:

> "There is a national delay in criminal defendants accessing mental health services, impacting patient flow and creating barriers to entering

_____

[2] Randy Krehbiel, "Jails in Mental Health Crisis, Oklahoma Lawmakers Told," Tulsa World (Oct. 27, 2022), https//tulsaworld.com/news/local.jails-in-mental-health-crisis-oklahoma-lawmakers-told/artilce_03da5d66-5551-11ed-bab9-0784144eb4ft.html.

*and exiting the forensic hospital system. The increasing demand for inpatient forensic services at OFC has caused a waitlist of individuals within jails needing competency evaluations and restoration.*"[3]

7.       Jail is no place to treat people suffering severe mental illness. Jails are inherently punitive, neither designed to be, nor operated as, therapeutic facilities. Yet, because of the OFC's egregious backlog and delay, Oklahoma's county jails have become *de facto* mental health wards, with terrible outcomes for both the mentally ill pretrial detainees and overwhelmed correctional staff and agencies. Among others, Tulsa County's elected Sheriff, Vic Regalado, has sounded the alarm on this issue, testifying before the Senate Public Safety Committee in 2021:

> "*Jails are 'the de facto mental health facilities in Oklahoma, and if that doesn't cause you embarrassment, shame, all those negative feelings, it should. Because it means we've said mental illness means absolutely nothing in the state of Oklahoma.*"[4]

8.       Persons declared incompetent, like Plaintiffs and those similarly situated, are often highly vulnerable individuals incarcerated in poor conditions in jails ill-suited and ill-equipped to handle people suffering from debilitating mental illness. While stuck on the OFC waitlist for months waiting for a forensic bed to open at OFC, their mental health often deteriorates precipitously.

---

[3]    *See*   https://oklahoma.gov/odmhsas/about/odmhsas-facilities/oklahoma-forensic-center.html.

[4] Randy Krehbiel, "Sheriff Regalado Says Oklahoma Should Be Ashamed that Jails Have Become Mental Health Facilities," Tulsa World (Sept. 14, 2021), https://tulsaworld.com/news/state-and-regional/govt-and-politics/sheriff-regalado-says-oklahoma-should-be-ashamed-that-jails-have-become-mental-health-facilities/article_e4b3ebaa-14b0-11ec-85b4-e332faae5a11.html.

9.     People with mental illness, such as Plaintiffs, experience far greater risks of self-harm, victimization, and incurring additional charges while incarcerated, frequently as a result of their mental illness.

10.     Because Plaintiffs, and those similarly situated, are not competent to participate in their own defense, they cannot proceed to trial and attempt to prove their innocence. Nor can they resolve their criminal cases through plea deals, deferred adjudication, or diversionary programs.  Plaintiffs inhabit a horrifying legal purgatory.  Presumed innocent, they are caged in county jails with their criminal cases suspended indefinitely because they have been declared incompetent, but they are denied the treatment needed to restore their competency and reactivate their cases. Due to Defendants' failure to provide restoration treatment within a constitutionally acceptable timeframe, Plaintiffs and the other Class members are effectively being punished simply because they are mentally ill.

11.     Most people found incompetent to stand trial in Oklahoma can be restored to competency if they receive timely and appropriate treatment.

12.     Defendants' acts and inaction have caused prolonged delays in providing restorative care to Plaintiffs and the other Class members, which violates their federal and state rights to due process of law. Due process requires that Defendants' obligation to accept and treat mentally incompetent defendants within a reasonable time period be measured in days, not months. Plaintiffs, for themselves and on behalf of similarly situated Class members, seek a declaration of their constitutional rights

and their rights under the Americans with Disabilities Act, and preliminary and permanent orders enjoining Defendants from further violating their rights.

## Parties, Jurisdiction, and Venue

13.     This action is bought under 42 U.S.C. §§ 1983 and 12132.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 1343 (civil rights jurisdiction).

14.     The Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     Plaintiff Leslie Briggs ("Briggs") is an attorney licensed to practice law in Oklahoma.  Briggs is a court-appointed guardian *ad litem* for T.W. and B.S.  Briggs is suing as T.W.'s and B.S.'s next friend under Fed. R. Civ. P. 17(c).

16.      Plaintiff Evan Watson ("Watson") is an attorney licensed to practice law in Oklahoma. Watson is a court-appointed guardian *ad litem* for C.R.  Watson is suing as C.R.'s next friend under Fed. R. Civ. P. 17(c).

17.     Plaintiff Henry A. Meyer, III ("Meyer") is an attorney licensed to practice law in Oklahoma.  Meyer is a court-appointed guardian *ad litem* for A.M.  Meyer is suing as A.M.'s next friend under Fed. R. Civ. P. 17(c).

18.     Defendant Carrie Slatton-Hodges ("Slatton-Hodges") is sued in her official capacity as the Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services (the "Department"). The Department is legally obligated to provide competency evaluations and restoration treatment for criminal defendants in all 77 Oklahoma Counties.  As the Department's Commissioner,

Slatton-Hodges is responsible for ensuring and overseeing the Department's compliance with its responsibility to provide timely restoration treatment to persons declared incompetent in Oklahoma state court criminal proceedings, including adopting and enforcing policies, practices, and procedures that ensure timely compliance with court orders requiring the Department to provide restoration treatment. Slatton-Hodges oversees, supervises and/or manages the OFC, including the creation and administration of the OFC's competency restoration waitlist, including the Department's designation and supervision of third-parties to attempt to fulfil the Department's responsibility to provide timely restoration treatment.

19.    Defendant Crystal Hernandez ("Hernandez") is sued in her official capacity as the Executive Director of the Oklahoma Forensic Center, located in Vinita, Oklahoma.  Upon information and belief, Defendant Hernandez resides within the Northern District of Oklahoma.  Hernandez is responsible for the day-to-day operation, management, and oversight of the OFC, including the creation, maintenance, and administration of the OFC's waitlist for persons declared incompetent and ordered transported to the Department for restorative care.  In her official capacity as Executive Director of the OFC, Hernandez is responsible for ensuring the Department's timely compliance with court orders requiring the Department to provide restoration treatment services to incompetent persons, including the Department's designation and supervision of third-parties to attempt to fulfil the Department's responsibility to provide timely restoration treatment.

20.     Venue is proper in the United States District Court for the Northern District of Oklahoma under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, and will occur, in the Northern District of Oklahoma, and Defendant Hernandez, upon information and belief, resides in this District.

## **Named Plaintiffs**

21.     **T.W**. is a 42-year-old woman who lives in Tulsa County. She is chronically homeless and suffers from readily apparent mental illness.   Her diagnostic history includes schizoaffective disorder, bipolar type, and borderline personality disorder.  T.W. has had multiple encounters with law enforcement arising from her mental illness.

22.     On March 8, 2022, police were dispatched to an IHOP restaurant in Tulsa where T.W. was believed to be trespassing.  After T.W. refused to identify herself, she was arrested for "obstruction."  When she was cuffed and seated in the patrol car, T.W. allegedly assaulted the arresting officer with her knee. She was charged in Tulsa County District Court with obstruction, assault and battery on a police officer, and resisting arrest.

23.     The only words T.W. would say once booked into jail were "bitch, where's my gun?" over and over again.  Because T.W. was unable to communicate effectively about her case, on April 22, 2022, her public defender filed an application to determine competency.

24.     On July 5, 2022, the Tulsa County District Court found T.W. incompetent to stand trial, but capable of attaining competency "within a reasonable period of time if provided a course of treatment, therapy and training."  The court ordered the Department to provide competency restoration services "within a reasonable period of time, not to exceed fourteen days" after the Department received notice of the competency order.

25.     That same day, July 5, 2022, the Tulsa County District court ordered T.W. to be transported to the Department when "a forensic bed is available."  The OFC placed T.W. on its waitlist.  As of the filing this Complaint, T.W. has been awaiting transport to the Department for **239 days** since the court first ordered the Department to provide restorative treatment to T.W.  During that time, Defendants have failed to cause the Department to take custody of T.W. and timely provide the restoration services required by Oklahoma statute and the federal and state due process clauses.

26.     While T.W. languishes in county jail stuck on OFC's waitlist, her mental and emotional condition deteriorates.  Upon information and belief, as of February 1, 2023, T.W. was number 16 on OFC's competency waitlist.

27.     **B.S**. is a 42-year-old man living in Tulsa.  He has been in and out of inpatient and outpatient mental health treatment since at least 2016, with a history of schizophrenia and auditory hallucinations.

28.      On August 30, 2021, B.S. was arrested for allegedly kicking a security officer at a local hospital. B.S. experienced auditory hallucinations on the street.

EMSA was called.  B.S. believed the EMSA workers were conspiring against him due to his supposed correspondence with President Biden.  Due to his active psychosis, B.S. struggled against EMSA's efforts to restrain and treat him, giving rise to the alleged assault.  B.S. was charged with assault and battery on a medical technician, a felony.

29.     Since his arrest, B.S. has been held in the Tulsa County Jail on a $5,000 bond.  Because B.S. is indigent, a public defender was appointed to represent him. On October 15, 2021, B.S.'s public defender requested a competency evaluation because he "has explosive paranoia and delusions that interfere with his ability to assist in his defense."

30.     On March 16, 2022, the Tulsa County District Court found B.S. incompetent to stand trial, but capable of attaining competency within a reasonable period of time if provided a "course of treatment, therapy and training."  The next day, the court filed orders directing: (i) the Department to provide B.S. restoration services within fourteen days from when the Department received notice of the court's order; and (ii) that B.S. be transported to the Department when "a forensic bed is available."

31.     As of the filing of this Complaint, **348 days** have elapsed since B.S. was ordered to be transported to OFC for restorative services.  During that time, Defendants have failed to cause the Department to take custody of B.S. and to timely provide the restoration treatment required by Oklahoma statute and the federal and state due process clauses.  Meanwhile, B.S.'s mental and emotional condition

deteriorates.  Upon information and belief, as of February 1, 2023, B.S. was number 58 on OFC's competency waitlist.

32.    **C.R.** is a 46-year old man who resides in Comanche County.  C.R. has a history of depression and anxiety for which he has received out-patient treatment.

33.    On November 4, 2021, C.R. was charged in Comanche County District Court with malicious injury to property over $1,000, a felony, and breaking and entering a dwelling without permission, a misdemeanor.  According to the arresting officer, C.R. was in an apartment without the permission or consent of the owner.

34.    On December 8, 2021, C.R. was charged in Comanche County District Court with defacing or injuring a house of worship for an incident that occurred on October 28, 2021.  C.R. was seen on surveillance footage "yelling at no one" when he picked up a rock near the entryway and threw it toward the building breaking three windows.  C.R. claimed he broke the windows because "unknown people were messing with his heart and that he [allegedly] damaged the windows to stop them or get them arrested."

35.    Because C.R. is indigent, an Oklahoma Indigent Defense System (OIDS) attorney was appointed to represent him in both cases.  He is being held at the Comanche County Jail on $20,000 bond.

36.    C.R.'s attorney requested a competency evaluation, which the Comanche County District Court ordered on April 12, 2022.   In his competency evaluation, C.R. was found to be experiencing persecutory and somatic delusions. C.R., for example, reported that "the state of Oklahoma or the Lawton Police

Department" was "pulling and pushing on [his] stomach" through some sort of sonar device, in reference to the events surrounding one of his cases.

37.     On August 31, 2022, the District Court found C.R. was incompetent in both his pending criminal cases, but capable of attaining competency within a "reasonable time" if provided restoration treatment.  The court ordered that C.R. be committed to the "legal custody" of the Department and transported to OFC to receive competency restoration treatment. Thereafter, the OFC put C.R. on its competency restoration waitlist.

38.     On December 12, 2022, Defendant Hernandez notified the Comanche County District Court that C.R. was number "167 on the waiting list for admission" to OFC.  As of the filing of this Complaint, **182 days** have elapsed since C.R. was ordered to be transported to OFC for restorative services.   During that time, Defendants have failed to ensure that OFC take custody of C.R. and provide the restoration treatment required by Oklahoma statute and the federal due process clauses.  Meanwhile, C.R's mental and emotional condition deteriorates.

39.     **A.M**. is a 22-year old man living in Oklahoma County. He has a history of mental health problems, including delusional and paranoid thinking, and a prior diagnosis of psychotic disorder.  On July 18, 2022, A.M. allegedly walked into an apartment unit in Oklahoma City and took a guitar.  A.M. allegedly told officers something along the lines of "I saw no one around, so I knocked on the door and no one answered, so I took the guitar," and "No one was there and I'm crazy."  That same night, A.M. allegedly entered an apartment unit without permission looking for a

place to sleep.  A.M. allegedly damaged plumbing fixtures and broke out a window to a neighboring unit so he get into the other unit "to pray."

40.    On July 27, 2022, A.M. was charged in Oklahoma County District Court with second degree burglary and grand larceny.  Bail was set at $15,000.  Because he is indigent, a public defender was appointed to represent A.M.  When his attorney met with him, A.M. would only stare at the floor and answer most questions by saying "I'm schizophrenic."

41.    On August 26, 2022, A.M.'s attorney filed an application to determine competency.  On December 5, 2022, A.M. was declared incompetent and ordered to be "committed to the Oklahoma Forensic Center under the supervision of the director, or his designee."

42.    As of the filing of this Complaint, A.M. remains incarcerated in the Oklahoma County Jail, **86 days** have elapsed days since the Department was ordered to provide restoration treatment services.  During that time, Defendants have failed to ensure that OFC take custody of A.M. and provide the restoration treatment required by Oklahoma statute and the federal due process clause.  Meanwhile, A.M.'s mental and emotional condition deteriorates.

<u>**Oklahoma's Competency and Restoration Regime**</u>

43.    In Oklahoma, competency is defined as "the present ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him or her and to effectively and rationally assist in his or her defense."  22 O.S. § 1175.1(1).

44.   A defense attorney, judge, or prosecutor who is concerned about a defendant's competency may request that the defendant's competency be evaluated. 22 O.S. § 1175.2(A).

45.   If the criminal court finds some doubt about the defendant's competency, the court must order the person be examined by the Department or by a "qualified forensic examiner" designated by the Department to conduct competency evaluations. 22 O.S. § 1175.3(D)(1)(a).

46.   Once a defendant's competency is questioned by an application or request for a competency evaluation, all criminal proceedings against that person are suspended.  22 O.S. § 1175.2(C).  The criminal court is required to conduct a hearing to determine a defendant's competency within 30 days after the competency evaluation is performed.  22 O.S. § 1175.4(A).  If the court determines the defendant is competent to stand trial, the criminal proceedings resume.  22 O.S. § 1175.6(1).

47.   If the court determines that the defendant is not competent, but is capable of achieving competency "within a reasonable period of time," the criminal proceedings remain suspended and the court orders the Department to provide treatment "calculated to allow the person to achieve competency."   22 O.S. § 1175.6a(A).[5]  The court must also order the Department, in what is colloquially called a "transport order," to take custody of the incompetent defendant "as soon as a forensic bed becomes available."  22 O.S. § 1175.6a(A).  The Department must provide

---

[5] In this context, a "reasonable period of time" is defined as the lesser of two years or the maximum sentence specified for the most serious charged offense. 22 O.S. § 1175.1(6).

"competency restoration services" within "a reasonable period of time" after the court has determined the person is not competent to stand trial. *Id.*

48.     A defendant found incompetent remains in the county jail until the Department has a bed available at its forensic facility (the OFC).  The Department may designate a "willing entity" to provide competency restoration services, provided the entity has qualified personnel.  If a Department designee provides restorative services, custody of the person must still be transferred to the Department. 22 O.S. § 1175.6a(A).

49.     The OFC is the only state facility that provides competency restorative services for all 77 Oklahoma counties.

50.     If a forensic bed is available, the incompetent defendant is transported to OFC for restoration treatment.  If, after providing restoration treatment, the Department determines the defendant has regained competency, a hearing must be scheduled within twenty days.  If the defendant is ultimately found to be competent, his or her criminal case resumes. 22 O.S. § 1175.6a(C)(1).

51.     Subject to certain conditions, if a person is still incompetent after receiving competency restoration services for either two years or the duration of the maximum sentence for the most serious alleged offense, and he or she is found to still be "a person requiring treatment,"[6] then the court must dismiss the criminal case with prejudice and commence civil commitment proceedings.  22 O.S. § 1175.6a(D).

---

[6] The definition of a "person requiring treatment" in Oklahoma is found in 43A O.S. § 1-103(13)(a). The definition has five subsections with varying standards for each.

**Defendants Have Failed to Ensure Compliance with Constitutional and Statutory Obligations to Provide Timely Restorative Services.**

52. Similar to recent nationwide trends, Oklahoma has experienced an explosion of people declared incompetent to stand trial over the past five years. From 2017 to 2020, the waitlist of people in Oklahoma jails waiting for the Department to provide competency restoration services hovered between 20 and 40 people.[7] As of January 1, 2023, the OFC's waitlist was, upon information and belief, between 120 to 200 people, most of whom suffer severe mental disability or illness.[8]

53. Proper restoration services include forensic evaluation, intensive psychological treatment and counseling, close monitoring and adjustment of medications, changes in diet, socialization treatment, and more.

54. Defendants are aware that the prolonged periods Plaintiffs and those similarly situated wait for restorative services on the OFC waitlist (or otherwise) exceed constitutional and statutory limits. Frequently, if a Class member's defense attorney moves in their criminal case to hold the Department in contempt for failing to provide restoration services within a reasonable time, Defendants cause or permit OFC to arbitrarily move that person off the waitlist and into a forensic bed at OFC. The complaining criminal defendant leapfrogs other people higher on the waitlist

---

[7] Priority Program Evaluation Delivery of Mental Health Services, legislative office of fiscal transparency (Aug. 30, 2022), https://okloft.gov/reports/delivery-of-mental-health-services/report-resources.

[8] To Plaintiffs' knowledge, Defendants have not recently published the number of people in Oklahoma awaiting restoration services. Based on a review of publicly available criminal case records, Plaintiffs believe the number of persons currently awaiting restoration services in Oklahoma exceeds 100.

without regard to whether other Class members have been waitlisted longer or have a more urgent treatment need.  Defendants, or persons acting under their direction or supervision, manipulate the competency waitlist in this manner to avoid being hauled into state court to explain, under oath, their failure to provide court-ordered restorative services within a reasonable time.  This practice is arbitrary and capricious, and evidences a lack of professional judgment with respect to the care and treatment of people awaiting competency restoration in Oklahoma.

55.    Defendants have caused, permitted or acquiesced to the Department misleading the public and other stakeholders in Oklahoma's criminal justice system about the current status of OFC's waitlist and the Department's failure to provide timely restorative services to the Class.  For example, on February 14, 2023, in response to an open records request asking the Department to disclose the total number of people currently on OFC's waitlist, the Department responded:

> "*Because [the Department] expanded restoration treatment opportunities over the past several months, I am happy to report that there are currently no individuals waiting for competency treatment.  At this time, all individuals known by [the Department] to have been ordered to receive restoration treatment are receiving the same either in the jail or at the Oklahoma Forensic Center.*"[9]

56.    The Department's public representation that all persons in Oklahoma ordered to receive restoration treatment are presently receiving such treatment is preposterous.  Based on a review of public records of criminal proceedings, and consultations with defense attorneys and stakeholders throughout Oklahoma, there

---

[9] This response was made by Jeff Dismukes, the Department's Director of Communications.

are scores of people ordered to receive restoration treatment in Oklahoma who have not yet received it.

57.     One need only scan OSCN to demonstrate the falsity of the Department's open records response.  As only one example, on February 9, 2023, a notice from the Department, signed by Defendant Hernandez, was filed in Tulsa County District Court notifying the Court that criminal defendant "M.W." was number "**118 on the waiting list for admission**" to OFC to receive restorative care:[10]

---

[10] The letter is dated January 24, 2023, but was filed in the Tulsa County District Court on February 9, 2023.

58.     It defies belief, and years of history, for the Department to assert that within only five days of the above notice being filed, the Department started providing acceptable restoration services for the 118-plus people on the OFC's waitlist who are incarcerated in jails across Oklahoma. That certainly has not occurred with Plaintiffs.

59.     Moreover, the Department's own website represents, as of the filing of this Complaint, that: *"[t]he increasing demand for inpatient forensic services at OFC has caused <u>a waitlist</u> of individuals within jails needing competency evaluations and restoration."* [11]

60.     Upon information and belief, the Department, in whole or in part through Defendants' acts or inaction, is attempting to create the false appearance that the Department, through third-party designees, is providing restoration treatment <u>in jail</u> to all incompetent persons throughout Oklahoma who are not being presently treated at the OFC.  However, Plaintiffs, and the Class, are not receiving restoration treatment in jail by qualified forensic professionals, at least not as such services are commonly understood, accepted and defined within the forensic psychiatric profession, and as required by Oklahoma statute.

61.     The Department has failed to demonstrate that in-jail restoration treatment services -- even if such services are actually being provided by the Department's designees to the entire Class (which Plaintiffs dispute) -- are professionally or constitutionally acceptable. The Department's recent open records

---

[11] *See*     https://oklahoma.gov/odmhsas/about/odmhsas-facilities/oklahoma-forensic-center.html.

response is particularly dubious given the poor conditions and lack of treatment resources in most Oklahoma county jails, making in-jail restoration treatment virtually impossible.

## Class Action Allegations

62.    Plaintiffs bring this action as a class action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and all members of a Class defined as follows:

> All persons who are now, or will be in the future, charged with a crime in Oklahoma state court and are: (i) declared incompetent by the state court; (ii) incarcerated in a county jail or similar detention facility; (iii) court-ordered to receive restoration services; and (iv) placed on the OFC competency waitlist or who otherwise have not received restoration treatment services within a constitutionally acceptable time.[12]

63.    Plaintiffs seek class-wide declaratory and injunctive relief under Rule 23(b)(2), as Defendants have acted or refused to act on grounds generally applicable to the entire Class.

64.    The number of existing Class members fluctuates.  Plaintiffs do not know with certainty the exact number of people currently in the Class,  and it appears Defendants are obscuring the true number of persons awaiting restoration services. On information and belief, at the time of filing the Complaint, the number of existing Class members is believed to be in excess of 100 individuals.  The current number of Class members is readily ascertainable through appropriate discovery, although the number of potential future Class members is indeterminable.

---

[12] Plaintiffs reserve the right to amend the Class definition based on information learned in discovery.

65. Because the number of present and future Class members is numerous, and they are located in jails in multiple counties throughout Oklahoma, joinder of individual cases would not be reasonable, efficient, or convenient.

66. The individual Class members' ability to bring separate lawsuits on this subject matter claiming constitutional violations is limited to the point of being non-existent. All Class members are incompetent to file their own lawsuit. The overwhelming majority are indigent, without the resources to bring separate lawsuits.

67. The individual Plaintiffs' claims are typical of the claims of all Class members because the individual Plaintiffs and the other Class members have all been adjudicated, or will be adjudicated, to be incompetent in an Oklahoma criminal proceeding and are, or will be, confined in a jail, or similar detention facility, while awaiting restoration treatment. Plaintiffs and all Class members have the same or similar due process liberty interests, and the same or similar interest in vindicating their due process rights asserted herein. Plaintiffs and all Class members have the same or similar rights under the American with Disabilities Act. Plaintiffs and all Class members have suffered similar harm, or will suffer similar harm in the future, arising from Defendants' acts and inaction causing or allowing Plaintiffs' and the Class members' prolonged, unlawful and harmful delay in obtaining restorative services.

68.     Common questions of law and fact exist as to all Class members that predominate over any questions solely affecting individual Class members. These common legal and factual questions include (without limitation):

a.      Whether Defendants' failure to admit individuals with mental illness to the OFC facility for competency restoration services, or to otherwise provide such services in a timely manner, violates the due process clauses of the Fourteenth Amendment of the United States Constitution and Article 2, Section 7 of Oklahoma's Constitution.

b.      Whether Defendants' administration of the OFC waitlist, or their handling of persons awaiting restoration services, lacks professional judgment and is arbitrary and capricious without due regard to the Class members' mental, emotional, and physical health.

c.      Whether and to what extent prolonged periods of confinement in county jails or similar detention facilities while awaiting restorative services causes or exacerbates mental, emotional and physical harm to the Class members.

d.      Whether Defendants have failed to provide competency restoration treatment to Plaintiffs, either at OFC or through third-party designees, and other Class members within a reasonable period of time.

e.      The average period of delay caused or permitted by Defendants in the delivery of restoration services to Class members, and the reasons therefore.

f.      Whether Defendants have permitted or caused the Department to designate third-parties to provide in-jail restorative services and, if so, whether

such services are being provided to the entire Class, and whether such third-party designations and services comply with Oklahoma law, applicable professional standards of care, and constitutional standards.

g.      Whether Plaintiffs and other Class members are entitled to the declaratory and injunctive relief they seek.

h.      Whether Plaintiffs and other Class members are entitled to an award of reasonable attorney fees and costs of this suit.

i.      Whether Defendants' failure to provide integrated community based restoration treatment, when a forensic bed at OFC is not available, violates Title II of the American with Disabilities Act.

69.    Separate actions by individual Class members would create a risk of inconsistent or varying adjudications regarding the same or similar issues. Different courts could rule differently on the constitutionality of wait times, resulting in contradictory standards on whether the wait times are reasonable and what amount of time would be deemed constitutionally acceptable.

70.    A class action is the best available method for adjudication of these legal issues because individual litigation of these claims would be impracticable and unduly burdensome on the courts. A class action provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

71.    The requested relief would not need to be tailored to each Class member as the same declaratory and injunctive relief related to wait times for restoration treatment would provide relief to the entire Class.

72.     The claims asserted herein are capable of repetition while evading review. There is a continuing and substantial public interest in these matters, justifying declaratory and injunctive relief in favor of the Plaintiffs and the Class.

73.     This suit may be maintained as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure because Plaintiffs and other Class members of the Class seek declaratory and injunctive relief, and all of the factors of numerosity, commonality, typicality, and adequacy are present, as described herein.

74.     The undersigned counsel are competent to serve as Class Counsel. Collectively, counsel have substantial experience in class action litigation, including civil rights class action litigation, and in individual civil rights litigation, disability law and litigation, and Oklahoma state court criminal proceedings. Undersigned counsel have sufficient resources to prosecute and manage this Class action vigorously on behalf of the Class.

## Substantive Claims[13]

### Count I
### Violation of Due Process Rights Secured by
### The Fourteenth Amendment of the United States Constitution

75.     The Fourteenth Amendment of the United States Constitution prohibits states from depriving any person of life, liberty, or property without due process of law.

---

[13] All paragraphs of this Complaint are incorporated into each of the substantive claims.

76.    Incompetent pretrial criminal defendants have substantial and historic liberty interests in freedom from incarceration, and in receiving timely restoration treatment so that their criminal cases can proceed to trial expeditiously.

77.    Due process requires that the nature and duration of pretrial confinement must bear a reasonable relation to the purpose for which an individual is confined.

78.    Once an individual is found unable to aid and assist in his or her own defense, the only lawful purpose for further pretrial confinement is to assure treatment so as to return him or her to competency.

79.    Individuals found unable to aid and assist in their defense have a constitutional right to such individualized treatment as will give each of them a realistic opportunity to improve their mental condition to restore their competency.

80.    The Class members' enrollment on the competency waitlist, or their prolonged delay receiving restoration services whether on a formal waitlist or otherwise, are not the result of professional judgment by Defendants or their agents. Rather, the prolonged delay in obtaining restorative services is the result of Defendants' arbitrary, capricious and grossly negligent management, policy-setting, and resource allocation.

81.    No legitimate state interest justifies the confinement of mentally incompetent pretrial detainees, like the Class members, in county jails for months on end.  In such circumstances, the nature and duration of their incarceration bear no reasonable relation to the restorative purpose for which the court has committed those individuals to treatment.

82.     The legitimate purpose of Plaintiffs' confinement is to determine whether or not treatment, therapy, and other services can restore their competency so that they can stand trial. Because Plaintiffs are not receiving timely restoration treatment, the duration of their confinement is unrelated to the purpose of their confinement.

83.     County jails in Oklahoma do not have the facilities or resources to provide proper and professionally adequate restoration treatment as required by the Due Process Clause of the Fourteenth Amendment.

84.     Prolonged incarceration in county jails awaiting restorative services has caused, and will continue to cause, Plaintiffs and other Class members to suffer aggravated mental, emotional and, in some cases, physical harm.

85.     Plaintiffs and the other Class members are entitled to an order of the Court declaring that, by requiring mentally incompetent defendants to remain in county jails, or similar detention facilities, for protracted periods, and by failing to provide restoration treatment in a reasonably timely manner, Defendants have violated the Fourteenth Amendment Due Process rights of the Plaintiffs and the other Class members.

86.     Defendants, acting in their official capacity with and through the Department, failed and continue to fail their duty to provide competency restoration treatment in a constitutionally timely manner.

87.     As such, Defendants, acting in their official capacity with and through the Department, have violated Plaintiffs' and the Class members' substantive and procedural rights under the Due Process Clause of the Fourteenth Amendment.

88.     Unless enjoined by the Court, Defendants will continue to violate the constitutional rights of Plaintiffs and the other Class members. Plaintiffs and the other Class members are therefore entitled to an order of the Court enjoining Defendants from all further violations of the Class members' rights of due process in relation to their continued confinement while awaiting restorative treatment.

## Count II
### Violation of Due Process Rights Secured by Oklahoma's Constitution

89.     Article 2, Section 7 of Oklahoma's Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law."

90.     The Oklahoma Supreme Court has held that Article 2, Section 7 includes both a procedural due process element and a substantive due process element, as part of "a bundle of rights." *State ex rel. Oklahoma State Bd. of Med. Licensure & Supervision v. Rivero*, 489 P.3d 36, 50 (Okla. 2021). The protections and rights conferred by Oklahoma's Due Process Section are, at minimum, "coextensive with its federal counterpart." *Anatolia Rest., LLC v. Burton*, 509 P.3d 72, 80 (Okla. Ct. Civ. App. 2022) (quoting *State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas*, 297 P.3d 378, 392 n.25 (Okla. 2013).

91.     The same allegations and rationale that support Plaintiffs' federal due process claim, as articulated above, apply to, and support, Plaintiffs' due process claim under Oklahoma's Constitution. Defendants have, therefore, violated

27

Plaintiffs' and the Class members' due process rights secured by Article 2, Section 7 of Oklahoma's Constitution.

## Count III
## Violation of Title II of the American with Disabilities Act

92.    The Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C § 12132.

93.    Plaintiffs, and the Class members, are qualified individuals with a disability as defined under 42 U.S.C. § 12131, as they suffer from mental illness severe enough they have been found incompetent to stand trial.

94.    "[U]nder Title II of the ADA, States are required to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999).

95.    Under 28 CFR § 35.130(b)(7)(i), "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

96.     Under 28 CFR § 35.130(d), "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 CFR § 35.130(d).

97.     Under *Olmstead*, the integration regulation forbids unjustified isolation of individuals with disabilities.  527 U.S. at 597.  The unnecessary isolation is a form of illegal discrimination against the disabled. *Id.*

98.     For prolonged periods of time, Defendants have denied and continue to deny Plaintiffs the mental health services or treatment Plaintiffs are qualified to receive under the ADA.  The lengthy wait times for forensic beds at the OFC cause Plaintiffs unjustified isolation in jails. This unjustified isolation in jails excludes Plaintiffs from participation in and the benefits of services, programs, or activities meant to support individuals with severe mental illness in violation of the ADA, including community-based treatment.

99.     By failing to timely transfer Plaintiffs and those similarly situated to forensic beds at OFC, or otherwise provide timely restorative services in integrated settings, Defendants have violated their duty to provide the necessary and required mental health services and treatment under the ADA.

100.   Further, Defendants have not provided mental health treatment in an integrated community-based setting where it would be appropriate to all Plaintiffs and others similarly situated nor have Defendants provided mental health services and/or treatment in the most integrated setting appropriate as to the needs of all of

the Plaintiffs and others similarly situated. This failure includes Defendants'
attempts, if any, to provide restoration services in jail.

101.   Defendants have failed to provide or cause to be provided, through the
Department and OFC, reasonable accommodation of Plaintiffs' disabilities with
access to integrated community-based treatment alternatives, including community-
based competency restoration treatment for Plaintiffs, in violation of Title II of the
ADA.

102.   Unless enjoined, Defendants will continue to violate the ADA rights of
Plaintiffs and similarly situated Class members.

<u>**Count IV**</u>
**Preliminary Injunctive Relief**

103.   The federal constitutional claims asserted by Plaintiffs and the Class
herein are likely to prevail on the merits.

104.   If Defendants are not preliminarily and permanently enjoined, Plaintiffs
and the Class will suffer irreparable harm in the form of continued and ongoing
violation of their federal due process rights by prolonged, unlawful, and harmful
detainment while awaiting restorative services, as described herein, and
deterioration of the mental, emotional, and physical condition while incarcerated.
Such harm cannot be adequately addressed by money damages.

105.   The balance of harms cuts in favor of Plaintiffs and Class members,
because the irreparable harm caused by prolonged incarceration outweighs the
burden a preliminary injunction will cause Defendants.

106.   Public interest strongly supports granting injunctive relief.  Not only will such relief benefit Plaintiffs and the Class members, but public safety will be enhanced by timely restorative treatment to incompetent defendants, which will make jails safer, and will expedite criminal dockets.

### Prayer for Relief

Based on the foregoing, Plaintiffs request the following relief:

A.    Plaintiffs request the Court enter an order certifying the Class, as defined above, and appointing undersigned counsel as Class Counsel.

B.    Plaintiffs request a Class-wide judgment declaring that, by compelling mentally incompetent pretrial defendants to remain in county jails (or similar facilities) for protracted periods, and by failing to provide restoration treatment in a constitutionally timely manner, Defendants are depriving Class members of their due process rights under the Fourteenth Amendment of the United States Constitution, and Article 2, Section 7 of the Oklahoma Constitution.

C.    Plaintiffs request a Class-wide judgment declaring that, by compelling mentally incompetent pretrial defendants to remain in county jails (or similar facilities) for protracted periods, and by failing to provide restorative treatment in a constitutionally timely manner, Defendants have failed to provide or cause to be provided, through the Department and OFC, reasonable accommodation of Plaintiffs' disabilities with access to integrated community-based treatment alternatives, including community-based competency restoration treatment for Plaintiffs, in violation of Title II of the ADA.

31

D.      Plaintiffs request the Court grant preliminary, and permanent injunctive relief: (i) restraining Defendants from violating Plaintiffs' and the Class members' rights secured by the Fourteenth Amendment of the United States Constitution and Article 2, Section 7 of Oklahoma's Constitution in relation to the prolonged confinement of individuals awaiting competency restoration as described herein; (ii) restraining Defendants from violating Plaintiffs' and the Class members rights under Title II of the American with Disabilities Act; and (iii) ordering Defendants to develop a remedial plan to reduce wait times for competency restoration treatment to within constitutional limits.

E.      Plaintiffs request this Court award reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

F.      Plaintiffs request any other relief as the Court deems just and proper under the facts, as may be developed through discovery, and applicable law.

*[Signature line on following page.]*

Respectfully Submitted:


/s/ Paul DeMuro
Paul DeMuro, OBA No. 17605
Frederic Dorwart, OBA No. 2436
David W. Leimbach, OBA No. 33310
FREDERIC DORWART, LAWYERS PLLC
Old City Hall
124 East 4th Street
Tulsa, OK 74103
(918) 583-9922 – telephone
(918) 583-8251 – facsimile
pdemuro@fdlaw.com
fdorwart@fdlaw.com
dleimbach@fdlaw.com

Nick Southerland, OBA No. 31234
Brian S. Wilkerson, OBA No. 17165
OKLAHOMA DISABILITY LAW CENTER, INC.
5555 E. 71st St., Suite 9100
Tulsa, OK 74136
(918) 743-6220 – telephone
(918) 743-7157 – facsimile
nick@okdlc.org
brian@okdlc.org

***Counsel for Plaintiffs***