IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LESLIE BRIGGS, as next friend of T.W. and B.S.;<br>(2) EVAN WATSON, as next friend of C.R.; and,<br>(3) HENRY A. MEYER, III, as next friend of A.M., for themselves and for others similarly situated,<br><br>      Plaintiffs,<br>v.<br><br>(1) ALLIE FRIESEN in her official capacity as Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services; and<br>(2) DEBBIE MORAN, in her official capacity as Interim Executive Director of the Oklahoma Forensic Center,<br><br>      Defendants. | Case No: 23-cv-81-GKF-JFJ |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CONSENT DECREE, CLASS CERTIFICATION, AND PLAN OF NOTICE TO CLASS**

Plaintiffs and Defendants (jointly referred to as the "Parties"), in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, jointly move the Court for an order: (i) granting preliminary approval of a proposed Consent Decree that (among other things) certifies the Class, appoints Class Counsel, and adopts a remedial Plan to resolve Plaintiffs' claims herein; (ii) approving the forms and plan of Notice to the Class as defined below; and (iii) setting a hearing sixty (60) days after the Court grants preliminary approval of the Consent Decree and approving Class Notice, for the final approval of the Consent Decree. The proposed Consent Decree, which has been agreed to and finalized by the Parties' counsel, is attached hereto at Exhibit 1.

**Background**

1. The Oklahoma Department of Mental Health and Substance Abuse Services (the "Department") is obligated under Oklahoma law to provide competency evaluations and restoration treatment for persons found incompetent to stand trial in Oklahoma state court criminal proceedings. *See* 22 O.S. §§ 1175.3, 1175.6a.

2. When an Oklahoma state court determines that a person is incompetent to stand trial because he or she is a "person requiring treatment," as defined in 43 O.S. § 1-103, but capable of achieving competency with treatment within a reasonable period of time, the state court must suspend the criminal proceedings and order the Department, or its designee, to provide treatment, therapy, or training calculated to allow the person to achieve competency. 22 O.S. § 1175.3.

3. The Oklahoma Forensic Center ("OFC") in Vinita, Oklahoma is currently the only Department-operated hospital that provides secure, in-patient competency restoration treatment in Oklahoma.

4. On March 1, 2023, on behalf of the Class defined below, four individually named Plaintiffs (through their Next Friends) filed this class action lawsuit under 42 U.S.C. § 1983 against the Department's Commissioner and the Executive Director of the OFC, in their official capacities. (Doc. 1). Plaintiffs, and the putative Class, were or are pretrial detainees in Oklahoma state court criminal proceedings who had been declared incompetent to stand trial and were or are incarcerated in county jails waiting for the Department to provide restoration treatment. In general, Plaintiffs' Complaint challenged the length of time the putative class of pretrial detainees are or were forced to wait for the Department to provide restoration treatment while their criminal cases are or were stayed. Plaintiffs alleged, in part, that due to a lack of forensic beds at OFC, the Department maintained a waitlist of Class Members who have waited prolonged periods of time to receive

court-ordered competency restoration treatment. During this waiting period, Plaintiffs alleged that Class Members were or are incarcerated in county jails, where they received little or no treatment to restore competency and their mental health deteriorated. (*See* Doc. 1).

5. In this action, Plaintiffs have alleged that the prolonged waiting periods to receive competency restoration treatment while incarcerated in county jails violated the Class Members' rights: (i) secured under the due process clauses of the Fourteenth Amendment to the United States Constitution and Article 2, Section 7 of Oklahoma's constitution; and (ii) under the Americans with Disabilities Act. (*See* Doc. 1).

6. Plaintiffs seek only injunctive, non-monetary relief, and class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

7. On April 10, 2023, Defendants filed a motion to dismiss. (Doc. 16).

8. Shortly thereafter, the Parties began earnest settlement discussions. Defendants withdrew their motion to dismiss. (Doc. 21). Starting in April 2023, the Parties jointly requested, and the Court granted, a series of stays to facilitate on-going settlement discussions. (*See* Docs. 22, 29, 34, 36, 38, 40). During the approximately one-year period while this case was stayed, the Parties exchanged substantial data and documents, consulted experts, toured the OFC and other facilities, met with numerous stakeholders involved in Oklahoma's competency restoration system, and conducted multiple in-person and videoconference settlement discussions. (*See, e.g.*, Docs. 19, 28, 32, 35, 37, 39).

9. As a result of the Parties' joint discussions and investigation into the Department's competency restoration program, the Parties negotiated, drafted, and agreed to a proposed Consent Decree, which is attached hereto as Exhibit 1. The Consent Decree was finalized and agreed to by the Parties after extensive arm's length negotiations, with Defendants represented by Oklahoma's

Attorney General, and Plaintiffs represented by Class Counsel.  Each Party retained independent subject-matter experts to assist and consult in the negotiations and the Consent Decree drafting process.  In general, the Consent Decree adopts a strategic "Plan" designed to reform and improve Defendants' delivery of competency evaluations and restoration treatment to Class Members, including significantly reducing wait times for Class Members in need of restoration treatment.

10. The Parties agree that the proposed Consent Decree is in the best interests of the Parties, the Class, and the public as it provides Defendants the tools and framework to improve substantially the delivery of competency evaluations and restoration treatment for people declared incompetent and awaiting trial while incarcerated in Oklahoma county jails.  The Parties acknowledge that Plaintiffs' claims and allegations in this case are serious and credible, and the proposed Consent Decree resolves Plaintiffs' claims while avoiding the costs, uncertainties, and risks of protracted litigation, likely saving the Department millions of dollars in legal fees and expenses if the case were litigated to a conclusion rather than resolved by the proposed Consent Decree.  The Parties further agree that the proposed Consent Decree is fair, adequate, and reasonable, and will benefit the public interest and the ends of justice by protecting the constitutional rights of the Class Members.

11. The Parties also agree and acknowledge that the proposed Consent Decree promotes public safety and victims' rights by implementing a Plan to drastically shorten the time incompetent criminal defendants wait for restoration services; which, in turn, expedites the prosecution and resolution of their criminal cases.  This will shorten the time victims and their families must wait for their cases to be resolved in the courts.  Moreover, expediting restoration treatment for defendants incarcerated in Oklahoma county jails reduces the costs, correctional

staffing and training challenges, and liability risks to the jails associated with prolonged incarceration of defendants experiencing severe mental illness.

12. The proposed Consent Decree has been approved on behalf of the Plaintiffs by lead Class Counsel, Paul DeMuro, of Frederic Dorwart, Lawyers PLLC; and on behalf of Defendants by the Attorney General Gentner Drummond. *See* Ex. 1, p. 43.

13. The Parties believe the "Plan" outlined in the proposed Consent Decree is consistent with Governor Stitt's public statements regarding the chronic problems afflicting Oklahoma's competency restoration system. For example, on June 9, 2023, the Governor issued a statement in connection with his veto of SB 552, which sought to modify certain aspects of the statutory competency restoration regime. In his veto statement, which is attached hereto as Exhibit 2, the Governor correctly observed that "[w]e must do a better job addressing rampant mental health issues plaguing our society. This includes taking a hard look at the methods and structures being used to restore to competency those criminal defendants who may be afflicted by mental health disorders." Ex. 2, p. 2. The Governor then issued a call to action:

> I urge stakeholders such as district attorneys, law enforcement officials (e.g. sheriffs), the Department of Mental Health and Substance Abuse Services, and other mental health professionals to collaborate well before the next legislative session to identify creative solutions available to address the overarching issues-where (e.g. outpatient-type treatment) and how we meaningfully treat and restore individuals temporarily deemed incompetent to stand trial.

Ex. 2, p. 1.

14. This is precisely what the Parties did here; and the result is the proposed Consent Decree. The Parties spent a year meeting with stakeholders, law enforcement officials and mental health professionals throughout the state, and touring jails, inspecting the OFC, and conferring with Department personnel, to identify the challenges plaguing Oklahoma's competency restoration system. This collaboration resulted in the Parties, in consultation with nationally

5

recognized subject-matter experts, crafting "creative solutions" to fix Oklahoma's competency restoration system. The solutions are expressed in the comprehensive "Plan" in the proposed Consent Decree. The Consent Decree is supported on all sides - by law enforcement, prosecutors, the defense bar, courts, and health care professionals.

## The Proposed Class and Class Counsel

15. In accordance with the proposed Consent Decree, and Rule 23(e), the Parties stipulate to, and request that the Court certify, the following Class under Rule 23(b)(2):

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

16. The Parties stipulate that the proposed Class certification is reasonable and required to effectuate the purposes of the Consent Decree.[1]

17. The Parties stipulate that Paul DeMuro, Frederic Dorwart and David Leimbach of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc., satisfy the requirements for, and should be appointed as, Class Counsel under Rule 23(g).

18. Proposed Class Counsel have, collectively, expended more than 950 hours working on this case, including investigating and researching the claims asserted herein, preparing the Complaint, meeting with experts and stakeholders within Oklahoma's competency restoration system, touring facilities, and negotiating and drafting the Consent Decree. Class Counsel, collectively, have substantial relevant subject matter expertise and substantial experience in class

---

[1] Members of the Class are sometimes referred to as "Class Members."

action litigation.  Most similar to the present matter, Paul DeMuro and Frederic Dorwart served as co-Class Counsel in the litigation against the Oklahoma Department of Human Services before this Court.  *See D.G. v. Yarbrough*, Case No. 08-CV-074-GKF-FHM, Dkt. 774, Preliminary Order Approving Compromise and Settlement Agreement (N.D. Okla. Jan. 23, 2023).  Class Counsel have sufficient resources to serve as Class Counsel and to protect the rights and interests of the Class Members.

### Summary of Proposed Consent Decree's Structure and Key Terms

19. The stated purposes and intent of the proposed Consent Decree are to: (i) develop and implement a strategic "Plan" to reform and improve Defendants' delivery of competency evaluations and restoration treatment to Class Members, including significantly reducing wait times for Class Members in need of restoration treatment; (ii) resolve all claims asserted by Plaintiffs on behalf of the Class in this lawsuit; and (iii) provide a mechanism to monitor and enforce Defendants' compliance with the Consent Decree, through the appointment of a panel of three subject-matter expert "Consultants." *See* Ex. 1, ¶¶ 14, 30.  Each side selected one Consultant and, thereafter, the two Consultants recommended a third Consultant.[2]

20. In general, the Consent Decree provides that, within ninety (90) days of entry of the proposed Consent Decree, the Department must use "Best Efforts" to develop and begin to implement the Plan's components in consultation with the Consultants and Class Counsel. The Consultants must approve the Department's proposed Plan components. Ex. 1, ¶ 54. The Plan's components include:

---

[2] The three Consultants are: (i) Neil Gowensmith, Ph.D., a clinical and forensic psychologist; (ii) John Petrila, J.D., an expert mental health law lawyer; and (iii) Darren Lish, MD, a clinical psychiatrist. The Consultants' resumes are attached at Exhibit 3.

a. reevaluation of all Class Members currently waiting to receive competency restoration treatment, which must be performed by a "Qualified Forensic Examiner" (Ex. 1, ¶ 57);

b. cessation of the Department's current purported state-wide in-jail competency restoration program, while allowing for continuation of current medical treatment of Class Members while still in jail (*id*. at ¶ 58-61);[3]

c. increasing the Department's inventory of inpatient forensic beds dedicated solely for competency restoration; (*id*. at ¶ 62);

d. upgrades to OFC's staffing and environment-of-care standards (*id*. at ¶ 62);

e. development and implementation of a continuing education program for OFC psychiatrists, psychologists, and other clinical staff involved in competency restoration (*id*. at ¶ 64);

f. development and implementation of a competency restoration triage screening program intended to expedite evaluation and placement of Class Members in appropriate restoration treatment settings (*id*. at ¶¶ 65-66);

g. imposing deadlines for performing court-ordered competency evaluations and for reevaluations by Qualified Forensic Examiners (*id*. at ¶ 67);

h. development and implementation of a community-based restoration treatment pilot program in four Oklahoma counties (*id*. at ¶¶ 68-73);

---

[3] Plaintiffs had alleged that Defendants never implemented a legitimate state-wide competency restoration program consistent with generally accepted professional forensic standards.

   i. development and implementation of an in-jail restoration treatment pilot program in two Oklahoma counties, including Tulsa County (*id*. at ¶¶ 74-76);

   j. development and implementation of a plan for enhanced staffing at the Department dedicated to competency restoration, including data gathering, reporting, and management (*id*. at ¶¶ 77); and

   k. increased competency restoration training to relevant state-court personnel (*id*. at ¶¶ 78).

21. The goal of the pilot programs for community-based restoration and in-jail restoration is, in part, to develop best practices, policies, and data to determine if such programs are effective and should be expanded to other Oklahoma counties. Ex. 1, ¶¶ 71, 75.

22. The Consent Decree obligates the Defendants to reduce the duration of time Class Members must wait to obtain restoration treatment, defined as "Maximum Allowable Wait Times," by imposing a series of deadlines with increasingly shorter allowable wait times, down to the ultimate goal of a Maximum Allowable Wait Time of 21 days for any Class Member to obtain restoration treatment after being declared incompetent. Ex. 1, ¶¶ 27, 86. The first Maximum Allowable Wait Time benchmark is sixty (60) days, to be achieved no later than seven (7) months after the Court enters the Consent Decree. The ultimate Maximum Allowable Wait Time goal of 21 days must be achieved no later than sixteen (16) months after entry of the Consent Decree. *Id*.

23. The Maximum Allowable Wait Time deadlines are enforced by a regime of escalating Fines, which are imposed at daily rates for each day a Class Member waits for restoration treatment beyond the prescribed Maximum Allowable Wait Time. Ex. 1, ¶ 92. The Fines regime becomes effective seven (7) months after entry of the Consent Decree, coinciding

with the first Maximum Allowable Wait Time deadline. The Fines are capped at $3.5 million for the first year the Fines are operative, $5.5 million for the second year, and $7 million for the remainder of the five-year duration of the Consent Decree. *Id.* at ¶ 92(f).

24. The Fines will be deposited in a Fines Account to be managed by a committee consisting of representatives of Class Counsel, the Department, the Attorney General's Office, and the Consultants. Funds in the Fines Account must be used for the funding or supporting of services for people experiencing mental illness and competency issues in Oklahoma who are charged with criminal offenses including the Class Members, and which the Department is not otherwise obligated to provide by law or under the Consent Decree. Ex. 1, ¶ 95.

25. Defendants must submit monthly status reports regarding, among other things, their compliance with the Maximum Allowable Wait Times, their progress toward developing and implementing the Plan's components and other provisions of the Consent Decree. Ex. 1, ¶ 82.

26. In general, the Consultants are given broad authority to: (i) investigate, monitor, and make findings with respect to Defendants' compliance with the terms of the Consent Decree; (ii) report the status of Defendants' compliance or progress (or lack thereof) to the Court and the Parties; (iii) advise, recommend, and facilitate methods to the Department regarding plans and practices for improving the delivery of competency evaluations and restoration treatment to Class Members; (iv) approve the Department's development of the Plan's components; and (v) serve as mediators for disputes between the Parties regarding any aspect of the Consent Decree. Ex. 1, ¶¶ 38, 54.

27. The Consultants must submit "Bi-Annual Reports" that, in general: (i) report the Consultants' findings with respect to Defendants' compliance, or lack thereof, with the terms of the Consent Decree; (ii) recommend measures to enhance Defendants' compliance; (iii)

summarize any Fines paid by the Department; and (iv) recommend additional injunctive relief, if any, the Court may consider to achieve the purposes and goals of the Consent Decree. The Department must publish the Consultants' Bi-Annual Reports on the Department's website (https://oklahoma.gov/odmhsas.html) in a format easily accessible to the public. Ex. 1, ¶ 45.

28. The Consultants' fees are to be paid by the Department at an hourly rate of $450. Ex. 1, ¶ 53.

29. The duration of the proposed Consent Decree is five years. However, if the Court determines, upon Plaintiffs' motion, that Defendants have not achieved substantial compliance for at least the nine (9) consecutive months preceding the hearing on Plaintiffs' motion, the Court may extend the term of the Consent Decree and retain jurisdiction for a period of time determined by the Court to ensure that Defendants come into compliance with the terms of the proposed Consent Decree. Ex. 1, ¶ 106.

### Dispute Resolution and Enforcement

30. The proposed Consent Decree includes a "Dispute Resolution Process" intended to incentivize the Parties to cooperate to resolve disputed issues and to minimize the need for Court intervention. In general, the Dispute Resolution Process involves a mediation process conducted by the Consultants, which any Party may invoke to resolve any dispute with respect to the Defendants' compliance with the Consent Decree or the interpretation of any provision thereof. Except for requests for emergency relief, no Party may submit to the Court any disputed issue for resolution until the Parties have gone through the Dispute Resolution Process and the Consultants have rendered a "Consultants' Decision." Thereafter, a Party may ask the Court to review the "Consultants' Decisions" under a deferential "arbitrary and capricious" standard of review for Consultants' factual findings or recommendations. Ex. 1, ¶¶ 96, 97.

**Attorney Fees and Litigation Expenses**

31. The Parties agree and stipulate, in the proposed Consent Decree, that Class Counsel is entitled to be awarded their reasonable attorney fees and litigation expenses in prosecuting this lawsuit. The Parties agree that proposed Class Counsel should be awarded fees and expenses for work performed up to the filing of this Motion as follows: (i) $275,000 in attorney fees and $64,535 in litigation expenses to Frederic Dorwart, Lawyers PLLC; and (ii) $28,000 in attorney fees to the Oklahoma Disability Law Center. These fees represent a substantial discount in the fees Class Counsel could reasonably request and recover based on prevailing hourly rates in the community for similarly complex work.[4] Ex. 1, ¶ 101.

32. The proposed Consent Decree provides that, after the filing of this Motion, the Department shall pay Class Counsel reasonable expenses and attorney fees based on an hourly rate of $325. After entry of the Consent Decree, Class Counsel's collective fees shall be capped at $75,000 per year. *Id.* at ¶¶ 102-103.

**Plan of Notice to the Class**

33. Under Rule 23(e), a proposed certified settlement class and settlement or compromise of class claims must be approved by the Court. The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," upon a showing that the Court "will likely be able to": (i) approve the proposed settlement under the factors enumerated under Rule 23(e)(2); and (ii) certify the Class for purposes of judgment on the settlement proposal. Fed. R. Civ. P. 23(e)(1) and (2). Because the proposed Consent Decree

---

[4] For example, Frederic Dorwart, Lawyers PLLC ("FDL") has incurred approximately 862.45 hours of attorney time in this matter through the end of May 2024, with over 85% of that work being performed by Paul DeMuro and Frederic Dorwart. The agreed fee award to FDL represents an average hourly attorney rate of $318.86.

requires court approval, Class Members must be given the opportunity to object. Fed. R. Civ. P. 23(e)(5).

  34. The Parties have agreed on the following plan of Notice to the Class that accounts for the Class Members' status as persons judicially declared incompetent to stand trial. The Parties propose that, promptly upon the Court granting this Motion, Notice shall be given as follows:

   a. Notice to the Class Members will be given by sending them via first-class U.S. mail the proposed "Notice of Proposed Class Action Settlement" attached hereto as Exhibit 4 ("Notice"), using the Department's most current list of persons declared incompetent and awaiting restoration treatment. The proposed Notice will allow for Class Members to submit objections or comments to the proposed Consent Decree via a self-addressed stamped envelope, or via a case website Class Counsel has created for such purpose.[5] The Notice will also include a toll-free number maintained by Class Counsel to call with any questions or comments about the proposed Consent Decree.

   b. A Notice in substantially the same form as Exhibit 4 will be sent via first-class U.S. mail to the attorneys and guardians ad litem of record for the Class Members in their state court criminal cases. This Notice will be addressed to defense counsel and guardians ad litem, and include a request that defense counsel and their guardians ad litem share the Notice with known family members of the Class Member and encourage those

---

[5] Class Counsel have reserved the following domain name, and created a case website that will go live once the Court grants this motion. *See* https://www.okcompetencyrestoration.com. Class Counsel will post the proposed Consent Decree and other case documents on the case website.

    individuals to submit objections or comments to the proposed Consent Decree.

  c. A Notice in substantially the same form as Exhibit 4 will be addressed and sent via first class U.S. mail to all District Attorneys in Oklahoma, all Chief Public Defenders in Oklahoma, and the Executive Director of Oklahoma's Indigent Defense System.

  d. A Notice in substantially the same form as Exhibit 4 will be addressed and sent via first-class U.S. mail to the Clerks of the District Courts for all District Courts of Oklahoma, with a request to post the Notice in the Clerks' offices.

  e. All Notices described herein shall: (i) include instructions for submitting comments or objections to the proposed Consent Decree and for indicating whether the noticed person intends to appear at the final settlement approval hearing, either in writing or via the case website created by Class Counsel; (ii) advise that the proposed Consent Decree, and other case documents, are posted and accessible on the case website; and (iii) provide a toll-free number maintained by Class Counsel to field any questions or comments about the proposed Consent Decree.

35. Class Counsel will maintain and consolidate all submitted comments or objections to the proposed Consent Decree and provide copies to the Parties' counsel of record. Class Counsel shall submit to the Court all received comments and objections no less than seven (7) days before the hearing for final approval of the Consent Decree.

14

### Legislative Approval

36.     The Parties must obtain approval of the Consent Decree from either the Oklahoma State Legislature or the Contingency Review Board before it is finally entered.  *See* 51 O.S. § 200.  Once the Court grants this Motion, the Parties will work to obtain such approval.  The Parties will notify the Court once approval is obtained, or if the Parties encounter difficulty in securing such approval.

### Stipulations Regarding Rule 23(e)(2) Factors

37.     The Parties, in accordance with Rule 23(e)(2), stipulate and agree that the proposed Consent Decree is a fair, reasonable, and adequate resolution of the issues embraced by this lawsuit, and that:

    a.  Class Counsel and the Named Plaintiffs have adequately represented the interests of the Class;

    b.  the proposed settlement was fairly and honestly negotiated at arm's length;

    c.  the value of an immediate resolution outweighs the mere possibility of future relief after protracted and expensive litigation; and

    d.  the relief provided to the Class is adequate in consideration of the factors enumerated in Rule 23(e)(2)(C).

*See, e.g., Martinez v. Reams*, 2021 WL 603054, *4 (D. Colo, Feb 16, 2021) (class action settlement seeking relief for medically vulnerable persons at the Weld County jail; certified under Rule 23(b)(2)).

### Requested Relief

Based on the foregoing, the Parties jointly request that the Court: (i) grant preliminary approval of the proposed Consent Decree that (among other things) certifies a settlement Class,

appoints Class Counsel, and adopts a remedial Plan to resolve Plaintiffs' claims herein; (ii) approve the forms and plan of Notice to the Class as described above; and (iii) set a hearing sixty (60) days after granting this Motion to determine the final approval of the Consent Decree.

*[Counsel's signature blocks on next page.]*

RESPECTFULLY SUBMITTED,


/s/ Paul DeMuro
Paul DeMuro, OBA No. 17605
/s/ Frederic Dorwart
Frederic Dorwart, OBA No. 2436
David Leimbach, OBA No. 33310
Frederic Dorwart, Lawyers PLLC
Old City Hall
124 East 4th Street
Tulsa, OK 74103
(918) 583-9922 – telephone
(918) 583-8251 – facsimile
pdemuro@fdlaw.com
fdorwart@fdlaw.com

Nick Southerland, OBA No. 31234
Brian S. Wilkerson, OBA No. 17165
Oklahoma Disability Law Center, Inc.
2816 E. 51st Street, Suite 300
Tulsa, OK 74105
(918) 743-6220 – telephone
(918) 743-7157 – facsimile
nick@okdlc.org
brian@okdlc.org

*Class Counsel for Plaintiffs*


/s Gentner Drummond
ATTORNEY GENERAL GENTNER DRUMMOND
OBA  #16645
ERIN M. MOORE, OBA#20787
TRACY E. NEEL, OBA#33574
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Erin.Moore@oag.ok.gov
Tracy.neel@oag.ok.gov

*Counsel for Defendants*