# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) LESLIE BRIGGS, as next friend of T.W. and B.S.; | ) | |
| (2) EVAN WATSON, as next friend of C.R.; and, | ) | |
| (3) HENRY A. MEYER, III, as next friend of A.M., for themselves and for others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No: 23-cv-81-GKF-JFJ |
| | ) | |
| (1) ALLIE FRIESEN, in her official capacity as the Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services; and | ) | |
| (2) DEBBIE MORAN, in her official capacity as Executive Director of the Oklahoma Forensic Center, | ) | |
| | ) | |
| Defendants. | ) | |

---

**CONSENT DECREE**

---

## **Table of Contents**

**Page**

**I.**    **Introduction** ……………………………………………………………  1

**II.**    **Parties and Purpose** …………………………………………………  4

**III.**   **Stipulation to Class Certification and Class Counsel** ………………………  5

**IV.**   **Definitions**………………………………………………………………  6

**V.**    **Consultants: Appointment, Duties and Compensation** ………………………  11

**VI.**   **The Plan**………………………………………………………………  17

**VII.**  **Measures of Plan Compliance and Fines**…………………………………  29

**VIII.** **Dispute Resolution Process and Enforcement of Consent Decree**……………  35

**IX.**   **Attorney Fees and Expenses**……………………………………………  37

**X.**    **Additional Provisions**…………………………………………………  38

**XI.**   **Reservation of Jurisdiction and Final Judgment**………………………  43

## CONSENT DECREE

This matter comes before the Court on the Parties' *Joint Motion for Preliminary Approval of Entry of Joint Consent Decree* (Doc. __) ("*Joint Motion*"). The Parties, by and through their respective counsel, have stipulated to the facts, recitals and law set forth herein, and to the certification of the Class as defined below, and hereby agree to enter this Consent Decree to resolve this Lawsuit (as defined below) under the terms and conditions set forth herein. The Court, having reviewed the *Joint Motion*, and the attachments thereto, having held hearing(s) on this matter as described below, and otherwise being fully advised, hereby finds good cause for entry of this Consent Decree and, therefore, GRANTS, the *Joint Motion* and ENTERS this Consent Decree on the following terms and conditions.

### I. Introduction

1. The Oklahoma Department of Mental Health and Substance Abuse Services (the "Department") has the statutory obligation under 22 Okla. Stat. § 1175.1 *et seq*. to provide competency evaluations and Restoration Treatment (as defined below) for persons found incompetent to stand trial in Oklahoma state court criminal proceedings.

2. Under 22 Okla. Stat. § 1175.3, when a person charged with a crime is or becomes mentally incompetent to proceed, an application may be filed in the state district court in which the charge is pending to determine the person's mental competency. If the state court determines that the person is incompetent to stand trial because he or she is a "person requiring treatment" as defined in 43 Okla. Stat. § 1-103, but capable of achieving competency with treatment within a reasonable period of time, the state court must suspend the criminal proceedings and order the Department, or its designee, to provide treatment, therapy, or training calculated to allow the person to achieve competency. 22 Okla. Stat. § 1175.6a.

3.    The Oklahoma Forensic Center ("OFC") is currently the only Department-operated hospital that provides secure in-patient competency restoration treatment in Oklahoma.  In this Lawsuit, Plaintiffs alleged that, in part, due to a Department claimed lack of forensic beds at OFC, the Department maintained a waitlist of Class Members who have waited months for court-ordered competency Restoration Treatment.  During this waiting period, Class Members were or are incarcerated in county jails, where they received little or no treatment to restore competency.

4.    On March 1, 2023, on behalf of the Class defined below, four individually named Plaintiffs (through their next friends) filed this class action lawsuit ("Lawsuit") under 48 U.S.C. § 1983 against the Department's Commissioner and the Executive Director of the OFC, in their official capacities.  Plaintiffs, and the putative class, were or are pretrial defendants in Oklahoma state court criminal proceedings who had been declared incompetent to stand trial and were or are incarcerated in county jails waiting for the Department to provide Restoration Treatment. In general, Plaintiffs challenged the length of time the putative class of pretrial detainees are or were forced to wait for the Department to provide Restoration Treatment while their criminal cases are stayed.  Plaintiffs alleged that the prolonged waiting periods violated the Class Members' rights: (i) secured under the due process clauses of the Fourteenth Amendment to the United States Constitution and Article 2, Section 7 of Oklahoma's constitution; and (ii) under the Americans with Disabilities Act ("ADA") by failing to properly accommodate Plaintiffs' disabilities.

5.    On April 10, 2023, Defendants filed a motion to dismiss. (Doc. 16).

6.    Thereafter, the Parties engaged in settlement discussions. Defendants withdrew their motion to dismiss.  (Doc. 21).  The Parties jointly requested, and the Court granted, a series of stays to facilitate on-going settlement discussions.  (*See* Docs. 22, 29, 34, 38, 40).  During the approximately thirteen (13) months when the case was stayed, the Parties exchanged substantial

data and other document discovery, consulted experts, toured the OFC and other facilities, met with numerous stakeholders involved in Oklahoma's competency restoration system, and conducted in-person settlement discussions.  (*See, e.g*., Docs. 28, 32).

7.      On May 10, 2024, the Parties filed their final *Joint Motion for Preliminary Approval of Joint Consent Decree and Class Notice* (Doc __), declaring that the Parties had reached a resolution of all claims in the Lawsuit, including agreed conditions and terms to improve the Department's competency evaluation and Restoration Treatment programs, and to reduce wait times for Class Members, which are reflected in this Consent Decree. The Parties represented, and the Court agrees, that it is  in the Parties' best interest, and the best interests of the Class, to avoid protracted, costly, and uncertain litigation and to resolve this Lawsuit in accordance with the terms and conditions set forth in this Consent Decree.  The *Joint Motion for Preliminary Approval* also sought the Court's approval of the Parties' proposed plan of Notice to the Class of the proposed Consent Decree settlement in accordance with Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure.

8.      On _____, 2024, the Court held a hearing, or otherwise carefully considered, the Parties' *Joint Motion for Preliminary Approval of Entry of Joint Consent Decree and Class Notice*  (Doc. __).  The Court granted the *Joint Motion*, granted preliminary approval of this Consent Decree, approved the Parties' proposed plan and form of Notice to the Class, and set a hearing on _____, 2024 on the Parties' request for final approval of the proposed Consent Decree. Thereafter, the Parties issued the Class Notice in accordance with their plan of Notice outlined in the *Joint Motion for Preliminary Approval.*

9.      On _____, 2024, the Court held a hearing for final approval of this Consent Decree, at which the Court considered any written comments or objections submitted in response

to the Class Notice and any comments or objections voiced at the hearing.  At the hearing, after inquiry with the Parties' counsel, careful consideration of *Joint Motion for Preliminary Approval*, the terms of this Consent Decree, and consideration of any objections or comments thereto, the Court stated its intention to grant the *Joint Motion* and enter this Consent Decree.

## II.    Parties and Purpose

10.    The Plaintiffs are individuals identified as T.W., B.S., C.R., and A.M. (hereinafter collectively, the "Named Plaintiffs" or "Plaintiffs").  The Named Plaintiffs are represented in this Lawsuit by the above-captioned Next Friends who are court-appointed guardians *ad litem* for the Named Plaintiffs.  The Plaintiffs, and the Class Members, were, are currently, or may be in the future, incarcerated in Oklahoma county jails as pretrial criminal defendants declared incompetent by an Oklahoma state court and are awaiting court-ordered Restoration Treatment to be provided by or on behalf of the Defendants or their designees.  Defendants stipulate and agree that the Next Friends and Named Plaintiffs have standing to request that the Court enter this Consent Decree and to enforce the terms thereof.

11.    Defendant Allie Friesen is sued in her official capacity as the Commissioner of the Department.

12.    Defendant Debbie Moran is sued in her official capacity as the Interim Executive Director of the OFC.

13.    The Defendants will, in consultation with Class Counsel and the Consultants (as hereafter defined), formulate and implement the strategic Plan defined below in Section VI, which is designed to enhance the Department's competency evaluation processes and improve the delivery of Restoration Treatment to significantly reduce the duration of time for which Class Members wait to receive Restoration Treatment.

14.     The purposes and intent of this Consent Decree are: (i) to ensure implementation, monitoring, enforcement and, when necessary, modification of the Plan to improve the Department's delivery of competency evaluations and timely Restoration Treatment; (ii) to resolve all claims asserted by Plaintiffs on behalf of the Class in the Lawsuit; and (iii) to provide a mechanism to monitor and enforce Defendants' compliance with this Consent Decree, including through the appointment of Consultants, as defined below. The Parties believe and intend that this Consent Decree, by improving Department's delivery of competency evaluations and timely Restoration Treatment, will promote public safety.

15.     Notwithstanding the Parties' joint request to enter this Consent Decree, Defendants deny liability for all claims asserted in the Lawsuit and agree to enter this Consent Decree solely to avoid protracted and uncertain litigation and, instead, to focus the Parties' resources on improving Oklahoma's competency restoration system.  The Parties believe, and the Court agrees, that this Consent Decree, and the Plan adopted herein, is a fair and reasonable resolution of the Lawsuit, and is in the Class Members' best interest.

## III.    Stipulation to Class Certification and Class Counsel

16.     In accordance with Fed. R. Civ. P. 23(e), the Parties stipulate to certify the following Class for purposes of settlement.  The Court hereby finds that certification of this Class complies with Fed. R. Civ. P. 23(e), and is reasonable and required to effectuate the purposes of this Consent Decree.  Therefore, the Court hereby certifies the following Class of persons under Fed. R. Civ. P. 23(b)(2) to whom the benefits of the Plan and other terms of this Consent Decree generally apply:

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their

criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

17.     The Parties also stipulate that Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc., satisfy the requirements for, and should be appointed as, Class Counsel under Fed. R. Civ. P. 23(g). The Court, having considered the required factors under Rule 23(g), agrees and hereby appoints Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc., as Class Counsel.

## IV.    Definitions

18.     "Best Efforts" means taking reasonable steps, actions and measures, consistent with best professional standards, practices and guidelines to accomplish or bring about the intended and described result.  Defendants may not use lack of funding as an excuse for a failure to use "Best Efforts."

19.     "Class" or "Class Members" means the persons who have been, are or will be during the term of this Consent Decree members of the Class as defined in Paragraph 16 above.

20.     "Class Counsel" means Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc.

21.     "Community-Based Restoration Treatment Pilot Program" means a new pilot program to be developed and implemented in Tulsa County, Oklahoma County, McIntosh County, and Muskogee County to provide outpatient Restoration Treatment to eligible Class Members who have been judicially determined not to be a substantial risk of harm to themselves or other while

6

in a supervised out-patient community setting by private or public entities, instead of inpatient units of state psychiatric hospitals, other inpatient restoration facilities, jails or detention facilities; as more fully described in Paragraphs 68-73 below.

22.     "Custody Order" or "Commitment Order" means a written Order for Competency Treatment, issued by a court and signed by a judge, which orders a Class Member committed to the legal custody of the Department or a designee for the purpose of treatment intended to restore the defendant to competency, as described in 22 Okla. Stat. §§ 1175.3 & 1175.6(a).

23.     The "Department" means the Oklahoma Department of Mental Health and Substance Abuse Services.  Whenever, in this Consent Decree, the Department is ordered or obligated to take, or refrain from taking, certain action, including without limitation meeting certain deadlines or timeframes, it is understood to mean that the Defendants, acting in their official capacities, shall cause the Department to take such action, or refrain from taking such action. Whenever, under the terms of this Consent Decree, Defendants are required to confer with the Consultants, Class Counsel or others, or to be consulted about any aspect of this Consent Decree, Defendants' counsel also have the right to participate.

24.     "Forensic Bed" means a duly licensed and certified bed in a state forensic psychiatric hospital, contracted bed in an inpatient hospital or hospital-like setting, or a duly licensed and certified bed in a community setting. These beds may be provided through a contract between the Department and a third-party provider such as a Certified Community Behavioral Health Center.  A "Forensic Bed" does not include beds used in the In-Jail Competency Restoration Pilot Program (defined below).

25.     "Incompetent" or "Incompetent to stand trial" has the same meaning as set forth in 22 Okla. Stat. § 1175.1.

26.     "In-Jail Competency Restoration Pilot Program" means a new, research and evidence-informed program to provide Restoration Treatment consistent with forensic mental health's best practices to select Class Members who have criminal cases pending in Tulsa County, and in another Oklahoma county to be determined in accordance with the Plan described below (*see* Paragraphs 74-76).

27.     "Maximum Allowable Wait Time" means the greatest number of days that any Class Member is permitted to wait under Paragraph 86 to receive Restoration Treatment, as measured from the date on which OFC, the Department or its designee receives the Custody Order or Commitment Order until the date on which the Class Member begins receiving Restoration Treatment at OFC, the In-Jail Competency Restoration Pilot Program, or the Community-Based Restoration Treatment Pilot Program, or other forensic bed approved under the Plan.  For Class Members who are incarcerated when this Consent Decree is entered, the first day of wait time for purposes of determining their Maximum Allowable Wait Time shall be deemed to be the date upon which this Consent Decree is entered; provided, Defendants shall track and record those Class Members' actual total wait times.

28.     "Material Violation" means any failure to use Best Efforts to adhere to any plans or methods implemented by the Department so as to comply with the terms of this Consent Decree. Isolated, non-substantive, or immaterial deviations from the terms of this Consent Decree or from any plans or methods implemented so as to comply with the terms of this Consent Decree will not constitute a Material Violation, provided Defendants: (a) can demonstrate that they have implemented a system or systems of assuring compliance and for taking corrective measures in response to instances of non-compliance and (b) have instituted policies, practices, and resources

that are capable of durable and sustained compliance. Any failure by Defendants to use Best Efforts to comply with the terms of this Consent Decree will be considered a Material Violation.

29.     The "Consultants" means: (i) William Neil Gowensmith, Ph.D., of Groundswell Services, Inc.; (ii) John Petrila; and (iii) Dr. Daren Lish, who the Court appoints herein to perform the monitoring, reporting, advising, and dispute-resolution functions and duties set forth in Section V, VI and VIII below.

30.     The "Plan" means the strategic plan developed by Defendants, in consultation with Class Counsel and the Consultants, and approved by the Consultants, as described in Section VI below, designed to reform and improve the Defendants' delivery of competency evaluations and Restoration Treatment to Class Members, including to reduce significantly the durations of time during which Class Members wait to receive Restoration Treatment.

31.     "Qualified Forensic Evaluator" or "Qualified Forensic Examiner," for purposes of this Consent Decree, means and must be a licensed mental health professional at either the master's or doctoral level, to include: (a) master's level licensed professional counselors, (b) master's level social workers, (c) psychologists, and (d) psychiatrists; all of whom must receive comprehensive forensic training and demonstrate continued proficiency, skill, and professional conduct in order to conduct competence evaluations. The Department shall train, approve, and continuously monitor all Qualified Forensic Examiners conducting competence evaluations to ensure adherence to established professional standards.  Master's level Qualified Forensic Examiners will be subject to enhanced training, approval, and monitoring standards, will be prohibited from conducting competence evaluations on certain types of cases, and will be required to hand off competence evaluation cases to doctoral level psychologists or psychiatrists at times. Qualified Forensic Examiners must be reapproved by the Department at least every two years, and they may be subject

to corrective remediation or termination of examiner duties if the quality of evaluations are inadequate. The Department shall make the Qualified Forensic Examiner's approval records available to all licensed mental health professionals conducting competence evaluations, and shall maintain a list of active Qualified Forensic Examiners approved by the Department, which the Department shall provide to all Oklahoma District Courts on a quarterly basis. Within ninety (90) of entry of this Consent Decree, Defendants, in consultation with Class Counsel and the Consultants, and with the Consultants' final approval, shall develop forensic and competence evaluation training standards, approval standards, ongoing monitoring standards, and restrictions on the type of cases master's-level Qualified Forensic Examiners may handle.

32.    "Bi-Annual Reports" means the written reports submitted by the Consultants to the Parties twice every annual calendar year, in accordance with Paragraph 45 below, that, among other things: (i) reports the Consultants' findings with respect to the Defendants' compliance, or lack thereof, with the terms of this Consent Decree; (ii) recommends strategies for, and guidance to, Defendants to address short and long-term compliance with the Plan and the timeframes for delivering competency evaluation and Restoration Treatment services to Class Members as set out in this Consent Decree; and (iii) recommends additional injunctive relief, if any, the Court may consider to achieve the purposes and goals of this Consent Decree.

33.    "Restoration Treatment" means psychosocial therapy, treatment, psychotropic medication, and/or education, informed by research and tailored to the conditions of each individual Class Member, designed to restore a Class Member to competency in accordance with 22 Okla. Stat. § 1175.6a, provided by a Treatment Rendering Provider (as defined below) employed or designated by the Department, that occurs only in: (i) admission to OFC or another lawfully accredited and qualified inpatient forensic bed setting; (ii) the In-Jail Competency

Restoration Pilot Program; (iii) the Community-Based Restoration Treatment Pilot Program, or (iv) other appropriate placements as determined by the Department in consultation with, and approval by the Consultants.

34.    "Status Report" means the written report issued by the Defendants and submitted to the Consultants and Class Counsel on a monthly basis during the term of this Consent Decree, which, among other things, tracks the Class Members' status in the competency restoration process, in accordance with Paragraphs 82-83 below.

35.    "Treatment Rendering Provider" means a masters-degree level clinician with comprehensive forensic training and experience sufficient to enable them to provide Restoration Treatment to Class Members, working under the supervision of a licensed psychiatrist or psychologist.

36.    "Waitlist" means a list of Class Members waiting for Restoration Treatment, which Defendants shall maintain throughout the term of this Consent Decree. The Waitlist shall include: (i) the county, case number, defense attorney, prosecutor, and judge in the Class Members' state court criminal cases; (ii) the dates upon which the state court ordered the competency evaluation, the defendant was found incompetent, and the Custody Order or Commitment Order was entered; (iii) the date upon which the Department or its designee received the Order for Competency Restoration; (iv) the current custodial status of the Class Members; (v) any competency re-evaluation and placement history; and (vi) other information the Department and the Consultants jointly deem pertinent to the Class Members' status on the Waitlist.

## V.    Consultants: Appointment, Duties and Compensation

37.    **Appointment of Consultants.**  The Parties agree that: (i) monitoring, advising, enforcing, and reporting Defendants' compliance with terms of this Consent Decree are  vital to

accomplishing its purposes and goals; and (ii) Neil Gowensmith of Groundswell Services, Inc., John Petrila, and Dr. Darren Lish, have the necessary experience, expertise, and resources to serve as Consultants.  The Court, therefore, hereby appoints Neil Gowensmith, John Petrila, and Dr. Darren Lish to serve as Consultants in accordance with the terms of this Consent Decree.

38.     **Consultants' Duties.**  The Consultants shall have the following duties and perform the following functions, to be discharged in good faith: (i) investigate, monitor, and make findings with respect to Defendants' compliance with the terms of this Consent Decree; (ii) report the status of Defendants' compliance or progress (or lack thereof) to the Court and the Parties; (iii) advise, recommend, and facilitate methods to the Department regarding plans and practices for improving the delivery of competency evaluations and Restoration Treatment to Class Members, including addressing the short-term and long-term compliance with the Restoration Treatment timeframes set out herein; and (iv) serve as mediators for disputes between the Parties regarding any aspect of this Consent Decree as set out in the Dispute Resolution Process in Section VIII below.

39.     There shall be three Consultants for the duration of this Consent Decree. In the event a Consultant becomes unable or unwilling to serve, the Consultants shall consist of the remaining appointed Consultants until replacement Consultant(s) are appointed, in accordance with this Paragraph 39, to restore three serving Consultants.   In the event any Consultant becomes unable or unwilling to serve as a Consultant, and there are two (or fewer) remaining Consultants, then the Defendants and Class Counsel shall attempt to agree expeditiously, in consultation with the remaining Consultants, on a replacement(s) Consultant.  If, within thirty (30) days, no agreement is reached, Defendants and Class Counsel shall each submit two names to the remaining Consultants. The remaining Consultants shall, within fifteen (15) days, select a replacement Consultant from the list, subject to the approval of the Defendants and Class Counsel. Such

approval shall not be unreasonably withheld.  If the Defendants or Class Counsel withhold approval, then the selection of the new Consultant(s) shall be governed by the provisions of the Dispute Resolution Process set forth in Section VIII below.

40.     If all three Consultants become unable or unwilling to serve or continue to serve simultaneously, then each Party shall select, in their sole discretion, one Consultant to be appointed. The two newly selected Consultants then shall mutually agree upon a third Consultant to be appointed upon the Parties' approval, which shall not be unreasonably withheld. If Defendants or Class Counsel withhold approval, then the selection shall be governed by the provisions of the Dispute Resolution Process set forth in Section VIII below.

41.     The Consultants may adjust any time frame contained within this Consent Decree that, in their sole discretion, is impacted by the loss of one or more Consultant. The Consultants shall report any timeframe modifications in their Bi-Annual Reports.

42.     The Parties agree that neither they, nor any employee or agent of either Party, shall have any supervisory authority over the Consultants or their activities, reports, findings, or recommendations.  The Parties agree that no current or former Department employees may serve as a Consultant under this Consent Decree.

43.     The Consultants are not a state or local agency or agent thereof, and accordingly the records maintained by the Consultants shall not be deemed public records subject to public inspection. Neither the Consultants nor any person or entity hired or otherwise retained by the Consultants to assist in furthering any provision of this Consent Decree shall be liable for any claim, lawsuit, or demand arising out of the Consultants' good-faith performance pursuant to this Consent Decree. Except as otherwise required by law, any reports, opinions, or documents used or

prepared by the Consultants or their staff shall be used for the purposes of this case only and may not be used for any other purpose without the express, prior written consent of the Defendants.

44.     Within a reasonable time after entry of this Consent Decree, such time period to be determined by the Consultants after conferring with the Parties, the Consultants will:

a.     Advise the Department with respect to the Department's planning, design, and implementation of  the methods necessary to address short and long-term compliance with the Plan and the timeframes for delivering competency evaluation and Restoration Treatment services to Class Members set out herein, and advise and assist the Department's implementation of the Consultants' recommendations.

b.     Advise the Department with respect to the Department's planning, design, and implementation of a system of data collection, analysis and reporting of data related to competency evaluation and Restoration Treatment, to include monthly reporting by the Department to the Consultants, and monthly reporting by the Consultants analyzing such data and making recommendations to the Department based on such data.

c.     Identify areas within the Department's statewide competency evaluation and restoration system that have caused, are causing, or may cause non-compliance with the timeframe requirements of this Consent Decree concerning competency evaluation and Restoration Treatment.

45.     The Consultants are authorized to monitor, investigate and make findings regarding the Department's efforts to attain compliance with this Consent Decree's terms, including whether the Department has used Best Efforts to implement the Plan. During the term of this Consent

Decree,  twice every annual calendar year, the Consultants shall submit to the  Parties Bi-Annual Reports that: (i) report the Consultants' findings with respect to the Defendants' compliance, or lack thereof, with the terms of this Consent Decree; (ii) recommend strategies for, and guidance to, Defendants to address short and long-term compliance with the Plan and the timeframes for delivering competency evaluation and Restoration Treatment services to Class Members as set out in this Consent Decree; (iii) include a summary of the number of Class Members awaiting Restoration Treatment and the term of each Class Members' wait time; (iv) include a summary of any Fines assessed hereunder and the status of the Department's payment of such Fines, as described in Section VII; and (v) recommend additional injunctive relief, if any, the Court may consider to achieve the purposes and goals of this Consent Decree.   The Department shall publish the Consultants' Bi-Annual Reports on the Department's website (https://oklahoma.gov/odmhsas.html) in a manner easily accessible to the public.

46.    The Consultants may, in their sole discretion, submit additional reports to the Parties regarding the Defendants'  compliance, or lack thereof, with the provisions of this Consent Decree, or on any other matter the Consultants deem helpful to achieve the purposes of this Consent Decree.

47.    Defendants shall use Best Efforts to grant the Consultants reasonable access to all Department records, data, personnel, contractors, designees and competency restoration facilities necessary to perform the Consultants' duties under this Consent Decree.  At the Consultants' request, the Department shall produce data in a format best suited for the Consultants' efficient review. As a component of their reporting and monitoring duties, the Consultants may select a sample of Class Members from the Defendants' monthly reporting to audit the timeliness of the delivery of competency evaluations and Restoration Treatment.  The Consultants may include their

audit findings in any report submitted hereunder, but private or confidential information shall be redacted from any public filing and from the Bi-Annual Report to be posted on the Department's website.

48.     The Consultants may, with the consent of the Parties, confer and subcontract with service providers (but not allow double billing), as determined by the Consultants in the exercise of their professional judgment would be helpful to the Consultants, the Court, or the Parties to accomplish the goals and purposes of this Consent Decree, including without limitation, the preparation of additional reports, studies, data-analysis, recommendations, research, or auditing of Fines assessed or paid under Section VII herein.  A Party's refusal to consent to the Consultants' request to confer or subcontract with service providers may be submitted to the Dispute Resolution Process set out in Section VIII herein.

49.     The Consultants shall have the authority to modify or excuse any timeframe imposed on Defendants or the Department in this Consent Decree.  The Consultants shall report any timeframe modifications in their  Bi-Annual Reports.  Any Party's request to modify or excuse a timeframe imposed in this Consent Decree shall be decided in accordance with Dispute Resolution Process set out in Section VIII below.

50.     During the term of this Consent Decree the Consultants may set and hold meetings with Parties, which may be conducted via videoconferencing or in-person, to review progress and compliance issues, identify continuing barriers, develop collaborative solutions and actions to implement the Plan, reduce the Waitlist and improve the conditions for mental health treatment of Class Members.

51.     Neither the Consultants nor the Parties shall publicly disclose information obtained by the Consultants, which would otherwise be privileged or confidential, without consent of all

Parties and/or order of the Court. An order of the Court shall be sought when mental health information about individuals is sought to be publicly disclosed.

52.     Whenever the Consultants are required to make any decision, finding, or recommendation, or to approve or adopt any Plan component or course of action, hereunder, a vote of at least a majority of the Consultants shall be required. Any findings or decisions made or adopted by the Consultants in accordance with the terms of this Consent Decree shall be binding on the Parties as if entered as a term of this Consent Decree until or unless modified or revoked by the Dispute Resolution Process (*see* Section VIII), by written agreement of the Parties, or by Court order.

53.     The Department shall pay the Consultants for time incurred discharging their duties under this Consent Decree at a rate of $450 per hour for professional services and $200 per hour for travel time; and reimburse the Consultants for their reasonable expenses incurred discharging their duties under this Consent Decree, including travel and lodging expenses pursuant to the State Travel Reimbursement Act, 74 Okla. Stat. 2021 §§ 500.1-500.37.  The Consultants shall submit monthly invoices to the Department detailing the Consultants' time and expenses, which the Department shall pay within forty-five (45) days of submission of the invoice.

**VI.     The Plan**

54.     The Plan consists of the program components and obligations set out in this Section VI.  The Plan is intended to improve the Department's delivery of competency evaluations and Restoration Treatment to Class Members, including significantly reducing the length of time Class Members wait for Restoration Treatment. Upon entry of this Consent Decree, Defendants shall use Best Efforts to develop and begin to implement the Plan in accordance with the terms of this Consent Decree.  The Plan's components must be approved by the Consultants.  Unless otherwise

provided below, within ninety (90) days after the Court enters this Consent Decree, Defendants shall, in consultation with the Consultants and Class Counsel, develop and begin to implement the Plan's program components described below in this Section VI.  The Consultants' approval, or disapproval, of the Plan's components, and any of the Consultants' decisions, findings, or recommendations made in connection therewith, shall be subject to the Dispute Resolution Process set out in Section VIII below.

55.     Whenever in this Consent Decree Defendants are required to "begin to implement" an action or a Plan component, Defendants shall thereafter complete the implementation within a reasonable time to be determined in consultation with the Consultants and Class Counsel.

56.     Once the Plan has been developed and approved by the Consultants, the Plan may be modified only by written agreement of the Parties and the Consultants' approval; provided, however, that a Party's request to modify the Plan may be submitted to the Dispute Resolution Process in Section VIII.

57.     **Reevaluation of Class Members Currently Waiting for Restoration Treatment.**  Within ninety (90) days after the Court enters this Consent Decree, the Department must reevaluate every Class Member to determine if competency has been restored or if the Class Member is unlikely ever to be restored to competency, as set forth in 22 Okla. Stat. § 1175.1, excluding those Class Members assessed within the last thirty (30) days by a Qualified Forensic Examiner.  All reevaluations must be performed by a Qualified Forensic Examiner. The Department may hire such personnel in and outside the State of Oklahoma licensed or authorized to perform the competency reevaluations within the State of Oklahoma. Such evaluations may be performed via videoconference.  Defendants may begin reevaluations of Class Members under this Paragraph 57 at any time.

58.     **Cessation of Current State-Wide In-Jail Restoration Program.**   Plaintiffs dispute that Defendants ever implemented a legitimate state-wide  competency restoration program consistent with generally accepted professional forensic standards.  Within sixty (60) days after the Court enters this Consent Decree, the Department shall wind down and cease operating its alleged state-wide in-jail competency restoration program, with the exception of the In-Jail Restoration Pilot Program, as defined herein (see Paragraphs 74-76).  The Department shall ensure that the medical and mental health needs of Class Members involved in the alleged state-wide in-jail restoration program when this Consent Decree is entered are protected and not harmed by the cessation of the alleged state-wide in-jail restoration program under this Paragraph 58.  Class Members who are already receiving medication as part of existing mental health services when this Consent Decree is entered will continue to receive medication.  The Parties acknowledge that the Sheriff of Tulsa County may be willing to dedicate a pod or pods of beds located within the Tulsa County Jail's campus for the Department to use for competency Restoration Treatment under this Paragraph, contingent, however, on the Department entering into a contract with the jail's governing authority in which the Department agrees to take exclusive responsibility for the Restoration Treatment program in the dedicated pods, including legal custody of Class Members who are placed in the pod(s) for Restoration Treatment.

59.     Nothing in this Consent Decree shall be construed as preventing the Department from providing Class Members in county jails with necessary and appropriate medications, and related mental health treatment, as prescribed by a medical professional and other mental health services in accordance with 22 Okla. Stat. § 1175.6a.

60.     The Department shall redirect the resources previously expended on its alleged state-wide in jail restoration program to the other elements of the Plan, including but not limited

19

to the In-Jail Restoration Pilot Program. Notwithstanding anything to the contrary in this Paragraph 60, the Department may, in good faith, provide enhanced mental health services to Class Members while still incarcerated in jail, provided that the Maximum Allowable Wait Times still apply to any Class Members receiving such enhanced mental health services.  Such enhanced mental health services may be subject to the approval of the jails' governing authority or the jails' authorized mental health providers.

61.     The Parties recognize that some Class Members may be restored to competency based upon enhanced mental health services and medications the Department may provide while a Class Member is in jail. Upon a good faith belief that a Class Member has been restored to competency while in jail, the Department shall utilize Best Efforts to have the Class Member reevaluated for competency within ten (10) days, excluding holidays and weekends, by a Qualified Forensic Examiner. The Maximum Allowable Wait Time and Fine provisions of Section VII shall apply to any Class Members the Department treats under this Paragraph 61.

62.     **Increase of Inpatient Forensic Beds.**   The Parties agree that a critical and necessary component of the Plan is to increase the Department's inventory of inpatient Forensic Beds dedicated solely to competency restoration. Within ninety (90) days after the Court enters this Consent Decree, the Defendants, in consultation with the Consultants and Class Counsel, shall develop and begin to implement a plan, that must be approved by the Consultants, to achieve a material increase in new inpatient Forensic Beds dedicated solely to competency restoration over the term of this Consent Decree; such plan must include the number of new Forensic Beds to be added, and the timeline(s) for bringing the new Forensic Beds on line, and should consider best practices for determining the reasonable number of new Forensic Beds to be maintained given the

State of Oklahoma's population growth, crime rate, and the effect of the Plan's components once the Plan has been developed and implemented.

63.     **Forensic Inpatient Facilities and Staffing.**  Within ninety (90) days after the Court enters this Consent Decree, Defendants, in consultation with Class Counsel and Consultants, shall develop and begin to implement a plan for staffing at OFC and addressing environment of care standards for forensic facilities, which ensures that OFC remains in compliance with its current accrediting-body standards,[1] as set forth in 42 CFR 482.62, 42 CFR 412.27, and OAC 317:30-5-95; such plan must be approved by the Consultants.  Defendants shall take all necessary steps to ensure that OFC remains within accreditation standards during the duration of this Consent Decree.

64.     **Continuing Education for OFC Psychiatrists, Psychologists, and Other Clinical Staff.**  Within ninety (90) days after the Court enters this Consent Decree, Defendants shall, in consultation with the Consultants and Class Counsel, develop and begin to implement a plan to require all psychiatrists, psychologists, and other clinical staff involved in competency restoration at OFC and other facilities to participate in twelve (12) hours annually of continuing education on topics related to forensic mental health treatment including adjudicative competency; such plan must be approved by the Consultants.

65.     **Competency Restoration Triage Process**.  Within ninety (90) days after the Court enters this Consent Decree, the Department, in consultation with Class Counsel and the Consultants, shall develop a written triage screening protocol for Class Members who have been declared incompetent, which must be approved by the Consultants; such plan must include the

---

[1] At the time of the entering of this Consent Decree, OFC is accredited through the Joint Commission (formerly known as the Joint Commission on Accreditation of Healthcare Organizations).

following: (i) reasonable deadlines for initial screening of Class Members who are declared incompetent; (ii) adoption of screening protocol consistent with current professional standards; (iii) establishment of triage levels designed to expedite placement of, and treatment plans for, Class Members; and (iv) adoption of qualification standards for the professionals providing triage services under this Paragraph 65.

66.     After implementation of the competency restoration triage process, the Department shall keep adequate records of the competency restoration triage program so that the Consultants can monitor and evaluate the Department's progress with implementation of the competency restoration triage process.

67.     **Performance of Competency Evaluations and Reevaluations.**  The Department shall complete all court-ordered competency evaluations of pretrial detainees by Qualified Forensic Evaluators and submit their reports to the state district court for the county in which the pretrial detainee is held within thirty (30) days after the Department's receipt of a court order directing the evaluation and receipt of collateral materials such as police reports and treatment records for the pretrial detainee. The Department shall reevaluate Class Members at least once every ninety (90) days after receipt of the Order for Competency Restoration.  A Treatment Rendering Provider, Class Members' state-court counsel or guardians, the District Attorney, or the Consultants may request that the Department reevaluate a Class Member at any time based on a good faith reasonable belief that the Class Member has regained competency, and such reevaluation will occur within thirty (30) days after receipt of such requests.  The reevaluation requirements contained in this Paragraph 67 do not apply during the first ninety (90) days after entry of this Consent Decree while Defendants conduct the reevaluations of all Class Members required under Paragraph 57.

68.     **Community-Based Restoration Treatment Pilot Program**.  The Parties agree that: (i) certain Class Members who have been judicially determined not to be a substantial risk of harm to themselves and others if treated in a community placement, are amenable to receive Community-Based Restoration Treatment in a supervised, outpatient setting; (ii) Class Members amenable to Community Based-Restoration Treatment will avoid unnecessary institutionalization or incarceration, receive treatment in the least restrictive environment and reduce costs to the Department; (iii) the treatment of amenable Class Members in Community-Based Restoration Treatment will reduce the need for forensic inpatient beds to provide Restoration Treatment and free up forensic beds for other Class Members; and (iv) the development of an effective Community-Based Restoration Treatment program is a vital component to achieve compliance with the timeframes set forth in this Consent Decree for delivery of competency evaluations and Restoration Treatment to Class Members.

69.     The Parties recognize that the development and implementation of an effective Community-Based Restoration Treatment program will require the input and participation of state court judges, prosecutors, and other non-parties to this Consent Decree.  Within ninety (90) days after the Court enters this Consent Decree, Defendants, in consultation with Class Counsel and the Consultants, shall develop and begin to implement a plan, to be approved by the Consultants, for a pilot Community-Based Restoration Treatment Program in Tulsa County, Oklahoma County, McIntosh County and Muskogee County.  The Community-Based Restoration Treatment Pilot Program shall include development of written policies and procedures for Class Members' eligibility and best practices for program implementation, in consultation with the Consultants, the Department's designated representative and its counsel, Class Counsel, and any other interested stakeholder approved by the Parties.

70.     The Parties recognize that the Department is required by 22 O.S. § 1175.6a to provide appropriate outpatient treatment for competency restoration to qualified individuals regardless of whether they reside, or are incarcerated, in the four counties referred to in Paragraph 69; and this Consent Decree does not preclude Qualified Forensic Examiners or Treatment Rendering Providers from making such recommendations to the state court judges, nor does this Consent Decree preclude the Department from placing Class Members in appropriate outpatient treatment settings in accordance with 22 O.S. § 1175.6a and recommendations from the Qualified Forensic Examiners and/or Treatment Rendering Providers.

71.     At the end of one-year of implementation of the Community-Based Restoration Treatment Pilot Program, the Parties, in consultation with the Consultants, the Department's designated representative and its counsel, Class Counsel, and any other interested stakeholders approved by the Parties, will evaluate the data, practices, and outcome of the pilot program to determine whether, and how, this Community-Based Restoration Treatment Pilot Program may be expanded to other Oklahoma counties.

72.     Before a Class Member is released on bond to participate in the Community-Based Restoration Treatment Pilot Program, the Department shall:

a.     Develop a treatment plan (in a format approved by the Consultants) within seven (7) days, excluding weekends and holidays, of the order to all parties involved in the community-based services recipient's case and the community-based provider.

b.     Support processes to provide criminal courts, prosecutors, and defense attorneys with the information necessary to create tailored conditions for release of individuals into outpatient community restoration services.

c.      Conduct outreach and provide technical assistance to criminal courts and other stakeholders, upon request, to support the implementation of community outpatient restoration services, and to assist with issues such as determination of eligibility for outpatient restoration services, the conditions of an individual's participation in community outpatient restoration services and the use of residential supports and other services to encourage the use of community outpatient restoration services.

73.     Notwithstanding the creation of the Community-Based Restoration Treatment Pilot Program in the four counties listed in Paragraph 69, the Department may place, or recommend placement of, any Class Member into appropriate community-based out-patient restoration treatment in the other 73 Oklahoma counties that are not part of the Community-Based Restoration Treatment Pilot Program.  If such a community-based out-patient placement occurs, the Department shall provide the Consultants with the information and tracking data related to such placement.

74.     **In-Jail Competency Restoration Pilot Program.**  Within ninety (90) days after the Court enters this Consent Decree, the Defendants, in consultation with Class Counsel and the Consultants, shall develop and begin to implement a pilot in-jail restoration program in Tulsa County and in one other Oklahoma county, to be approved by the Consultants; such plan will include the development of written policies and procedures for best practices specific to the operation of an in-jail restoration program, including a triage process for identifying Class Members most amendable to in-jail Restoration Treatment.  The Parties acknowledge that the development and implementation of this pilot program will depend significantly on the cooperation, participation, and input from the Sheriff of Tulsa County, and other stakeholders.

The Parties acknowledge that the Sheriff of Tulsa County may be willing to dedicate a pod or pods of beds located within the Tulsa County Jail's campus for the Department to use for competency Restoration Treatment under this Paragraph, contingent, however, on the Department entering into a contract with the jail's governing authority in which the Department agrees to take exclusive responsibility for the Restoration Treatment program in the dedicated pods, including legal custody of Class Members who are placed in the pod(s) for Restoration Treatment.

75.     After it becomes operational, the Department shall operate the In-Jail Competency Restoration Pilot Program for a period of not less than one year.  During that one-year period, the Defendants and the Consultants will gather and analyze data about the pilot program's effectiveness in providing Restoration Treatment to Class Members, including the number of patients who are restored or are not restored to competency, together with any other data the Consultants and Defendants deem relevant.  By the end of the one-year period, the Consultants will determine, with input from the Department and Class Counsel, whether the In-Jail Competency Restoration Pilot Program:

      a.     is an effective method of Restoration Treatment, such that it should continue and, if possible, be expanded to other Oklahoma counties which have similar resources and segregated facilities; or

      b.     is not effective, in which event its use as a treatment option under this Consent Decree may be promptly terminated unless the Consultants prescribe additional steps to improve in-jail competency restoration's efficacy and the Department complies with and implements those steps.

76.     If, after using Best Efforts, the Department is unable to implement a pilot in-jail restoration program in Tulsa County, the Department shall, in consultation with the Consultants

and Class Counsel, use Best Efforts to develop and begin to implement a pilot in-jail restoration program in another Oklahoma county, within ninety (90) days after the Department determines, with the Consultants' advice and consent, that a pilot program in Tulsa County is not feasible. Notwithstanding anything to the contrary stated in this Consent Decree, the Department may, at any time, with the prior approval of the Consultants and Class Counsel, develop and implement an in-jail restoration program in any other Oklahoma counties in which the county jail's governing authority has expressed a willingness to support an in-jail restoration program and has committed sufficient resources to support a successful program.

77.     **Additional Department Staffing Requirements**.  Within ninety (90) days after the Court enters this Consent Decree, the Defendants, in consultation with Class Counsel and the Consultants, shall  develop and begin to implement a plan to staff the Department with individuals tasked and qualified to: (i) oversee the Department's competency evaluation and restoration programs, including the Plan's programs; and (ii) gather, report, and analyze data associated with these programs and (iii) aide support the stakeholders with navigation of these programs; and (iv) any other area the Department and Consultants deem necessary to accomplish the goals and purposes of this Consent Decree.

78.     **Increased Training to Relevant State Personnel**.  After entry of this Consent Decree, the Department shall offer initial and periodic training to Oklahoma state district court personnel, county sheriffs, and members of the Oklahoma State Bar concerning persons ordered to receive competency evaluations and Restoration Treatment and regarding the procedures for, and resources related to, the Department's provision of competency evaluations and Restoration Treatment to criminal defendants.

79.     By twelve (12) months after entry of this Consent Decree, the Department shall offer training to the district court personnel and sheriffs for each of Oklahoma's 77 counties regarding its obligation to provide timely competency evaluations and Restoration Treatment under this Consent Decree, and the cooperation needed from court personnel and sheriffs to help the Department meet the timelines specified in this Consent Decree.

80.     By twelve (12) months after entry of this Consent Decree, the Department shall distribute to each Oklahoma district court a publication, whose content is mutually agreed upon by the Defendants, the Consultants, and Class Counsel, for dissemination to attorneys representing persons ordered to receive competency evaluations or Restoration Treatment, describing the Defendants' obligation to provide timely competency evaluations and Restoration Treatment under this Consent Decree, and the cooperation needed from defense counsel to help the Defendants' meet the timelines specified in this Consent Decree.

81.     Within ninety (90) days after the Court enters this Consent Decree, Defendants, in consultation with Class Counsel and the Consultants, shall develop and begin to implement  a plan for the training program contemplated in Paragraphs 78-80.

82.     **Status Reports.** No later than the tenth (10th) day of every month during the term of this Consent Decree, Defendants shall submit to the Consultants and Class Counsel a Status Report accurately reporting the status of all Class Members then waiting for Restoration Treatment.  Each report must include the following information for each Class Member: (i) the Class Member's name and criminal case number; (ii) the state district court that entered the Class Member's Custody Order or Commitment Order and the date of entry; (iii) the date OFC or the Department received the Custody Order Commitment Order; (iv) the name of the jail where the Class Member is being held; (v) the dates on which the Class Member was screened through the

Competency Restoration Triage Process set out in Paragraph 65 above, or otherwise, and the results of such screenings, including the current disposition of the Class Member for Restoration Treatment; (vi) the date on which the Class Member began receiving Restoration Treatment and the location where, or program in which the Class Member is receiving Restoration Treatment; (vii) the date, if any, on which the Class Member left Department custody for any reason, a statement of the reason and, if applicable, including the name and location of the facility or other setting to which the Class Member was transferred; (viii) the number of days the Class Member has spent on the Waitlist; and (ix) progress toward, and status of, the planning, design, and implementation of the Plan components described in Section VI of this Consent Decree.

83.     The Status Report shall also state: (i) the Waitlist data together with the range, average, central tendencies, and trends of Class Members' days on the Waitlist; (ii) for each Class Member, whether Defendants have complied with the timeframes requirements of Section VII, if applicable; (iii) the reasons, if applicable, for Defendants' noncompliance with the timeframe requirements of Section VII; and (iv) if applicable, a calculation of any Fines due under Paragraph 92. Over the term of this Consent Decree, the Consultants may, after consultation with the Parties, request that different or additional data be included in the Status Reports reasonably related to the Consultants' duties hereunder.

84.     Defendants shall give the Consultants access to all aggregate data used by the Defendants in producing Status Reports.

## VII.    Measures of Plan Compliance and Fines

85.     **Timely Restoration Treatment.**   Defendants shall use Best Efforts to meet the objective of providing all Class Members with timely and appropriate Restoration Treatment in accordance with the terms of this Consent Decree.   Pursuant to the Competency Restoration Triage

Process in Paragraph 65 above, and without any unnecessary delay, Defendants shall transport or direct transportation consistent with 22 Okla. Stat. § 1175.6a of Class Members to the appropriate program or location for Restoration Treatment.

86. **Deadlines for Reduction in Maximum Allowable Wait Time.** The Department, acting through the Defendants, shall be subject to the following deadlines for admitting Class Members to Restoration Treatment:

a. No later than seven (7) months after entry of this Consent Decree, Defendants shall reduce the Maximum Allowable Wait Time to sixty (60) days.

b. No later than ten (10) months after entry of this Consent Decree, Defendants shall reduce the Maximum Allowable Wait Time to forty-five (45) days.

c. No later than thirteen (13) months after entry of this Consent Decree, Defendants shall reduce the Maximum Allowable Wait Time to thirty (30) days.

d. No later than sixteen (16) months after entry of this Consent Decree, Defendants shall reduce the Maximum Allowable Wait Time to twenty-one (21) days.

87. **Suspension of Deadlines Because of Special Circumstances**. Defendants' ability to perform their obligations under this Consent Decree in a timely manner may depend on special circumstances beyond their control. Subject to the following terms and conditions, the Maximum Allowable Wait Time deadlines may be suspended with respect to one or more Class Members based only upon the following circumstances that must be beyond Defendants' control:

a.  Orders of a court that will delay Defendants' performance; motions filed on behalf of the Class Member that will delay Defendants' performance; a jail's failure or refusal to clear the Class Member for admission to one of Defendants' facilities; or medical conditions that prevent a Class Member's admission to OFC. Circumstances in this category shall be referred to as "Individual Special Circumstances."

b.  A national or local disaster impacting admissions of one or more of Defendant's facilities; a labor action that substantially impedes the continued operation of a facility relevant to the performance of Defendants' obligations under this Consent Decree; or an extraordinary and unanticipated increase in the number of court-ordered competency restoration referrals over a period of at least ninety (90) days. Circumstances in this category shall be referred to as "Departmental Special Circumstances."

c.  Any other unforeseen circumstances may allow for the suspension of the Maximum Allowable Wait Time deadlines upon unanimous approval by the Consultants.

88.  The failure or refusal of the Oklahoma Legislature to adequately fund the Departments' operations or programs, or staffing shortages not due to a coordinated labor action, shall not be grounds for a suspension of the Maximum Allowable Wait Time deadlines, the Fines assessed hereunder, or any other provision of this Consent Decree.  If, at any time during the term of this Consent Decree, Defendants conclude they must suspend the Maximum Allowable Wait Time deadlines on account of an Individual Special Circumstance, Departmental Special

Circumstance, or an approved unforeseen circumstances in accordance with paragraph 87(c) herein, the Defendants shall immediately give the Consultants and Class Counsel written notice thereof (the "Suspension Notice").  The Suspension Notice shall state: (i) whether the special circumstance is an Individual or Departmental Special Circumstance, or an approved unforeseen circumstances in accordance with paragraph 87(c) herein; (ii) the names of all Class Members who will be affected by the proposed suspension; and (iii) all of the facts constituting the special circumstance. The Suspension Notice shall also state which specific deadline(s) must be suspended and for what specified period(s).

89.    Any suspension proposed in the Suspension Notice shall begin on the date on which the notice is received by the Consultants and Class Counsel, and shall terminate at the end of the temporary period of suspension, as set forth in the Suspension Notice, unless modified by the Parties' written agreement or through the Dispute Resolution Process.

90.    No suspension of any deadline shall last longer than is justified by the special circumstance identified in the Suspension Notice.

91.    If the Consultants object to Defendants' requested suspension in the Suspension Notice, the Consultants will promptly provide Defendants and Class Counsel a written objection, and the Parties shall promptly confer in good faith to resolve the issue.  If the Parties are unable to resolve the issue after a good faith conference, they will submit the matter to the Consultants for mediation in accordance with the Dispute Resolution Process set forth in Section VIII below, in which Class Counsel may participate.  If, after completion of the Dispute Resolution Process, including if applicable, the Court's ruling upon review of the Consultants' Decision (as defined below), the Department's requested suspension is found to be invalid, contrary to the terms of this Consent Decree, or is otherwise overruled or rejected, any Maximum Allowable Wait Time

deadlines that were exceeded as a result of the suspension shall be subject to the Fines provisions of this Section VII.

92.   **Daily Fines for Non-Compliance with Timeframes.**   Beginning on the first day of the seventh (7th) calendar month after entry of this Consent Decree (such month and each first month of every calendar year thereafter called the "Starting Month"), and for the term of this Consent Decree, Defendants shall be subject to the following deadlines and Fines:

a.   $100 per day for each Class Member waiting more than thirty (30) days for his or her competency evaluation to be submitted to the district court in the county in which he or she is being held in accordance with Paragraph 67 above.

b.   $100 per day for each Class Member waiting 1-7 days over the Maximum Allowable Wait Time for admission to, or initiation of, Restoration Treatment.

c.   $200 per day for each Class Member waiting 8-30 days over the Maximum Allowable Wait Time for admission to, or initiation of, Restoration Treatment.

d.   $400 per day for each Class Member waiting more than thirty (30) days but less than sixty (60) days over the Maximum Allowable Wait Time for admission to, or initiation of, Restoration Treatment.

e.   $500 per day for each Class Member waiting sixty (60) days or more over the Maximum Allowable Wait Time for admission to, or initiation of, Restoration Treatment.

    f.      Such Fines hereunder shall not exceed in any twelve-month period starting on the first day of the Starting Month of each calendar year: (i) $3.5 million for the first twelve (12) month period; (ii) $5.5 million for the second twelve (12) month period; and (iii) $7 million for every twelve (12) month period thereafter for the duration of this Consent Decree.

    g.      The Fines established in sub-paragraph (f) above shall be increased for inflation yearly pursuant to the CPI-U as of the Starting Month of each twelve (12) month period compared to the Starting Month of the prior twelve (12) month period.

    h.      Any liquidated damages awarded by the Court under Paragraph 100 for Material Violations shall not be counted toward this cap.

93.    **Fines/Interest Bearing Account**.  The Department shall accompany its Status Report with a separate "Fines Report" which will include the names of the Class Members for whom the Department has accrued a Fine during the preceding month, the number of days each of the Class Members waited for Restoration Treatment or a competency evaluation past the timeframes for compliance, and the total Fines owed by the Department for the preceding month.

94.    The Department shall pay the total Fines owed on the date the Fines Report is submitted to the Consultants, to be deposited in an interest-bearing account ("Fines Account"). The Fines Account will be managed by a third party agreed upon by the Parties; the Parties will identify and agree to said third party no later than  ninety (90) after entry of this Consent Decree. The funds in the Fines Account must be used for the purpose of funding or supporting services for people experiencing mental illness and competency issues in Oklahoma who are charged with

criminal charges, including the Class Members, and which the Department is not otherwise obligated to provide by law or under this Consent Decree.

95.     Decisions concerning the use of funds in the Fines Account will be made by a Fines Committee consisting of representatives from Class Counsel, the Department, the Oklahoma Attorney General's Office, and the Consultants.  Any disputes regarding the use of funds in the Fines Account shall be resolved through the Dispute Resolution Process described in Section VII below.  The Department shall publish bi-annually a report summarizing any assessed Fines, the balance of the Fines Account, and the use or distribution of the funds in the Fines Account, on the Department's website (https://oklahoma.gov/odmhsas.html) in a manner reasonably accessible to the public.

**VIII.   Dispute Resolution Process and Enforcement of Consent Decree**

96.     Any Party may initiate the Dispute Resolution Process described in this Section VIII when: (i) a Party believes another Party has not complied with a provision of this Consent Decree; (ii) a Party disagrees or objects to the Consultants' findings, recommendations, approval or disapproval of any Plan component, or any other Consultants' decision made in discharge of their duties under this Consent Decree; (iii) a dispute arises with respect to the interpretation or implementation of any provision of this Consent Decree; or (iv) otherwise authorized by any provision of this Consent Decree.  To initiate the Dispute Resolution Process, a Party must give written notice to the other Parties and the Consultants that includes a reasonably detailed description of the alleged noncompliance or other matter(s) being challenged, and the basis of the challenge ("Notice of Dispute").  Within fourteen (14) days of receipt of a Notice of Dispute, the Parties must meet and confer in good faith to attempt to resolve the noticed issues.  If the Parties are unable to agree to a resolution in their meet and confer efforts, the Parties shall engage in

Consultants-led mediation for a period of no more than thirty (30) calendar days, which shall be initiated upon any Party's written request for mediation.  The Consultants shall determine the mediation rules and procedures, including the time and location.  If the Parties are unable to agree on a resolution following the thirty (30) calendar days after a Party requests mediation, the Consultants will promptly issue a written decision, including  recommendations, if appropriate, with respect to the issues presented in the Notice of Dispute (the "Consultants' Decision").  A Consultants' Decision is binding on the Parties and immediately effective as a provision of this Consent Decree until and unless it is modified or rejected by the Court in accordance with the following Paragraph 97.  The costs of a Consultants-led mediation, and the drafting and issuance of Consultants' Decisions, shall be borne by Defendants.

97.    Any Party may file a motion with the Court seeking review of a Consultants' Decision, or seeking relief related to any issue embraced in a Notice of Dispute that led to a Consultants' Decision, including a request for contempt remedies for Material Violations. However, except for emergencies requiring immediate relief, no Party may seek relief for any dispute related to, or alleged non-compliance with, the terms of this Consent Decree without first obtaining a Consultants' Decision through the Dispute Resolution Process described in the preceding Paragraph 96.   The Court, in considering a Party's motion for review of, or for relief related to, a Consultants' Decision will apply an arbitrary and capricious standard of review to Consultants' factual findings and recommendations.

98.    For any motion to enforce the terms of this Consent Decree, to review a Consultants' Decision, or for other relief: (a) if Plaintiffs are the prevailing party, Plaintiffs and Class Counsel are entitled to recover their reasonable attorney fees and expenses in litigating the motion; and (b) if  Defendants are the prevailing party, the fees incurred by the Defendants shall

be used to offset any fees which Class Counsel may be entitled to receive under this Consent Decree.

99.     Notwithstanding anything to the contrary herein, any Party may file a motion with the Court seeking emergency relief to address emergencies requiring immediate relief.

100.     **Material Violations**. If the Court finds that Defendants have committed a Material Violation of this Consent Decree, the Court may order immediate injunctive relief, impose liquidated damages, attorney's fees, or fashion any other relief deemed appropriate to address the Material Violations.

## IX.     Attorney Fees and Expenses

101.     The Department agrees and is hereby ordered to pay to Class Counsel attorney fees in the amount of $275,000 and litigation expenses in the amount of $64,535 for services rendered by Frederic Dorwart Lawyers PLLC, and $28,000 for services by the Oklahoma Disability Law Center, rendered through the investigation and filing of this Lawsuit until the filing of the Parties' *Joint Motion for Preliminary Approval of Entry of Joint Consent Decree.*

102.     From the date of filing the *Joint Motion for Preliminary Approval of Entry of Joint Consent Decree* until the Court's final approval and entry of this Consent Decree, the Department agrees and is hereby ordered to pay to Class Counsel's attorney fees in the amount of $325 per hour plus reasonable expenses.

103.     After entry of this Consent Decree, the Department agrees and is hereby ordered to pay to Class Counsel's attorney fees in the amount of $325 per hour for attorney time, $125 per hour for paralegal time, and reasonable litigation expenses.   Fees and expenses under this Paragraph 103 shall be paid on a quarterly basis.   After entry of this Consent Decree, all Class

Counsel's fees shall be capped at $75,000 per year, to be prorated for the calendar year in which this Consent Decree is entered.

104.    At Defendants' request, Class Counsel will provide detailed time and expense records, no more frequently than on a quarterly basis, related to the attorney fees and expenses claimed in this Section IX.  After the filing of the Parties' *Joint Motion for Preliminary Approval of Entry of Joint Consent Decree,* any dispute regarding the amount or reasonableness of Plaintiffs' attorney fees and expenses must be submitted to the Dispute Resolution Process set out in Section VIII above.

105.    All attorney fees and litigation expenses paid under this Section IX shall be paid into the trust account of Frederic Dorwart, Lawyers PLLC.

## X.    Additional Provisions

106.    **Term**.  The term of this Consent Decree shall be five (5) years from the date of  its final approval and entry by the Court, provided, however, if the Consultants determine that Defendants have not achieved substantial compliance with any aspect of the Plan, or with the timelines for the provision of screenings, competency evaluations, or Restoration Treatment specified in this Consent Decree for at least the nine (9) consecutive months preceding the end date of this Consent Decree, Plaintiffs may, at least ninety (90) days before the end date of this Consent Decree, file a motion to extend the duration of this Consent Decree and this Court's jurisdiction thereover.  Upon the filing of such a motion, the Court shall determine, after an evidentiary hearing, whether Defendants have achieved substantial compliance.  If the Court finds Defendants have not achieved substantial compliance for at least the nine (9) consecutive months preceding the hearing on Plaintiffs' extension motion, the Court may extend the term of this Consent Decree and retain jurisdiction for a period of time determined by the Court to ensure that

Defendants come into compliance. If the Court determines that Defendants have achieved substantial compliance, the Court may terminate this Consent Decree at the five-year end date.

107. **Annual Department Comprehensive Plan.**  Within thirty (30) days of each annual anniversary of the entry of this Consent Decree, the Department will submit to the Consultants and Class Counsel an Annual Department Comprehensive Plan, that: (i) reviews data from the previous year related to the delivery of competency evaluations and Restoration Treatment; (ii) reviews data regarding projections for volume and capacity for the coming year; and (iii) identifies specific actions the Defendants will take internally and will propose legislatively to address and improve their compliance with this Consent Decree year-to-year.

108. **Legislative Action**.  The Parties will not propose, sponsor, or support any legislation that would violate or conflict with the terms of this Consent Decree.  Defendants shall provide the Consultants and Class Counsel with all budget requests and proposed legislation affecting this Consent Decree when they are sent to the Oklahoma Legislature. The Consultants shall provide their opinion and recommendations on the proposed legislation and how it could impact compliance with this Consent Decree.  The Department shall provide a copy of the final budget approved by the Oklahoma Legislature to the Consultants immediately following approval of the budget.

109. **Persons Bound**.  This Consent Decree shall be binding on all Defendants and their successors, together with their officers, agents, and employees, unless otherwise prohibited by state or federal law.

110. **Representations and Warranties**.  Each Party to this Consent Decree represents, warrants, and agrees as follows:

a.    It has fully and carefully reviewed this Consent Decree prior to its execution by an authorized representative.

b.    The persons executing this Consent Decree are authorized by the Parties to do so.

c.    It has consulted with its attorneys regarding the legal effect and meaning of this Consent Decree and all terms and conditions thereof, and that it is fully aware of the contents of this Consent Decree and its legal effect.

d.    It has had the opportunity to make whatever investigation or inquiry it deems necessary or appropriate in connection with the subject matter of this Consent Decree.

e.    It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claims that it might have against the other.

f.    It is executing this Consent Decree voluntarily and free from any undue influence, coercion, duress, or fraud of any kind.

111.    **Waiver**.  No waiver of any of the provisions of this Consent Decree shall be deemed or constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

112.    **No Prejudice to Class Members' Rights in Their Criminal Cases**.  Nothing in this Consent Decree is intended to, nor does, prejudice, limit, or restrict any rights, remedies, or arguments otherwise available to Class Members in their individual criminal cases pending in Oklahoma state court.

113.   **Modification**.   This Consent Decree cannot be modified except by written agreement of the Parties in consultation with the Consultants and approved by the Court, or by Court order.

114.   **Notices**.   Any notice, report, or other communication required or permitted under this Consent Decree shall be in writing and shall be deemed to have been duly given when: (i) mailed by United States registered or certified mail, return receipt requested; (ii) mailed overnight express mail or deposited for delivery with any other nationally recognized overnight or same-day delivery service; (iii) sent as a PDF attachment to electronic mail; or (iv) delivered in person, to the Parties at the following addresses:

> To Plaintiffs/Class Members/Class Counsel:
>
> Paul DeMuro, OBA No. 17605
> Frederic Dorwart, OBA No. 2436
> Frederic Dorwart, Lawyers PLLC
> Old City Hall
> 124 East 4th Street
> Tulsa, OK 74103
> (918) 583-9922 – telephone
> (918) 583-8251 – facsimile
> pdemuro@fdlaw.com
> fdorwart@fdlaw.com
>
> Nick Southerland, OBA No. 31234
> Brian S. Wilkerson, OBA No. 17165
> Oklahoma Disability Law Center, Inc.
> 2816 E. 51st Street, Suite 300
> Tulsa, OK 74105
> (918) 743-6220 – telephone
> (918) 743-7157 – facsimile
> nick@okdlc.org
> brian@okdlc.org

To Defendants:

Kindanne Jones, OBA # 11374
Erin M. Moore, OBA #20787
Tracy E. Neel, OBA #33574
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
kindananne.jones@oag.ok.gov
eerin.moore@oag.ok.gov
tracy.neel@oag.ok.gov

To Consultants:

Groundswell Services, Inc.
c/o William Neil Gowensmith, Ph.D.
P.O. Box 102381
Denver, CO 80250
Telephone: (808) 348-4572
neil.gowensmith@gmail.com

John Petrila
6 W. Via Plaza Nueva
Santa Fe, NM  87507
Telephone: (813) 625-7441
petrilajohn@gmail.com

Dr. Darren Lish
2329 Woodbury Ln
Evergreen, Co 80439
Telephone: (303) 827-9803
darrenlish@hotmail.com
darren.lish@cuanschutz.edu

A Party or a Consultant may change the names or addresses where notice is to be given by providing notice to the other Parties and the Consultants of such change in accordance with this Paragraph 114.

**XI.     Reservation of Jurisdiction and Final Judgment**

115.    The Court hereby retains continuing jurisdiction over this Consent Decree to enforce its provisions, and to take other actions ancillary thereto, for the term of this Consent Decree.

116.    Upon the expiration of the term of this Consent Decree, any Party may move for dismissal with prejudice of all claims in the Lawsuit, if, at the end of the term, no Party moves for dismissal, the Court shall enter an order to show cause why all claims should not be dismissed with prejudice.

117.    Based on the papers filed in this Lawsuit, the representations of the Parties' counsel, and the stipulations contained herein, the Court hereby enters this Consent Decree as a final judgment under Federal Rules of Civil Procedure 54 and 58.

IT IS SO ORDERED, this ___ day of _____, 2024.


_____
Honorable Gregory K. Frizzell
United States District Court Judge


[*Counsel's signature blocks on following page*.]

APPROVED AS TO FORM AND CONTENT:


_____          Date:_____
Paul DeMuro, OBA No. 17605
Frederic Dorwart, OBA No. 2436
David Leimbach, OBA No. 33310
Frederic Dorwart, Lawyers PLLC
Old City Hall
124 East 4th Street
Tulsa, OK 74103
(918) 583-9922 – telephone
(918) 583-8251 – facsimile
pdemuro@fdlaw.com
fdorwart@fdlaw.com
dleimbach@fdlaw.com

Nick Southerland, OBA No. 31234
Brian S. Wilkerson, OBA No. 17165
Oklahoma Disability Law Center, Inc.
5555 E. 71st St., Suite 9100
Tulsa, OK 74136
(918) 743-6220 – telephone
(918) 743-7157 – facsimile
nick@okdlc.org
brian@okdlc.org
***Class Counsel for Plaintiffs***


_____          Date:_____
Attorney General Gentner Drummond
OBA  #16645
Kindanne Jones, OBA # 11374
Erin M. Moore, OBA #20787
Tracy E. Neel, OBA #33574
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
kindananne.jones@oag.ok.gov
erin.moore@oag.ok.gov
tracy.neel@oag.ok.gov
***Counsel for Defendants***

44