IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) LESLIE BRIGGS, as next friend of T.W. and B.S.;
(2) EVAN WATSON, as next friend of C.R.; and,
(3) HENRY A. MEYER, III, as next friend of A.M., for themselves and for others similarly situated,

          Plaintiffs,

v.

(1) ALLIE FRIESEN, in her official capacity as Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services; and
(2) DEBBIE MORAN, in her official capacity as Interim Executive Director of the Oklahoma Forensic Center,

          Defendants.

Case No: 23-cv-81-GKF-JFJ

**SECOND SUPPLEMENT TO
JOINT MOTION FOR PRELIMINARY APPROVAL**

In accordance with the Court's direction at the hearing held on August 15, 2024, Plaintiffs and Defendants (the "Parties") jointly submit this second supplement in further support of their *Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class* (Doc. 46) (the "*Joint Motion*").

At the preliminary-approval hearing, the Court raised a narrow concern whether certain aspects of the proposed Consent Decree—specifically, the provisions for a Community-Based Restoration Treatment Pilot Program[1]—contravene

---

[1] *See* Doc. 46-1, pp. 26–28, ¶¶ 68–73.

Oklahoma's statutory scheme with respect to competency restoration. In particular, the Court inquired whether the pertinent statutory provisions permit outpatient restorative treatment. Hearing Transcript, 8/15/24, ("Tr.") at 5:6–5:9.

This submission addresses that concern. As discussed below, the Court should grant preliminary approval—notwithstanding its previous concern—because, among other reasons, the Consent Decree (i) accords with state law and (ii) requires a state-court determination of non-dangerousness as a precondition of eligibility for the Community-Based Restoration Treatment Program.

## I. Background

For context, the Parties will briefly highlight pertinent aspects of the Consent Decree and the Oklahoma statutory scheme.

### A. The Community-Based Restoration Treatment Program

Paragraphs 68 through 73 of the proposed Consent Decree contemplate the development of a pilot Community-Based Restoration Treatment Program in four counties.[2] Paragraph 68 provides, in pertinent part, as follows:

> The Parties agree that . . . certain Class Members ***who have been judicially determined not to be a substantial risk of harm to themselves and others if treated in a community placement***, are amenable to receive Community-Based Restoration Treatment in a supervised, outpatient setting[.]

(Emphasis added.) Paragraph 69 further contemplates, in pertinent part, as follows:

> The Community-Based Restoration Treatment Pilot Program shall include development of written policies and procedures for Class Members' eligibility and best practices

---

[2] *See generally* Susan McMahon, *Reforming Competence Restoration Statutes: An Outpatient Model,* 107 Geo. L.J. 601 (2019).

>for program implementation, in consultation with the Consultants, the Department's designated representative and its counsel, Class Counsel, and any other interested stakeholder approved by the Parties.

### B.   Oklahoma's Statutory Scheme

As the Court aptly observed at the hearing, Oklahoma's statutory scheme with respect to competency restoration is "a spider's web" and "a mess." (Tr. at 7:7, 11:11.) Undoubtedly, the pertinent statutory provisions (which have been subject to various, piecemeal amendments over time) could be drafted more artfully.

The starting point for this discussion is the statutory definition of "competent" and "competency," which are defined, for purposes of Sections 1175.1 through 1176 of Title 22, as "the present ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him or her and to effectively and rationally assist in his or her defense." 22 O.S. § 1175.1(1). Conversely, "incompetent" and "incompetency" are defined as "the present **in**ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him or her and to effectively and rationally assist in his or her defense." 22 O.S. § 1175.1(2) (emphasis added). Thus, "competency" and "incompetency," as those terms are used in § 1175.6a, depend on a person's ability or inability to understand proceedings and assist in a defense—not a person's dangerousness.

Pursuant to 22 O.S. § 1175.7(A), if a person "is found incompetent, but capable of achieving competency within a reasonable period of time," then the state court

3

"shall order such person to undergo such treatment, therapy or training which is calculated to allow the person to achieve competence."

Oklahoma's legislature expressly contemplated the possibility of outpatient competency restoration in at least some circumstances. For example, "[i]f the person is not committed to the custody of [ODMHSAS]," then the "treatment may be either inpatient or outpatient care depending on the facilities and resources available to the court and the type of disability sought to be corrected by the court's order." 22 O.S. § 1175.7(B); *cf.* 22 O.S. § 1175.7(D) ("The court may allow the person to receive treatment from private facilities if such facilities are willing, and neither the state nor the court fund is required to directly pay for such care.").

The Parties understand the concern raised by the Court at the hearing as focused primarily on the interplay among three statutory provisions:

- 43A O.S. § 1-103(13)(a) (defining "person requiring treatment");
- 22 O.S. § 1175.1(3) (defining "dangerous"); and
- 22 O.S. § 1175.6a(A) (concerning a person "found to be incompetent prior to conviction because he or she is a person requiring treatment as defined in Section 1-103 of Title 43A").

That interplay is discussed below.

## II. Argument

The concern raised at the hearing should not impede preliminary approval for the following reasons.

4

### A.     The Preamble to 43A O.S. § 1-103 Allows Flexibility.

At the hearing, the Court queried whether Oklahoma's statutory scheme "is flexible enough" to accommodate the Consent Decree's provisions for a Community-Based Restoration Treatment Program. (Tr. at 54:6.) The Parties understand the Court's concern to center on the definition of the phrase "person requiring treatment" set forth in 43A O.S. § 1-103(13). Fortunately, the preamble to 43A O.S. § 1-103 provides the requisite flexibility by clarifying that the definitions contained therein apply to the specified terms, as used in Title 43A, "**unless the context or subject matter otherwise requires**."

The inclusion of such language demonstrates the Oklahoma legislature's recognition of the need for flexibility in this area. Accordingly, not all persons in need of competency restoration services meet the criteria specified in 43A O.S. § 1-103(13)—notwithstanding the seeming breadth and plain meaning of the phrase "person requiring treatment." This context-driven interpretive directive of 43A O.S. § 1-103, when read together with the provisions of the competency-restoration statute that plainly demonstrate that a person can be incompetent without being a "person requiring treatment,"[3] support a flexible interpretation of the statutes to permit the treatment of suitable incompetent, non-dangerous persons in supervised, outpatient community settings.

Contextual interpretive flexibility is particularly required here where the competency-restoration statutory scheme is incoherent if read and applied rigidly.

---

[3] *See, e.g.*, 22 O.S. §§ 1175.6a(A), 1175.6(c)(A).

For example, for purposes of the competency statutes, "dangerous" is defined to mean "a person requiring treatment as defined in Section 1-103 of Title 43A of the Oklahoma Statutes." 22 O.S. § 1175.1(3). Yet, § 1175.6c(A) purports to address treatment of a person who is "found to be incompetent for reasons other than the person is a person requiring treatment as defined by Title 43A . . . but is also found to be dangerous as defined by Section 1175.1 of this title." Read literally, § 1175.6c(A) is completely incoherent because, by express definition in § 1175.1(3), "dangerous" *is* a person requiring treatment as defined by Title 43A. Other examples of resulting incoherence if rigidly applied abound in the competency statutes.[4]

At best, the competency restoration statutes are ambiguous and should be read as to harmonize their provisions as best as possible. *See Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (applying Oklahoma law) ("Words used in a part of a statute must be . . . understood in a sense which best harmonizes with all other parts of the statute.").

> **B. Paragraph 68 of the Consent Decree Requires a Judicial Determination of Non-Dangerousness as a Precondition of Eligibility for the Community-Based Treatment Program.**

At the hearing, the Court expressed concern about whether the Community-Based Restoration Treatment Program would allow dangerous individuals to be released into the community. (Tr. at 6:21–6:23, 8:19–8:23, 55:6–55:8.) The Consent Decree already includes safeguards addressing that concern. In particular,

---

[4] *See, e.g.*, 22 O.S. § 1175.6a(C)(5) ("If the person is found to be incompetent for reasons other than the person is a person requiring treatment as defined by Title 43A . . . but is also found to be dangerous as defined by Section 1175.1 . . . .").

6

Paragraph 68 of the Consent Decree specifies that the Community-Based Restoration Treatment Program is for Class Members "who have been judicially determined not to be a substantial risk of harm to themselves and others if treated in a community placement."

The requirement of a prerequisite, state-court determination of suitability mitigates the Court's concerns about both (i) releasing dangerous individuals and (ii) violating state law. The state courts in the underlying criminal cases are capable of interpreting and applying state law with respect to candidates for the Community-Based Restoration Treatment Pilot Program.

C.   **Putative Class Members Are Not Necessarily "Dangerous."**

An individual's membership in the putative Class does not necessarily entail dangerousness. Paragraph 16 of the Consent Decree defines the Class as follows:

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

Notably, the Class definition itself does not use the words "dangerous," "custody," or "person requiring treatment."

As previously discussed, not all persons who are incompetent to stand trial are dangerous. *See* 22 O.S. § 1175.1(2). Likewise, as a matter of both law and practice, not all persons who are ordered to receive competency restoration services are

7

dangerous. *See* 22 O.S. § 1175.7(A). Indeed, numerous provisions within Title 22 recognize, either explicitly or implicitly, that a person may be incompetent to stand trial "for reasons other than" being either (i) a "person requiring treatment" as defined in 43A O.S. § 1-103(13) or (ii) intellectually disabled. *See, e.g.*, 22 O.S. §§ 1175.6a(C)(4), 1175.6(4); 1175.3(E)(6); 1175.5(5); 1175.6c.[5]

Moreover, a person who was "dangerous" (*e.g.*, at risk of self-harm) when initially ordered to receive competency services may become no longer "dangerous" later—for example, after starting medication. *See* 22 O.S. § 1175.6a(C) (providing for a hearing when ODMHSAS determines a person "is no longer incompetent because the person is a person requiring treatment as defined by Title 43A").

### D.   The Consent Decree Does Not Contravene the "Custody" Provisions in 22 O.S. § 1175.6a.

In reference to § 1175.6a, the Court queried, at the hearing, "how custody can somehow transmogrify into outpatient treatment services." (Tr. at 13:12—13:13.) As an initial matter, it is not clear that § 1175.6a applies to every Class Member because, as discussed above, not every Class Member is necessarily a "person requiring treatment as defined in Section 1-103 of Title 43A." Assuming *arguendo* that § 1175.6a does apply, the Consent Decree still accords with the statute's custody provisions.

---

[5] Section 1175.6b(B) grants state courts the discretion to specify "conditions of release" for persons who are found incompetent but not dangerous. Such discretion is broadly compatible with the proposed Community-Based Restoration Treatment Program set forth in the Consent Decree. It also reflects the legislature's approval of outpatient treatment for some such persons.

8

Section 1175.6a uses the word "custody" in a total of four instances, which appear within the following three sentences:

- "The court shall further order the Department to take *custody* of the individual as soon as a forensic bed becomes available, unless both the Department and the county jail where the person is being held determine that it is in the best interests of the person to remain in the county jail."

- "The person shall remain in the *custody* of the county jail until such time as the Department has a bed available at the forensic facility unless competency restoration services are provided by a designee of the Department, in which case *custody* of the person shall be transferred to the Department."

- "If the person is found to continue to be incompetent because the person is a person requiring treatment as defined in Title 43A of the Oklahoma Statutes, the person shall be returned to the *custody* of the Department of Mental Health and Substance Abuse Services or designee[.]"

Notably, "the word 'custody' carries two common meanings relating to government detention." *United States v. Joshua*, 607 F.3d 379, 386 (4th Cir. 2010). "Sometimes the word refers to physical custody, i.e., directly limiting an individual's physical freedom. Other times the word refers to legal custody, i.e., having lawful authority over an individual's detention." *Id.* (citations omitted) (holding that the term "custody" within 18 U.S.C. § 4248(a) refers to legal custody rather than physical custody).

The various usages of the term "custody" in § 1175.6a are arguably ambiguous only because the statute, on its face, does not specify whether the usages refer to legal or physical custody. ODMHSAS can maintain *legal* custody of an incompetent

9

individual while that individual receives competency-restoration services in a supervised outpatient setting.

Furthermore, § 1175.6a(A) expressly permits the Department to "designate a willing entity to provide such competency restoration services on behalf of the Department, provided the entity has qualified personnel." Moreover, § 1175.6a(C)(2) expressly contemplates that, following a hearing on whether a person has regained competency, custody can be "returned" to a "designee" of the Department when "the person is found to continue to be incompetent because the person is a person requiring treatment as defined in Title 43A." That custody of such a person could be "returned" to the Department's "designee" implies that a designee can take physical custody of a person requiring treatment.

### E. The Court Is Not Bound by State Law When Redressing Constitutional Violations.

At the hearing, the Court expressed concern about its authority to enter a Consent Decree that might violate or supersede Oklahoma's statutory scheme. (Tr. at 11:19–11:22, 12:3–12:4, 43:1–3.) The Parties recognize the value in avoiding unnecessary conflicts with state law. As discussed above, the Parties believe the Consent Decree accords with Oklahoma law. But even if the Consent Decree did conflict somehow with state law, the Court is not limited by state statutes in the context of protecting and vindicating constitutional rights. *See* U.S. Const. art. VI, cl. 2 ("This Constitution . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *Williams v. Jones*, 571 F.3d 1086, 1088 (10th Cir. 2009) ("On remand, the district court should

10

impose a remedy that comes as close as possible to remedying the constitutional violation, and is not limited by state law.").

### III. Conclusion

Plaintiffs and Defendants respectfully request that the Court preliminarily approve the Consent Decree for the reasons discussed (i) in the *Joint Motion* (Doc. 46), (ii) in the first *Supplement to Joint Motion for Preliminary Approval* (Doc. 48), (iii) on the record at the August 15, 2024 hearing; and (iv) herein.

RESPECTFULLY SUBMITTED,

/s/ Paul DeMuro
Paul DeMuro, OBA No. 17605
Frederic Dorwart, OBA No. 2436
David W. Leimbach, OBA No. 33310
Frederic Dorwart, Lawyers PLLC
Old City Hall
124 East 4th Street
Tulsa, OK 74103
(918) 583-9922 – telephone
(918) 583-8251 – facsimile
pdemuro@fdlaw.com
fdorwart@fdlaw.com
dleimbach@fdlaw.com

Nick Southerland, OBA No. 31234
Brian S. Wilkerson, OBA No. 17165
Oklahoma Disability Law Center, Inc.
2816 E. 51st Street, Suite 300
Tulsa, OK 74105
(918) 743-6220 – telephone
(918) 743-7157 – facsimile
nick@okdlc.org
brian@okdlc.org

***Class Counsel for Plaintiffs***

/s Gentner Drummond
ATTORNEY GENERAL GENTNER DRUMMOND OBA No. 16645
ERIN M. MOORE, OBA No. 20787
TRACY E. NEEL, OBA No. 33574
Assistant Attorneys General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Erin.Moore@oag.ok.gov
Tracy.neel@oag.ok.gov

***Counsel for Defendants***