## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LESLIE BRIGGS, as next friend of T.W. and B.S., EVAN WATSON, as next friend of C.R., and HENRY A. MEYER, III, as next friend of A.M., for themselves and for others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLIE FRIESEN, in her official capacity as Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services, and DEBBIE MORAN, in her official capacity as Interim Executive Director of the Oklahoma Forensic Center, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case No. 23-cv-00081-GKF-JFJ |

## <u>ORDER</u>

Before the court is the Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class [Doc. 46], as modified by the Third Joint Supplement to Joint Motion for Preliminary Approval [Doc. 55], of plaintiffs Leslie Briggs, as next friend of T.W. and B.S.; Evan Watson, as next friend of C.R.; and Henry A. Meyer, III, as next friend of A.M., for themselves and for others similarly situated, and defendants Allie Friesen, in her official capacity as Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services and Debbie Moran, in her official capacity as Interim Executive Director of the Oklahoma Forensic Center. For the reasons set forth below, the motion, as modified by the third joint supplement, is granted.

## Background/Procedural History

This case relates to Oklahoma's competency restoration system.  On March 1, 2023, plaintiffs filed a Class Action Complaint alleging that, due to a lack of forensic beds, persons who are declared incompetent in Oklahoma state court criminal proceedings are forced to wait prolonged periods of time to receive court-ordered competency restoration treatment and, during the waiting period, the persons receive little to no mental health treatment.  Plaintiffs asserted a claim for violation of Due Process rights secured by the Fourteenth Amendment to the U.S. Constitution, among others, and brought the case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

Defendants originally approached this matter "from a traditional defense posture," and filed a motion to dismiss.  [Doc. 51, p. 49].  However, after "extensive due diligence," both independently and jointly with plaintiffs, the focus shifted to settlement.  [*Id.* at pp. 49-50].  Accordingly, on April 26, 2023, the parties filed a Joint Motion to Stay, seeking a stay to permit the parties to pursue settlement negotiations.  Additionally, defendants moved to withdraw the motion to dismiss.  The court granted both motions and stayed this matter.

On June 17, 2024, the parties filed the Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class.  [Doc. 46].  Therein, the parties propose to define the Class as follows:

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

[*Id.* at p. 6].  The proposed settlement consists of a five-year Consent Decree that provides for the development and implementation of a plan "designed to reform and improve the Defendants' delivery of competency evaluations and Restoration Treatment to Class Members, including to reduce significantly the durations of time during which Class Members wait to receive Restoration Treatment."  [Doc. 46-1, pp. 7, 12].  The Plan is comprised of a variety of program components, including increasing the Department's inventory of inpatient Forensic Beds dedicated solely to competency restoration and increasing Department and OFC staffing, as well as the development and implementation of a Competency Restoration Triage Process, a Community-Based Restoration Treatment Pilot Program, and an In-Jail Competency Restoration Pilot Program.

On August 15, 2024, the court held a hearing on the motion.  [Doc. 50].  Following argument, the court directed the parties to submit a supplemental brief as to whether the Oklahoma statutory competency scheme—specifically, Okla. Stat. tit. 22, § 1175.6a—permits outpatient restoration treatment services.

On August 21, 2024, the parties submitted the Second Supplement to Joint Motion for Preliminary Approval directed to whether Okla. Stat. tit. 22, § 1175.6a permits outpatient restoration treatment services.  [Doc. 52].

In an Opinion and Order of August 30, 2024, the court concluded that Okla. Stat. tit. 22, § 1175.6a requires that the Department assume physical custody of the person requiring competency restoration services and therefore does not permit outpatient restoration treatment.  Accordingly, the court permitted the parties to submit an amended proposed Consent Decree to address the court's concern with respect to the Community-Based Restoration Treatment Pilot Program provisions.  [Doc. 53].

On September 9, 2024, the parties filed the Third Joint Supplement to Joint Motion for Preliminary Approval wherein the parties agree to modify paragraphs 21 and 68-73 of the proposed Consent Decree to make the development and implementation of the Community-Based Restoration Treatment Pilot Program contingent upon a future change or clarification in Oklahoma law, either by new legislation or by an Oklahoma appellate court ruling that permits the Department to provide outpatient community-based restoration services.  [Doc. 55].

### Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  As such, the parties must comply with the requirements set forth in Federal Rule of Civil Procedure 23.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  The court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To make that the determination, the court must consider whether

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).   Additionally, the Tenth Circuit has directed courts to consider the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (emphasis altered from original).[1]

"The class settlement approval process typically occurs in two phases." *Marquez v. Midwest Div. MMC, LLC*, No. 19-CV-2362-DDC-ADM, 2022 WL 17093036, at *10 (D. Kan. Nov. 21, 2022).  "In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement." *Ross v. Convergent Outsourcing, Inc*., 323 F.R.D. 656, 659 (D. Colo. 2018); *see also* 4 William B. Rubenstein, <u>Newberg on Class Actions</u> § 13:10 (6th ed. 2024) ("First, the parties present a

---

[1] The first three factors articulated by the Tenth Circuit generally overlap with the Rule 23 factors. *See CO Craft, LLC v. Grubhub Inc.,* No. 20-CV-01327-NYW-NRN, 2023 WL 3763525, at *4 (D. Colo. June 1, 2023); *Cisneros v. EP Wrap-It Insulation*, *LLC*, No. CIV-19-500-GBW-GJF, 2021 WL 2953117, at **5-6 (D.N.M. July 14, 2021).

proposed settlement to the court for so-called 'preliminary approval'" and "[i]f a class has not yet been certified, typically the parties will simultaneously ask the court to 'conditionally' certify a settlement class."). "In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms." *Ross*, 323 F.R.D. at 659.

Prior to 2018, "Rule 23 did not embody a specific preliminary settlement approval process or standard, but courts had developed an intricate jurisprudence on their own." 4 <u>Newberg on Class Actions</u> § 13:13. "The general rule was that a court would grant preliminary approval where the proposed settlement was 'neither illegal nor collusive and is within the range of possible approval.'" 4 <u>Newberg on Class Actions</u> § 13:10; *see also In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. Sept. 28, 2012) ("The Court will ordinarily grant preliminary approval where the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'").

However, in 2018, Rule 23 was amended to state as follows:

(1)   ***Notice to the Class***

(A)   *Information That Parties Must Provide to the Court*.  The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B)   *Grounds for a Decision to Give Notice.*  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

(i)   approve the proposal under Rule 23(e)(2); and

(ii)   certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1).  Thus, the Rule "now requires a showing that the court will 'likely' be able to approve the proposed settlement" and certify the proposed class.  4 Newberg on Class Actions § 13:13 (internal footnote omitted); Fed. R. Civ. P. 23(e)(1)(B).  With respect to the 2018 amendment, the advisory committee recognized

> [t]he decision to give notice of a proposed settlement to the class is an important event.  It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object.  The parties must provide the court with information sufficient to determine whether notice should be sent.  At the time they seek notice to the class, the proponents of the settlement should ordinarily provide the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members.

Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments.  Although the Tenth Circuit has not weighed in on the issue, other courts have concluded that the "likely be able to" approve standard is "'more exacting' than the relaxed standard courts applied prior to the amendment." *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 643 (D.N.H. 2020) (collecting cases); *see also In re Payment Card Interchange Fee & Merch. Dis. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019); *Russell v. Ray Klein, Inc.*, No. 19-CV-00001-MC, 2022 WL 1639560, at *1 n.1 (D. Or. May 24, 2022) ("[T]he 2018 amendments to Rule 23 provide for a more stringent review of class action settlements at the preliminary approval stage."); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-MD-2633-SI, 2019 WL 3410382, at *1 (D. Or. July 29, 2019).[2]

---

[2] Regardless, prior to the 2018 amendment, it was clear that a "preliminary approval [was] not simply a judicial 'rubber stamp' of the parties' agreement."  *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013); *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001); *Kakani v. Oracle Corp.*, No. C-06-06493-WHA, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007) ("[A] district court may not simply rubber stamp stipulated settlements.").

**Certification of Class for Purposes of Judgment**

Federal Rule of Civil Procedure 23(a) sets forth four threshold requirements for class certification: (1) the class is so *numerous* that joinder of all members is impracticable [**numerosity**]; (2) there are questions of law or fact *common to the class* [**commonality**]; (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class [**typicality**]; and (4) the representative parties will fairly and *adequately protect* the interests of the class [**adequacy**].  *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). Additionally, the party seeking certification must satisfy one of the provisions of Rule 23(b). *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc*., 725 F.3d 1213, 1217 (10th Cir. 2013).  In this case, plaintiffs seek class certification pursuant to Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

A.      *Numerosity*

Pursuant to this requirement, the class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  The Tenth Circuit has never adopted a certain number at which numerosity may be presumed but, instead, has endorsed a "fact-specific inquiry" that provides the district court "wide latitude." *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006).

Here, the parties state that approximately 200 incompetent criminal defendants, dispersed throughout numerous counties in Oklahoma, were waiting to receive competency restoration services as of June 26, 2024.  [Doc. 48, p. 18].  Further, the proposed Class also includes an unknown number of future class members.  [*Id.*].  Based on the foregoing, the court concludes that

the Class is so numerous that joinder of all members is impracticable, and therefore the numerosity requirement is satisfied for purposes of preliminary certification.

B.     Commonality

"A plaintiff seeking class certification satisfies Rule 23(a)(2)'s commonality requirement by demonstrating that 'there are questions of law or fact common to the class.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC,* 923 F.3d 779, 788 (10th Cir. 2019) (quoting Fed. R. Civ. P. 23(a)(2)). "Factual differences between class members' claims do not defeat certification where common questions of law exist." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

Based on the court's review, despite factual differences, plaintiffs' claims implicate a common question of law—whether the Department and OFC's failure to provide competency restoration treatment in a timely manner, coupled with the class members' continued detention, violates the class members' due process rights. *See Disability Law Ctr.,* 2016 WL 5396681, at **4-5; *Hunter v. Beshear*, No. 16-CV-798-MHT, 2018 WL 564856, at *5 (M.D. Ala. Jan. 25, 2018); *see also* [Doc. 48, pp. 19-20]. Thus, the commonality requirement is satisfied for purposes of preliminary certification.

C.     Typicality

Rule 23's typicality requirement mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires only that 'the claims of the class representative and class members are based on the same legal or remedial theory.'" *Menocal v. GEO Grp., Inc.,* 882 F.3d 905, 924 (10th Cir. 2018) (quoting *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1216 (10th Cir. 2014)). "Differing fact situations of class members do not defeat typicality . . . so long as the

claims of the class representative and class members are based on the same legal or remedial theory." *Menocal,* 882 F.3d at 914.

Here, the named plaintiffs' claims are based on the same legal and remedial theory as that of other Class Members—*i.e.*, the Department and OFC violated Class Members' constitutional rights by delaying competency restoration services. *Hunter,* 2018 WL 564856, at *6; *see also Disability Law Ctr.*, 2016 WL 5396681, at *6. That is, "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *DG ex rel. Stricklin*, 594 F.3d at 1199. Thus, the typicality requirement is satisfied for purposes of preliminary certification.

D.    *Adequate Representation*

Rule 23 also requires that plaintiffs demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has articulated a two-prong test to determine whether adequacy is satisfied: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002).

The parties stipulate that Class Counsel and the Named Plaintiffs have adequately represented the interests of the Class. [Doc. 46, p. 15]. Further, the two prongs of the *Rutter* test are satisfied.[3] First, the parties state that neither the named plaintiffs nor their counsel have

---

[3] The court concurs with the parties that, although the Department moved the named plaintiffs to the OFC after the litigation was filed, the named plaintiffs may adequately represent the class going forward. [Doc. 48, pp. 22-24]; *Cohen v. Brown Univ.*, 16 F.4th 935, 947 (1st Cir. 2021) (collecting cases). Plaintiffs' claims are "inherently transitory" and therefore the mootness of the named plaintiffs' claims neither moots the class claims nor prohibits the named plaintiffs from adequately serving as class representatives. *See J.D. v. Azar,* 925 F.3d 1291, 1313 (D.C. Cir. 2019); *see also Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1139 (10th Cir. 2009).

conflicts of interest with the class, and there is no indication that any conflicts exist.  [Doc. 48, p. 21]; *see also Cisneros v. EP Wrap-It Insulation, LLC,* No. 19-CIV-500-GBW-GJF, 2022 WL 2304146, at *4 (D.N.M. June 27, 2022).  Second, although this matter is procedurally in its early stages, based on the documents submitted, the court is satisfied that the named plaintiffs and counsel have vigorously prosecuted the action and had sufficient information to make an informed decision about settlement.  *See CO Craft, LLC*, 2023 WL 3763525, at *14 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.").  Thus, the class representatives and Class Counsel will "fairly and adequately protect the interests of the class" and this factor is satisfied for purposes of preliminary certification.

   E.     *Rule 23(b)(2)*

   Rule 23(b)(2) states that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Tenth Circuit has stated "Rule 23(b)(2) imposes two independent but related requirements."  *Shook v. Bd. of Cnty. Comm'rs of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008).  First, "the defendants' actions or inactions must be based on grounds generally applicable to all class members."  *Id.*  Second, the final injunctive relief must be "appropriate for *the class as a whole*."  *Id.*  That is, "a class must be 'amenable to uniform group remedies.'"  *Id.*

   The Department and OFC's alleged failure to provide timely competency restoration treatment is generally applicable to all Class Members.  *See* [Doc. 48, pp. 24-25]; *see also Hunter*, 2018 WL 564856, at *7.  Further, the proposed amended Consent Decree addresses the Class as a

whole and it is unnecessary to differentiate between Class Members. *See Disability Law Ctr.*, 2016 WL 5396681, at *8; *Shook*, 543 F.3d at 604. Thus, the requirements of Rule 23(b)(2) are satisfied for purposes of preliminary certification.

    *F.*    *Conclusion*

    Based on the foregoing, the requirements of Rule 23(a) and Rule 23(b)(2) are preliminarily satisfied, and the court will likely be able to certify the Class for purposes of judgment on the proposed settlement agreement. Accordingly, the court provisionally certifies the following Class:

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

[Doc. 46, p. 6].

## Appointment of Class Counsel

    The parties seek to appoint Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc. as Class Counsel in this matter.[4]

    "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). "In appointing class counsel the court must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in

---

[4] In the Joint Motion for Preliminary Approval, the parties also include David Leimbach of Frederic Dorwart, Lawyers PLLC as Class Counsel. However, the proposed Consent Decree includes only Mr. DeMuro and Mr. Dorwart. [Doc. 46-1, p. 9]. "[T]he court may not modify the terms of the settlement, but instead must approve or disapprove of the settlement as a whole." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1268 (D. Kan. 2006).

the action; [3] counsel's knowledge of the applicable law; and [4] the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A) (formatting altered from original). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

The parties stipulate that Mr. DeMuro, Mr. Dorwart, Mr. Southerland, and Mr. Wilkerson satisfy the requirements for, and should be appointed as, Class Counsel under Rule 23(g).  [Doc. 46, p. 6].  Further, looking to the Rule 23 factors, the parties submit evidence that, during the period from October 2022 to July 15, 2024, Frederic Dorwart, Lawyers PLLC expended 971.20 hours identifying, investigating, and litigating the claims in this matter, with Mr. Dorwart and Mr. DeMuro contributing 848.2 hours—approximately 87% of the accrued time.   [Doc. 49-1]. Additionally, Mr. Southerland and Mr. Wilkerson expended 127.75 hours investigating the claims in this matter.  [Doc. 49, p. 4].  Further, counsel was actively involved in negotiating the proposed settlement.

Mr. Dorwart and Mr. DeMuro previously served as class counsel in a class action against the State of Oklahoma that ultimately resolved through imposition of a consent decree.  *See D.G. ex rel. Stricklin v. Yarbrough*, Case No. 08-CV-0748-GKF-FHM (N.D. Okla.).  Class Counsel is knowledgeable of the applicable law and has years of combined experience in both the practice of criminal law and complex litigation.  *See* [Doc. 49-3; Doc. 49-4; Doc. 49-6; Doc. 49-7].  As to the fourth factor, counsel has committed, and will continue to commit, significant resources to this matter.

Finally, the court notes Attorney General Drummond's statements that it was Mr. Dorwart and Mr. DeMuro's involvement in this case that "piqued [his] genuine interest in diving deeper into the complaint" as he "know[s] that these men are men of integrity."  [Doc. 51, p. 56].

13

Based on the foregoing, the court concludes the proposed Class Counsel will fairly and adequately represent the class.  Accordingly, the court appoints Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc. as Class Counsel.

## Preliminary Approval of the Proposed Amended Consent Decree

To determine whether the court will likely be able to approve the proposed settlement, the Rule 23 factors "serve as a 'useful guide at the preliminary approval stage.'"  *CO Craft, LLC*, 2023 WL 3763525, at *4.  Additionally, the court considers the four factors articulated by the Tenth Circuit.  *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d at 1087.  The first three factors articulated by the Tenth Circuit generally overlap with the Rule 23 factors.  *See CO Craft, LLC,* 2023 WL 3763525, at *4; *Cisneros,* 2021 WL 2953117, at **5-6.  "Accordingly, this Court 'considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors.'"  *CO Craft, LLC,* 2023 WL 3763525, at *4.

*A.      Adequate Representation of the Class by the Class Representatives and Counsel*

Rule 23(e)(2) first requires the court to consider whether the class representatives and class counsel have adequately represented the class.  "Courts analyze th[is] first procedural factor, adequacy of representation, in the same manner that they evaluate adequacy under Rule 23(a)(4)"—that is, for purposes of class certification.  *In re Samsung Top-load Washing Mach. Mktg., Sale Pracs. & Prods. Liab.*, Case No. 17-ML-2792-D, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020) (collecting cases).  As discussed above, this factor weighs in favor of preliminary approval.

14

B.     *Arm's Length Negotiations*

The court must next consider whether the proposed settlement was negotiated at arm's length.  This factor overlaps with the Tenth Circuit's inquiry as to whether the proposed settlement was fairly and honestly negotiated.  *In re Samsung Top-load Washing Mach. Mktg., Sale Pracs. & Prods. Liab.*, 2020 WL 2616711, at *13.

The parties have stipulated that the proposed Consent Decree was fairly and honestly negotiated at arm's length.  [Doc. 46, p. 15]; *see also* [Doc. 51, pp. 37-39, 49-51 and 56-57].  Although a third-party mediator was not utilized, the parties independently consulted with third-party experts, who assisted in drafting the proposed Consent Decree.  [Doc. 48, p. 29; Doc. 48-5; Doc. 51, pp. 50-51].  Use of third-party experts to draft and approve the proposed settlement suggests that the negotiations were fair.

Finally, the court may consider whether settlement negotiations were undertaken "only after the parties have a decent sense of the strengths and weaknesses of their claims, particularly through discovery."  4 Newberg on Class Actions at § 13:50.  The parties submit evidence that they reviewed voluminous documents, visited relevant locations including the OFC and the David L. Moss Criminal Justice Center, independently consulted third-party experts, and interviewed stakeholders, including former executive director of the OFC Crystal Hernandez and former party Carrie Slaton-Hodges.  *See* [Doc. 48, pp. 25-31; Doc. 49-1; Doc. 49-2].  Based on the evidence currently before it, the court is provisionally satisfied that the proposed settlement was the result

of fair, honest, and arm's length negotiations.  Thus, this factor weighs in favor of preliminary approval.[5]

C.      *Adequacy of Relief*

The court must next consider whether the relief provided to the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).  Fed. R. Civ. P. 23(e)(2)(C).

1.      Costs, Risks, and Delay of Trial and Appeal

This Rule 23(e) factor overlaps with the second and third Tenth Circuit factors—that is, "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation."  *Rutter,* 314 F.3d at 1188.  "Legal complexity, factual complexity, even complexity in one portion of the case (such as determining damages), all weigh in favor of settlement."  4 Newberg on Class Actions § 13:52 (internal footnote omitted).

Based on the court's review, serious and complex questions of law exist and, as a result, risks exist if the case proceeds to trial.  As previously stated, plaintiffs assert that the delay in competency restoration treatment violates their right to substantive due process under the Fourteenth Amendment.  Substantive due process has been "vociferously debated," *Bledsoe v.*

---

[5] On September 3, 2024, the court received a letter from Governor J. Kevin Stitt, as Chairman of the Contingency Review Board, in which the Board expresses concern that "important details surrounding the negotiation and approval of the consent decree were not accurately presented to the Court."  [Doc. 54, p. 2].  However, "[o]bjections to a proposed class settlement are more appropriately adjudicated at the final approval hearing, as opposed to the preliminary approval stage."  *Zepeda v. PayPal, Inc.*, No. C-10-2500-SBA, 2015 WL 13781535, at *6 (N.D. Cal. Mar. 25, 2015); *see also* 4 Newberg on Class Actions § 13:29 (Objections to proposed class action settlements may be lodged in the time period between the preliminary approval of the settlement and the fairness hearing.).

*Carreno*, 53 F.4th 589, 605 (10th Cir. 2022), and "provide[s] few 'guideposts for responsible decisionmaking.'"  *Browder v. City of Albuquerque,* 787 F.3d 1076, 1084 (10th Cir. 2016) (Gorsuch, J., concurring) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).  Thus, the outcome of the litigation remains in doubt and a risk exists that, if this matter proceeded to trial, plaintiffs would not receive the requested relief.

As to the second *Rutter* factor—whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation—this factor is satisfied. In the Complaint, plaintiffs request injunctive relief "ordering Defendants to develop a remedial plan to reduce wait times for competency restoration treatment to within constitutional limits." [Doc. 2, p. 32].  The proposed amended Consent Decree constitutes a plan to reduce wait times. Thus, "settlement means that change will come more quickly." *Hunter,* 2018 WL 564856, at *11. Further, settlement avoids the "immense" costs [Doc. 48, p. 31], of contested class certification proceedings, discovery, and trial. *See also* [*Id.*; Doc. 51, pp. 51 and 57].

Based on the foregoing, the Fed. R. Civ. P. 23(e)(2)(C)(i) factor weighs in favor of preliminary approval.

2.    Effectiveness of Proposed Method of Distributing Relief to the Class

Rule 23 next requires the court to consider the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.  This factor "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and the court "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments.

The court first notes that Class Members need not make a "claim" to receive the proposed remedy—timely competency restoration treatment.  Rather, all Class Members are entitled to relief

by virtue of membership in the Class.  Further, in their Combined Declaration, William Neil Gowensmith, Ph.D and Lauren Elizabeth Kois, Ph.D. opine that, based on their professional experience, education, and training, "the Plan and Consent Decree, if successfully implemented, will reduce wait times to competence evaluations and competence restoration for Oklahoma's Class Members."  [Doc. 48-5, p. 20].  Finally, the parties agree that the proposed timeframes are reasonable.  [Doc. 51, pp. 19-22].

Thus, for purposes of preliminary approval and based on the evidence before it, the court is persuaded that the proposed amended Consent Decree is an effective method of distributing relief to the class and the Rule 23(e)(2)(C)(ii) factor weighs in favor of preliminary approval.

### 3.   Terms of any Proposed Award of Attorney's Fees

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments.

If plaintiffs were to prevail, Class Counsel would be entitled to attorney's fees pursuant to 42 U.S.C. § 1988, which permits "a reasonable attorney's fee" in an action pursuant to 42 U.S.C. § 1983.  42 U.S.C. § 1988(b); *see also Maher v. Gagne*, 448 U.S. 122 (1980).  To determine the "reasonableness" of the requested award, the court must apply the lodestar method.  *Hensley v. Eckerhart,* 461 U.S. 424, 433-35 (1983).  Pursuant to that method, the court "arrive[s] at a 'lodestar' figure by multiplying the hours . . . counsel reasonably spent on the litigation by a reasonable hourly rate."  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Jane L. v. Bangerter,* 61 F.3d 1505, 1517 (10th Cir. 1995)).

For attorney's fees incurred prior to submission of the Joint Motion for Preliminary Approval, Class Counsel seeks fees at an effective hourly rate of $283.15 for Frederic Dorwart

lawyers and $219.60 for Oklahoma Disability Law Center attorneys.[6]   Going forward, Class Counsel requests attorney's fees in the amount of $325 per hour.[7]   These are reasonable hourly rates in the Tulsa market.   *See SFF-TIR, LLC v. Stephenson,* 452 F. Supp. 3d 1058, 1196 (N.D. Okla. 2020); *Busby v. City of Tulsa,* No. 11-CV-447-JED-JFJ, 2018 WL 7286180 (N.D. Okla. Oct. 23, 2018); *Bowles-Snailer v. Texoma Labs, Inc.,* No. CIV-22-139-RAW-GLJ, 2023 WL 6129488, at *2 (E.D. Okla. Sept. 19, 2023) (considering Tulsa market rates and approving $400 hourly rate). Likewise, having reviewed the invoices submitted, the court preliminarily concludes that the hours were reasonably expended; however, Class Members and parties from whom payment is sought may object.   *See* Fed. R. Civ. P. 23(h)(2).   At this stage, the Rule 23(e)(2)(C)(iii) factor weighs in favor of preliminary approval.

### 4.   Agreement Required to be Identified Under Rule 23(e)(3)

"Under this factor, the parties are required to file a statement identifying any agreement made in connection with the proposal."   *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. CIV-19-940-GJF, 2021 WL 1339305, at *8 (D.N.M. Apr. 9, 2021) (internal quotations omitted).   The parties have filed the proposed amended Consent Decree [Doc. 46-1; Doc. 55], and no additional agreements exist.   [Doc. 48, p. 34].   Thus, the Rule 23(e) factor is satisfied.

### 5.   Other Adequacy Concerns

In addition to the articulated subfactors, Rule 23(e)(2)(C) generally directs the court to consider whether the relief is adequate.   4 Newberg on Class Actions § 13:51.   Because the

---

[6] The parties arrived at the effective hourly rate by dividing the total sum sought by the total hours worked.

[7] In the Supplemental Motion for Preliminary Approval of Attorney Fees [Doc. 49], the parties request an hourly rate of $350 for attorney time during the period between the filing of the Joint Motion for Preliminary Approval and entry of the Consent Decree.   However, the proposed Consent Decree provides for a $325 hourly rate during that period.   [Doc. 46-1, p. 40].

proposed relief is a consent decree, the court must consider three factors. *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1192 (10th Cir. 2018). "First, a federal consent decree must 'be remedial in nature' and thus 'designed as nearly as possible to restore the victims of [illegal] conduct to the position they would have occupied in the absence of such conduct.'" *Jackson,* 880 F.3d at 1192 (quoting *Milliken v. Bradley*, 433 U.S. 267, 280 (1977)). "Second, the nature and scope of the remedy provided . . . must directly address and relate to the [federal-law] violation itself." *Jackson,* 880 F.3d at 1192. That is, "it must be 'tailored to cure the condition that offends' federal law." *Id.* (quoting *Milliken*, 433 U.S. at 282). "Third, federal courts 'must take into account the interests of state and local authorities in managing their own affairs,' consistent with the demands of federal law." *Jackson,* 880 F.3d at 1192 (quoting *Milliken*, 433 U.S. at 280-81). Having reviewed the proposed amended Consent Decree in light of these factors, at this stage and based on the evidence submitted, the court is persuaded that the foregoing factors are satisfied.

Additionally, the consent decree must be consistent with governing law. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland,* 478 U.S. 501, 525-26 (1986); *McClendon v. City of Albuquerque,* 79 F.3d 1014, 1021 (10th Cir. 1996). For the reasons set forth in the court's Opinion and Order of August 30, 2024, the Community-Based Restoration Treatment Pilot Program provisions of the original proposed Consent Decree would violate Oklahoma law. [Doc. 53]. However, the parties have submitted the Third Joint Supplement to Joint Motion for Preliminary Approval in which they propose to modify the proposed Consent Decree "to make the development and implementation of the Community-Based Restoration Treatment Pilot Program contingent upon a future change or clarification in Oklahoma law, either by new legislation or by an opinion of an Oklahoma appellate court, that permits the Department to provide outpatient community-based restoration services." [Doc. 55, p. 1]. Having reviewed the proposed

20

amendments, the court preliminarily concludes that they are consistent with Oklahoma law. Further, based upon its review and for purposes of preliminary certification, the court is satisfied that the remaining provisions of the original Consent Decree are consistent with Oklahoma law. Accordingly, the court provisionally concludes that the proposed consent decree is remedial in nature, sufficiently narrowly tailored, and consistent with Oklahoma law. Thus, these factors weigh in favor of preliminary approval.

        D.    *Equitable Treatment of Class Members Relative to Each Other*

The court must next consider whether the Consent Decree "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Assessment of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments. "Other considerations relevant to the equitable treatment of class members include the allocation of incentive awards to class representatives." *Cisneros*, 2021 WL 2953117, at *9.

The proposed Consent Decree does not include any incentive payments or enhanced awards for the class representatives. Further, Dr. Gowensmith and Dr. Kois opine that the proposed Consent Decree applies uniformly in that it provides the same benefit to Class members—reduction of wait times for competency restoration treatment services. Thus, although Class Members may receive different forms of treatment, all Class Members will timely receive restorative treatment and all program components will reduce the overall restoration wait times. [Doc. 48-5, pp. 7-8]; *see also* [Doc. 51, p. 57]. Based on this evidence, the court concludes that this Rule 23(e) factor weighs in favor of preliminary approval.

E.     *Judgment of the Parties That the Settlement is Fair and Reasonable*

In the Joint Motion for Preliminary Approval, the parties stipulate that the Consent Decree is fair and reasonable.  [Doc. 46, p. 15]; *see also* [Doc. 51].  The court recognizes that it will have more information regarding this factor after Class Members have had notice and the opportunity to object.  Further, the parties shall personally appear at the final approval hearing and may wish to opine with respect to the fairness and reasonableness of the proposed amended Consent Decree.  But, based on the information currently before the court, this Tenth Circuit factor weighs in favor of preliminary approval.  *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009).

F.     Conclusion

Based on foregoing, the court will likely be able to approve the proposed amended Consent Decree under Rule 23(e)(2).  Thus, the parties have satisfied their burden to show that giving notice of the proposed settlement is justified.  *See* Fed. R. Civ. P. 23(e)(1)(B).

## Proposed Notice to Settlement Class

Rule 23(e) provides that "[t]he court must direct notice *in a reasonable manner* to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).  Likewise, for classes certified under Rule 23(b)(2), the court should "direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  In all cases, the notice must satisfy due process and therefore "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015); *see also* Fed. R. Civ. P. 23(e)(5)(A) ("Any class member may object to the proposal if it requires court approval under this subdivision (e)).  Newberg on Class Actions and the Manual for Complex Litigation suggest that the notice should:

[1] define the class and any subclasses;

[2] describe clearly the options open to the class members and the deadlines for taking action;

[3] describe the essential terms of the proposed settlement;

[4] disclose any special benefits provided to the class representatives;

[5] provide information regarding attorney's fees;

[6] indicate the time and place of the hearing to consider approval of the settlement;

[7] describe the method for objecting to (or, if permitted, for opting out of) the settlement;

[8] explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set forth those variations;

[9] explain the basis for valuation of nonmonetary benefits if the settlement includes them;

[10] provide information that will enable class members to calculate or at least estimate their individual recoveries, including estimates of the size of the class and any subclasses;

[11] and prominently display the address and phone number of class counsel and how to make inquiries.

3 Newberg on Class Actions § 8:17.

Additionally, Rule 23(h) provides, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Rule 23(h) requires notice of the fee request be "directed to class members in a reasonable manner."  Fed. R. Civ. P. 23(h)(1).  The notice should comply with Rule 54, which requires, in part, that a motion for attorney's fees state the amount sought.  3 Newberg on Class Actions § 8:25.  The advisory committee notes clarify that the notice requirement applies in "cases in which there is a simultaneous proposal for class certification and settlement even though

technically the class may not be certified unless the court approves the settlement pursuant to review under Rule 23(e)."  "When a settlement is proposed for Rule 23(e) approval, either after certification or with a request for certification, notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself." Fed. R. Civ. P. 23(h), advisory committees notes to 2003 amendments.

As submitted, the Notice of Proposed Class Action Settlement was insufficient in that it did not include the total amount of attorney's fees sought.  *See* [Doc. 46-4].  Accordingly, the court directed the parties to revise the proposed notice to reflect the amount of attorney's fees sought. [Doc. 51, pp. 5 and 61; Doc. 50].  Aside from this issue, however, the Notice defines the Class, summarizes the essential terms of the proposed settlement in easily understood language, clearly describes Class Members' options and the deadline for taking action (including objecting), and indicates the date and time of the hearing on final approval of the settlement.  Thus, having considered the Newberg factors and subject to the directed amendment, the court is satisfied that the Notice of Proposed Class Action Settlement is fair, reasonable, and "apprise[s] interested parties of the pendency of the action and afford[s] them an opportunity to present their objections." *Tennille*, 785 F.3d at 436.

With respect to the method of notice, the parties agree that Notice will be given as follows:

    a.  Notice to the Class Members will be given by sending them via first-class U.S. mail the proposed "Notice of Proposed Class Action Settlement," using the Department's most current list of persons declared incompetent and awaiting restoration treatment.

    b.  A Notice in substantially the same form as the "Notice of Proposed Class Action Settlement" will be sent via first-class U.S. mail to the attorneys and guardians *ad litem* of record for the Class Members in their state court criminal cases.  This Notice will request that defense counsel and guardians *ad litem* share the Notice with known family members of the Class Member and encourage those individuals to submit objections or comments to the proposed Consent Decree.

  c. A Notice in substantially the same form as the "Notice of Proposed Class Action Settlement" will be addressed and sent via first class U.S. mail to all District Attorneys in Oklahoma, all Chief Public Defenders in Oklahoma, and the Executive Director of Oklahoma's Indigent Defense System.

  d. A Notice in substantially the same form as the "Notice of Proposed Class Action Settlement" will be addressed and sent via first-class U.S. mail to the Clerks of the District Courts for all District Courts of Oklahoma with a request to post the Notice in the Clerks' offices.

Additionally, the court directed that the Notice be emailed to members of the Oklahoma Bar Association's criminal law section.  [Doc. 51, pp. 5-6 and 61].  The court concludes that the proposed method of notice is reasonably calculated to ensure the best practicable notice under the circumstances and consistent with due process.  Thus, subject to the ordered amendment and revised method of notice, the court directs that notice be made as proposed by the parties.  *See* [Doc. 46, pp. 13-14].

## Conclusion

  WHEREFORE, plaintiffs' Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class [Doc. 46], as modified by the Third Joint Supplement to Joint Motion for Preliminary Approval [Doc. 55], is granted.

  IT IS FURTHER ORDERED that the court preliminarily certifies the following Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

  IT IS FURTHER ORDERED that Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc. are appointed as Class Counsel.

IT IS FURTHER ORDERED that the parties shall amend the Notice of Proposed Class Action Settlement [Doc. 46-4] to reflect the specific amount of attorney's fees sought by Class Counsel.  Subject to this amendment, the Notice of Proposed Class Action Settlement is approved.

IT IS FURTHER ORDERED that, with the addition of the requirement that the Notice be emailed to members of the Oklahoma Bar Association's criminal law section, the manner and method of Notice to the Class as set forth in the Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class [Doc. 46, pp. 13-14], is approved.

IT IS FURTHER ORDERED that the court imposes the following deadlines:

| Activity | Deadline |
|---|---|
| Deadline for Notices to be mailed via U.S. mail as set forth in the Joint Motion or emailed | September 30, 2024 |
| Deadline for Class Members to postmark or submit written objections or comments | December 2, 2024 |
| Deadline for submission of written objections and comments to the court | December 9, 2024 |
| Deadline for the filing of the Motion for Final Approval | December 9, 2024 |
| Final Approval and Fairness Hearing | Wednesday, January 15, 2025 at 9:30 a.m. |

IT IS FURTHER ORDERED that Leslie Briggs, Evan Watson, Henry A. Meyer, III, Allie Friesen, and Debbie Moran shall personally appear at the Final Approval and Fairness Hearing on Wednesday, January 15, 2025 at 9:30 a.m.

IT IS FURTHER ORDERED that, at the Final Approval and Fairness Hearing, the parties shall certify to the court that the Notice to the Class, and other Notices to interested stakeholders, have been given as directed herein.

IT IS SO ORDERED this 19th day of September, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE