IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

LESLIE BRIGGS, as next friend      )
of T.W. and B.S.; EVAN WATSON,     )
as next friend of C.R.; and,       )
HENRY A. MEYER, III, as next       )
friend of A.M., for themselves     )
and for others similarly situated, )
                                   )
            Plaintiffs,            )
                                   )
v.                                 ) Case No.  23-cv-81-GKF-JFJ
                                   )
ALLIE FRIESEN, in her official     )
capacity as Commissioner of the    )
Oklahoma Department of Mental      )
Health and Substance Abuse         )
Services; and DEBBIE MORAN, in     )
her official capacity as Interim   )
Executive Director of the Oklahoma )
Forensic Center,                   )
                                   )
            Defendants.            )

TRANSCRIPT OF STATUS HEARING

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**

**UNITED STATES DISTRICT JUDGE**

NOVEMBER 1, 2024

***REPORTED BY:***      ***BRIAN P. NEIL, RMR-CRR***
                 ***United States Court Reporter***

1                       A P P E A R A N C E S

2

3          **Frederic Dorwart, Paul DeMuro, and David W. Leimbach,**
   Attorneys at Law, Frederic Dorwart Lawyers, 124 East 4th
4  Street, Tulsa, Oklahoma, 74103, attorneys on behalf of the
   Plaintiffs;

5
           **Nicholas Southerland,** Attorney at Law, Oklahoma
6  Disability Law Center, 5555 East 71st Street, Suite 9100,
   Tulsa, Oklahoma, 74136, attorney on behalf of the Plaintiffs;

7

8

9          **Gentner F. Drummond,** Attorney General, **William P.
   Flanagan and Erin Moore,** Office of Oklahoma Attorney General,
10 313 N.E. 21st Street, Oklahoma City, Oklahoma, 73105, attorneys
   on behalf of the Defendants;

11
           **Garry M. Gaskins , II,** Attorney at Law, Drummond Law
12 Firm, 1500 South Utica Avenue, Suite 400, Tulsa, Oklahoma,
   74104, attorney on behalf of the Defendants;

13
           **William W. O'Connor, John T. Richer, and Brian T.
14 Inbody,** Attorneys at Law, Hall Estill, 521 East 2nd Street,
   Suite 1200, Tulsa, Oklahoma, 74120, attorneys on behalf of the
15 Defendants.

16

17

18

19

20

21

22

23

24

25

```
 1                    Friday, November 1, 2024

 2                          *  *  *  *  *

 3           DEPUTY COURT CLERK:  This is Case No.

 4   23-cv-081-GKF-JFJ, Leslie Briggs, et al., v. Allie Friesen, et

 5   al.  Counsel, would you please state your appearances for the

 6   record.

 7           MR. DEMURO:  Good afternoon.  May it please the

 8   court, on behalf of the plaintiffs here as preliminarily

 9   approved class counsel Paul DeMuro, Frederic Dorwart, Nick

10   Southerland, and Brian Wilkerson.  Also with us today is my

11   partner, David Leimbach, and we've got the lead named

12   plaintiff, Leslie Briggs, here as well, Your Honor.

13           THE COURT:  Good afternoon.

14           MR. DRUMMOND:  Good afternoon, Your Honor.  Present

15   with me is Solicitor General Garry Gaskins, Assistant Solicitor

16   General Will Flanagan and Senior Assistant Attorney General

17   Erin Moore.  Also present in their official capacities are

18   Commissioner of Mental Health Allie Friesen and Executive

19   Director of the Forensic Center Debbie Moran.

20           THE COURT:  Good afternoon.

21           MR. DRUMMOND:  And to the extent there's also

22   counsel in the room, I object to them entering their appearance

23   for purposes of this hearing.

24           THE COURT:  Very well.  Good afternoon.  And we have

25   counsel who have entered their appearance for the defendants in
```

 1    their official capacity.  There have been two motions filed

 2    today that address that representation.  But for the record,

 3    Mr. O'Connor or Mr. Inbody?

 4            **MR. O'CONNOR:**  Your Honor, Bill O'Connor, Brian

 5    Inbody, John Richer for Commissioner Friesen and Interim

 6    Executive Director Ms. Moran.

 7            **THE COURT:**  Good afternoon.  We have one issue that

 8    we can address, I believe, without getting into representation,

 9    and we'll do that.

10         But, first of all, given that the contingency review

11    board has disapproved the proposed consent decree, do counsel

12    agree that the court should strike the January 15th, 2025,

13    final approval and fairness hearing and direct the plaintiffs

14    to provide notice that the hearing has been stricken?

15            **MR. DRUMMOND:**  Your Honor, I'll address that.  The

16    order -- the protocol in the State of Oklahoma is that when the

17    attorney has reached a point at which it seeks contingency

18    review board approval, it asks the governor to convene such

19    board.

20         In this case, the objection period is still open until,

21    I believe, December 7th.  Therefore, I have deemed it not ripe

22    to request a contingency review board to convene to approve or

23    disapprove the preliminary proposed consent decree.  So I would

24    -- and what I anticipate doing is if there are no objections,

25    then I will request the governor convene it.

1    I think you and I and all people in this courtroom know

2    that the matter's baked.  The governor has no interest in

3    approving anything that would benefit the state.  So we can

4    anticipate that he would deny it after I ask the board to be

5    convened.  So it leaves the court in somewhat of a conundrum

6    but that's why you get paid the big bucks.

7    **THE COURT:**  Well, frankly I don't know that I'm in a

8    conundrum.  I had asked the plaintiffs on August 15th at the

9    hearing on the joint motion for preliminary approval of the

10   consent decree whether or not the court could enter judgment

11   prior to satisfaction of Section 200 and you and I engaged in

12   the following exchange.

13   You said, "We do think the appropriate protocol is to

14   do the preliminary consent.  I've conferred with the Speaker of

15   the House, the Senate Pro Tempore, and the Governor's office on

16   the protocol, and the state is in agreement that we would

17   request the court to enter the preliminary approval subject to

18   legislative approval or the contingency review board.

19   "I think that they are seeking a threshold by this

20   court, that the court is satisfied on a threshold basis of the

21   parties' stipulated consent decree.  Then with that, with the

22   parties' agreement and the court's preliminary approval, then

23   proceed with the formal approval."

24   And then I interjected, "So you would contemplate the

25   approval by the contingency review board prior to the court

1    entering judgment?"

2           And you said, "Yes."

3           And then I said, "Okay."

4           Then you said, "That would be the request of the

5    parties."

6           But you're saying that your understanding of Section

7    200 is that you have to request as attorney general the review

8    by the contingency review board and that the governor can't do

9    that as chairman of the --

10          **MR. DRUMMOND:**  No.  He can do whatever he wishes and

11   he has twice already.  He's not given me notice to present or

12   be present either time other than the day before.

13          **THE COURT:**  Well, does the statute require that?

14          **MR. DRUMMOND:**  No, no requirement for notice.  Like

15   I said, I think the cake's baked.  I mean, he has no interest

16   in approving this.

17          **THE COURT:**  All right.  But given that, as a

18   practical matter, we have a hearing set January 15th and that's

19   before the legislature convenes.  I need to strike that January

20   15th hearing because you don't have approval of the contingency

21   review board and the governor has convened that board and they

22   have voted 0-1, with one vote abstaining, to disapprove;

23   correct.

24          **MR. DRUMMOND:**  Correct.

25          **THE COURT:**  All right.  So the court will then

1    strike the hearing --

2            **MR. DEMURO:**  Might I be heard on that first?

3            **THE COURT:**  Oh, of course.

4            **MR. DEMURO:**  As Your Honor knows, and the purpose of

5    the hearing reflects, this case involves the intersection

6    between the merits -- a Rule 23 consent decree and the merits,

7    which is the broken competency restoration system and politics.

8            **THE COURT:**  You're talking about the January 15th

9    hearing?

10           **MR. DEMURO:**  Yes.  Absolutely.

11                  *(Discussion held off the record)*

12           **MR. DEMURO:**  And, Your Honor, given -- I want to

13   answer your question directly, and my answer is no, but.  But

14   given the really unique situation that we're in, I would ask

15   the court just a slight indulgence for me to explain what I

16   think the context of your question deserves, please, Your

17   Honor.

18           What has occurred here is extraordinary in this regard.

19   The commissioner, who now is in the courtroom personally

20   present, has asked to replace the attorney general as her

21   attorney, and in so doing, Your Honor, filed a paper that

22   conceded that the competency restoration system is broken and

23   in need of reform and conceded that the consent decree -- a

24   consent decree is the appropriate mechanism to fix it.

25           And so --

1          **THE COURT:**  I believe the governor had stated in

2     remarks, what, before the legislature, the State of the State,

3     that it needs to be fixed; correct?

4          **MR. DEMURO:**  Correct.  And so from the plaintiff's

5     perspective, Your Honor, now the preliminary class counsel of

6     somewhere between 250 and 300 people that were languishing in

7     our county jails, there's essentially a concession from the

8     commissioner herself in her personal and official capacity that

9     the due process rights of 250 to 300 people are currently being

10    violated.

11         **THE COURT:**  Well, but the devil's in the details as

12    usual; correct?

13         **MR. DEMURO:**  It is, Your Honor.  And so what are

14    those details?  The details that have been provided by the

15    commissioner are invalid.  She suggests in her paper that

16    there's really one issue and it has to do with the provision of

17    the statewide jail-based restoration.

18         Now, without getting into all of those details, the

19    commissioner posits that under this consent decree the

20    commissioner will be deprived of her statutory authority to

21    provide class members with in-jail restoration services while

22    they reside in jail.

23         That pronouncement is false and I can walk through the

24    consent decree itself which specifically reserves to the

25    department the right to provide whatever mental health services

1    they deem appropriate to any class member in jail, including

2    services under the competency restoration statute,

3    notwithstanding any other provision in the consent decree.

4         How we got here, Your Honor, was that the prior

5    commissioner rolled out a statewide in-jail restoration program

6    that was a sham and that has now been conceded by the

7    department as being a sham, as being misleading to the public,

8    false statements to the public, to district attorneys, to

9    stakeholders that there was an in-jail restoration program

10    statewide when there wasn't.  There has been a history of

11    incompetence, head-in-the-sand management techniques,

12    narcissism, and sheer lack of --

13         **THE COURT:**  Let's dial some of this invective down,

14    all right?

15         **MR. DEMURO:**  I will.  Here's my point, Judge.

16         As the preliminary class counsel of these 250 people,

17    I'm on the one-yard line.  I've got the defendants admitting

18    that there should be a consent decree and that there is a

19    broken system and the consent decree is the model to fix it, a

20    consent decree.  They're quibbling about one point which

21    doesn't even exist truly.

22         So here's my -- so that's the context.  We're on the

23    one-yard line, Judge.  We've worked long and hard for this

24    consent decree --

25         **THE COURT:**  Except you've got to deal with Section

1    200.

2              **MR. DEMURO:**  We do.

3              **THE COURT:**  The contingency review board has

4    disapproved it.

5              **MR. DEMURO:**  It has.  But the game's not over.

6              **THE COURT:**  I understand.

7              **MR. DEMURO:**  The game's not over, Judge.  Two of the

8    members of the contingency review that voted, one who

9    abstained, are outgoing leadership -- outgoing members of the

10   legislative leadership --

11             **THE COURT:**  I understand.

12             **MR. DEMURO:**  -- who had previously, at least one of

13   them, blocked a joint resolution being forwarded to the

14   legislature when they were session.

15        So I think the court should, number one, keep the

16   hearing date set because that allows us the opportunity to

17   continue to work with whatever legitimate concerns the

18   governor's office might have about the present consent decree

19   because we're on the one-yard line and give us some more time

20   before taking that hearing off.

21        Because I concede that absent legislative approval, be

22   it contingency review board or joint resolution of the

23   legislature, this court cannot grant final approval.

24             **THE COURT:**  It would be void by terms of the

25   statute.

1    **MR. DEMURO:**  Correct.  But at this procedural

2    juncture, we're not yet at the final hearing.  As we have seen,

3    there is a fast pace to these events, Judge.  So I am imploring

4    the court --

5    **THE COURT:**  The pace has been pretty quick just this

6    morning.

7    **MR. DEMURO:**  Exactly, exactly.  And I expect that

8    there shall be more discussions.  I'm implying the court in the

9    context of an admitted broken system, essentially conceded

10   daily violations of my clients' due process rights, a

11   well-crafted consent decree that is a wise plan, the devil is

12   in the details, that has already been preliminary approved, to

13   give us some more time to work the political problem.

14   **THE COURT:**  Help me out with the timeline because

15   the legislature usually doesn't convene until early February;

16   correct?  So when does the new speaker and the new president

17   pro tem take office?

18   **MR. DEMURO:**  Yes.  Well, I'm not a legislative

19   expert but my understanding is --

20   **THE COURT:**  It's important to know that.

21   **MR. DEMURO:**  Yes.  They get sworn in before then but

22   the joint resolution couldn't be presented until the full

23   legislature is back in session in early February.  So --

24   **THE COURT:**  All right.  Well, I thought you were

25   going to suggest that a new contingency review board could

 1    review it prior to January 15th and --

 2              MR. DEMURO:  That could happen too.  I'm sorry.  I

 3    didn't mean to interrupt.  Yes, that could happen.

 4              THE COURT:  So that's why I'm asking:  When does the

 5    new speaker take office?  When does the new president pro tem

 6    take office?

 7              MR. DRUMMOND:  May I assist?

 8              MR. DEMURO:  Yes.  Sure, Your Honor.

 9              MR. DRUMMOND:  The new officers take oath of office

10    November 13th of 2024.  Bills are introduced on November 15th.

11    The new term for the legislature begins on November 20th under

12    Oklahoma State Statute 14 Section 80.35.11.  Then the first

13    organizational day is January 7th.  So the contingency review

14    board --

15              THE COURT:  But don't the bodies have to elect the

16    speaker and the president pro tem?

17              MR. DRUMMOND:  They do so on the 13th of November.

18              THE COURT:  On the 13th.  And they're in session in

19    November?

20              MR. DRUMMOND:  They are -- they are the new speaker

21    of the house and the new president pro tem my understanding is

22    November 13th.

23              THE COURT:  So you're saying the bodies have given

24    preliminary approval and have elected to them take to take

25    office on November --

1        **MR. DRUMMOND:**  The newly elected representatives and

2   senators are sworn in on November 3rd.

3        **THE COURT:**  I see.

4        **MR. DRUMMOND:**  That day they vote on their

5   organizational structure.  That day we will have a new speaker

6   and a new president pro tem.

7        It is my suggestion that following the objection

8   period, I seek contingency review board convening and vote.

9   Now, the governor may very well block that.  I anticipate if he

10  thinks that he might lose, he'll block it, so we may still be

11  at the point where we have to substantively try this case.  But

12  I suggest, and I join my adversary, Mr. DeMuro, in suggesting,

13  that the court has the ability to pause, striking the January

14  hearing date.  There may, in fact, be a contingency review

15  board that convenes and approves what is in the best interest

16  of the State of Oklahoma.

17       **THE COURT:**  All right.  A subissue, it's been

18  suggested to me -- and I don't know what the answer to this is

19  -- that once the contingency review board has disapproved it,

20  they can't go back and approve, that the process would have to

21  start back at the beginning.  Now, I don't know what sense that

22  makes.  Have you thought about that?

23       **MR. DRUMMOND:**  I've read that statute and the

24  related sections, and I'm not aware that we're now permanently

25  blocked into perpetuity.  That's not how I read it.

```
 1              THE COURT:  Yeah.  I've reread it and I'm not

 2    persuaded either of that.

 3              Mr. DeMuro, your thoughts?

 4              MR. DEMURO:  Not only is it not in the statute, it's

 5    not in any cases, the few that there are, if any.  So I agree

 6    that there's no permanent effect to the contingency review

 7    board that they can't revisit their decision at any time,

 8    including when's there new constituents of the review board.

 9              So we're in this -- we're in --

10              THE COURT:  You're having difficulty with that mic.

11              MR. DEMURO:  Yeah.  I'm trying to -- there we go.

12    How about that?  Is that better?

13              THE COURT:  Yeah.

14              MR. DEMURO:  I'll just hold it.

15              So, Judge, this is a very unique procedural posture,

16    and as I started my comments, the intersection between the

17    necessity for political approval and the merits of what I now

18    believe have been confessed an ongoing constitutional violation

19    of hundreds of Oklahomans.

20              And given the unique posture where we have a

21    contingency review board whose constituents are going to be new

22    in a month or less, several weeks or less, given the fact that

23    we have a potential new legislative session coming up in

24    February, given the fact that we're on the one-yard line,

25    Judge, and we all invested a lot here, my plea to the court is
```

1    what motivates people to give reasonable judges pressure,

2    pressure.  So I beseech the court to keep this hearing

3    scheduled as scheduled.  If we reach an impasse that I think is

4    insurmountable we'll notify the court and strike the hearing.

5    I don't think it's insurmountable.

6         I will end this part of my remarks with one comment.

7    If you do strike this hearing, Judge, which I strongly

8    obviously do not want the court to do, I want as quick a

9    setting as possible for a TRO and a preliminary injunction that

10   the court will permit because we're ready to proceed on that

11   basis as well for full-tilt adversarial litigation.

12              *(Discussion held off the record)*

13             **THE COURT:**  All right.  It would seem to me that to

14   the extent that we -- and this is without briefing on the

15   issue -- but just for my understanding of the statute having

16   reviewed it, I don't think anything would preclude a newly

17   constituted contingency review board from reviewing it and

18   approving it or the legislature once convened reviewing it and

19   approving it.  The difficulty, however, is if changes are made

20   to the proposed consent decree, then you would have to start

21   the process over.  Agreed?

22             **MR. DEMURO:**  I agree that if there are anything -- I

23   mean, change a comma maybe -- but if there are material changes

24   to provisions --

25             **THE COURT:**  Material changes.

1          **MR. DEMURO:**  Yes.  Yes, Judge.  The process being --

2          **THE COURT:**  And everyone here, frankly, is in

3   agreement that changes -- well, that this competency

4   restoration system needs to be improved and fixed, everybody.

5   The governor has stated it.  It's been stated here.  I think

6   the attorney general told me at an earlier hearing that the

7   governor stated in a State of the State speech that it needs to

8   be fixed.  Everybody's in agreement.

9          But there are details that are a part of this consent

10  decree, one of which I have found is not authorized by statute,

11  that being out-of-custody restoration.  Not that it's a bad

12  idea.  That's left to the legislature.  But I think you

13  probably are right.  I think that to the extent that you could

14  get a newly constituted contingency review board to approve it

15  prior to January 15th, we could go ahead.

16          **MR. DEMURO:**  Yeah, I agree, Your Honor.  And one

17  other comment.  There's no prejudice to my class in the court

18  maintaining, at least for now, that hearing date.  In fact, I

19  think it would benefit the class for the reasons that I've

20  discussed.  I think having a firm date will motivate our

21  ability to bring people together to close this out.  There's no

22  prejudice to those stakeholders who want to submit comments

23  and, in fact, I welcome that.  Actually I'd get more input and

24  more comments.

25          So all the way around, Your Honor, I think there's no

 1   prejudice certainly to any party or class member or stakeholder

 2   for us to just wait and see what transpires over these next two

 3   months rather than striking the hearing.

 4           **THE COURT:**  I humbly suggest that in trying to do

 5   so, we turn down the political heat or the personal invective

 6   that's going both ways here.  Because everyone is in agreement

 7   that competency restoration in Oklahoma needs to be fixed.

 8   We've had this discussion here on the record, that with the

 9   proliferation of methamphetamine I see it every day.  It simply

10   increases the mental health problems that exist.  We have what

11   we call, you know, "dual-diagnosis treatment," mental health

12   and drugs and I see those cases every day.  So the problem is

13   exploding at least in part due to the proliferation of

14   methamphetamine.

15          So everybody here needs to work together in goodwill,

16   if they can, to reach an agreement.  But that's not legal;

17   that's just my advice.

18           **MR. DEMURO:**  Thank you, Your Honor.

19           **THE COURT:**  Yes.

20           **MR. DEMURO:**  We agree.

21           **THE COURT:**  Yes.

22           **MR. DRUMMOND:**  Your Honor, because, as you've

23   identified, we are affected by politics.  So I cannot --

24           **THE COURT:**  Well, let's not be.  Let's be -- let's

25   all be statesmen here.

1        **MR. DRUMMOND:**  I cannot in good faith represent that

2   the newly constituted contingency review board would approve it

3   or disprove it.

4        **THE COURT:**  Well, sure.

5        **MR. DRUMMOND:**  Right.

6        **THE COURT:**  But for my purposes, I've been convinced

7   here today, without the benefit of briefing, that I shouldn't

8   strike it with the hopes that perhaps you can get the

9   contingency review board to approve it.  Now, if they don't,

10  then we're talking about a legislative approval; correct?

11       **MR. DRUMMOND:**  I have a suggestion.  Again, speaking

12  of pressure of litigation and the like, I think that you are

13  correct in observing that all rational parties -- and I use

14  that adjective intentionally -- would agree there's a problem

15  that needs to be fixed and that the consent decree is the best

16  mechanism and the most efficient mechanism to correct the

17  deficiency.

18       **THE COURT:**  Well, but that's obviously debatable as

19  to the specifics of this consent decree.

20       **MR. DRUMMOND:**  I would suggest it's not so debatable

21  but I will yield to the court's observation.

22       **THE COURT:**  Well, that's not my job.

23       **MR. DRUMMOND:**  Right.

24       **THE COURT:**  I am not a policymaker here and I steer

25  away from being a policymaker.  Certain people misunderstand

1    the court's role in preliminary approval.  I have no opinion as

2    to the wisdom of these changes set forth in the consent decree.

3    My preliminary approval simply is my agreement that it's legal,

4    separate and apart from outpatient competency restoration,

5    which I clearly stated in my order is not permitted under

6    Oklahoma law.

7              **MR. DRUMMOND:**  Understood.  Hope eternal, a newly

8    constituted CRB approves and we go on down the road.  If it

9    doesn't -- and I join Mr. DeMuro in the authenticity and

10   transparency to this court -- we will let you know immediately,

11   if it appears it either won't be convened or has been shot

12   down.

13             I would suggest that the January 15th date be in the

14   alternative.  One, a final approval of the consent decree; or

15   two, a hearing on injunctive relief.

16             **THE COURT:**  I'm going to wait until either the

17   legislature approves it or the contingency review board

18   approves it.  My recollection is that that's what this court

19   did with regard to the Pinnacle Plan, we received the approval

20   of the contingency review board prior to the final approval

21   hearing.  There's no reason to go through that process unless

22   we get approval of the legislature or the contingency review

23   board with due respect.

24             **MR. DRUMMOND:**  Right.  And I anticipate if the

25   speaker or the president pro tem votes against approval of the

1    contingency review board, we can predict with great certainty

2    that that chamber will not join the joint resolution.  So I'm

3    just suggesting because --

4         **THE COURT:**  Probably.  Not that the chamber could

5    possibly override their leadership; right?

6         **MR. DRUMMOND:**  Probably not in this state.

7         **THE COURT:**  Probably not.

8         **MR. DRUMMOND:**  But my concern is not so much

9    Mr. DeMuro's clients, but the victims.  That's my concern.  I

10   want adjudicative relief to the victims of the state of

11   Oklahoma, and I'm simply suggesting that the court not further

12   delay a hearing on the injunctive relief.  This office will

13   answer authentically and transparently on the failures of the

14   State of Oklahoma --

15        **THE COURT:**  Well, that's up to you because the

16   consent decree process is separate from an injunctive relief

17   process, all right?  I mean, I can candidly reveal to everyone

18   here I received from the Bureau of Prisons a letter on June

19   24th about an individual who is in federal custody down in Fort

20   Worth who they say can be released but no one will take her.

21        **MR. DRUMMOND:**  Right.

22        **THE COURT:**  Probation doesn't want to supervise her,

23   and one of our magistrate judges is behind this because I'm

24   worried about constitutional rights.

25        **MR. DRUMMOND:**  Sure.

1          **THE COURT:**  I fully understand your concern and the

2    governor's concern.  The governor's mentioned his own concern

3    about this; correct?

4          **MR. DRUMMOND:**  Yes.

5          **THE COURT:**  Right.  So this is something we've got

6    to get a hold of, both on the federal side and the state side.

7    Fortunately my case is not a year old but it's -- there are few

8    months that have passed and I'm concerned about her

9    constitutional rights.  I mean, she's in a medical facility at

10   FMC Carswell and I'm going to get her out one way or the other.

11         **MR. DRUMMOND:**  Yes.

12         **THE COURT:**  Right.

13         **MR. DRUMMOND:**  So the state is concerned about the

14   victims' rights and that's why we would like to proceed without

15   any other delay.  So Mr. DeMuro and I will confer and probably

16   make a joint application that we proceed on the merits, if it

17   appears as though politically we just can't get there.  Thank

18   you, Your Honor.

19         **THE COURT:**  All right.  We'll keep the matter on the

20   docket for January 15th currently, although I suspect that I'll

21   learn -- if this matter is presented to the newly constituted

22   contingency review board, I'll learn.  But I think it's

23   important that something be filed of record because there's

24   been a lot going on in this case in the media and no filings

25   have been made here in court.  So if something that is of a

1    legal notice needs to be filed, I'd ask counsel to do so.

2         Now, we need to address these motions that have been

3    filed today.  We first received defendant's opposed motion to

4    substitute counsel at docket No. 76.  Later this morning we

5    received the attorney general's motion to strike attorney

6    appearances by Mr. O'Connor, Mr. Inbody, Mr. Richer, and

7    Ms. Evans.  A couple of preliminary questions there.

8         I've skimmed the briefs that are on file before the

9    Oklahoma Supreme Court in the matter currently pending before

10   the D.C. Federal District Court.  The D.C. Federal District

11   Court has certified to the Oklahoma Supreme Court some of these

12   issues which are raised here today, although in a slightly

13   different context because that specifically -- that case

14   involves the governor directly hiring outside counsel to

15   represent him in his official capacity and this is of two

16   agency -- well, the commissioner and then the executive

17   director.  So there's a slight difference.

18        So some of my questions are, should I certify this

19   question to the Oklahoma Supreme Court or -- and I saw that the

20   briefing was completed, what, in July; is that correct?

21   There's a request for a hearing but I haven't seen anything

22   further in that case; correct, general?

23             **MR. DRUMMOND:**  Correct.

24             **THE COURT:**  All right.  But I'm posing these

25   questions:  Should I certify that question myself because it's

```
 1   in a slightly different context?  Because I don't want to wait

 2   for the Oklahoma Supreme Court and then have you all say, well,

 3   Judge, that's in a different context, you need to decide this

 4   insofar as it deals with Ms. Friesen in her official capacity

 5   and Ms. Moran in her official capacity.  Or, as I say, in the

 6   alternative, should I wait for the Oklahoma Supreme Court to

 7   make that decision before ruling on these two motions filed

 8   today?

 9        MR. DRUMMOND:  I think that's in large part the

10   reason that there's the anti-retention movement.  The governor

11   needs three new Supreme Court justices that rule his way.  So I

12   think the law is clear and unequivocal --

13        THE COURT:  Politics --

14        MR. DRUMMOND:  -- and I'm addressing a former state

15   judge who knows well the laws of Oklahoma.  We had a foreign

16   judge in the District of Columbia who I regret now agreeing to

17   the certification because --

18        THE COURT:  Who was that judge -- or is that judge?

19   Sorry.

20        MR. DRUMMOND:  He doesn't suffer fools.  I know

21   that.

22        THE COURT:  And so you opposed certification?

23        MR. DRUMMOND:  No.  I believe we -- I'm going to let

24   the solicitor general speak the truth.  I will -- I will speak

25   but it may not be accurate.
```

1          THE COURT:  Mr. Gaskins, it's a pleasure to have you

2     appear here today, sir.

3          MR. GASKINS:  Thank you, Your Honor.  The U.S.

4     district judge is Timothy J. Kelly in the U.S. District Court

5     for the District of Columbia.

6          THE COURT:  All right.

7          MR. GASKINS:  And, yeah, the state -- or the

8     Attorney General's Office is the one that sought the

9     certification there to get some clarity on this issue,

10    especially because it was the attorney general versus the

11    governor issue.  That's not necessarily at play here because it

12    is the attorney general taking control of the case from an

13    inferior officer clearly.  So --

14         THE COURT:  Okay.  And so if I'm hearing you

15    correctly -- and you're the pointman on that D.C. litigation --

16    you're saying resolution by the Oklahoma Supreme Court of that

17    issue doesn't necessarily resolve the issue here?

18         MR. GASKINS:  I would say if the Oklahoma Supreme

19    Court ruled in the attorney general's favor, then we would

20    certainly win here, but I would say that we could win here even

21    if the Oklahoma Supreme Court rules against the attorney

22    general.

23         THE COURT:  Spoken like a true advocate.

24         MR. GASKINS:  Thank you.

25         THE COURT:  All right.  And I will get to you,

1    Mr. Richer.

2         So can I independently rule, even though I know that

3    the Oklahoma Supreme Court is considering the case involving

4    the governor's representation in the D.C. District Court case?

5         **MR. GASKINS:**  I believe you can because the same

6    sort of constitutional issues of the governor versus the

7    attorney general are not necessarily at play here.  This is

8    more of a statutory issue.  The governor has some slightly

9    different constitutional arguments that he has made in the D.C.

10   case about the attorney general coming in and taking over a

11   case where the governor is a named party.  That's not

12   implicated here because the governor, of course, is not a

13   named --

14        **THE COURT:**  So you're saying there are no

15   constitutional issues with regard to these two defendants?

16        **MR. GASKINS:**  Oh, I would imagine the governor will

17   continue to make constitutional arguments, but I think that any

18   arguments that the governor makes in this case are much weaker

19   than they are at least in the D.C. case.  At least in the D.C.

20   case, he's actually the named defendant.  In this case, you

21   have two inferior officers, and there are prior Oklahoma

22   Supreme Court cases that make it clear that the attorney

23   general can take over litigation from inferior state officers.

24   There's just nothing about whether the attorney general can

25   take a case over from the governor himself.

1          **THE COURT:**  All right.  And I've read those briefs

2    that are before the Oklahoma Supreme Court.  Then you have the

3    ethical argument.  Just as you and I know, if you and I were

4    representing an individual charged with murder, we couldn't

5    take over that individual's case and plead that individual out

6    as guilty if the client doesn't wish to be; right?

7          So, too, even though the Attorney General's Office is

8    given the responsibility to represent an agency or an agency

9    head, can you with a straight face argue to me that if the

10   agency head disagrees with your opinion, that you can override

11   that agency head's position as an attorney?

12         **MR. GASKINS:**  Certainly, certainly.  An attorney

13   general, not -- this is not a situation where we're talking

14   about a private attorney.  We're talking about an individual

15   that has been charged for representing the state so I think we

16   have to identify who the client is first.

17         **THE COURT:**  Well, I've seen, you know, the "take

18   control" language.

19         **MR. GASKINS:**  Right.

20         **THE COURT:**  But you're honestly saying that if you

21   and your client, the agency head, have a distinct disagreement,

22   that you can override the position of your client?

23         **MR. GASKINS:**  The client is the State of Oklahoma

24   and so the commissioner and the executive director have been

25   sued in their official capacities.  The U.S. Supreme Court has

1    said when a state officer is sued in their official capacities,

2    that's the same as if the state itself has been sued.  So the

3    client is the State of Oklahoma.  It isn't the commissioner.

4    It isn't the executive director.  It's the State of Oklahoma.

5    The Oklahoma legislature under our constitution gets to

6    designate who makes the call on behalf of the State of Oklahoma

7    in litigation.

8        **THE COURT:**  But, as I say, I've read these briefs,

9    and one of the arguments made is basically it makes the

10   attorney general the super executive with regard to matters

11   that go into litigation.

12       **MR. GASKINS:**  Sure.  So whenever you have litigation

13   you have to have someone who's the final decision-maker.  The

14   legislature, they could change this at any point, if they so

15   choose.  But as we sit here today, the legislature as of 1995

16   has designated the attorney general as the person that gets to

17   make the final call.

18       **THE COURT:**  Okay.  This is a little premature

19   because I only have the opening briefs.  Have you thought

20   about -- since we have two briefs that are filed on the same

21   day here, the normal response to these briefs -- and I have a

22   schedule here before me -- the normal response date would be

23   Friday, November 22nd, with replies due December 6th.  Any

24   objection to that schedule?

25       **MR. GASKINS:**  I do not have any objection to that

1  schedule.  But we are very familiar with these issues, so if

2  the court so chooses, we could get a brief and response much

3  faster than that.

4          **THE COURT:**  Well, you got together the opening brief

5  here pretty quickly.

6          **MR. GASKINS:**  It was a busy morning, Your Honor.

7          **THE COURT:**  I'll bet.

8          **MR. GASKINS:**  I don't have any objection to those

9  deadlines, but I'm also happy to entertain a faster schedule,

10  if the court is so inclined.

11          **THE COURT:**  Okay.  So what happens -- you're taking

12  the position that if the Oklahoma Supreme Court rules in your

13  client's favor, the attorney general, then that will be binding

14  on this court?  It would seem to me that you're right because

15  it's a matter of Oklahoma law, both statutory and

16  constitutional law, and not a matter of federal law at all;

17  correct.

18          **MR. GASKINS:**  Correct.  The --

19          **THE COURT:**  So should I because, as you know, we've

20  got a few *McGirt* cases around here -- just had two *McGirt*

21  criminal trials this month.  Should we spend our judicial

22  resources on this battle between the executive and the attorney

23  general if the Oklahoma Supreme Court might moot out the issue

24  for me?

25          **MR. GASKINS:**  I mean, that is an issue of judicial

```
 1    economy which I'll defer to the court on.  But I would say that
 2    the court may still have to rule on this issue.  If, for some
 3    reason, the Oklahoma Supreme Court disagrees with the attorney
 4    general, that he cannot take over a case from the governor, the
 5    issues here are slightly different because the attorney general
 6    is taking over a case technically from an officer that's lower
 7    than the governor.  It's not -- so, I mean, to me the issues
 8    are slightly nuanced that the court may still have to -- if the
 9    Oklahoma Supreme Court rules in favor of the governor there,
10    this court, I think, would still have to address the unique
11    circumstances here.
12         THE COURT:  What of the argument, though, that these
13    two officers are part of the executive and they report to the
14    governor?  Neither one of them are constitutional agencies;
15    correct?
16         MR. GASKINS:  They are not.  But we do not have --
17    yeah, we do not have a unitary executive in the State of
18    Oklahoma.  We have a -- we have -- the executive office is and
19    the constitutional duties are put on various officers,
20    including the attorney general.
21         THE COURT:  So I'm just curious to ask it.  Let's
22    say your client someday is interested in becoming governor.  Is
23    he interested in allowing the attorney general to override his
24    policy decisions by virtue of being attorney general of the
25    state?
```

```
1          MR. GASKINS:  I think the current attorney general

2    is focused on upholding Oklahoma law and the Oklahoma

3    Constitution as it's currently written, and so that is -- I

4    imagine that's all we would expect of a future governor as

5    well.  But as I said, the legislature is the one that

6    ultimately has control of who gets to be the final

7    decision-maker.  And so as we sit here today, they have decided

8    that the attorney general is the final decision-maker but

9    legislation can change at any point.

10         THE COURT:  We've had the discussion on the record

11   in this case about the constitutional structure in Oklahoma,

12   where the governor is referred to by political scientists as

13   this is a weak governor system, the governor is vested with

14   fewer powers and authorities than in other states.  This would

15   take even more away; correct?

16         MR. GASKINS:  I think it would just -- it's not

17   taking anything away; it's just interpreting the law as it's

18   currently written.  So I don't think he had that authority to

19   begin with.

20         THE COURT:  All right.  Mr. Richer, I'd be pleased

21   to hear your position and come on up, sir.  Welcome, sir.

22         MR. RICHER:  Welcome, sir.  Your Honor, John Richer

23   for the defendants.  I'll address initially your question on

24   certification.

25             So in our paper that Your Honor read this morning, we,
```

 1   of course, wanted to bring the court's attention to the Supreme

 2   Court proceeding.  I believe in my review of those pleadings --

 3   I have not gone into detail -- but I've read enough and I made

 4   a point in our paper to state that I think those are two

 5   distinctly different cases.  The issue there and the issue here

 6   are different.

 7              **THE COURT:**  I think you're probably right.

 8              **MR. RICHER:**  And the reason --

 9              **THE COURT:**  And it seems to me that Mr. Gaskins is

10   agreeing.

11              **MR. RICHER:**  I think he does agree.  I think the

12   issue is an actual conflict versus a perceived conflict in that

13   case.  I think that one way or the other I think the court

14   could decide the issue but this is a distinct Oklahoma law

15   issue.  I think you can tell from the papers that we disagree

16   with the attorney general on his authority to represent the

17   commissioner in this case.  There's going to be a legal

18   disagreement on that issue under Oklahoma law, under the

19   Oklahoma Constitution, the Oklahoma statutes, and the statutes

20   that we are citing in our paper for other authority and the

21   governor's authority to have appointed my law firm to represent

22   the defendants in this case.  The basis of our paper in our

23   request for relief and our clients is a conflict of interest,

24   and those are ethical issues that involve Oklahoma law.

25              My thinking on this, Your Honor, is that this is kind

1    of the 800-pound gorilla in the courtroom.  You're going to

2    have to, I believe, Your Honor, respectfully address this issue

3    one way or the other.  It kind of goes with the other

4    conversation we had earlier.

5         We represent and we've been appointed by the governor

6    as special counsel to represent our clients.  We have a very

7    strong disagreement on the consent decree.  That one yard that

8    we kept on hearing about is everything to our client and we do

9    want to work those issues out.  But we have to have an

10   agreement or an acknowledgment that we are here properly before

11   the court to represent our client and that issue is now in

12   dispute based on what we've seen this morning.

13        **THE COURT:**  Any objection to the briefing schedule

14   that I --

15        **MR. RICHER:**  No objection, Your Honor.  That is

16   fine.

17        **THE COURT:**  All right.  We'll set a briefing

18   schedule on these motions.  They are separate motions so I know

19   the briefing will overlap, but there will be responses then due

20   on Friday, November 22nd, with replies due on December 6th.

21        Now, following up on Mr. Gaskins' statement, he opines

22   that if the Oklahoma Supreme Court were to decide in the D.C.

23   case the certified question in favor of the attorney general,

24   that would moot this out.

25        If I understand your position, you're saying it's

1    different because here we're dealing with an actual conflict?

2         **MR. RICHER:**  That is correct, Your Honor.

3         **THE COURT:**  All right.  Just so I understand

4    conceptually where you're coming from.

5         **MR. RICHER:**  That's correct.

6         **THE COURT:**  All right.  Is there anything else that

7    would be appropriate to raise today on behalf of your clients?

8         **MR. RICHER:**  No, Your Honor.  Other than we look

9    forward to representing our clients and trying to get to the

10   100-yard line in this case.

11        **THE COURT:**  Thank you.

12        **MR. RICHER:**  Thank you.

13        **MR. DEMURO:**  Commonly referred to as the "end zone."

14        **THE COURT:**  I'm sorry?

15        **MR. DEMURO:**  I said commonly referred to as the "end

16   zone," the 100-yard line, Your Honor.

17        **THE COURT:**  Okay.

18        **MR. DEMURO:**  Your Honor, can I indulge the court?

19   May I have thirty seconds to visit with the general before the

20   court concludes the hearing?

21        **THE COURT:**  Of course.  Of course.

22             *(Discussion held off the record)*

23        **MR. RICHER:**  Having conferred with my client, Your

24   Honor, I think we would respectfully ask the court to certify

25   the question of not only the conflict of interest issue -- it

1    may be a little premature to do that -- but the issue of 51

2    O.S. 200A, which is purely a state law question.

3            **THE COURT:**  Okay.  You'll need to file a motion to

4    certify.  Within that motion to certify, try to craft a

5    question or questions that need to be resolved by the Oklahoma

6    Supreme Court.

7            **MR. RICHER:**  We will do so, Your Honor.

8            **THE COURT:**  All right.  Now, my next question really

9    goes to Mr. DeMuro.  Thank you, Mr. Richer.

10           **MR. RICHER:**  Thank you, sir.

11           **THE COURT:**  Mr. DeMuro, let me back up just one

12   second.

13           I'm reminded that the current deadline to file a motion

14   for final approval is December 9th.  So I will need you to file

15   on or before December 9th a notice as to whether or not you

16   have been able to achieve approval by the contingency review

17   board.

18           **MR. DEMURO:**  Understood.

19           **THE COURT:**  All right.  So that will part of the

20   minute order here today, that plaintiffs are required to file

21   on or before December 9th whether or not contingency review

22   board approval has been achieved.  Go ahead.

23           **MR. DEMURO:**  Yes, Your Honor.  I don't want to

24   overwork the football analogy, but we are in November after all

25   in Oklahoma so it's probably apt.  But given that there seems

 1    to be widespread agreement by everyone involved, including the

 2    two -- the governor's recently appointed special counsel,

 3    although obviously we object to that appearance here, we're on

 4    the one-yard line.  I wonder if the court could entertain the

 5    suggestion of ordering the parties to an expedited -- I'll use

 6    the words "settlement conference" -- with one of our talented

 7    magistrates to be done as quickly as possible to focus on

 8    whatever that one yard is to see if we can get across the goal

 9    line.

10        Because if we can reach -- I know we're going to win

11    this case one way or the other.  If we can reach consent decree

12    agreement, it would be worth the troubles of having to redo the

13    Rule 23 process to get agreement of the parties.  We would have

14    a much more effective plan.

15        **THE COURT:**  Well, now, you've opposed the entry of

16    appearance.  Are you saying that these attorneys here could

17    participate?  When you say "agreement of the parties," are you

18    limiting yourself to the attorney general, or are you including

19    the party that wishes to be represented by new counsel?

20        **MR. DEMURO:**  I would never turn down an opportunity

21    to work with Mr. O'Connor.  So I would definitely invite them

22    assuming that the attorney general has no objection --

23        **MR. DRUMMOND:**  For purposes of the settlement.

24        **MR. DEMURO:**  -- just for purposes of the settlement

25    while preserving -- and I use the word "settlement" which is an

1    odd term in this context, but I think Your Honor knows what I

2    mean.

3         **THE COURT:**  Well, it worked in our foster care case.

4         **MR. DEMURO:**  So the answer to that question would be

5    yes.  It could resolve the thorny issue that has been brought

6    to the court's attention on the representation issue if

7    everyone comes to an agreement about the actual consent decree.

8     So I don't know how much hope I put in it, but, Judge, if

9    we're that close, it seems like it could work.

10        It would need to be done quickly and it would need to

11   be done with, I think, respectfully with one of this court's

12   talented magistrates or someone of a similar stature.

13        **THE COURT:**  Right.  I'm informed that Magistrate

14   Judge Huntsman does not have criminal duty in November and so

15   that would be a possibility.  I can see by a shaking of the

16   head, body language, the attorney general has no objection to

17   that approach; correct?

18        **MR. DRUMMOND:**  No objection.

19        **THE COURT:**  And what says Mr. Richer?

20        **MR. RICHER:**  No objection, Your Honor.

21        **THE COURT:**  All right.

22        **MR. DEMURO:**  But it would have to be quick and we

23   would all have to mind -- and this idea came to me -- we would

24   have to mind the court's admonishment that we -- me first -- we

25   dial down the rhetoric and we all work in good faith.

```
1           THE COURT:  Absolutely.  Now, remember, too, that I

2    would not have entered that order with respect to

3    out-of-custody -- or the legality of out-of-custody restoration

4    unless I was convinced that that is Oklahoma law so I don't

5    want any end-around on that.  And as I say, I'm not rendering a

6    policy judgment on that at all.  But having looked at it

7    closely, the law in my view simply does not allow that

8    currently.

9           MR. DEMURO:  Your Honor, my view, although

10   technically probably inaccurate, that's law of the case.  Your

11   ruling on that has been made.  We're not contesting that.  That

12   issue will have to be addressed, which we will do, at the

13   legislative level with the legislature.  But no intention there

14   of trying to clawback that ruling at all.  That's over.

15          THE COURT:  All right.  I'm going to have counsel,

16   lead counsel, meet me in chambers.  We'll talk about a

17   potential settlement judge, all right?  Is there anything else

18   that we need to talk about here today?

19          MR. DEMURO:  Nothing from the plaintiff.

20          MR. DRUMMOND:  Nothing from the state.

21          MR. RICHER:  Nothing, Your Honor.

22          THE COURT:  Very good.  If there's nothing further,

23   we are adjourned.  Thank you.

24              (The proceedings were concluded)

25
```

1                          C E R T I F I C A T E

2

3

4              I, Brian P. Neil, a Certified Court Reporter for the

5     Northern District of Oklahoma, do hereby certify that the

6     foregoing is a true and accurate transcription of my

7     stenographic notes and is a true record of the proceedings held

8     in above-captioned case.

9

10             I further certify that I am not employed by or related

11    to any party to this action by blood or marriage and that I am

12    in no way interested in the outcome of this matter.

13

14             In witness whereof, I have hereunto set my hand this

15    7th day of November 2024.

16

17

18                                    s/ Brian P. Neil
                             _____
19                                 Brian P. Neil, RMR-CRR
                                   United States Court Reporter

20

21

22

23

24

25