# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LESLIE BRIGGS, as next friend of<br>T.W. and B.S.,<br>EVAN WATSON, as next friend of C.R.,<br>and<br>HENRY A. MEYER, III, as next friend<br>of A.M., for themselves and for others<br>similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>ALLIE FRIESEN, in her official capacity<br>as Commissioner of the<br>Oklahoma Department of Mental Health<br>and Substance Abuse Services, and<br>DEBBIE MORAN, in her official capacity<br>as Interim Executive Director of the<br>Oklahoma Forensic Center,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 23-cv-00081-GKF-JFJ |

## OPINION AND ORDER

This matter comes before the court on the Joint Motion for Final Approval and Entry of Amended Consent Decree [Doc. 99] of plaintiffs Leslie Briggs, as next friend of T.W. and B.S.; Evan Watson, as next friend of C.R.; and Henry A. Meyer, III, as next friend of A.M., for themselves and for others similarly situated, and defendants Allie Friesen, in her official capacity as Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services and Debbie Moran, in her official capacity as Interim Executive Director of the Oklahoma Forensic Center.  For the reasons set forth below, should the Oklahoma Legislature approve the amended proposed Consent Decree, the court is prepared to certify the Class and enter the amended proposed Consent Decree as the final judgment of this court.

## Background/Procedural History

This case relates to Oklahoma's competency restoration system.  On March 1, 2023, plaintiffs filed a Class Action Complaint alleging that, due to a lack of forensic beds, persons who are declared incompetent in Oklahoma state court criminal proceedings are forced to wait prolonged periods of time to receive court-ordered competency restoration treatment and, during the waiting period, the persons receive little to no mental health treatment.  Plaintiffs asserted a claim for violation of Due Process rights secured by the Fourteenth Amendment to the U.S. Constitution, among others, and brought the case as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

Defendants originally approached this matter "from a traditional defense posture," and filed a motion to dismiss.  [Doc. 51, p. 49].  However, after "extensive due diligence," both independently and jointly with plaintiffs, the focus shifted to settlement.  [*Id.* at pp. 49-50].

On June 17, 2024, the parties filed a Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class.  [Doc. 46].  The proposed settlement consisted of a five-year Consent Decree that provided for the development and implementation of a plan "designed to reform and improve the Defendants' delivery of competency evaluations and Restoration Treatment to Class Members, including to reduce significantly the durations of time during which Class Members wait to receive Restoration Treatment." [Doc. 46-1, pp. 7, 12].  The Plan was comprised of a variety of program components, including the development and implementation of a Community-Based Restoration Treatment Pilot Program and an In-Jail Competency Restoration Pilot Program.

On August 15, 2024, the court held a hearing on the motion for preliminary approval.  [Doc. 50].  During the hearing, the court questioned whether the Oklahoma statutory competency

scheme—specifically, Okla. Stat. tit. 22, § 1175.6a—permitted outpatient restoration treatment services.

In an Opinion and Order of August 30, 2024, the court concluded that Okla. Stat. tit. 22, § 1175.6a requires that the Department assume physical custody of the person requiring competency restoration services and therefore does not permit outpatient restoration treatment. Accordingly, the court permitted the parties to submit a modified proposed Consent Decree to address the court's concern with respect to the Community-Based Restoration Treatment Pilot Program provisions. [Doc. 53].

On September 9, 2024, the parties filed the Third Joint Supplement to Joint Motion for Preliminary Approval wherein the parties agreed to modify paragraphs 21 and 68-73 of the proposed Consent Decree to make the development and implementation of the Community-Based Restoration Treatment Pilot Program contingent upon a future change in Oklahoma law permitting the Department to provide outpatient community-based restoration services. [Doc. 55].

In an Order dated September 19, 2024, the court granted the Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class, as modified by the Third Joint Supplement to Joint Motion for Preliminary Approval. [Doc. 56]. In the Order, the court preliminarily certified the following Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

[*Id.* at p. 25].  The court appointed Paul DeMuro and Frederic Dorwart of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc. as Class Counsel, and directed that notice of the proposed settlement be provided in the manner and method set forth in the Joint Motion for Preliminary Approval of Consent Decree, Class Certification, and Plan of Notice to Class, as well as emailed to members of the Oklahoma Bar Association's criminal law section.  [Doc. 56, pp. 25-26].  The Final Approval and Fairness Hearing was set for January 15, 2025 at 9:30 a.m.  [*Id.* at p. 26].

However, pursuant to Okla. Stat. tit. 51, § 200,

[n]o agency, board or commission, public officer, official or employee of the State of Oklahoma shall, without the approval of the Oklahoma State Legislature when it is in regular session, or by the Contingency Review Board, when the Legislature is not in regular session, enter into any default or agreed judgment, consent decree or other settlement of any litigation or claim against this state which would require a settlement expenditure in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) or the creation, modification or implementation of a court-ordered or legislatively authorized plan or program which would necessitate an appropriation by the Legislature in excess of Two Hundred Fifty Thousand Dollars ($250,000.00). . . .  Any default or agreed judgment, consent decree or other settlement entered into in violation of this section shall be void.

On October 8, 2024, the Contingency Review Board disapproved of the proposed Consent Decree. [Doc. 57].

The court subsequently held a Status Conference during which the parties agreed to participate in a settlement conference before Adjunct Settlement Judge T. Lane Wilson.  [Doc. 78].  During the settlement conference, held on November 13, 2024, the parties reached an agreement as to an amended proposed Consent Decree and, on November 19, 2024, the parties filed the Joint Motion for Preliminary Approval of Amended Consent Decree.[1]

---

[1] Modifications to the original proposed Consent Decree included a revised definition of "Best Efforts," changes to the provisions related to cessation of the existing In-Jail Competency Restoration Program, and inclusion of an "off-ramp" provision as to the Decree's five-year term. *See* [Doc. 86].

4

In an Order of November 20, 2024, the court granted the Joint Motion for Preliminary Approval of the amended proposed Consent Decree.  [Doc. 87].  In that Order, the court stated that the Class remained preliminarily certified and appointed Paul DeMuro, Frederic Dorwart, and David Leimbach of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc. as Class Counsel.  [*Id.* at p. 12].  Additionally, the court approved the Amended Notice of Proposed Class Action Settlement and directed that, on or before December 4, 2024, the Amended Notice be provided as set forth in the Joint Motion for Preliminary Approval of Amended Consent Decree.  [*Id.*].  The court set a December 30, 2024 deadline for Class Members to postmark or submit written objections or comments.  The Final Approval and Fairness Hearing remained set for January 15, 2025 at 9:30 a.m.  [*Id.*].

In advance of the Final Approval and Fairness Hearing, plaintiffs' counsel submitted the written objections and comments received by Class Counsel in response to the Notice and Amended Notice.  [Doc. 95; Doc. 96; Doc. 98].

On January 9, 2025, the parties filed the Joint Motion for Final Approval and Entry of Amended Consent Decree.  [Doc. 99].

The court held the Final Approval and Fairness Hearing on January 15, 2025.  No Class Members or other persons appeared to object.  [Doc. 101].

## Standard

Pursuant to Federal Rule of Civil Procedure 23, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable,

and adequate." Fed. R. Civ. P. 23(e)(2). To make that determination, the court must consider whether

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, the Tenth Circuit has directed courts to consider the following factors:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (emphasis altered from original).

## Certification of Class for Purposes of Judgment

Federal Rule of Civil Procedure 23(a) sets forth four threshold requirements for class certification: (1) the class is so *numerous* that joinder of all members is impracticable

[**numerosity**]; (2) there are questions of law or fact *common to the class* [**commonality**]; (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class [**typicality**]; and (4) the representative parties will fairly and *adequately protect* the interests of the class [**adequacy**]. *CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). Additionally, the party seeking certification must satisfy one of the provisions of Rule 23(b). *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013). In this case, plaintiffs seek class certification pursuant to Rule 23(b)(2), which applies where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

As stated above, in an Order dated September 19, 2024, the court concluded that the requirements of Rule 23(a) and Rule 23(b)(2) were preliminarily satisfied, and the court would likely be able to certify the Class for purposes of the original consent decree—*i.e.* the proposed settlement agreement. [Doc. 56, p. 12]. Thus, the court preliminarily certified the Class. [*Id.*].

In its November 20, 2024 Order regarding the motion for preliminary approval of the amended proposed Consent Decree, the court concluded that nothing in the amended proposed Consent Decree altered the court's prior analysis and therefore the Class remained preliminarily certified. [Doc. 87, pp. 5-6].

For substantially the same reasons as those set forth in the court's September 19 and November 20, 2024 Orders, and based on court's review of the filings in this matter and the statements made during the January 15, 2025 hearing, the requirements of Rule 23(a) and Rule 23(b)(2) are satisfied. Accordingly, the court certifies the following Class for purposes of settlement:

> All persons who are now, or will be in the future, charged with a crime in Oklahoma State court and are: (i) declared incompetent to stand trial by the state court; (ii) court-ordered to receive competency restoration services by the Department or its designees; (iii) incarcerated in a county jail or similar detention facility while their criminal cases are stayed; and (iv) awaiting court-ordered competency restoration services to be provided by the Department or its designees, whether or not placed on a competency waitlist maintained by the Department or its designees.

[Doc. 99, p. 3 n.2].

### Appointment of Class Counsel

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). "In appointing class counsel, the court[] must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A) (formatting altered from original).

For the reasons set forth in the court's September 19 and November 20, 2024 Orders, as well as the court's observation of Class Counsel's vigorous prosecution of this matter, the court concludes the Class Counsel will fairly and adequately represent the Class. Accordingly, the court appoints Paul DeMuro, Frederic Dorwart, and David Leimbach of Frederic Dorwart, Lawyers PLLC, and Nick Southerland and Brian Wilkerson of the Oklahoma Disability Law Center, Inc. as Class Counsel.

### Approval of the Amended Proposed Consent Decree

As previously stated, to determine whether a settlement is "fair, reasonable, and adequate," the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

8

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, the court considers the four factors articulated by the Tenth Circuit. *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d at 1087. The first three factors articulated by the Tenth Circuit generally overlap with the Rule 23 factors. *See CO Craft, LLC v. Grubhub Inc.,* No. 20-CV-01327-NYW-NRN, 2023 WL 3763525, at *4 (D. Colo. June 1, 2023); *Cisneros v. EP Wrap-It Insulation*, *LLC*, No. CIV-19-500-GBW-GJF, 2021 WL 2953117, at **5-6 (D.N.M. July 14, 2021). Accordingly, the court "evaluates the Rule 23(e)(2) and Tenth Circuit factors in combined fashion," but separately addresses the Tenth Circuit's fourth factor. *Krant v. UnitedLex Corp.,* No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *2 n.2 (D. Kan. Dec. 20, 2024).

A.    *Adequate Representation of the Class by the Class Representatives and Counsel*

No objector has alleged that a conflict of interest exists or inadequate representation by either Class Counsel or the Class Representatives. Further, Class Counsel has vigorously prosecuted this matter, including resolutely pursuing settlement of this matter through the Consent Decree. Accordingly, for substantially the same reasons as those set forth in its September 19 and November 20, 2024 Orders, as well as review of the docket in this matter, the court concludes that the Class Representatives and Class Counsel have adequately represented the Class. *See In re*

*Samsung Top-load Washing Mach. Mktg., Sale Pracs. & Prods. Liab.*, Case No. 17-ML-2792-D, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020) (collecting cases) ("Courts analyze th[is] first procedural factor, adequacy of representation, in the same manner that they evaluate adequacy under Rule 23(a)(4)"). Thus, this Rule 23(e) factor is satisfied and weighs in favor of approval.

     *B.*    *Arm's Length Negotiations*

The court notes that negotiation of the amended proposed Consent Decree preceded before Adjunct Settlement Judge T. Lane Wilson. [Doc. 82]. "There is a presumption in favor of a finding that negotiations were fair when they were conducted before a third-party mediator." *Cisneros v. EP Wrap-It Insulation, LLC,* No. 19-500-GBW-GJF, 2022 WL 2304146, at *5 (D.N.M. June 27, 2022). Further, the parties have submitted evidence that they reviewed voluminous documents, visited relevant locations including the OFC and the David L. Moss Criminal Justice Center, independently consulted third-party experts, and interviewed stakeholders, including former executive director of the OFC Crystal Hernandez and former party Carrie Slaton-Hodges. *See* [Doc. 48, pp. 25-31; Doc. 48-5; Doc. 49-1; Doc. 49-2; Doc. 51, pp. 50-51]. Thus, the court is satisfied that the amended proposed Consent Decree was the result of fair, honest, and arm's length negotiations and this factor weighs in favor of approval.

     *C.*    *Adequacy of Relief*

The court must next consider whether the relief provided to the Class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

1.    <u>Costs, Risks, and Delay of Trial and Appeal</u>

This Rule 23(e) factor overlaps with the second and third Tenth Circuit factors—that is, "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" and "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). "Legal complexity, factual complexity, even complexity in one portion of the case (such as determining damages), all weigh in favor of settlement." 4 William B. Rubenstein, <u>Newberg on Class Actions</u> § 13:52 (6th ed. 2024) (internal footnote omitted).

Based on the court's review, serious and complex questions of law exist and, as a result, risks exist if the case proceeds to trial. As previously stated, plaintiffs assert that the delay in competency restoration treatment violates their right to substantive due process under the Fourteenth Amendment. Substantive due process has been "vociferously debated," *Bledsoe v. Carreno*, 53 F.4th 589, 605 (10th Cir. 2022), and "provide[s] few 'guideposts for responsible decisionmaking.'" *Browder v. City of Albuquerque,* 787 F.3d 1076, 1084 (10th Cir. 2016) (Gorsuch, J., concurring) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Thus, the outcome of the litigation remains in doubt and a risk exists that, if this matter proceeded to trial, plaintiffs would not receive the requested relief.

As to the third Tenth Circuit factor—whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation—this factor is satisfied. In the Complaint, plaintiffs request injunctive relief "ordering Defendants to develop a remedial plan to reduce wait times for competency restoration treatment to within constitutional limits." [Doc. 2, p. 32]. The amended proposed Consent Decree constitutes a plan to reduce wait times. Thus, "settlement means that change will come more quickly." *Hunter v. Beshear,* No. 16-

11

CV-798-MHT, 2018 WL 564856, at *11 (M.D. Ala. Jan. 25, 2018). Further, settlement avoids the "immense" costs [Doc. 48, p. 31] of "full-tilt adversarial litigation" in this matter, including the expense of the contested temporary restraining order and preliminary injunction hearings requested by plaintiffs should this matter not resolve. [Doc. 80, p. 15].

Based on the foregoing, the Fed. R. Civ. P. 23(e)(2)(C)(i) factor weighs in favor of approval.

### 2.    Effectiveness of Proposed Method of Distributing Relief to the Class

Rule 23 next requires the court to consider the effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims. This factor "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and the court "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments.

The court first notes that Class Members need not make a "claim" to receive the proposed remedy—timely competency restoration treatment. Rather, all Class Members are entitled to relief by virtue of membership in the Class. Further, in their Combined Declaration, William Neil Gowensmith, Ph.D and Lauren Elizabeth Kois, Ph.D. previously opined that, based on their professional experience, education, and training, "the Plan and Consent Decree, if successfully implemented, will reduce wait times to competence evaluations and competence restoration for Oklahoma's Class Members." [Doc. 48-5, p. 20]. During the January 15 hearing, the parties stipulated that the timeframes included in the amended proposed Consent Decree are reasonable. Finally, the court received no objections regarding the proposed timeframes.

For the foregoing reasons, the court concludes that the amended proposed Consent Decree is an effective method of distributing relief to the Class and the Rule 23(e)(2)(C)(ii) factor weighs in favor of approval.

### 3.    Terms of any Proposed Award of Attorney's Fees

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments.

As recognized by the court in its September 19, 2024 Order, if plaintiffs were to prevail, Class Counsel would be entitled to attorney's fees pursuant to 42 U.S.C. § 1988, which permits "a reasonable attorney's fee" in an action pursuant to 42 U.S.C. § 1983.  [Doc. 56, p. 18 (citing 42 U.S.C. § 1988(b); *Maher v. Gagne*, 448 U.S. 122 (1980))].  To determine the "reasonableness" of the requested award, the court must apply the lodestar method.  *Hensley v. Eckerhart,* 461 U.S. 424, 433-35 (1983).  Pursuant to that method, the court "arrive[s] at a 'lodestar' figure by multiplying the hours . . . counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Jane L. v. Bangerter,* 61 F.3d 1505, 1517 (10th Cir. 1995)).

For attorney's fees incurred prior to submission of the Joint Motion for Preliminary Approval, Class Counsel seeks fees at an effective hourly rate of $283.15 for Frederic Dorwart lawyers and $219.60 for Oklahoma Disability Law Center attorneys.[2]  Going forward, Class Counsel requests attorney's fees in the amount of $325 per hour.  [Doc. 99-1, p. 41, ¶¶ 101-103]. These are reasonable hourly rates in the Tulsa market.  *See SFF-TIR, LLC v. Stephenson,* 452 F. Supp. 3d 1058, 1196 (N.D. Okla. 2020); *Busby v. City of Tulsa,* No. 11-CV-447-JED-JFJ, 2018

---

[2] The parties arrived at the effective hourly rate by dividing the total sum sought by the total hours worked.

WL 7286180 (N.D. Okla. Oct. 23, 2018); *Bowles-Snailer v. Texoma Labs, Inc*., No. CIV-22-139-RAW-GLJ, 2023 WL 6129488, at *2 (E.D. Okla. Sept. 19, 2023) (considering Tulsa market rates and approving $400 hourly rate). Likewise, having reviewed the invoices submitted, the court concludes that the hours were reasonably expended. Finally, neither the defendants nor any Class Member has objected to the requested attorney's fees. *See* Fed. R. Civ. P. 23(h)(2). Thus, the Rule 23(e)(2)(C)(iii) factor weighs in favor of approval.

### 4.    Agreement Required to be Identified Under Rule 23(e)(3)

"Under this factor, the parties are required to file a statement identifying any agreement made in connection with the proposal." *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. CIV-19-940-GJF, 2021 WL 1339305, at *8 (D.N.M. Apr. 9, 2021) (internal quotations omitted). The parties have filed the amended proposed Consent Decree [Doc. 99-1], and no additional agreements exist. [Doc. 99, p. 11 n.8]. Thus, the Rule 23(e)(iv) factor is satisfied and weighs in favor of approval.

### 5.    Other Adequacy Concerns

In addition to the articulated subfactors, Rule 23(e)(2)(C) generally directs the court to consider whether the relief is adequate. 4 Newberg on Class Actions § 13:51.

#### a.    *Jackson* factors

Because the proposed relief is a consent decree, the court must consider three factors. *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1192 (10th Cir. 2018). "First, a federal consent decree must 'be remedial in nature' and thus 'designed as nearly as possible to restore the victims of [illegal] conduct to the position they would have occupied in the absence of such conduct.'" *Jackson,* 880 F.3d at 1192 (quoting *Milliken v. Bradley*, 433 U.S. 267, 280 (1977)). "Second, the nature and scope of the remedy provided . . . must directly address and relate to the

14

[federal-law] violation itself." *Jackson,* 880 F.3d at 1192.  That is, "it must be 'tailored to cure the condition that offends' federal law."  *Id.* (quoting *Milliken*, 433 U.S. at 282).  "Third, federal courts 'must take into account the interests of state and local authorities in managing their own affairs,' consistent with the demands of federal law."  *Jackson,* 880 F.3d at 1192 (quoting *Milliken*, 433 U.S. at 280-81).  Having reviewed the amended proposed Consent Decree in light of these factors, the foregoing factors are satisfied.

b.    Consistency with Governing Law

Additionally, the consent decree must be consistent with governing law.  *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland,* 478 U.S. 501, 525-26 (1986); *McClendon v. City of Albuquerque,* 79 F.3d 1014, 1021 (10th Cir. 1996).  For the reasons set forth in the court's Opinion and Order of August 30, 2024, the Community-Based Restoration Treatment Pilot Program provisions of the original proposed Consent Decree would violate Oklahoma law. [Doc. 53].  In the amended proposed Consent Decree, the Department agrees to use "Best Efforts" to obtain passage of Oklahoma legislation that permits it to provide community-based outpatient competency restoration services."  Further, the amended proposed Consent Decree conditions implementation of the Community-Based Restoration Treatment Pilot Program on a change in Oklahoma law to permit the Department to provide outpatient community-based restoration services.  [Doc. 99-1, pp. 27-28, ¶¶ 68-69].  Having reviewed the proposed amendments, the court concludes that they are consistent with Oklahoma law.  Further, based upon its review, the court is satisfied that the remaining provisions of the amended proposed Consent Decree are consistent with Oklahoma law.

Oklahoma law imposes an additional statutory requirement with respect to consent decrees of this nature.  Okla. Stat. tit. 50, § 200(A).  Pursuant to Okla. Stat. tit. 51, § 200,

> [n]o agency, board or commission, public officer, official or employee of the State of Oklahoma shall, without the approval of the Oklahoma State Legislature when it is in regular session, or by the Contingency Review Board, when the Legislature is not in regular session, enter into any default or agreed judgment, consent decree or other settlement of any litigation or claim against this state which would require a settlement expenditure in excess of Two Hundred Fifty Thousand Dollars ($250,000.00) or the creation, modification or implementation of a court-ordered or legislatively authorized plan or program which would necessitate an appropriation by the Legislature in excess of Two Hundred Fifty Thousand Dollars ($250,000.00). . . . Any default or agreed judgment, consent decree or other settlement entered into in violation of this section shall be void.

Okla. Stat. tit. 51, § 200(A) (emphasis added). Thus, the statute prohibits the State from entering into a consent decree without legislative approval or approval of the Contingency Review Board when the Legislature is not in regular session.

Neither the Oklahoma Legislature nor the Contingency Review Board have approved the amended proposed Consent Decree. In the motion for final approval, the parties explain that the Contingency Review Board cannot be convened after January 7, 2025 because, under Oklahoma's Constitution, the regular session of the Legislature was deemed to begin on January 7, 2025. [Doc. 99, pp. 9-10; Doc. 99-3]. Thus, the parties intend to obtain the approval of the Oklahoma Legislature and "have committed to use their best efforts to obtain approval." [Doc. 99, p. 10]. However, the State *cannot* yet enter into the settlement agreement and there can be no judgment by consent until the legislature approves it. *See generally Sawyer v. Mid-Continent Petroleum Corp.*, 236 F.2d 518, 522 (10th Cir. 1956) ("Since the compromise agreement was never consummated, there could be no consent judgment.").

Based on the foregoing, the court concludes that the amended proposed Consent Decree is remedial in nature, sufficiently narrowly tailored, and consistent with Oklahoma law, provided that it is approved by the Oklahoma Legislature. Thus, these considerations weigh in favor of approval.

16

c.    Objections and Comments

Finally, the court has considered the comments received from Class Members and other interested persons with respect to the adequacy of relief.  Based on its review, the court construes only one comment as an objection.[3]  Specifically, one Class Member objected to the amended proposed Consent Decree's provision regarding "Best Efforts,"[4] stating as follows:  "I agree & have no objections to the original ruling but have reservations about the amendments.  I feel that the 'good faith' exceptions allows [*sic*] defendant to squirl [*sic*] out of any monetary losses they may have in past & future misdeeds."  [FDL-000240].

Cases and commentary interpreting Rule 23 indicate that the court must provide a "reasoned response" to class members' objections.  4 <u>Newberg on Class Actions</u> § 13:30; *see also In re Motor Fuel Temperature Sales Pracs. Litig*., 827 F.3d 1094, 1120 (10th Cir. 2017).  The court has considered the Class Member's objection and is sympathetic to the concern expressed

---

[3] Although the court does not interpret any other comment to include an objection, insofar as any other comment *could be* liberally construed as an objection, such objection does not satisfy Rule 23's specificity requirement.  *See* Fed. R. Civ. P. 23(e)(5) ("The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.").  As recognized by the advisory committee's notes to Rule 23, "objections must provide sufficient specifics to enable the parties to respond to them *and the court to evaluate them*."  Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments (emphasis added).

[4] The original Consent Decree prohibited defendants from using lack of legislative funding as an excuse for failure to use "Best Efforts," which was defined as "taking reasonable steps, actions and measures, consistent with best professional standards, practices and guidelines to accomplish or bring about the intended and described result."  [Doc. 46-1, p. 9].  The amended proposed Consent Decree provides that defendants may not use lack of legislative funding as an excuse for failure to use Best Efforts, ***unless*** "the Department first demonstrates that (i) the Department used good faith efforts to obtain the needed legislative funding; (ii) separate and apart from the claimed funding deficiency, the Department otherwise took reasonable steps, actions, and measures, consistent with best professional standards, practices, and guidelines to accomplish or bring about the intended and described result; and (iii) the lack of legislative funding must outweigh collectively all other causes of a failure of Best Efforts."  [Doc. 99-1, pp. 9-10, ¶ 18].

therein, particularly in light of the wait-times Class Members presently face. However, based on the court's review, nothing in Oklahoma law prohibits the "Best Efforts" provision.

Further, the court notes that the provision imposes a high burden on defendants to show, not only that they used good-faith efforts to obtain the necessary legislative funding, but also, that they "*otherwise* took reasonable steps, actions, and measures, consistent with best professional standards, practices and guidelines" to bring about the intended result—*i.e.*, implementation of the Plan. [Doc. 99-1, pp. 9-10 (emphasis added)]. Accordingly, defendants must make a demonstrated effort to achieve the goals of the amended proposed Consent Decree and cannot simply rely on a lack of legislative funding to "squirrel" out of their obligations.

Finally, the parties represent that the provision was "required to secure the approval of the Governor and the individual Defendants," [Doc. 99, p. 8], a necessary political reality in light of the requirements of Okla. Stat. tit. 51, § 200. The court is mindful that it "'must take into account the interests of state and local authorities in managing their own affairs,' consistent with the demands of federal law." *Jackson,* 880 F.3d at 1192 (quoting *Milliken*, 433 U.S. at 280-81). "Indeed, principles of federalism require that federal courts give 'significant weight to the views of government officials,' and that 'state officials with front-line responsibility for administering [a state program] be given latitude and substantial discretion.'" *Jackson,* 880 F.3d at 1192 (quoting *Frew v. Hawkins*, 540 U.S. 431, 442 (2004)). For all of these reasons, the court respectfully overrules the Class Member's objection.

In addition to the single objection, another Class Member raised a question as to whether clinical psychologists and other "qualified forensic examiners" could lawfully diagnosis mental health disorders. [FDL-00089]. The amended proposed Consent Decree provides that "Qualified Forensic Examiners" shall perform competency evaluations, which is consistent with Oklahoma

law.  *See* Okla. Stat. tit. 22, §§ 1175.3(D) and 1175.6a (authorizing competency evaluation by "qualified forensic examiners").  Further, the court has reviewed the definition of "Qualified Forensic Examiner" included in the amended proposed Consent Decree and it is consistent with the statutory definition included in § 1175.1.  Thus, the court is satisfied that the provisions permitting "qualified forensic examiners" to perform competency evaluations are consistent with Oklahoma law.

For all of the reasons discussed above, the court concludes that the amended proposed Consent Decree provides adequate relief to the Class and this factor weighs in favor of approval.

      D.     *Equitable Treatment of Class Members Relative to Each Other*

The court must next consider whether the Consent Decree "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments.  "Other considerations relevant to the equitable treatment of class members include the allocation of incentive awards to class representatives."  *Cisneros*, 2021 WL 2953117, at *9.

The amended proposed Consent Decree does not include any incentive payments or enhanced awards for the class representatives.  Further, Dr. Gowensmith and Dr. Kois previously opined that the original proposed Consent Decree applied uniformly in that it provided the same benefit to Class Members—reduction of wait times for competency restoration treatment services.  Thus, although Class Members may receive different forms of treatment, all Class Members would timely receive restorative treatment and all program components will reduce the overall restoration

wait times.  [Doc. 48-5, pp. 7-8]; *see also* [Doc. 51, p. 57].  Having reviewed the amended proposed Consent Decree, nothing therein alters Dr. Gowensmith's or Dr. Kois's opinions.  Accordingly, under the amended proposed Consent Decree, all Class Members will timely receive restorative treatment and all program components will reduce the overall restoration wait times.  Thus, the court is satisfied that the proposed settlement treats Class Members equitably relative to each other and this factor weighs in favor of approval.

       E.      *Judgment of the Parties That the Settlement is Fair and Reasonable*

In the Joint Motion for Preliminary Approval, the parties stipulated that the original proposed Consent Decree was fair and reasonable and the parties have incorporated that stipulation by reference.  [Doc. 46, p. 15; Doc. 86, pp. 1-2; Doc. 99, pp. 2-3].  Further, during the November 18 Status Conference, attorney John Richer stated that Commissioner Friesen and Interim Executive Director Moran, in their official capacity, are in agreement with the amended proposed Consent Decree.[5]  [Doc. 92, pp. 8-9].  And, in the motion for final approval, the parties stipulate that the amended proposed Consent Decree is "fair, reasonable and adequate" to the Class in consideration of the Rule 23(e) factors.  [Doc. 99, p. 11].  Thus, this Tenth Circuit factor weighs in favor of approval.

       F.      *Conclusion*

Based on foregoing, the court concludes that the proposed settlement—*i.e.,* the amended proposed Consent Decree—is "fair, reasonable, and adequate."

---

[5] At the hearing held January 15, 2025, counsel for the plaintiffs, the Attorney General, and retained counsel for the defendants all voiced agreement with the amended proposed Consent Decree, and all shall be signatories to the final decree.

**Notice to Settlement Class**

Rule 23(e) provides that "[t]he court must direct notice *in a reasonable manner* to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added). Likewise, for classes certified under Rule 23(b)(2), the court should "direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). In all cases, the notice must satisfy due process. *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

In the motion for final approval, the parties state that, to effectuate service of the Notice, Class Counsel retained the services of JND Legal Administration. Class counsel certifies that, on or before the September 30, 2024 deadline, Class Counsel: (1) through JND, issued the original Notice to all required persons as directed by the court; and (2) emailed the original Notice to the Criminal Law Section of the Oklahoma Bar Association. [Doc. 99, p. 6]. Additionally, on or before the December 4, 2024 deadline, Class Counsel: (1) through JND, issued the Amended Notice to all required persons as directed by this court, and (2) emailed the Amended Notice to the Criminal Law Section of the Oklahoma Bar Association. [*Id.* at pp. 6-7]. A total of fifty-three people provided written comments, forty-six of which were Class Members. [*Id.* at p. 7].

The court concludes that the Notice and Amended Notice were fair, reasonable, and "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." *Tennille*, 785 F.3d at 436. Further, the method of notice was reasonably calculated to ensure the best practicable notice under the circumstances and consistent with due process. Thus, the notice procedures were reasonable, appropriate, and satisfied the requirements of both Rule 23 and due process.

**Conclusion**

WHEREFORE, for the reasons set forth herein, upon the Oklahoma Legislature's approval of the amended proposed Consent Decree, the court is prepared to grant the Joint Motion for Final Approval and Entry of Amended Consent Decree [Doc. 99], certify the class, and enter the amended proposed Consent Decree as the final judgment of this court.

IT IS FURTHER ORDERED that plaintiffs are directed to file a Notice advising the court of the approval or disapproval of the amended proposed Consent Decree by the Oklahoma Legislature within three (3) business days of that legislative action.

IT IS SO ORDERED this 15th day of January, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE