IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

LESLIE BRIGGS, as next friend      )
of T.W. and B.S.; EVAN WATSON,     )
as next friend of C.R.; and,       )
HENRY A. MEYER, III, as next       )
friend of A.M., for themselves     )
and for others similarly situated, )
                                   )
            Plaintiffs,            )
                                   )
v.                                 ) Case No.  23-cv-81-GKF-JFJ
                                   )
ALLIE FRIESEN, in her official     )
capacity as Commissioner of the    )
Oklahoma Department of Mental      )
Health and Substance Abuse         )
Services; and DEBBIE MORAN, in     )
her official capacity as Interim   )
Executive Director of the Oklahoma )
Forensic Center,                   )
                                   )
            Defendants.            )

TRANSCRIPT OF FAIRNESS HEARING

**BEFORE THE HONORABLE GREGORY K. FRIZZELL**

**UNITED STATES DISTRICT JUDGE**

JANUARY 15, 2025

*REPORTED BY:*       ***BRIAN P. NEIL, RMR-CRR***
                   ***United States Court Reporter***

1              A P P E A R A N C E S

2

3          **Frederic Dorwart, Paul DeMuro, and David W. Leimbach,**
   Attorneys at Law, Frederic Dorwart Lawyers, 124 East 4th
4  Street, Tulsa, Oklahoma, 74103, attorneys on behalf of the
   Plaintiffs;

5
           **Nicholas Southerland,** Attorney at Law, Oklahoma
6  Disability Law Center, 5555 East 71st Street, Suite 9100,
   Tulsa, Oklahoma, 74136, attorney on behalf of the Plaintiffs;

7

8

9          **Gentner F. Drummond,** Attorney General, **Erin Moore** and
   **Tracy Neel,** Office of Oklahoma Attorney General, 313 N.E. 21st
10 Street, Oklahoma City, Oklahoma, 73105, attorneys on behalf of
   the Defendants;

11
           **William W. O'Connor and Brian T. Inbody,** Attorneys at
12 Law, Hall Estill, 521 East 2nd Street, Suite 1200, Tulsa,
   Oklahoma, 74120, attorneys on behalf of the Defendants.

13

14

15

16

17

18

19

20

21

22

23

24

25

1          Wednesday, January 15, 2025

2                      * * * * *

3          **DEPUTY COURT CLERK:**  This is Case No.

4   23-CV-081-GKF-JFJ, Leslie Briggs, et al., v. Allie Friesen, et

5   al.  Counsel, please state your appearances for the record.

6          **MR. DEMURO:**  Good morning, Your Honor.  May it

7   please the court, on behalf of the plaintiffs and plaintiffs'

8   class are class counsel Paul Demuro, Frederic Dorwart, David

9   Leimbach.  Also class counsel Nick Southerland is here as well

10  from the Oklahoma Disability Law Center.

11         We also have personally present at your instruction,

12  Your Honor, the next friends, the lawyer representative,

13  guardian representatives of the original named plaintiffs in

14  the case, Leslie Briggs from Tulsa, Evan Watson from Lawton,

15  and Hank Meyer from Oklahoma City.  We're very grateful to have

16  them here.

17         We're also accompanied today by Neil Gowensmith, one of

18  the named consultants in the consent decree and one of the

19  chief consultants in the drafting of the consent decree.  Also,

20  Dr. Crystal Hernandez is with us, the former defendant who has

21  also submitted affidavits in this matter.  Thank you, Your

22  Honor.

23         **THE COURT:**  Good morning.

24         **MR. DRUMMOND:**  Morning, Judge.  Gentner Drummond on

25  behalf of the State of Oklahoma.  Appearing with me are Erin

1    Moore and Tracy Neel.  I'd like to also acknowledge and have

2    the court to be aware that Steve Kunzweiler, elected District

3    Attorney for the Tulsa County, is present, as well as Dr. Kathy

4    LaFortune.  Thank you.

5                **THE COURT:**  Good morning.

6                **MR. O'CONNOR:**  Your Honor, Bill O'Connor and Brian

7    Inbody for the defendants.

8                **THE COURT:**  Good morning.  And with regard to the

9    issues concerning representation, it's my understanding that

10   the Oklahoma Supreme court is likely to make a decision with

11   regard to the issues arising in another case.  As I understand

12   it, the case is pending in the U.S. District Court in the

13   District of Columbia.  And although this court has some

14   definite opinions with regard to the law, my opinions, frankly,

15   are not controlling because it will be the decision of the

16   Oklahoma Supreme Court that will guide this court in resolving

17   those two issues.

18           So at least for today's purposes, as in the case of

19   approval of this consent decree, we'll obviously allow both the

20   Attorney General and the attorneys proposed by Director Friesen

21   to speak because they obviously were part and parcel of the

22   agreement.

23           So Newberg on Class Actions suggests that hearings such

24   as the one today proceed in four stages.  First, the settling

25   parties formally propose the settlement to the court for final

 1   approval walking the court through the terms of the settlement.

 2   The counsel present are familiar with the requirements of

 3   Federal Rule of Civil Procedure 23 as well as the four

 4   threshold requirements for class certification.  We've

 5   addressed those.  I think class certification requirements are

 6   fairly clear.

 7        But, Mr. Demuro, you may proceed, sir.

 8        **MR. DEMURO:**  Thank you, Your Honor.  May it please

 9   the court, yes, today we are requesting that the court grant

10   final approval to what we have called the "amended consent

11   decree" and also issue a contingency that the final approval is

12   contingent upon the Oklahoma legislature in a joint resolution

13   approving the amended consent decree, and the Attorney General

14   will speak to that piece of what we anticipate will be a prompt

15   legislative approval.  The Attorney General will speak directly

16   to that and I'll leave that to my colleague to do that.

17        You know, as I was preparing for this hearing and going

18   over the history of this case, Your Honor, the phrase that came

19   to mind was "iron sharpening iron."  And what do I mean by

20   that?

21        **THE COURT:**  I think that's appropriate.

22        **MR. DEMURO:**  This court -- in a couple of different

23   ways, this court has engaged in extremely active, diligent

24   analysis and oversight of the consent decree process as is this

25   court's duty.  As a result of that, the product that we have

1    here before you today is a superior product, a superior

2    document to when we started, legally unassailable in my view.

3    There is no reasonable observer that could look at this process

4    and come to any other conclusion, that this court has become

5    fully apprised and is fully informed of the amended consent

6    decree provisions and all the requirements of Rule 23.

7              **THE COURT:**  Well, frankly, I didn't think of myself

8    as one of the pieces of iron; I was thinking about you all.

9    But in any event, go ahead.

10             **MR. DEMURO:**  Well, and that certainly was the second

11   point of that, why that phrase is useful and I think

12   illustrates where we're at.

13             And just a brief history here for the record, because I

14   think Newberg also says on class actions on what the court's

15   role here is in final-approval stages is to make sure it's

16   adequately informed about the Rule 23 factors, a lot of

17   discretion that the court has to come to that place.

18             But if you look at the history, Judge, of when we filed

19   our first motion for preliminary approval that was back in June

20   of 2023 -- excuse me -- June of 2024, docket 46, shortly after

21   that the court issued an extensive order, docket 47, that told

22   us, quite frankly, that your filing was deficient and needed to

23   be bolstered by additional information that the court needed to

24   assess preliminary approval under a different Rule 23

25   preliminary approval standard where we had to show that final

1    approval was likely.

2         That resulted in a round of supplemental briefings

3    where we submitted at docket 48 our first supplemental brief

4    where we did a long exposition -- shouldn't say long -- an

5    adequate exposition of the due process underpinnings of the

6    claim that's at issue here and the very clear due process

7    interests and rights that are at stake and they're being

8    violated every day.

9         We did a detailed pronouncement of the negotiation

10   process to satisfy the court that this was the amended -- the

11   original consent decree was the product of arm's length

12   negotiations, that the Attorney General's Office took first a

13   traditional defense posture and filed a motion to dismiss.  But

14   then, in my view, very courageously and justly and accurately

15   the Attorney General, after looking at this case and studying

16   the data, quickly came to the conclusion that the due process

17   rights of these class members are being violated, and not only

18   is it compromising the due process rights of the class members,

19   but it's compromising the criminal justice system in Oklahoma

20   in providing prompt relief for crime victims for having these

21   cases stalled.  And so we moved quickly into the procedure of

22   trying to fashion a remedy.

23         The supplemental briefing didn't stop there, Your

24   Honor.  Your Honor had ordered us to provide more briefing on

25   the attorneys' fees.  In response to that, we provided very

1    robust documentation that satisfied the court with respect to

2    the reasonableness of the fees.  We had a hearing on August

3    15th, a very detailed hearing.  Your Honor expressed some

4    misgivings about the community-based restoration of the plan

5    and whether or not the outpatient provisions complied with

6    Oklahoma law.

7          You asked for supplemental briefing on that so we filed

8    a third supplement addressing that issue, and Your Honor

9    ultimately ruled, as you know, in your second substantive order

10   on the consent decree that, in fact, the court's view was that

11   the community-based restoration program, insofar as it

12   permitted outpatient treatment of class members, didn't comport

13   with Oklahoma law.

14         You asked us to go back to the drawing board

15   essentially on that provision, which we did, resulting in

16   another -- a fourth supplemental, I'll say, to the original

17   briefing where we fashioned a contingent -- what we call a

18   "contingent community-based program" where that will only kick

19   in if and when the legislature modifies the law to comply with

20   the court's ruling and modifies Oklahoma law to permit the type

21   of outpatient treatment that we all think would help this

22   problem and we hope that the legislature in its wisdom will see

23   that too.

24         Of course, that wasn't the end of it.  After we

25   submitted the supplemental briefing and the contingency and

1    proposed the contingency component of the community-based plan,

2    the court did grant a preliminary approval of the original

3    consent decree.  In that preliminary approval, the court took

4    great pains to specify additional notice requirements that the

5    court felt necessary, particularly future class members, and

6    recommending that we give notice to the Oklahoma bar criminal

7    defense -- excuse me -- yeah, the criminal division of the

8    Oklahoma bar.

9        The point being here is that the court did an active

10   review of the consent decree, the notice provisions, a second

11   time -- this is the original consent decree -- and instructed

12   us to proceed in a manner consistent with due process and Rule

13   23, which we did.

14       Thereafter, the governor, Governor Stitt, filed his

15   letter notifying the court of the down-vote by the contingency

16   review board that had voted against the consent decree in its

17   then current configuration and that caused some concern about

18   where we go.

19       The court promptly held a status conference on October

20   1st, 2024, and at the plaintiffs' suggestion at the end of that

21   conference, that we -- we were close to a deal and we ought to

22   try to see if we can reach a deal and get across the goal line,

23   I think the analogy was, and we should go to a settlement

24   conference.

25       The court granted that -- or acceded to that idea and

```
 1   under the great contribution of the adjunct settlement judge,

 2   Lane Wilson, in his great efforts and the folks from Hall

 3   Estill who had entered their appearance who -- again, this is

 4   the iron sharpening iron -- an eleven- to thirteen-hour

 5   mediation settlement conference, depending on who was keeping

 6   score of the time, and what resulted from that process in my

 7   view was a stronger document, a stronger document in the

 8   fundamental sense that it now has the absolute approval,

 9   personal approval, of the defendants and particularly the

10   commissioner.  You know, these type of consent decrees work

11   best when all sides have agreed, all key stakeholders have

12   agreed.  That's how they work.  So in that sense, the documents

13   were better, became sharper, became better.  We made some

14   modifications that I think will incentivize the department to

15   perform.

16           So we filed on the heels of that -- that was November

17   13th -- and you held another the status conference on the 18th

18   of November and asked us to file another motion for preliminary

19   approval of the amended consent decree which we did -- which we

20   promptly did.  And Your Honor in that same month granted

21   preliminary approval again of the amended consent decree, set

22   out a schedule for a second round of notices along the lines of

23   the first, but approved the second form of the notice.  You had

24   approved the first form of the notice.

25           I'll point out for the record the first notice was sent
```

1    to multiple stakeholders in this matter.  We were very careful

2    to -- we sent it out not only to class members, but because of

3    their unique status as being incompetent, that was not deemed

4    to be sufficient obviously.  So we sent it to their guardians

5    in their state court criminal cases, their defense attorneys in

6    the state court criminal cases, all of the district attorneys

7    in the state of Oklahoma, all of the public defender and OIDS

8    defenders in the relevant counties and to every district court

9    clerk in the state of Oklahoma.  We did that in round one.

10         We did the same thing under the court's direction in

11   round two when the court preliminary approved the amended

12   consent decree and set out an order that set out a timetable to

13   do that.  We have -- and I certified in our notice of written

14   objections that we filed with the court, which was docket

15   No. 95, which we filed last week, I certified there and I'll

16   certify here that we've complied with the court's notice

17   requirements a second time.

18         We received objections from approximately 53 different

19   individuals, most of them were class members, and described

20   those in our notice.  We received a very insightful letter from

21   District Attorney Kunzweiler, which we're very grateful for.  I

22   mentioned in my papers that he was one of the early

23   stakeholders that we consulted during the drafting process, and

24   we're very grateful for his input and guidance on this issue,

25   among many other stakeholders that we consulted.

1          We have 53 people that were mostly class members and,

2     Your Honor ordered us to produce those in camera which we did.

3     Your Honor has reviewed all of those, again, I think which

4     demonstrates the diligence of this court in becoming aware of

5     all the necessary factors.

6          From our standpoint, Your Honor, there was only one

7     comment that we would construe as an objection from one of the

8     class members, which we dealt with in our papers, and I don't

9     need to repeat it here.  I will say for the record I don't see

10    any class member or their representative in the courtroom

11    wanting to give testimony today or wanting to be heard.  I'm

12    sure Your Honor will make that announcement or request that,

13    but I don't see any and haven't been advised of any class

14    member or any other person who wanted to take the podium and

15    make a comment.  Obviously, Your Honor will make that query but

16    we don't see that here today.

17         And all of that, Your Honor, brings us to where we are

18    today.  As I said, no reasonable observer could look at this

19    and come to any other conclusion than the court is completely

20    informed, well-informed, of all the necessary elements of this

21    amended consent decree and has discharged its duty faithfully

22    and is equipped to make the ruling that we are asking the court

23    to make today.  We've incorporated, Your Honor, all of our

24    prior briefing in our motion for final approval.  All of the

25    23(g) factors are met in our view and we've set that out in

1    great detail.  If Your Honor has any questions on any of the

2    factors, I'd be happy to entertain them.

3          We've set out at great length in our prior papers the

4    structure of the plan.  We've described the consent decree in

5    great detail and the amended consent decree in great detail in

6    the second motion for preliminary approval, so I think we've

7    satisfied that element, Your Honor, at least on paper, that

8    we've described the nature of the agreement.  We have submitted

9    an executed copy of the agreement.

10          And, again, what is very salient here, Judge, is you've

11    got the signature of the Attorney General, signature of class

12    counsel, and the recorded record statements of the defendants

13    personally, that they all approve of the amended consent decree

14    and want to get started to implement its provisions.

15          We do have, as I mentioned at the outset, Dr. Crystal

16    Hernandez here who submitted a prior affidavit.  Dr. Hernandez

17    was the former director of OFC, and therefore, a former

18    defendant who we have utilized throughout this process after

19    she left that post.

20          We also have Neil Gowensmith, Dr. Neil Gowensmith, who

21    is also one of the named consultants who has submitted

22    affidavits in support of the plan and tailored to the Rule 23

23    factors about the relief being adequate and tailored evenly to

24    all of the class members as best as possible.  Both of those

25    experts are available to the court should you have any

1    questions.

2         But in sum, Your Honor, I think we've put sufficient

3    evidence before Your Honor in the papers that we have already

4    filed, the affidavits and other evidentiary materials, for the

5    court to make the requisite findings under Rule 23(e)(2).  And

6    so we would ask you to do so, to grant final approval of the

7    amended consent decree, contingent upon the legislature voting

8    to approve the consent decree in accordance with Title 51

9    Section 200.

10             **THE COURT:**  I have two questions, possibly a third.

11             **MR. DEMURO:**  Yes.

12             **THE COURT:**  First, I'm going to inquire as to all of

13   the representatives with regard to the time frames included in

14   the amended proposed consent decree and specifically the

15   three-year offramp and the extension of the period for the OFC

16   to implement a plan for staffing from 90 days to 120 days.

17        Are all of the signatories in agreement that those

18   amendments are reasonable and effective in distributing relief

19   to the class?

20             **MR. DEMURO:**  Absolutely, Your Honor.  You can query

21   whomever -- obviously whomever you choose.  But, yes, the

22   Attorney General has signed off on that, the commissioner has

23   signed off on that at our mediation and subsequently in court.

24   And, you know, what I call the "early exit ramp option" was

25   something the department -- both of the changes that you cited,

1    Your Honor, are something that the commissioner wanted to

2    include and we agreed to include.  Nobody would be more happy

3    than class counsel if the early exit ramp was available and the

4    prerequisites for the early exit ramp essentially being

5    substantial compliance for the same period of nine months.  If

6    that occurred, nobody would be cheering louder than class

7    counsel.

8         So in answer to your question, yes, all sides, all

9    consultants have agreed that those are fair and reasonable to

10   the class.

11        **THE COURT:**  General, do you agree, sir, that those

12   two amendments are reasonable and effective in distributing

13   relief to the class?

14        **MR. DRUMMOND:**  I do.

15        **THE COURT:**  And Commissioner Friesen, does the

16   commissioner agree that those two amendments are reasonable?

17        **MS. FRIESEN:**  Yes, Your Honor, we concur.

18        **THE COURT:**  Secondly, with respect to the

19   signatories on the amended consent decree, I obviously have no

20   control as to when the Supreme Court is going to rule.  The

21   "word on the street" is that that's fairly imminent.  I take it

22   that if the Supreme Court takes the position, as they have in

23   another previous case, as it has been briefed before this

24   court, that both counsel have roles, the Attorney General with

25   respect to what the Attorney General believes to be the

```
1    interest of the state, and in cases of conflict the

2    commissioner has a right to have counsel, then would it not be

3    proper, given that there may be enforcement issues, to have

4    counsel for the commissioner also as signatories to the amended

5    decree?

6             MR. DEMURO:  Well, I'll defer to the Attorney

7    General on that.  My position is, as we sit here today, the

8    Attorney General is the attorney for the defendants.

9             THE COURT:  I understand.

10            MR. DEMURO:  That status has not changed.

11            THE COURT:  Right.

12            MR. DEMURO:  We certainly have welcomed the

13   participation of Hall Estill and, as I've said, of the iron

14   sharpening iron, and they have been brought along and copied on

15   everything and have voiced -- as evidenced by the

16   commissioner's pronouncement today, they have voiced their

17   approval of the consent decree.

18        So as far as class counsels' standpoint is concerned,

19   at this moment the Attorney General is the duly-authorized

20   representative of these defendants and so we think we have a

21   document that's prepared to be entered now.  If the legal

22   circumstances change and this court makes other rulings, then

23   we can adjust at that time.

24            THE COURT:  There's a bit of speculation as to what

25   the Supreme Court may do.
```

1          General, I know neither one of us has control over what

2    the Supreme Court will do, but you concur that whatever they do

3    is likely to control the resolution of the two outstanding

4    motions before this court?

5              **MR. DRUMMOND:**  I think that it would certainly do

6    that.

7              **THE COURT:**  Okay.  So --

8              **MR. DRUMMOND:**  Although, I would not -- I would

9    think the cerebral energy at the bench today would be equal to

10   the nine justices that might otherwise make that --

11             **THE COURT:**  Well, they may --

12             **MR. DRUMMOND:**  Unless, of course, you got it wrong.

13             **THE COURT:**  Yeah, that's right.

14             **MR. DRUMMOND:**  But no --

15             **THE COURT:**  What one always does as a judge is what

16   one thinks is the right legal thing to do.  Sometimes appellate

17   courts have different ideas.

18             **MR. DRUMMOND:**  That's true.  But as it relates to --

19   I don't think that -- if the court wants to have Hall Estill

20   join in signing, I don't think it impairs the authority of the

21   Attorney General and my ego is not involved in this.  I want

22   this resolved and I want us on a path toward resolution.

23             **THE COURT:**  Right.  Assuming that they do not decide

24   the issue by the time the legislature approves the consent

25   decree, you don't have any objection to having Hall Estill sign

```
 1   on behalf of the commissioner?

 2             MR. DRUMMOND:  No objection.

 3             THE COURT:  Okay.  Thank you.

 4             MR. DRUMMOND:  Reserving all of the briefing --

 5             THE COURT:  Of course.  Of course.

 6             MR. DRUMMOND:  I don't think that -- yeah, you know

 7   my position.

 8             THE COURT:  Yes, sir.

 9             MR. DRUMMOND:  But in the interest of justice and

10   advancing this ball, I'd be happy for that to be the case.

11             THE COURT:  Thank you.  And I take it, Mr. O'Connor,

12   you would agree with that approach?

13             MR. O'CONNOR:  Yes, Your Honor.

14             THE COURT:  Thank you.  If you could approach the

15   podium, Mr. O'Connor.

16             MR. O'CONNOR:  I just wanted to add, Your Honor,

17   that the factual scenarios for what's before the Supreme Court

18   are a little bit different --

19             THE COURT:  Right.

20             MR. O'CONNOR:  -- from what we have here.  So that's

21   why --

22             THE COURT:  Right.

23             MR. O'CONNOR:  -- I don't want to just let the

24   record lie that whatever that court does we think it's

25   applicable because there are some unique facts.
```

```
 1          THE COURT:  I was concerned about that and I'm not
 2   familiar with the specific facts there.  So you're suggesting
 3   that perhaps the resolution of that case may not resolve the
 4   two pending motions before this court?
 5          MR. O'CONNOR:  I think it's a possibility depending
 6   on how they frame the opinion.
 7          THE COURT:  All right.  Thank you very much.
 8          MR. O'CONNOR:  Thank you.
 9          THE COURT:  All right.  One moment.
10             (Discussion held off the record)
11          THE COURT:  All right.  The next step of the four
12   steps before the court is to hear from class members to present
13   objections or other statements that class members or class
14   member representatives believe to be relevant to the court's
15   consideration today of the proposed consent decree.
16          Are there any objections or other statements that class
17   members believe to be relevant in the consideration of the
18   proposed consent decree?  All right.  I see no individuals.
19          Mr. Demuro.
20          MR. DEMURO:  Yes, Your Honor.  I left one really
21   important thing, at least important to me, and I think should
22   be important for all members of the bar of Oklahoma.  One
23   headline of this case is the work that lawyers can do for the
24   good of the common wheel with no thought of reward to
25   themselves.  The three next friends who are in the courtroom
```

```
 1    are examples of that, Leslie Briggs, Evan Watson, and Henry
 2    Meyer.  All are members of the Oklahoma bar, all acting outside
 3    of their normal practice areas to become guardians of these
 4    people that are in desperate need of representation, all
 5    following this case, taking care to be apprised of it
 6    throughout, expecting no compensation in return says something
 7    about -- a lot about, I think, the integrity of the Oklahoma
 8    bar and its lawyers.  I'd like to call that to the court's
 9    attention.
10             THE COURT:  Thank you.  The court is -- I'm very
11    aware of the public service performed by members of the bar
12    without compensation.  In another consent decree I have before
13    this court, we have counsel present here today, Mr. Dorwart,
14    who has donated much of his time and money in the foster care
15    case, and those sorts of things often go unnoticed and need to
16    be recognized.  So thank you all for doing so.
17             I'd ask do either of -- or any of those three wish to
18    be heard today?  Mr. Meyer?
19             MR. MEYER:  No, Your Honor.  I'm very much in favor
20    of the amended consent that's before the court and the
21    cooperation with the Attorney General that he's shown in this
22    negotiations and I'm grateful for Dorwart's firm leading this
23    charge, Paul Demuro and for Frederic, along with Mr. Leimbach.
24    I very much appreciate it because I know the problems that
25    exist in mental health sitting on the criminal justice panel in
```

1    the Western District and doing an awful lot of this work and I

2    appreciate it, Your Honor.

3            THE COURT:  Thank you, sir.

4        Mr. Kunzweiler, any observations that you would like to

5    make?  I know you've been an active part of this matter before

6    the court today and I've read with interest your public

7    statements with regard to this matter.

8            *(Discussion held off the record)*

9            THE COURT:  Look, as a former state court judge, I'd

10   let people wander around the courtroom but unfortunately we

11   can't do that here.

12           MR. KUNZWEILER:  Yeah.  This formality is foreign to

13   me, Judge.  Thank you for recognizing me and I do appreciate

14   the Attorney General doing that as well.

15       I would simply state that it goes without saying we

16   actually shouldn't be here.  This should never have had to have

17   happened if government -- if government was doing the job it

18   was supposed to be doing.  So I have a great deal of

19   appreciation to the attorneys who have advanced this measure on

20   behalf of those poor souls who have been afflicted and who have

21   been mired in a setting that they shouldn't be obligated to

22   endure.

23       I think the recommendations for a disposition moving

24   forward, as Mr. Demuro has outlined, involving eleven or

25   thirteen hours worth of settlement conferences is a positive

1   step forward.  I think they worked very hard to get to this

2   point.  It certainly goes without saying that I think everybody

3   was well-invested in this thing, and I think this is the best

4   solution for a problem that should have never materialized in

5   my opinion.  But thank you for the opportunity to speak.

6          **THE COURT:**  And I would be remiss if I didn't give

7   Dr. LaFortune an opportunity to be heard today, both a lawyer

8   and a doctor with specialization in this area and one of the

9   experts that I heavily rely upon in opinions in cases before

10  this court.  Dr. LaFortune, anything to add?  Come on up.

11         **DR. LAFORTUNE:**  I'll offer a short statement.  Thank

12  you, Your Honor, for the opportunity to talk about this today

13  and I appreciate your comments just now.

14         When I began to work at the Tulsa County Public

15  Defender's Office in 2022, I immediately began to see the

16  problem.  At that point we scheduled Zoom meetings with family

17  members and I had family members who called me who wanted to

18  know what was happening to their loved one in the jail and why

19  things weren't improving and when were they supposed to be

20  taken care of.  So we had judges, state court judges, family

21  lawyers, assistant district attorneys, public defenders, and we

22  talked about this via Zoom meetings for several months.  We

23  also had the Oklahoma Appleseed Project, people from that

24  organization, who came to speak.

25         At that point I spoke with Mr. Corbin Brewster, who was

1   chief public defender at the time, and relayed my concerns

2   about what was not happening in the jail.  And thank God that I

3   stand here today in front of you and the entire audience and

4   thank everyone who has been involved in this, because as

5   Mr. Kunzweiler stated just a minute ago, this should never have

6   happened.

7          I worked at Eastern State Hospital from 1996 to 1999

8   and things were never perfect but they were never in the shape

9   that they are today.  I appreciate all the comments and all the

10  time that you personally have spent in looking into this case.

11  Thank you.

12         **THE COURT:**  Thank you.  There being no objections,

13  other than the one comment that Mr. Demuro mentioned, and the

14  plaintiffs have responded to that possible objection in the

15  writings, so I don't believe it's necessary that Mr. Demuro go

16  any further with regard to replying.

17         The fourth step here is to render a decision.  As both

18  Mr. Kunzweiler and Dr. LaFortune have stated here, I want to

19  commend all the parties for their work in reaching a consent

20  decree in this matter and their commitment to solving what is

21  obviously a pressing issue in Oklahoma.

22         The court has before it the joint motion for final

23  approval and entry of amended consent decree at docket No. 99

24  in which the parties ask the court first to find that the

25  amended proposed consent decree is fair, reasonable, and

1   adequate to the class; second, to grant final certification of

2   the class; third, to appoint class counsel; and four, to

3   approve the amended consent decree subject to the conditions

4   subsequent that the parties obtain legislative approval of the

5   amended proposed consent decree and upon notice of such

6   approval enter the amended proposed consent decree as judgment

7   of this court.

8        Oklahoma Statute Title 51 Section 200 prohibits the

9   state from entering into a consent decree that would

10  necessitate appropriation by the legislature in excess of

11  $250,000, as the amended proposed consent decree would require,

12  without legislative approval or approval of the contingency

13  review board when the legislature is not in regular session.

14  The parties agree that legislative approval is necessary in

15  this case but have not yet obtained such approval.

16        Accordingly, the state cannot yet enter into the

17  settlement agreement in the consent decree and there can be no

18  judgment by consent until the legislature approves it.

19        See generally *Sawyer v. Mid-Continent Petroleum*

20  *Corporation,* 236 F.2d 518, 522 (10th Cir. 1956).

21        For this reason, the court cannot enter the amended

22  proposed consent decree as a judgment subject to the conditions

23  subsequent of legislative approval.  However, the court has

24  reviewed the amended proposed consent decree and finds that it

25  is fair, reasonable, and adequate to the class.  Specifically,

the class representatives and class counsel have adequately

represented the class.  The amended proposed consent decree was

the result of fair, honest, and arm's length negotiations.  The

amended proposed consent decree treats class members equitably

relative to each other.  And the parties have stipulated that

the amended proposed consent decree is fair, reasonable, and

adequate to the class.

     With respect to the adequacy of the nature of the

approached relief, the court notes the outcome of the

litigation remains in doubt and a risk exists that if this

matter proceeded to trial, plaintiffs would not receive the

requested relief.  Further, settlement at this time outweighs

the immense costs of full-tilt adversarial litigation.

     The court further finds that the amended proposed

consent decree is an effective method of distributing relief to

the class and is consistent with Oklahoma law provided that it

is approved by the Oklahoma legislature.

     The court acknowledges that one class member submitted

a comment which the court has construed as an objection.

Therein, the class member objects to the amended proposed

consent decree's provision regarding "best efforts" stating as

follows:  "I agree and I have no objections to the original

ruling but have reservations about the amendments.  I feel that

the good-faith exceptions allows defendant to squirrel out of

any monetary losses they may have in past and future misdeeds."

1     The court is sympathetic; however, the provision is not

2     prohibited by Oklahoma law.  It imposes a high burden on the

3     defendants.  Further, it was necessary to secure the parties'

4     agreement.  The court must give significant weight to the views

5     of the state government officials with frontline responsibility

6     for administering the program.

7     The court references counsel to *Jackson v. Los Lunas*

8     *Community Program,* 880 F.3d 1176, 1192 (10th Cir. 2018).

9     Accordingly, the objection is respectfully overruled

10    and the court concludes that the relief provided for the class

11    by the amended proposed consent decree is adequate.  For all of

12    these reasons, the court concludes that the amended proposed

13    consent decree is fair, reasonable, and adequate.

14    Turning to the requirements for class certification,

15    the court concludes that the class is, first, so numerous that

16    joinder of all members is impracticable; second, there are

17    questions of law or fact common to the class, specifically

18    whether the department and the OFC's failure to provide

19    competency restoration treatment in a timely manner, coupled

20    with the class members' continued detention, violates the class

21    members' due process rights; third, the class representatives'

22    claims are typical of the claims of the class; and four, the

23    class representatives and class counsel will fairly and

24    adequately protect the interests of the class.  Thus, the

25    requirements of Rule 23(a) are satisfied.

1          Further, Rule 23(b)(2) is satisfied, as the department

2     and OFC's alleged failure to provide timely competency

3     restoration treatment is generally applicable to all class

4     members and the amended proposed consent decree addresses the

5     class as a whole and it is unnecessary to differentiate between

6     class members.  Accordingly, certification of the class is

7     appropriate.

8          As to class counsel, the court concludes that class

9     counsel has and will continue to fairly and adequately

10    represent the class.  Thus, the court is prepared to finally

11    appoint class counsel.

12         Finally, based on the parties' certifications as to

13    notice, the court concludes that the notice and amended notice

14    were fair, reasonable, and "apprised interested parties of the

15    pendency of the action and afforded them an opportunity to

16    present their objections."

17         That's from *Tennille*, T-e-n-n-i-l-l-e, *v. Western Union*

18    *Company,* 785 F.3d 422, 436 (10th Cir. 2015).

19         Further, the method of notice was reasonably calculated

20    to ensure the best practicable notice under the circumstances

21    and is consistent with due process.

22         The court will enter a written order providing a more

23    detailed analysis.  However, for the reasons stated today, upon

24    the Oklahoma legislature's approval of the amended proposed

25    consent decree, the court is prepared to grant the joint motion

1    for final approval and entry of amended consent decree at

2    docket 99, certify the class, and enter the amended proposed

3    consent decree as the final judgment of this court.

4         Is there anything else that we can accomplish today,

5    Mr. Demuro?

6         **MR. DEMURO:**  No, Your Honor.  One housekeeping.

7    What's Your Honor's preference for how we notify Your Honor of

8    the legislative approval?  We just file a notice, something of

9    that nature, Your Honor?

10        **THE COURT:**  Please.

11        **MR. DEMURO:**  Okay.

12        **THE COURT:**  General, anything further?

13        **MR. DRUMMOND:**  Nothing further.  Thank you, Your

14   Honor.

15        **THE COURT:**  Mr. O'Connor?

16        **MR. O'CONNOR:**  No, Your Honor.

17        **THE COURT:**  Very well.

18            *(Discussion held off the record)*

19        **THE COURT:**  There is a pending motion to file a

20   supplement to one of the two remaining motions before the

21   court.

22        General, do you wish to have your office file a

23   response to that motion or are you willing to allow the

24   supplement to be filed or do you wish to --

25        **MR. DRUMMOND:**  I visited with my solicitor general

```
 1   this morning.  He asked that we be given the time to respond.

 2              THE COURT:  All right.  And how much time does

 3   Mr. Gaskins need?

 4              MR. DRUMMOND:  Whatever is allotted by local rule.

 5              THE COURT:  Okay.  That's fine.  I think we'll --

 6   Mr. O'Connor.

 7              MR. O'CONNOR:  One thing I would add is we would --

 8   I did not seek to file the supplement or its exhibits under

 9   seal.  And just so that they're clear -- we're clear on

10   motivations.  We would file it under seal, if allowed.  We're

11   not trying to --

12              THE COURT:  I take it there's no objection to that,

13   if allowed?  Thank you.

14              MR. O'CONNOR:  I just didn't put that --

15              THE COURT:  Yeah, I think that's appropriate here.

16   So we'll -- although typically matters filed under seal are not

17   favored, I think it is appropriate here.

18              MR. O'CONNOR:  Thank you.

19              THE COURT:  Very well.  We'll await the response to

20   that motion.

21              MR. DRUMMOND:  And, again, candidly, I mean,

22   whatever the court's pleasure.  I mean, I don't have any

23   objection to it being sealed or not being unsealed.  I mean,

24   they're just a diatribe of text messages between the

25   commissioner --
```

1    **THE COURT:**  Yeah.  We don't need to --

2    **MR. DRUMMOND:**  No curse words, I don't think.

3    **THE COURT:**  Because it just clouds the agreement

4    here.  Everyone's in agreement to this proposed consent decree.

5    It's a collateral matter.  Agreed?

6    **MR. O'CONNOR:**  Agreed.

7    **THE COURT:**  General?

8    **MR. DRUMMOND:**  Yes.

9    **THE COURT:**  All right.  If there's nothing further,

10   we are in recess.

11   *(The proceedings were concluded)*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          *C E R T I F I C A T E*

2

3

4            I, Brian P. Neil, a Certified Court Reporter for the

5    Northern District of Oklahoma, do hereby certify that the

6    foregoing is a true and accurate transcription of my

7    stenographic notes and is a true record of the proceedings held

8    in above-captioned case.

9

10           I further certify that I am not employed by or related

11   to any party to this action by blood or marriage and that I am

12   in no way interested in the outcome of this matter.

13

14           In witness whereof, I have hereunto set my hand this

15   29th day of January 2025.

16

17

                                    s/ Brian P. Neil
18                          _____
                                      *Brian P. Neil, RMR-CRR*
19                                    *United States Court Reporter*

20

21

22

23

24

25