**Court Consultants**

*No 4:23-cv-00081-GKF-JFJ*

January 23, 2026

To: ODMHSAS, Class Counsel, Oklahoma Attorney General

From: Court Consultants

Re: Findings and Recommendations from Mediation in Briggs v Slavonic

CC: Honorable Gregory K. Frizzell

# Findings and Recommendations From Mediation in Briggs v Slavonic

### Introduction

On January 13, 2026, Court Consultants met with Class Counsel and the Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS) to conduct mediation pursuant to Paragraph 96 of the Consent Decree (No 4:23-cv-00081-GKF-JFJ; "Decree"). Representatives of the Oklahoma Office of the Attorney General attended in OAG's ex-officio capacity.
The mediation occurred after the Parties met in discussions on November 24, 2025, as the first step in the Dispute Resolution process established by the Decree, pursuant to Judge Frizzell's order directing the Parties to use Dispute Resolution prior to any proceeding before the court. Class Counsel provided a notice of issues in a December 10 letter that established the substantive agenda for the January mediation.

### The Mediation Session

The session lasted continuously from 9:00 am to 4:30 pm. During the day, Court Consultants met separately with each Party twice for periods of one to one and a half hours each, discussing the same issues separately with each party. The agenda for the day is attached as Appendix A.

Parties reconvened together with Court Consultants three times, twice for brief periods for Court Consultants to summarize proceedings to that point and once over lunch for parties to view the highlights of a power point presentation by ODMHSAS on various issues under consideration. This presentation provided updates on a power point presentation made to Class

Counsel during the November 2025 dispute resolution meeting. While a second day for mediation had been scheduled, each Party agreed that a second day was not required.

The Parties were respectful and candid during the sessions. Sessions were not taped, and Parties agreed to the confidentiality of the proceedings, defined at the beginning of the session by Court Consultants as not repeating any statements made by either Party outside of the mediation session (ground rules for the mediation session can be found in Court Consultants' January 5, 2026 and December 2025 memoranda to the Parties).

**Issues Considered**

Paragraph 96 of the Decree limits mediation to issues raised by either Party in its Notice of Dispute. The following issues, raised in Class Counsel's December 10 letter, were considered during the mediation.

- The requirement that ODMHSAS create and implement a Plan. We consolidate three issues from the Notice of Dispute here:
    - The Strategic Plan (issue 6 in Mr. DeMuro's December 10 letter to Mr. John O'Connor, ODMHSAS counsel; paragraph 54 of Decree)
    - The requirement that ODMHSAS develop a plan for new in-patient forensic beds devoted exclusively to competency restoration (issue 2 in Mr. DeMuro's letter; paragraph 62)
    - The requirement that within 120 days of entry of the Decree, ODMHSAS develop and begin to implement a staffing plan for OFC and address environment of care standards for forensic facilities to assure continuing accreditation (issue 5 in Mr. DeMuro's letter; paragraph 63)
- The validity and reliability of data used by ODMHSAS in determining the status of Class Members and related matters (issue 1 in Mr. DeMuro's letter; paragraph 44), including whether ODMHSAS has reported accurate and reliable data with respect to the number of Class Members waiting for evaluation and restoration services (issue 8 in Mr. DeMuro's letter; paragraph 44).
- The requirements that ODMHSAS plan for and conduct training for various stakeholders (primarily legal officials) and evaluators of competency related issues (issues 4 and 5 in Mr. DeMuro's letter; paragraph 78, 31), including issues associated with Qualified Forensic Examiners (issue 5 in Mr. DeMuro's letter; paragraph 31).
- The requirement that ODMHSAS create a jail-based competency restoration program in Tulsa and one other Oklahoma county (issue 3 in Mr. DeMuro's letter; paragraph 74)
- Appointment of a person whose sole responsibilities are to implement and monitor compliance as well as the appointment of a "properly qualified person with authority

and responsibility to exclusively implement and monitor Consent Decree compliance"
(issue 10, Mr. DeMuro's letter).

- Whether ODMHSAS has responded adequately to requests from the Court Consultants
for information (issue in Mr. DeMuro's letter; generally, paragraph 44).
- Implementation of injunctive relief recommended by Court Consultants in their
September 2025 report (issue 11 in Mr. DeMuro's letter).

**Consultant Obligations to Make Findings and Recommendations**

The Decree states that if mediation is unsuccessful, the Consultants "will promptly issue a
written decision, including recommendations, if appropriate" regarding issues presented in the
Notice of Dispute (paragraph 96). A "Consultants' decision is immediately binding on the parties
and immediately effective as a provision of this Consent Decree until and unless it is modified by
the Court" in accordance with Paragraph 97 of the Decree. The review standard applied to
review of the Consultants' recommendations is the arbitrary and capricious standard (paragraph
97).

Our recommendations take on a particular urgency for three reasons. First, key indicators
regarding the waitlist are moving in the wrong direction. According to the latest weekly
summary provided by ODMHSAS on January 12,

- The waitlist has steadily increased from 138 on November 10, 2025, to 218 on January
13, 2026 (an increase of approximately 58% in two months, with no sign of this steady
increase abating).[1] If unchecked, this increase will soon result in a waitlist at or
exceeding the number of people on the waitlist when the Decree was entered.[2]
- Admissions to the Oklahoma Forensic Center have sharply decreased, from an average
of close to 30 per month from June through October to 8 in November and 7 in
December.
- The number of initial competency evaluation orders continues to increase, meaning that
additional people will be added to an already growing waitlist.

Second, ODMHSAS will soon go through a period of significant transition. The duration of
Admiral Slavonic's appointment is uncertain, especially given the upcoming 2026 elections; he

---

[1] ODMHSAS attributes these trends to the enactment of SB 1089, which requires review and approval of various
movements within and outside of Department custody. While this statute likely has had some effect, the specific
impact on individual cases has not been provided, nor have legislative proposals to amend the statute.

[2] The data we received from ODMHSAS in the months after the Decree was entered was so flawed and
internally contradictory that we were unable to establish with any precision how many people were actually
on the waitlist. But we believed at the time that the waitlist contained at least 250 people. Data today are
better, as we note in this report, though still require a method to externally validate them.

has been frank since his initial appointment that his tenure is temporary. Consistency in leadership is key with the long-range improvements required to attain compliance with the Decree, and the Department needs a solid plan and system in place to withstand the upcoming possible changes in leadership.

Finally, the second maximum allowable time frame benchmark for beginning competency restoration services has now arrived (10 months from entry of the Decree, or January 10, 2026). The maximum allowable time for each person on the waitlist is now 45 days, and that target is far from being met (as of January 13, the median number of days was 77); in April it becomes 30 days and in July, 21 days.

As we have documented in our reports, implementation of the Decree has been very slow. We recognize that implementation of the Decree is a complex undertaking. At the same time, only one of the initial June 2025 deadlines in the Decree was met on time, and as of the date of the mediation – 10 months after entry of the Decree and 7 months after these initial deadlines – progress is still halting. Many of the mandates in the Decree are still not met – including, most importantly, the Plan.

We remain optimistic about the ultimate success of the Decree, but we are unanimous in our view that the core issues in the Decree must be addressed much more rapidly than they have been to date.


**The Principles Guiding Our Findings and Recommendations**

Two principles guide our past reports and this report. First, ODMHSAS must use "best efforts" in its work, defined as "taking reasonable steps, actions and measures, consistent with best professional standards, practices and guidelines to accomplish or bring about the intended and described result" (paragraph 18). "Best Efforts" applies to the actions of ODMHSAS as a whole,[3] not simply to implement the Plan, as ODMHSAS has argued; beyond the general obligation, it is also used in specific parts of the Decree.[4]

---

[3] "Defendants shall use Best Efforts to meet the objective of providing all Class Members with timely and appropriate Restoration Treatment in accordance with the terms of this Consent Decree" (Paragraph 85).

[4] See paragraph 45 (best efforts in implementing the strategic plan); paragraph 47 (providing Court Consultants with reasonable access to records, data, personnel and facilities); paragraph 54 (developing and beginning to implement the Plan); paragraph 61 (best efforts in reevaluation of Class Members deemed competent in jail); paragraph 68 (best efforts to obtain legislation to permit community-based outpatient restoration); paragraph 76 (development of jail-based competency pilot program); paragraph 85 (best efforts to provide all Class Members with timely restoration treatment);

Second, ODMHSAS must develop the various plans and programs in the Decree "in consultation with Class Counsel and the Consultants." We view this as a general obligation, but the Decree also repeats this obligation in myriad specific instances.[5]

Any failure by ODMHSAS to use Best Efforts to comply with the terms of the Decree is a "material violation" (paragraph 28). The Decree authorizes Court Consultants to make findings regarding efforts "to attain compliance with this Consent Decree's terms, including whether the Department has used Best Efforts to implement the Plan" (paragraph 45). The Plan consists of "the program components and obligations set out in this Section VI" (paragraph 54); therefore, Court Consultants can address the question of "best efforts" in each component covered by the Plan.

On January 16, after mediation, ODMHSAS sent an email to Court Consultants and Class Counsel making several arguments regarding the proceedings, including the argument that "Class counsel did not present a single witness to provide testimony that the Department failed to exercise 'best efforts'" and that Class Counsel "bear the burden of proving each of their claims of the Notice of Dispute alleging that the Department has failed to use its 'Best Efforts' to comply with the Consent Decree." Class Counsel responded on January 19, taking issue with each of the Department's claims.

We discuss and respond to issues raised by ODMHSAS after mediation in Appendix B, but we highlight two issues here as particularly relevant:

- As the Decree states clearly, and as the Parties were aware from our various memos on process prior to mediation, the "Consultants shall determine the mediation rules and procedures, including the time and location." We did not specify, nor given the non-adversarial nature of mediation, would we have specified, that either Party had to formally present evidence. Mediation proceedings are informal and in general rules of evidence do not govern the process. The parties met separately throughout the day; had evidentiary rules applied, and Class Counsel expected to provide a witness, cross-examination of the participants relied on by the Department would also have been permitted.
- Court Consultants have the authority to determine whether "best efforts" have been followed, as noted above, and review of Consultants' findings is governed by the "arbitrary and capricious standard." In our view, it is the Department's task to

---

[5] See paragraph 13 (the strategic plan); paragraph 31. (qualified forensic evaluators); paragraph 33 (restoration treatment); paragraph 55 (timeline for implementation of plan components or other actions); paragraph 62 (increase in forensic beds for competency restoration); paragraph 63 (forensic inpatient staffing); paragraph 65 (triage process); paragraph 69 (community competency restoration program); paragraph 76 (jail-based competency restoration program); paragraph 77 (additional Department staffing requirements); paragraph 81 (training program).

demonstrate that it has complied with the provisions of the Decree, and Court Consultants' role to determine whether compliance has been achieved and whether the Department has met the "best effort" standard. The ultimate issue is whether the Decree's mandates are being met, and under the Decree, those determinations fall to Court Consultants.

**Findings and Recommendations with Respect to Issues Considered at Mediation**

We provide our findings and recommendations below. We begin with issues associated with planning, then turn to jail-based competency restoration (JBCR). After that discussion, we address the remaining issues subject to mediation. We have carefully reviewed *all* materials provided by the Department, during the 10 months the Decree has been in place, as well as submissions the Department made in anticipation of, during, and subsequent to mediation.

***The Plan (issues 6, 2, and 5 in Mr. DeMuro's letter)***

As noted above, we consider three issues under planning:

- Development and implementation of the strategic plan.
- Development of a plan for new in-patient forensic beds devoted exclusively to competency restoration.
- Development and implementation of a staffing plan for OFC and address environment of care standards for forensic facilities to assure continuing accreditation.

We consider each of these in turn.

*The Strategic Plan* The Decree required the Department to create and implement a Plan within 90 days of entry of the Decree in consultation with Court Consultants and Class Counsel (paragraphs 54-56). The original deadline for creation and initial implementation of the Plan was June 8.[6]

As of the date of mediation, the Plan required by the Decree neither exists nor has it been implemented. While the Department provided Court Consultants (though not Class Counsel) with a new draft Plan at the end of mediation, and presented material relevant to it during the plenary session, the Court Consultants and Parties will not be formally presented with the draft until January 30. Until a final plan is approved by Court Consultants, it does not meet the

---

[6] In addition, on an annual basis and within 30 days each annual anniversary of entry of the Decree, ODMHSAS "will submit to the Consultants and Class Counsel an Annual Department Comprehensive Plan, that: (i) reviews data from the previous year related to the delivery of competency evaluations and Restoration Treatment; (ii) reviews data regarding projections for volume and capacity for the coming year; and (iii) identifies specific actions the Defendants will take internally and will propose legislatively to address and improve their compliance with this Consent Decree year-to-year." This Annual Department Comprehensive Plan is due on April 9, 2026.

requirements of the Decree. The history of the Plan underlies our determination that "best efforts" have not been used.

- On June 6, 2025, the Department submitted documents purporting to be the required Plan. As Court Consultants noted in their September 2025 report, "none of those documents, individually or as a whole, met the requirements for development and implementation of the Plan required by the Decree."
- On June 27, 2025, ODMHSAS requested additional time to submit its Plan, noting that it would "work in consultation with both Class Counsel and the Consultants to develop the initial stages of the strategic plan...including concrete goals, steps necessary to complete those goals and timelines, and responsible parties to complete said goals." We delayed preparation and submission of our bi-annual report based on those representations.
- On August 12, 2025, ODMHSAS submitted a Strategic Plan, later identified as a Draft Plan, as part of its self-imposed deadline for meeting Decree requirements after a change in ODMHSAS executive leadership. Contrary to representations made on June 27, there were no discussions or materials provided either Court Consultants or Class Counsel prior to receipt of the August Plan.
- As we concluded in our September 2025 report, that draft fell far short of the Decree's requirements, and we provided extensive examples of why that was the case, both in our September report and prior to that in a critique provided the Department.
- At the January 12, 2026 mediation session, ODMHSAS indicated that it was working on a draft Plan, and the Parties agreed it would be submitted to the Parties by ODMHSAS on January 30, 2026. At the end of the day, Court Consultants were provided with a physical copy of the draft plan by ODMHSAS.

While the ODMHSAS Response to the Notice of Dispute cites a variety of internal activities, as of January 12 the required consultation with Class Counsel and Consultants had not occurred, nor had those activities yet yielded a Plan approved by Court Consultants:

- From March 10, 2025 when the Decree was entered until June 6, 2025 when various documents were submitted by ODMHSAS, there was no communication between ODMHSAS and Court Consultants or Class Counsel regarding ODMHSAS's development of an acceptable Plan.
- From June 6, 2025 until August 12, 2025 when a draft Plan was submitted, there was no communication between ODMHSAS and Court Consultants or Class Counsel regarding ODMHSAS's development of an acceptable Plan other than a request that Consultants put off submission of their full report until ODMHSAS submitted its draft Plan. After the Plan was submitted, as noted, Court Consultants provided a critique of the Plan to ODMSHAS, to which ODMHSAS responded.

- However, from the time of that critique and response in August 2025, until January 12, 2026 when mediation was held, there was no communication between ODMHSAS and Court Consultants regarding ODMHSAS's development of an acceptable Plan; according to Class Counsel there was some discussion of the August plan at the November Dispute Resolution session held by the Parties.

As noted, the Department will formally submit its most recent draft plan by January 30, 2026 to Court Consultants and Class Counsel, per agreement of the Parties during mediation. Neither this draft, nor any prior submissions, have been approved by Court Consultants as required by the Decree (paragraph 54), nor was there any discussion with Court Consultants prior to preparation of this draft, despite repeated offers by Court Consultants to work with ODMHSAS on a Plan.

*Develop a plan for new in-patient forensic beds devoted exclusively to competency restoration* (paragraph 62)

The Decree requires a bed need analysis that includes "the number of new Forensic Beds to be added, and the timelines for bringing the new Forensic Beds on line, and should consider best practices for determining the reasonable number of new Forensic Beds to be maintained, given the State of Oklahoma's population growth, crime rate, and the effect of the Plan's components once the Plan has been developed and implemented." The plan for new Forensic Beds for competency restoration is a component of the overall Plan.

In its August 12 Plan submission, material on bed need was included, and we characterized that as "the first time a serious attempt by ODMHSAS to wrestle with the beds need analysis required by the Decree." In our view the analysis/plan was "minimally sufficient," although we noted both inaccuracies in the analysis as well as specific areas that needed to be addressed. We also repeated our request for specific information dating back to our March 21st request for information, material not provided to date.[7] The ODMHSAS Response to the Notice of Dispute highlights a variety of activities to influence the Forensic Review Board's consideration of cases that could be ready for discharge from OFC, as well as efforts to find bottlenecks to efficient disposition of cases at OFC. However, these activities do not constitute a plan with the requisite analysis mandated by the Decree.

*Develop and begin to implement a staffing plan for OFC and address environment of care standards for forensic facilities to assure continuing accreditation* (paragraph 67)

---

[7] We asked for any prior or existing analysis of forensic bed need; any existing inpatient need methodology used by ODMHSAS; any analysis done in the prior three years on the cost of adding an inpatient bed; past or present plans to contract for forensic beds; the most recent Joint Commission on Accreditation of Healthcare Organizations report. (p 34 of Court Consultants' September 2025 Report). We eventually received the Joint Commission report but from another source.

The overall Plan must include this component. While we have been advised of various efforts to hire additional staff at OFC, and the success of some of those efforts, we have still not seen a staffing *plan,* nor have we seen evidence of efforts to assure continuing accreditation at ODMHSAS forensic facilities. While those efforts may exist, they are not yet reflected in a plan.

**Finding** ODMHSAS has not used "best efforts" in creating and implementing the Plan, including the constituent elements discussed above and below, nor has ODMHSAS engaged in the required consultation with Class Counsel and Court Consultants. A failure to use "best efforts" constitutes a material violation of the Decree.[8]

**Recommendation** ODMHSAS must take the following steps to assure creation and implementation of the Plan:

- Submit a comprehensive draft Plan by January 30, 2026.
- Submit a final Plan no later than two weeks after receipt of feedback from Court Consultants and Class Counsel.
- Begin implementation of the Plan no later than 4 weeks after approval of the Plan by Court Consultants, with an implementation schedule identifying responsible persons and timelines acceptable to Court Consultants; this implementation schedule should be part of the Plan.
- If Court Consultants find the Plan to be unacceptable, the Consultants will exercise their authority to subcontract with a person or entity to work with the Department and Class Counsel to develop an acceptable plan.

### *Jail-based Competency Restoration (JBCR) Pilot Programs (issue 3)*

The Decree requires ODMHSAS to use "best efforts" to develop and begin to implement a pilot in-jail restoration program in Tulsa County and in one other Oklahoma County (paragraph 74) within 90 days of entry of the Decree (the deadline for this was June 8, 2025). The Decree specifies program requirements, such as the development of written policies and procedures, as part of the pilot (paragraph 74).

- Materials submitted to Court Consultants on June 6 showed no effort at developing and implementing the required pilot other than a single conversation with the Tulsa County Sheriff.

---

[8] Given the Decree's provision that any failure to use Best Efforts constitutes a material violation, and given that Court Consultants are charged with determining whether "best efforts" have been used, our conclusion that best efforts have not been followed with the Plan necessarily creates an inference that a material violation has occurred.

- Materials submitted to Court Consultants on August 12 asserted that ODMHSAS had made "good-faith, best-effort attempts to negotiate the use of space at the Tulsa County jail" for a pilot program based on conversations with the Tulsa County District Attorney and that emails had been sent to the Tulsa County Sheriff to schedule a meeting about the pilot, though at that point no meeting had been scheduled. Materials submitted did include draft policies for JBCR. However, those policies had not been developed in collaboration with Court Consultants and Class Counsel.
- We were later informed by ODMHSAS that the Tulsa County Sheriff in a subsequent meeting had stated that the pod originally available for a pilot program was no longer available because of the need to hold detainees from ICE.
- Although a few isolated conversations may have occurred, no ongoing contact or substantive conversations with the Tulsa County Sheriff or other county sheriffs have occurred since August 12.
- ODMHSAS outlines in its Response to the Notice of Dispute a series of activities taken to learn about JBCR programs, including conversations with sources identified as experts in this area by Court Consultants.
- At the mediation session, ODMHSAS indicated in a plenary session that the Tulsa County sheriff had recently indicated that a pod now might be available for JBCR. ODMHSAS also indicated that it had contacted Cleveland County officials and that there might be an opportunity to develop a program in that county. However, to date, no substantive conversations have occurred in either county on the practical issues (space, provider, cost, oversight, etc.) that are essential to create a JBCR program nor have documents required to create such a program (for example, a Request for Proposals to potentially interested entities) been created, despite Court Consultants providing information on entities that have operated JBCR programs.

**Finding** While there appears to be an increase in activity in this area, primarily a few conversations, they fall short of best efforts, given that the original deadline for development and initial implementation was June 8, 2025. We found in our September report that best efforts had not occurred, and that as a result a material violation existed, and between that report and the date of mediation nothing has occurred to change that conclusion.

**Recommendations**

**Tulsa County**

- Identify the person or persons at ODMHSAS responsible for overseeing this section of the Decree.

- Meet with the Sheriff and other Tulsa County officials as necessary to determine by February 16 whether space is available within the jail for a JBCR program, as well as the Sheriff's conditions for the establishment of such a program.
- Assuming the availability of space, develop a Request for Proposals or acceptable alternative in consultation with Court Consultants, Class Counsel, and relevant Tulsa County officials to elicit bids for the implementation of a JBCR program in the jail. The RFP must include all issues relevant to the construction and staffing requirements for development and implementation of the program and must be issued by March 30, 2026.
- Prior to issuance of the RFP, work consistently and collaboratively with Court Consultants and Class Counsel to develop the elements of the RFP, with a particular focus on programmatic design.

**Second County**

The requirements for Tulsa County apply to development of a pilot JBCR program in a second county, whether Cleveland County or an alternative.

*The Validity and Reliability of Data (issue 1)*

The Decree requires that "no later than the tenth (10th) day of every month during the term of this Consent Decree, Defendants shall submit to the Consultants and Class Counsel a Status Report accurately reporting the status of all Class Members then waiting for Restoration Treatment" (paragraph 82). Data reliability and validity are at the heart of the ability of Court Consultants and Class Counsel to monitor adherence to the Decree. Class counsel has advised that "we need the Consultants' input to determine whether the Department's data is reliable" (Mr. DeMuro's December 10 letter to ODMHSAS).

Prior to and during mediation (through the PowerPoint presented at the plenary lunch) ODMHSAS stated that:

- Every two weeks, a report organized by county is pulled from the "Treat to Competency Portal" that lists everyone on the waitlist, everyone maintaining competency, and anyone with an uncompleted court-ordered evaluation.
- Each county's list is emailed to a designated court contact (judge, DA, PD/OIDS attorney, or court clerk, depending on the county.
- That contact is asked to verify the list and tell ODMHSAS/Forensic Services if anyone is missing or listed incorrectly.
- ODMHSAS then compares their feedback against the Portal data to keep the system accurate and up to date.[9]
- In addition, ODMHSAS reported that there are phone calls and other contacts with officials from some counties as warranted.

The materials included one example of an email sent to a county.

On the evening before mediation, Class Counsel submitted by email a request that "under paragraph 48 of the Consent Decree, the Consultants subcontract with a third-party data-analyst specialist, with relevant experience, to assist the Parties, the Consultants and the Court analyze the data disclosed by the Department (including but not limited to Waitlist data and Fines data and competency evaluation and re-evaluation data) to assess whether the Department's data is reliable, complete and accurate." ODMHSAS stated in reply emails that it believed the request to lie outside of the issues in the Notice of Dispute but stated that the "Department will consider Class Counsel's request, and we are happy to discuss it with Class Counsel after the mediation."

---

[9] The recitation of ODMHSAS's materials is mostly verbatim, with paraphrasing for the purposes of succinctness. No meaning was changed.

Paragraph 48 states "The Consultants may, with the consent of the Parties, confer and subcontract with service providers (but not allow double billing), as determined by the Consultants in the exercise of their professional judgment would be helpful to the Consultants, the Court, or the Parties to accomplish the goals and purposes of this Consent Decree, including without limitation, the preparation of additional reports, studies, data-analysis, recommendations, research, or auditing of fines assessed or paid under Section VII herein." At the beginning of mediation, Court Consultants advised the parties that they considered the request by Class Counsel to be one possible strategy to be used by Court Consultants in assessing the validity and reliability of data, rather than a new issue lying outside the Notice of Dispute.

**Findings** Data used by ODMHSAS for the purposes identified in the Decree have improved significantly since entry of the Decree. However, Court Consultants have been unable to independently verify the reliability and validity of OMDHSAS data, and Class Counsel and various relevant third parties continue to raise concerns regarding the data. In addition, various stakeholders have reported data inconsistencies to the Court Consultants throughout the past several months.

**Recommendations**

- By February 16, 2026, ODMHSAS shall submit to Court Consultants and Class Counsel all emails and responses from the beginning of the cross-checking of data process described above, including information regarding the specific cases where there were mismatches between people identified through this process.
- ODMHSAS shall submit this information monthly along with the monthly status reports that the Decree requires.
- Court Consultants have determined that hiring an independent full time data analyst to verify data reliability and validity is unnecessary. The data portal itself is not in question at this time. However, we do find it necessary to have the capacity to examine issues related to the comprehensiveness and the accuracy of the forensic data that is entered into the portal. We intend to contract with a party to work with the Department under our direction to conduct the necessary audit for us to determine forensic data validity and reliability.
- We assume Class Counsel consents to this. For ODMHSAS, we will provide details on the manner in which we intend to proceed. The audit can be conducted remotely and should require minimal time from ODMHSAS staff. Within a week of the provision of those details, ODMHSAS will advise on whether they approve or disapprove our acting under Paragraph 48.

- If ODMHSAS disapproves, we do not believe that a second use of the dispute resolution process is necessary, but we believe that the matter would be best resolved by the Court.


### Training (issues 4 and 5)

We address two distinct training requirements here: the training of legal stakeholders in the competency restoration process, and the training of staff involved in competency restoration.

*Training of legal officials* (issue 4)

The Decree (paragraphs 78-81) requires that ODMHSAS offer initial and periodic training to Oklahoma state district court personnel, county sheriffs, and members of the Oklahoma State Bar concerning persons ordered to receive competency evaluations and restoration treatment across all 77 Oklahoma counties. The initial training must occur within 12 months of the entry of the Consent Decree, and the Department must have developed and begun to implement a plan for the training program within 90 days of the entry of the Consent Decree.

- In our March 21 request for information, we asked for training materials and/or curriculum, but we did not receive them until much later.
- On June 6, the Department submitted a curriculum framework for training.
- In its August 12 submission, the Department noted "as mandated, a comprehensive training plan is being developed to improve competency-related expertise within the Department, community treatment providers and in the courts."
- However, at of the time of our September 2025 report, no training program was in place, nor had we seen materials related to it, even in developmental stages.
- ODMHSAS has documented isolated conversations with various county stakeholders from July 2025 – January 2026 to discuss potential upcoming trainings.
- ODMHSAS developed a tentative agenda for two training sessions regarding competency to proceed topics at the Oklahoma Judicial Conference in July 2026, which will be attended by judges, district attorneys, and defense attorneys.
- ODMHSAS is planning to hold a two-day, in-person "legal summit" in summer 2026 that focuses on competency to proceed topics. Judges, prosecutors, and members of the defense bar are the intended audience.
- ODMHSAS is planning to meet with the Oklahoma's Sheriff's Association in January 2026 to discuss participation and presentation at the OSA's annual conference this fall.

**Finding** Although the Department violated the initial 90-day requirement to consult with Court Consultants and Class Counsel regarding the development of a stakeholder training plan, Court

Consultants and Class Counsel are satisfied with the overall progress of the 12-month requirements, pending timely and satisfactory completion of the following requirements.

**Recommendations**

To fulfill the tentative agreement on this issue, ODMHSAS will:

- Identify a stakeholder training lead by February 16.
- Submission, collaboration, and approval of all stakeholder training materials – to include but not limited to identified presenters, training topics, agendas, curricula, and training materials – to Court Consultants and Class Counsel for their review and approval by May 15.
- Submission of marketing and dissemination materials (e.g., flyers, conference registration websites, etc.) to document proof of trainings two weeks prior to each training.
- Submission of a list of participants for each training within two weeks after the conclusion of the trainings as well as any evaluations of the training by participants.

*Continuing education for staff involved in competency restoration (issue 5)*
The Decree requires the Department, in consultation with the Consultants and Class Counsel, to develop and begin to implement a plan to require all psychiatrists, psychologists, and other clinical staff involved in competency restoration at OFC and other facilities to participate in twelve (12) hours annually of continuing education on topics related to forensic mental health treatment including adjudicative competency (paragraph 64). This requirement was to be completed within ninety (90) days after the Court entered the Decree, or June 8, 2025.

In early May of 2025, ODMHSAS held a two-day training for staff involved in competency evaluation and restoration practices which included topics related to evaluation standards, documentation, and court-related requirements. As noted in the Consultants' September 2025 Report, we received a great deal of training material prior to the June 8 deadline. These materials documented who had been trained to date, the topics covered in the training, and many of the actual materials utilized in the training.

In mid-September 2025, ODMHSAS launched the *Caring for Justice-Involved Clients* training series for competency and restoration staff which built upon the previous training by introducing topics related to the Sequential Intercept Model and the Risk-Need-Responsivity model. Most recently, in early January 2026, ODMHSAS forensic services and care coordination staff traveled to the Oklahoma Forensic Center in order to provide training to staff there on topics specifically related to discharge planning.

The Department has reported that they are preparing for 2026 annual evaluator and staff training by engaging with several forensically trained psychiatrists currently practicing in Oklahoma and providing services to the Department. These trainers include Reagan Gill, DO, Jeffrey Sanders, MD, MHA, and Chandler Hicks, DO, who is also trained in child/adolescent psychiatry and will provide education about juvenile-related competency topics. We have recommended that the Department contact nationally recognized experts in the field of competency evaluation and restoration practices to augment the required annual training for evaluators and staff. We have provided the Department with names and contact information for these experts and have offered to facilitate introductions, if needed.

Notably, the Decree requires twelve (12) hours annually of continuing education for "staff involved in competency restoration at OFC and other facilities" (paragraph 64) and separately requires that Qualified Forensic Examiners (QFEs) receive comprehensive forensic evaluator training as outlined by the Decree (paragraph 31). This evaluator training will be specifically outlined in a formal QFE policy, discussed in more detail below.

**Finding** ODMHSAS has provided training to staff involved with competency and restoration services in May and September of 2025, as well as early January of 2026. They have outlined a plan for providing ongoing annual training for staff involved in competency restoration in 2026.

**Recommendations**

- ODMHSAS must provide Consultants and Class Counsel with a written plan for the 2026 training of ODMHSAS staff involved with competency restoration with dates, locations, trainers, and topics.
- National experts should supplement the Department's plan to use local evaluators and faculty to provide annual training for staff involved with competency evaluation and restoration at OFC and other facilities.


*Approve and Monitor Qualified Forensic Examiners (issue 5)*

The Decree requires ODHMSAS to train, approve, and monitor Qualified Forensic Examiners ("QFEs") that conduct competency evaluations, with extra levels of training, monitoring, and service restrictions regarding master's level QFEs (paragraph 31). In our September 2025 report, we noted that this requirement was "partially met," given that the Department had provided some competency evaluation training in May 2025 and that the Parties had begun circulating a drafted QFE policy. Since our report, the Parties continued to work together to revise the draft.

The final draft was most recently approved by the Consultants following acceptance by Class Counsel during the Dispute Resolution Process, and it appears likely to be finalized soon.

However, much work remains to be done to implement the QFE policy after it is adopted, including training evaluators and monitoring the quality of their reports. As noted above, the Department stated during mediation that they have a drafted plan for evaluator training, and the drafted QFE policy does detail a quality assurance process. Still, these important elements have yet to be implemented.

**Finding** The ODMHSAS response to the QFE issue has been satisfactory. However, implementation issues remain, which underlie our recommendations below.

**Recommendations**

- ODMHSAS must finalize the QFE policy within two weeks after receiving the final draft from Court Consultants.
- ODMHSAS must produce a finalized training regimen that includes introductory training for all new QFEs and ongoing maintenance training for existing QFEs. The Department must send us a list of trainers, topics, dates, locations, curricula, and training modalities before the training occurs, so that we may review and consider approval. This must occur one month prior to the first training, which should be scheduled no later than June 30, 2026.
- ODMHSAS must create additional training, approval mechanisms, monitoring, and limitations for master's-level QFEs by June 30, 2026. This may be subsumed into the QFE policy.
- ODMHSAS must create a quality assurance process that monitors the quality of evaluation reports, and this process should include the use of a standardized quality assurance metric to evaluate report quality uniformly. ODMHSAS evaluators must maintain a certain average aggregate criterion level across evaluation reports, pulled at random, in order to avoid penalties. This criterion level and QA process must be reviewed and approved by the Court Consultants before the QA process begins, and it should be finalized prior to April 30, 2026.
- ODMHSAS must create sanctions and remedies for evaluators producing poor quality reports. This will also necessitate an appeals process for evaluators who are placed into remediation or who are terminated from the evaluator pool. This may be subsumed in the QFE policy.
- ODMHSAS must produce training proposals and cost estimates (quotes) from the national experts we have provided to them and decide which experts will be retained by February 28, 2026. National experts can be excluded from the initial evaluator training only with Court Consultant approval.

***Whether Defendants Have Responded Adequately to Court Consultant Requests for Information***

As Court Consultants detailed in their June 2025 Interim Report and in their September 2025 Report, ODMHSAS failed to respond to a significant number of requests for information. Some of those requests for information dated to March 21, 2025 and were repeated frequently in emails to ODMHSAS and in our Reports.

Requests receiving no response included, but were not limited to, any bed projection or cost analyses relevant to beds that have been conducted, written criteria for excluding persons from the waitlist including those subject to the initial 90-day reevaluation, and accreditation reports (which were finally made available through means other than ODMHSAS central office). In addition, contrary to DMH's assertion (see Appendix B), there are still outstanding data and information requests dating back several months.

**Findings** ODMHSAS's response to requests has substantially improved since entry of the Decree, after change of executive leadership at the agency. However, there are still occasions when requests for information receive no response.

**Recommendations**

- ODMHSAS must appoint a person with responsibility for assuring that Court Consultant requests for information receive a response and advise Court Consultants of the identify of that person by February 16.
- ODMHSAS must reply to all Requests for Information within two weeks of their receipt.
- If ODMHSAS requires additional time to respond, it must so inform Court Consultants within the two-week period.

***Reevaluation of Class Members (issue 1, Mr. DeMuro's letter)***

The Decree requires ODHMSAS to conduct reevaluations of competency to stand trial for two different populations: all Class Members who were on the waitlist at the time of the entry of the Consent Decree within 90 days (with some exceptions regarding the timing of the initial competency evaluations, paragraph 57), and every Class Member who has been on the waitlist for at least 90 days on an ongoing basis (paragraph 67). Although both are required, at issue in the current dispute resolution and mediation processes is the initial 90-day reevaluation requirement.

Initially, ODMHSAS was unable to provide to Court Consultants an accurate list of persons who were required to be reevaluated versus those who were eligible for exclusion from that requirement. As of our September 2025 report, the information provided to us did not allow us

to be certain that everyone who was required to be reevaluated had indeed been reevaluated. Although the 90-day window for that requirement had now long elapsed, we needed adequate verification that the evaluations had indeed been completed. The state of ODMHSAS data system at that time was unable to provide an adequate level of verification.

Since that time, the data system has improved. However, the data provided to us pose the same concerns that we have raised with other data in the system – we are unsure if the data is comprehensive and internally accurate (see above for our review of the "validity and reliability of data").

**Finding** Like other data, the data relevant to reevaluations has not yet been independently verified to confidently assure us that the required 2025 reevaluations were indeed completed.

**Recommendations**

- A third-party forensic data specialist / auditor be subcontracted by the Court Consultants to independently verify the comprehensiveness and accuracy of the data regarding the reevaluation of persons on the waitlist, with enhanced focus on those on the waitlist at the entry of the Consent Decree.
- If the auditor finds that some Class Members were not reevaluated within their required window, ODMHSAS will prioritize those reevaluations and will provide the assigned defense counsel, prosecutor, and courtroom the updated date for the reevaluation.

### Appointment of a Person to Implement the Decree (issue 10)

In their Notice of Dispute, Class Counsel state "Defendants must appoint a properly qualified person with authority and responsibility to exclusively implement and monitor Consent Decree compliance" (Mr. DeMuro letter). ODMHSAS believes that this is outside the scope of the Decree, and they disagree with Class Counsel's assertion.

From the first meeting with ODMHSAS leadership in March 2025, Court Consultants have consistently recommended the appointment of a person with the authority, responsibility, and full-time commitment to oversee implementation of the Decree. This is based on our individual experiences in administering, overseeing, and advising on such decrees and our knowledge of the complexity of the multiple tasks that have to be pursued for each provision of a decree. We reiterated this recommendation in our June interim report and our September full report. This recommendation is also consistent with the Decree's requirements that ODMHSAS in consultation with Class Counsel and Court Consultants develop and implement a plan "to staff the Department with individuals tasked and qualified" to oversee the Department's competency program (paragraph 77). Class Counsel also holds the view that a full-time person is

needed for this role, as did the Oklahoma Legislature in enacting legislation later vetoed by the Governor.

With all respect for ODMHSAS Counsel, we do not believe that any General Counsel to an agency the size of ODMHSAS has the time to oversee implementation of the Decree. In addition, with the transitions ODMHSAS faces in the near future (noted above), it is essential that a plan be in place to assure continuity in ODMHSAS efforts; this level of continuity can only be provided by a staff person with responsibility for those efforts. ODMHSAS pointed out, fairly, that hiring a person during a time of political transition in fact may be difficult. However, our recommendation for the creation and filling of this role stands.

**Finding** For the reasons articulated in this report, ODMHSAS must move to create and fill a position to oversee implementation of the Decree.

**Recommendations**

- By February 16, ODMHSAS will provide Court Consultants and Class Counsel with a position description, salary scale, and other factors relevant to a search including a marketing strategy for the search to reach likely interested parties.
- Within two weeks after approval by Court Consultants and Class Counsel, ODMHSAS will begin the search for the position.
- Within two months after initiation of the search, ODMHSAS will meet with Court Consultants and Class Counsel to review the results of the search to that point.


**Summary**

The recommendations we make in this report on mediation take immediate effect as part of the Decree (paragraph 96) and are listed in one place in Appendix C. Either Party has a right to contest these recommendations before the trial court (paragraph 97), but the recommendations are in force pending any such contest. The recommendations in our view reflect the state of implementation of the Decree, which continues to be slow with many Decree provisions unmet as we approach the first anniversary of its entry.

Each Court Consultant participated in preparation of this Report, has reviewed the Report, and agrees with its Findings and Recommendations.

## Appendix A: Agenda for Mediation Session

9:00 – 9:30      Introduction to process; all Parties present

9:30 – 10:20    Court Consultants meet with DMH re: Plan, Data Reliability

10:30 – 11:20   Court Consultants meet with Class Counsel re: Plan, Data Reliability

11:30 – 11:45   Court Consultants meet with Attorneys General re: Plan, Data Reliability

12:00 – 12:20   Reconvene for process discussion and plan for afternoon; all Parties present

12:30 – 1:30    Lunch

1:30 – 2:15      Court Consultants meet with DMH re: forensic lead, training efforts, JBCR

2:30 – 3:15      Court Consultants meet with Class Counsel re: forensic lead, training efforts, JBCR

3:30 – 3:45      Court Consultants meet with AGs re: forensic lead, training efforts, JBCR

3:45 – 4:30      Court Consultants meet internally

4:30 – 5:15      Reconvene, summarize, address issues raised during the day, plan for next steps

This agenda was provided to all Parties in the initial introduction section. However, the agenda shifted throughout the day according to actual meeting times with Parties, a DMH request to present information via a power point slideshow during lunch, a shift in afternoon meeting times, and the removal of the 3:45-4:30 Court Consultants internal discussion. Additionally, all Parties agreed that there was no need to reconvene the following day, as had been tentatively scheduled.

**Appendix B: ODMHSAS Mediation Claims Regarding Mediation**

**and Court Consultant Response**

After mediation ended, ODMHSAS made several claims about various aspects of the mediation process. Given that those claims may find their way into subsequent proceedings, we address them here as they get to the manner in which we conducted the mediation and our role.

1. ODMHSAS asserted that the materials submitted to Judge Frizzell should be considered by Court Consultants as part of the Dispute Resolution process.

   In fact, we have considered all material submitted to Judge Frizzell and all other material submitted by ODMHSAS since entry of the Decree.

2. ODMHSAS asserted that because Class Counsel initiated the dispute resolution process, that Class Counsel had a burden of proof to show that ODMHSAS had not used "best efforts."

   No such burden exists in a mediation setting. Also, as we note in our report, the Decree places authority to determine whether the Department has made "best efforts" with the Consultants and we have relied on extensive information in doing so.

3. In a related assertion, ODMHSAS stated that Class Counsel did not present witnesses at the mediation session and therefore lacked evidence in support of its position.

   Mediation is not an adversarial process, nor did we require parties to present witnesses in our Guidance to Parties on the mediation process. In addition, the Rules of Evidence do not apply to informal mediation sessions. Court Consultants have myriad sources of material available in considering the question of "best efforts." We did not request, nor did we require, Class Counsel to produce "witnesses" at a non-adversarial proceeding.

4. ODMHSAS also has argued subsequent to the mediation that it had addressed the various claims in the Notice of Dispute and relied on evidence and witnesses to do so, thereby establishing that it has used "best efforts."

   As noted, we have received and considered all of the material provided by ODMHSAS. In addition, had Class Counsel been required to produce witnesses (which they were not), that witness logically would have been subject to cross-examination. In turn, the

evidence and witnesses that ODMHSAS references would have been subject to the same. This was a mediation, not a trial or evidentiary hearing, however, and the statements by either party do not on their face constitute "proof"; rather they are simply among the matters we considered in reaching our conclusions.

5. ODMHSAS also has claimed that as Court Consultants we have relied on statements from Class Counsel recounting statements of others and that we should not consider what ODMHSAS characterizes as hearsay.

This assertion by ODMHSAS is incorrect, as our concerns regarding data rest on a) the apparent withholding of data immediately after entry of the Decree; b) multiple inaccuracies and inconsistencies in data we have been given over the life of the Decree; and c) communications from various officials made to us directly, rather than statements by Class Counsel.

6. ODMHSAS noted that it had provided all documentation that we had requested.

This is not the case. Despite multiple requests stemming to March 21, 2025, we still have not received any response for

- Any existing methodology that the Department uses to define or project inpatient capacity needs (Department's materials for mediation says no such methodology existed at time of March 21 request but ODMHSAS has mentioned in its August and current draft reliance on such analyses, and the request has been ongoing but not received)
- Any analysis done within the last three years of the cost of adding an inpatient bed (originally requested March 21, 2025, repeated several times, never received)
- Any information regarding past or present plans to contract for forensic beds in private (non-state) hospitals including any contracts that may be in place for that purpose (never received)
- Any staffing analysis that has been done that recommended or considered but did not recommend the creation of positions within the central office devoted exclusively or primarily to forensic issues (positions added have been noted but the request for any analysis received no response)
- The criteria by which people were excluded from the initial 90 day reevaluation requirement which in our view was based on incorrect internal ODMHSAS advice from counsel (never received)

- Examples of contracts with mental health providers that specify requirements for jail-based competency restoration services provided by the provider[10]
- The number of jail-based competency restoration programs currently in place
- Policies and procedures used by such programs
- The number of clients being served in each.

## APPENDIX C: Recitation of Findings and Recommendations that Become Effective Immediately as Part of the Consent Decree

### The Plan and Its Components

**Finding** ODMHSAS has not used "best efforts" in creating and implementing the Plan, including the constituent elements discussed above and below, nor has ODMHSAS engaged in the required consultation with Class Counsel and Court Consultants. A failure to use "best efforts" constitutes a material violation of the Decree.

**Recommendation** ODMHSAS must take the following steps to assure creation and implementation of the Plan:

- Submit a comprehensive draft Plan by January 30, 2026.
- Submit a final Plan no later than two weeks after receipt of feedback from Court Consultants and Class Counsel.
- Begin implementation of the Plan no later than 4 weeks after approval of the Plan by Court Consultants, with an implementation schedule identifying responsible persons and timelines acceptable to Court Consultants; this implementation schedule should be part of the Plan.
- If Court Consultants find the Plan to be unacceptable, the Consultants will exercise their authority to subcontract with a person or entity to work with the Department and Class Counsel to develop an acceptable plan.

### Jail-Based Competency Restoration (JBCR)

**Finding** While there appears to be an increase in activity in this area, primarily a few conversations, they fall short of best efforts, given that the original deadline for development and initial implementation was June 8, 2025. We found in our September report that best efforts had not occurred, and that as a result a material violation existed, and between that report and the date of mediation nothing has occurred to change that conclusion.

**Recommendations**

---

[10] While the requests for material on JBCR is dated at this point, our initial requests were timely when they were made, and we received no response.

**Tulsa County**
- Identify the person or persons at ODMHSAS responsible for overseeing this section of the Decree.
- Meet with the Sheriff and other Tulsa County officials as necessary to determine by February 16 whether space is available within the jail for a JBCR program, as well as the Sheriff's conditions for the establishment of such a program.
- Assuming the availability of space, develop a Request for Proposals or acceptable alternative in consultation with Court Consultants, Class Counsel, and relevant Tulsa County officials to elicit bids for the implementation of a JBCR program in the jail. The RFP must include all issues relevant to the construction and staffing requirements for development and implementation of the program and must be issued by March 30, 2026
- Prior to issuance of the RFP, work consistently and collaboratively with Court Consultants and Class Counsel to develop the elements of the RFP, with a particular focus on programmatic design.

**Second County**
The requirements for Tulsa County apply to development of a pilot JBCR program in a second county, whether Cleveland County or an alternative.


**The Validity and Reliability of Data**
**Findings**
Data used by ODMHSAS for the purposes identified in the Decree have improved markedly since entry of the Decree. However, Court Consultants have been unable to independently verify the reliability and validity of OMDHSAS data, and Class Counsel continues to raise concerns regarding the data. In addition, various stakeholders have reported data inconsistencies to the Court Consultants throughout the past several months.

**Recommendations**
- By February 16, 2026, ODMHSAS shall submit to Court Consultants and Class Counsel all emails and responses from the beginning of the cross-checking of data process described above, including information regarding the specific cases where there were mismatches between people identified through this process.
- ODMHSAS shall submit this information monthly along with the monthly status reports that the Decree requires.
- Court Consultants have determined that hiring an independent full time data analyst to verify data reliability and validity is unnecessary. The data portal itself is not in question at this time. However, we do find it necessary to have the capacity to examine issues related to the comprehensiveness and the accuracy of the forensic data that is entered into the portal. We intend to contract with a party to work with the Department under our direction to conduct the necessary audit for us to determine forensic data validity and reliability.
- We assume Class Counsel consents to this. For ODMHSAS, we will provide details on the manner in which we intend to proceed. The audit can be conducted remotely and

should require minimal time from ODMHSAS staff. Within a week of the provision of those details, ODMHSAS will advise on whether they approve or disapprove our acting under Paragraph 48.

- If ODMHSAS disapproves, we do not believe that a second use of the dispute resolution process is necessary, but we believe that the matter would be best resolved by the Court.

**Training (Legal Officials)**

**Finding** Although the Department violated the initial 90-day requirement to consult with Court Consultants and Class Counsel regarding the development of a stakeholder training plan, Court Consultants and Class Counsel are satisfied with the overall progress of the 12-month requirements, pending timely and satisfactory completion of the following requirements:

**Recommendations**

To fulfill the tentative agreement on this issue, ODMHSAS will

- Identify a stakeholder training lead by February 16.
- Submission, collaboration, and approval of all stakeholder training materials – to include but not limited to identified presenters, training topics, agendas, curricula, and training materials – to Court Consultants and Class Counsel for their review and approval by May 15.
- Submission of marketing and dissemination materials (e.g., flyers, conference registration websites, etc.) to document proof of trainings two weeks prior to each training.
- Submission of a list of participants for each training within two weeks after the conclusion of the trainings as well as any evaluations of the training by participants.

**Training (Continuing Education for Staff Involved in Competency Restoration)**

**Finding:** ODMHSAS has provided training to staff involved with competency and restoration services in May and September of 2025, as well as early January of 2026. They have outlined a plan for providing ongoing annual training for staff involved in competency restoration in 2026.

**Recommendations**

- ODMHSAS must provide Consultants and Class Counsel with a written plan for the 2026 training of ODMHSAS staff involved with competency restoration with dates, locations, trainers, and topics.
- National experts should supplement the Department's plan to use local evaluators and faculty to provide annual training for staff involved with competency evaluation and restoration at OFC and other facilities.

**Approve and Monitor Qualified Forensic Examiners**

**Finding** The ODMHSAS response to the QFE issue has been satisfactory.

**Recommendations**

- ODMHSAS must finalize the QFE policy within two weeks after receiving the final draft from Court Consultants.
- ODMHSAS must produce a finalized training regimen that includes introductory training for all new QFEs and ongoing maintenance training for existing QFEs. The Department must send us a list of trainers, topics, dates, locations, curricula, and training modalities before the training occurs, so that we may review and consider approval. This must occur one month prior to the first training, which should be scheduled no later than June 30, 2026.

- ODMHSAS must create additional training, approval mechanisms, monitoring, and limitations for master's-level QFEs by June 30, 2026. This may be subsumed into the QFE policy.
- ODMHSAS must create a quality assurance process that monitors the quality of evaluation reports, and this process should include the use of a standardized quality assurance metric to evaluate report quality uniformly. ODMHSAS evaluators must maintain a certain average aggregate criterion level across evaluation reports, pulled at random, in order to avoid penalties. This criterion level and QA process must be reviewed and approved by the Court Consultants before the QA process begins, and it should be finalized prior to April 30, 2026.
- ODMHSAS must create sanctions and remedies for evaluators producing poor quality reports. This will also necessitate an appeals process for evaluators who are placed into remediation or who are terminated from the evaluator pool. This may be subsumed in the QFE policy.
- ODMHSAS must produce training proposals and cost estimates (quotes) from the national experts we have provided to them and decide which experts will be retained by February 28, 2026. National experts can be excluded from the initial evaluator training only with Court Consultant approval.

### Whether Defendants Have Responded Adequately to Court Consultant Requests for Information

**Findings** ODMHSAS's response to requests has substantially improved since entry of the Decree, after change of executive leadership at the agency. However, there are still occasions when requests for information receive no response.

**Recommendations**

- ODMHSAS must appoint a person with responsibility for assuring that Court Consultant requests for information receive a response and advise Court Consultants of the identify of that person by February 16.
- ODMHSAS must reply to all Requests for Information within two weeks of their receipt.
- If ODMHSAS requires additional time to respond, it must so inform Court Consultants within the two-week period.

### Reevaluation of Class Members

**Finding** Like other data, the data relevant to reevaluations has not yet been independently verified to confidently assure us that the required 2025 reevaluations were indeed completed.

**Recommendations** We therefore recommend the following:

- A third-party forensic data specialist / auditor be subcontracted by the Court Consultants to independently verify the comprehensiveness and accuracy of the data regarding the reevaluation of persons on the waitlist, with enhanced focus on those on the waitlist at the entry of the Consent Decree.

- If the auditor finds that some Class Members were not reevaluated within their required window, ODMHSAS will prioritize those reevaluations and will provide the assigned defense counsel, prosecutor, and courtroom the updated date for the reevaluation.

**Appointment of a Person to Implement the Decree**

**Finding** For the reasons articulated in this report, ODMHSAS must move to create and fill a position to oversee implementation of the Decree.

**Recommendations**

- By February 16, ODMHSAS will provide Court Consultants and Class Counsel with a position description, salary scale, and other factors relevant to a search including a marketing strategy for the search to reach likely interested parties.
- Within two weeks after approval by Court Consultants and Class Counsel, ODMHSAS will begin the search for the position.
- Within two months after initiation of the search, ODMHSAS will meet with Court Consultants and Class Counsel to review the results of the search to that point.