IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LESLIE BRIGGS, as next friend | ) | |
| of T.W. and B.S.; | ) | |
| EVAN WATSON, as next friend | ) | |
| of C.R.; | ) | |
| and, HENRY A. MEYER, III, | ) | |
| as next friend of A.M., for | ) | |
| themselves and for others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-81-GKF-JFJ |
| | ) | |
| GREGORY SLAVONIC, in his | ) | |
| official Capacity as the Commissioner | ) | |
| of the Oklahoma Department of | ) | |
| Mental Health and Substance Abuse | ) | |
| Services, and HOLLY WEBB, in her | ) | |
| official Capacity as Executive Director | ) | |
| of the Oklahoma Forensic Center. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR REVIEW OF, AND RELIEF FROM,
COURT CONSULTANTS' DECISION [DOC. 140] AND BRIEF IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………...………………………… i

TABLE OF AUTHORTIES …………………………………………….………………....…ii

   I.      INTRODUCTION …………………………….…………………………..1

   II.     DISPUTE RESOLUTION PROCESS HISTORY …………………….……….2

   III.    THE CONSULTANTS' DECISION …………………………………………3

   IV.   THE DEFENDANT'S MOTION FOR REVIEW AND RELIEF …………..……..3

   V.    THE STANDARD OF REVIEW ……………………………………………4

        A.  Findings of Fact …………..……………………………………………4

        B.  Conclusions of Law ………………………………………………………5

   VI.   THE DISPUTE RESOLUTION PROCESS DENIES DUE PROCESS …..…………6

ARGUMENT AND AUTHORITIES ……………………………………….…………8

        A.  Mischaracterization of the Defendant's Conduct as Lacking Good Faith or "Best Efforts" …………………………………………………….…………8

        B.  Improper Application of the "Best Efforts" …………………………………9

        C.  Erroneous Finding of a "Material Violation" Under Paragraph 28……………….12

        D.  Improper Attribution of Delay in Plan Approval to Defendants …………………....12

        E.  Failure to Recognize External Constraints and Third-Party Dependencies …………12

        F.  Reliance on Unidentified and Unsupported Allegations Regarding the Reliability of the Defendants…………………………………………………………13

        G.  Procedural Deficiencies in the Mediation Process …………………………………..14

        H.  Paragraph 97 Requires a Record-Based, Reasoned Decision Susceptible to Arbitrary and Capricious …………………………………………………………...…15

        I.  The Consultants' Decision is Based in part, on Legal Conclusions and Cannot withstand de novo review ……………………………………..……………18

CONCLUSION …………………………………………………..…………………..20

## TABLE OF AUTHORITIES

### Cases

*Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989)……….……..5, 15-16, 19

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)……...………..5, 15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)………...…5, 15

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947)………………………………………………..5, 15

*Johnson v. Lodge #93 of Fraternal Ord. of Police* 393 F.3d 1096, 1101 (10th Cir. 2004)………..5

*Mathews v. Eldridge*, 424 U.S. 319………………………………………………...…………..5

*In re C.W. Mining Co.*, 625 F.3d 1240 (10th Cir. 2010)………………………..……………...5

*Arlin Geophysical v. United States*, 696 F. App'x 362 (10th Cir. 2017)…………………….....5

*Roxana Petroleum Co. of Oklahoma v. Rice*, 1924 OK 1042 (1924) …………...……………12

*In re Atlantic Pipe Corp.*, 304 F.3d 135, 144 (1st Cir. 2002)………………………….…..16

### Rules

LCvR 7-1(b), N.D. Okla ……………………………………………….………… 1,8

### Documents

Doc. 124 – September 25, 2025 Consultant Status Report ……………………...…………..9

Doc. 126 – Motion for Injunctive Relief ………………………………………………..1, 10

Doc. 139 – Order Denying Motion for Injunctive Relief …………………….…..…………1, 9

## INTRODUCTION

Pursuant to Section VIII, Paragraph 97, of the Consent Decree entered herein on March 10, 2025, and LCvR7-1(b), Defendants, Admiral Gregory Slavonic, in his official capacity as the Commissioner (the "Commissioner") of the Oklahoma Department of Mental Health and Substance Abuse Services, and Holly Webb, in her official capacity as Executive Director of the Oklahoma Forensic Center, a Department-operated mental health hospital, (collectively in their respective representative capacities, the "Defendants"), respectfully submit this *Motion for Review of, and Relief from, Court Consultants' Decision,* (the "Motion for Review and Relief").

In support of the Motion for Review and Relief, Defendants allege and state:

## I.    DISPUTE RESOLUTION PROCESS HISTORY

1.    On October 13, 2025, Plaintiffs' counsel filed a Motion in this Court for Injunctive Relief and Expedited Consideration.  (Doc. 126). The Court denied the Motion and referred the dispute to the "Dispute Resolution Process" in Section VIII, Paragraphs 96 - 100 of the Consent Decree (No. 4:23-cv-00081-GKF-JFJ) (the "Decree").  (Doc. 139).

2.    On November 5, 2025, Plaintiffs initiated the Dispute Resolution Process by emailing their Notice of Dispute, claiming eleven alleged failures of the Defendants to use Best Efforts in its performance of the Decree's requirements. (See Notice of Dispute attached hereto as Exhibit A).

3.    On November 24, 2025, the Defendants, Class Counsel and attorneys from the Attorney General's Office met to confer and attempt to resolve the issues raised in the Notice of Dispute.  While progress was made, no resolution occurred.

4.    In correspondence to the Consultants, copied to Class Counsel and the Attorney General, dated December 3, 2025, and January 8, 2026, the Defendants raised concerns about the

rules and procedures of the Alternative Dispute Resolution Process ("ADR Process").  (See December 3, 2025 Letter from John O'Connor attached hereto as Exhibit B and O'Connor Letter to Court Consultants re Mediation attached hereto as Exhibit C).

5.  The Consultants responded in their January 5, 2026, letter, which was silent regarding witness production and burden of proof in the ADR Process and prohibited a record. (See Court Consultant's Mediation Procedure Memo attached hereto as Exhibit D).

6.  The Consultants reiterated their characterization of the ADR Process in Appendix B to the Consultants' Decision: "This was a mediation, not a trial or evidentiary hearing, however, and the statements by either party do not on their face constitute "proof"; rather they are simply among the matters we considered in reaching our conclusions."   Consultants' Decision, p.22.

7.  Per the Decree, "[T]he Consultants shall determine the mediation rules and procedures, including the time and location."  Decree, ¶ 96.

8.  The process and rules adopted by the Consultants for the ADR Process were internally inconsistent and flawed.

9.  The Consultants provided "guidelines" for the ADR Process in letters to the Parties dated December 15, 2025, and January 5, 2026, (see Court Consultants' Mediation Process Memo attached hereto as Exhibit E and the January 5, 2026, Court Consultant's Mediation Procedure attached as Exhibit D), which included the following: (1) no recording the proceedings/sessions, (2) sessions are confidential, and (3) the Consultants would issue findings, regardless of the outcome of the ADR Process, to the Court following the conclusion of the ADR Process.

10.  The Consultants' guidelines conflated different types of ADR, their roles as neutrals, and the rights of the Parties in respect to the binding part of the Dispute Resolution Process, as follows: (1) referenced two (2) circuit court mediation guidelines, (2) simultaneously assumed the role of mediator and fact finder, (3) prohibited the creation of a record, and (4) reserved the unilateral ability to draw factual conclusions without a record.

11.  On January 12, 2026, the Court Consultants (the "Consultants") met with Class Counsel, the Defendants and attorneys from the Attorney General's Office to conduct the Dispute Resolution Process, pursuant to Paragraph 96.  There was no resolution on any of the 11 issues in Plaintiffs' Notice of Dispute.

## II.    THE CONSULTANTS' DECISION

12.  On January 23, 2026, the Consultants issued their *Findings and Recommendations from Mediation in Briggs v. Slavonic* ("Consultants' Decision" or "Decision"). The Consultants referred to the January 12, 2026, meeting as a "Mediation Session," rather than as a binding process.  (See p. 1, Consultants' Decision attached hereto as Exhibit F)

13.  The Court Consultants, acting simultaneously as triers of fact and in the absence of due process safeguards, issued their Decision with findings of fact and binding "recommendations."

14.  Per the Decree, "A Consultants' Decision is binding on the Parties and immediately effective as a provision of this Consent Decree until and unless it is modified or rejected by the Court in accordance with the following Paragraph 97."  Decree, ¶ 96.

15.  No recommendations of sanctions or contempt remedies of any kind were made by the Consultants.

## III.    THE DEFENDANTS' MOTION FOR REVIEW AND RELIEF

16.    This Motion for Review and Relief is filed pursuant to Section VIII, Paragraph 97, of the Decree[1] ("Paragraph 97"), which provides: "Any Party may file a motion with the Court seeking review of a Consultants' Decision, or seeking relief related to any issue embraced in a Notice of Dispute that led to a Consultants' Decision..."

17.    The Defendants seek both review of, and relief, from this Court for four (4) main reasons:

    a.    in reaching their findings, the Consultants ignored and rejected the express definition of *"Best Efforts"* in Paragraph 18 of the Decree and substituted a strict adherence standard for the Decree's performance-based standard. Therefore, the findings and recommendations in the Consultants' Decision violate the clear terms of the Decree, are arbitrary and capricious, and should be rejected by this Court; and

    b.    the Consultants implemented a fundamentally flawed ADR Process as set forth in Paragraph 96 of the Decree.

    c.    the Consultants' resulting Decision is likewise flawed due to the procedural and substantive defects of Paragraph 96.

    d.    the flaws in the ADR procedure and resulting Decision must be corrected as they are not equitable to the Parties. Correction will benefit both Parties and the Consultants and promote equity and preserve Court resources.  It is certain that the process will be utilized many times over the multi-year life of the Decree and the flaws in this process should be corrected now; and

    e.    if Consultants' erroneous Decision is allowed to stand, Defendants will be deprived of the due process rights afforded by the Constitution.

### IV.    THE STANDARD OF REVIEW

---

[1]  And pursuant to this Court's Minute Order dated January 23, 2026.

### A.  Findings of Fact.

Paragraph 97 of the Decree requires this Court to apply an arbitrary and capricious standard of review to the Court Consultants' factual findings and recommendations post-ADR Process. Under that standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Although deferential, this review "must be searching and careful," even though "the ultimate standard of review is a narrow one." *Id*.

Arbitrary and capricious review therefore presupposes that the decisionmaker examined relevant information and explained its reasoning. As the Supreme Court explained in *State Farm*, "the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A reviewing court "may not supply a reasoned basis for the action that the decisionmaker itself has not given." *Id*. (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

### B.  Conclusions of Law.

The Court reviews questions of law, including interpretation of Consent Decrees and due process challenges de novo. Consent decrees are negotiated agreements entered as judgments and have characteristics of both contracts and final judgments on the merits.  *Johnson v. Lodge #93 of Fraternal Ord. of Police* 393 F.3d 1096, 1101 (10th Cir.  2004).  The Tenth Circuit adopted the majority view that interpretation of a consent decree is de novo.  *Id*.

Defendants assert that the district court deprived them of notice and a meaningful opportunity to be heard. This claim sounds in due process and presents a legal question reviewed

5

de novo. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *In re C.W. Mining Co.*, 625 F.3d 1240, 1244 (10th Cir. 2010); *Arlin Geophysical v. United States*, 696 F. App'x 362, 368 (10th Cir. 2017) (unpublished). The Consent Decree does not authorize the Consultants to make conclusions of law.

## V.    THE DISPUTE RESOLUTION PROCESS DENIES DUE PROCESS

The binding elements of the Dispute Resolution Process in Paragraph 96 are flawed as written and as they were applied by the Consultants. The Consultants treated this process like a mediation and called it such, even pointing to the 10th Circuit Rules for Mediations in their instructions to the Parties. But the Decree makes it clear that this is much more than a mediation, where the Parties fashion their own solutions with a neutral facilitator:

> If the Parties are unable to agree on a resolution following the thirty (30) calendar days after a Party requests mediation, the Consultants will promptly issue a written decision, including recommendations, if appropriate, with respect to the issues presented in the Notice of Dispute (the "Consultants' Decision"). A Consultants' Decision is binding on the Parties and immediately effective as a provision of this Consent Decree until and unless it is modified or rejected by the Court in accordance with the following Paragraph 97…

Decree, ¶ 96.

In this Dispute Resolution Process, the Consultants hear from the Parties, then enter a decision that has the effect of a federal court order. This process has none of the hallmarks of a mediation:

1) The Consultants are not neutrals.

2) The non-neutral mediators have the authority to enter Decisions with factual "findings" that constitute the basis for the imposition of substantial liquidated damages, other sanctions and injunctions.

3) This process afforded no Due Process and yet has the force of a federal court order. No federal Judge would blatantly disregard and deny due process to a Party and then enter such an Order:

a) No record was allowed by the Consultants. Not even a voice recording of the proceeding. The Consultants asked many questions of the Defendants' personnel during the mediation about the Defendants' efforts in the performance of the components of the draft Plan and Decree. Yet, the Consultants, in Appendix B to the Consultants' Decision, stated: "This was a mediation, not a trial or evidentiary hearing, however, and the statements by either party do not on their face constitute "proof"; rather they are simply among the matters we considered in reaching our conclusions." Consultants' Decision, p.22.

b) No evidentiary rules (even relaxed) were applied.

c) Plaintiffs, who brought the Notice of Dispute with 11 claims, were not required to produce any evidence to support their allegations.

d) No burden of proof was imposed upon Plaintiffs, the complaining and accusing Party. In a hearing of their complaints, this Court would have noted that it is Plaintiffs' burden to prove their claims.

e) No witnesses were sworn or allowed to be cross-examined. Plaintiffs never introduced the testimony of a single witness.

f) The Consultants considered information they acquired outside of any presentation by Plaintiffs or the Defendants, supplying their own evidence, and not telling the Defendants of the information upon which they were relying.

g) Defendants were not allowed to know who, for example, was challenging the accuracy of the Defendants' data.

h) The standard of review on appeal to the Court is "arbitrary and capricious" but the Consultants prohibited any recording of the ADR Process addressing the Defendants' presentation regarding their Best Efforts to comply with the Decree.

4) They made no effort to bring the Parties to resolutions on issues in Plaintiffs' Notice of Dispute. Not one time did the Consultants' ask the Defendants to move on an issue or indicate that a certain resolution might be achieved.

A major concern regarding Paragraph 97 primarily involves the Court applying an arbitrary and capricious standard of review to Consultants' Findings without a record of the mediation. The arbitrary and capricious standard necessitates that the Court review for a rational connection between facts and the Consultants' decision; however, without a record authorized and

Consultants' Findings issued shortly thereafter, the mediation process, as presently executed wholly fails to assist the Court in upholding this standard.

Pursuant to LCvR7-1(b) and due to time constraint from the date in which Defendants received Consultants' Findings and the deadline to file the instant Motion, Defendants respectfully request that the Court issue guidance and authorization regarding supplemental brief submissions by both parties in support of and opposition to the instant Motion.

Lastly, Defendants respectfully request that the Court stay the Consultants' Findings, and more specifically, the deadlines referenced therein, until further Order of the Court and set the instant Motion for hearing.

<u>**ARGUMENT & AUTHORITIES**</u>

The Dispute Resolution Process in the Decree is untenable, unworkable and unconstitutionally violates the Defendants' due process rights. Decisions by the Consultants, such as failing to require Plaintiffs to produce any evidence or supporting documentation prior to or during the ADR Process to support their position. The Consultants' directions ultimately created the perception that the terms of the Consent Decree require Defendants to bear the burden of proof regarding any motions as well as any Notices of Dispute filed by Plaintiffs' Counsel. Review by the Court and clarity from the Court appears necessary at this juncture to ensure the Defendants' due process rights are protected and to prevent any such attempts to unlawfully shift the burden of proof in the future.

Consultants also made findings without evidentiary standards, against the clear weight of the evidence, and with a clear misapplication of the definition of "Best Efforts" in Section IV, Paragraph 18, of the Decree and "Material Violation" in Section IV, Paragraph 28, of the Decree.

Court review at this juncture is necessary to clarify and eliminate any further ambiguity in the interpretation of the two key phrases moving forward.

**Mischaracterization of the Defendants' conduct as lacking good faith or "Best Efforts".**

There is no evidence to support a finding or implication that Defendants failed to act in good faith or willfully failed to comply with the Consent Decree. The Court expressly rejected Plaintiffs' characterization of the Defendants' conduct as "willful," noting instead that the Consultants found the Defendant "is acting in good faith" and that the record reflects "evidence of both hard work and good faith." *See* Doc. 139 at fn. 3 (quoting Doc. 124 at 20, 61). The Consultants' Decision discounts this judicial determination and improperly recasts Plaintiffs' claims as set out in their original Motion and again in their Notice of Dispute as proof of a lack of "Best Efforts" by the Defendants and therefore, noncompliance with the Consent Decree.

**Improper application of the "Best Efforts" Standard.**

Defendants object to the Consultants' erroneous interpretation and application of the Decree's "Best Efforts" standard. The Consultants improperly applied a strict adherence standard to determine if "Best Efforts" had been met. The Decree requires the Department to use "Best Efforts"—not to achieve immediate outcomes regardless of capacity, external constraints, or third-party cooperation. The Decision repeatedly conflates missed interim timelines or incomplete approval processes with a lack of effort, contrary to the plain language of the Decree and the evidence presented by the Defendants.

The Court Consultants begin to list their Findings and Recommendations on page 6 of Consultants' Decision. At the bottom of page 6 and top of page 7 of their Decision, the Consultants wrote:

> As of the date of mediation, the Plan required by the Decree neither exists nor has it been implemented. While the Department provided Court Consultants (though

not Class Counsel) with a new draft Plan at the end of mediation and presented material relevant to it during the plenary session, the Court Consultants and Parties will not be formally presented with the draft until January 30. Until a final plan is approved by Court Consultants, it does not meet the requirements of the Decree. The history of the Plan underlies our determination that "best efforts" have not been used.

The above paragraph highlights the Consultants' misapplication of the "Best Efforts" standard of the Consent Decree. Section VI., Paragraph 54 of the Consent Decree sets out the specific terms related to the Consultants Finding above:

> **VI. The Plan**
> 54. ***The Plan consists of the program components and obligations*** set out in this Section VI
> Upon entry of this Consent Decree, Defendants shall use Best Efforts to develop and begin to implement the Plan in accordance with the terms of this Consent Decree. The Plan's components must be approved by the Consultants. Unless otherwise provided below, within ninety (90) days after the Court enters this Consent Decree, Defendants shall, in consultation with the Consultants and Class Counsel, ***develop and begin to implement the Plan's program components described below in this Section VI***… (emphasis added)

By the specific terms of the Decree, the Plan consists of the program components and obligations set out in Section VI. Although neither the Consultants nor Plaintiffs have been satisfied with Defendants' efforts, neither has presented evidence that, at any time since the entry of the Decree, the Defendants have not been attempting to comply with the terms of the Decree. In fact, the record supported by the emails and other documents which the Defendants have presented in their defense of the Plaintiffs' original Motion (Doc.126) and subsequent Notice of Dispute, provide ample evidence that the Defendants have, and continue, to expend significant efforts and resources in a heroic attempt to comply with the terms of the Decree.

The process that has been followed regarding two (2) specific components of the Plan will also illustrate the unfairness of the Consultants' interpretation of the Best Efforts of the Defendants. The emails and other documents presented during this Motion and subsequent ADR Process will also provide undisputed evidence that the Defendants engaged with Consultants and Plaintiffs –

10

over several months – in an attempt to "develop a written triage protocol for Class Members…which must be approved by the Consultants…".  Further, the emails and other documents presented during the Motion and subsequent ADR process will also provide undisputed evidence that the Defendants engaged with Consultants and Plaintiffs in an attempt to comply with Section IV, Paragraph 31, of the Decree to "[consult] with Class Counsel and the Consultants, and with the Consultants' final approval, [to] develop forensic and competence evaluation training standards, approval standards, ongoing monitoring standards, and restrictions on the type of cases master's-level Qualified Forensic Examiners may handle…" (QFE Protocol).

The emails and other documents which the Defendants have presented provide undisputed evidence that the Department's efforts and engagement with the Consultants and Plaintiffs' Counsel to complete both of the above-described components of the Plan have been ongoing for months because the process has required all Parties to review multiple drafts of the Triage protocol as well as of the QFE protocol.

In fact, the Consultants forwarded their final approval email regarding the QFE Protocol to the Defendants on January 14, 2026, two days after the conclusion of the Mediation on January 12, 2026.

Further, the Defendants completed a draft of the required Triage Protocol which the Consultants had initially approved several months ago, the Plaintiffs have yet to agree to the draft Triage Protocol.[2]

The Consultants' Decision that the lack of a Plan at this time "underlies our determination that best efforts have not been used.", cannot withstand even an "arbitrary and capricious" standard

---

[2] Plaintiffs' Counsel submitted their most recent questions regarding the triage protocol on the evening of January 12, 2026. Defendants responded with additional explanations and substantive responses on January 28, 2026.

of review. The time that just these two components have required during this effort illustrates that the Defendants do not have sole control of the process for the development of the Plan.  To claim that the lack of an approved Plan at this time supports the Consultants' Decision is in error.

### Erroneous finding of a "Material Violation" under Paragraph 28.

On the top of page 9 of the Decision, the Consultants wrote: "A failure to use "best efforts" constitutes a material violation of the Decree."

The Defendants object to the Consultants' conclusion that a material violation has occurred. Paragraph 28 defines a "Material Violation" as a failure to use best efforts to adhere to "any plans or methods implemented by the Department." No plan has been approved or implemented. While Defendants submitted a revised draft of the Plan (Version 1.2 Draft Competency Restoration Plan) on January 30, 2026 (See Exhibit G) it cannot constitute an "implemented" plan unless and until it is reviewed and approved by both the Consultants and Plaintiffs. As a matter of contract interpretation, no material violation can exist absent an implemented plan to which the Defendants failed to adhere. *See Roxana Petroleum Co. of Oklahoma v. Rice*, 1924 OK 1042, ¶ 5 (1924) (breach cannot occur until the time of performance unless a promisor expressly declares his/her intention not to perform beforehand).

### Improper attribution of delay in Plan approval to Defendants.

Defendants object to findings that attribute delay in finalizing the Plan solely to the Defendant. The approval process necessarily requires participation by the Consultants and Class Counsel. Defendants have worked diligently and in good faith to revise drafts, respond to feedback, and incorporate requested changes. Experience with other Plan components—including the Triage Protocol and QFE Protocol policies, which remained under review for months—demonstrates that approval timelines are not within the unilateral control of the Defendants.

12

**Failure to recognize external constraints and third-party dependencies.**

At the bottom of page 10 of their Report, the Consultants wrote:

While there appears to be an increase in activity in this area, primarily a few conversations, they fall short of best efforts, given that the original deadline for development and initial implementation was June 8, 2025. We found in our September report that best efforts had not occurred, and that as a result a material violation existed, and between that report and the date of mediation nothing has occurred to change that conclusion.

The Defendants object to findings concerning jail-based competency restoration pilots and related initiatives that fail to account for material factors beyond the Defendants' control, including county cooperation, jail space availability, staffing limitations, and federal detention priorities. The "Best Efforts" standard does not require Defendants to compel action by independent county officials or to overcome barriers outside its legal authority.

In their discussion of this issue on page 10 of the Decision, the Consultants simply disregard the Tulsa County Sheriff's explanation that *the Tulsa County facility had no available pod capacity at the time the Decree was approved by the Court* because it had contracted with ICE officials to house ICE detainees. (emphasis added)

Further, the Consultants' Recommendations regarding this issue require Defendants to adhere to an arbitrary meeting schedule with the Tulsa County Sheriff and other Tulsa County officials to determine if space is available within the jail and in addition "to develop a Request for Proposals or acceptable alternative in Consultation with Court Consultants, Class Counsel, and relevant Tulsa County officials to elicit bids for the implementation of a JBCR program in the jail…", all of which must be issued by March 30, 2026.

**Reliance on unidentified and unsupported allegations
regarding the reliability of the Defendants' data.**

At the bottom of page 10 of their Decision, the Consultants described their Findings regarding the issue of the Defendants' data reliability:

> Data used by ODMHSAS for the purposes identified in the Decree have improved significantly since entry of the Decree. However, Court Consultants have been unable to independently verify the reliability and validity of OMDHSAS data, and Class Counsel and various relevant third parties continue to raise concerns regarding the data. In addition, various stakeholders have reported data inconsistencies to the Court Consultants throughout the past several months.

The Defendants object to findings premised on generalized assertions that unnamed stakeholders "around the state" question the reliability of Department data. Plaintiffs initiated the original Motion and ADR Process herein and bear the burden of proving their allegations. Plaintiffs presented no witnesses, no sworn testimony, and no specific evidence. The Consultants supplemented the claims of the Plaintiffs with their own generalized statement about "various stakeholders" reports. The Defendants cannot meaningfully respond to anonymous, unverified claims—particularly where such claims are relied upon to support binding findings.

### Procedural deficiencies in the mediation process.

The Defendants object to the manner in which the Consultants conducted this "mediation." The ADR Process outlined in Paragraph 96 incorporates elements of mediation and arbitration, blending the informality of mediation directed by neutrals (the Consultants) with the binding decision of the arbitration panel (again, the Consultants).   On top of that, the binding process has the force of a federal court order.   Prior to mediation, the Consultants expressly forbade any recording of the "mediation," including portions of the mediation in which both Parties were present before the Consultants.

Furthermore, Consultants directed the format of mediation, which included each side presenting their position and any supporting documentation while the other side remained in a break-out room.  After the Consultants met with each side and at the end of the mediation, both

parties re-entered the mediation room with the Consultants; however, no negotiation or conferring took place. Although styled as mediation, the process resulted in binding factual findings without evidentiary standards, witness examination, or a defined burden of proof. The mediators effectively supplied and relied upon their own factual determinations, while no record was created to allow for meaningful review. This ADR Process exceeds the dispute-resolution role contemplated by Paragraph 96 of the Decree and raises serious due process deficiencies.

### Paragraph 97 requires a record-based, reasoned decision susceptible to arbitrary and capricious review.

Paragraph 97 of the Consent Decree requires this Court to apply an arbitrary-and-capricious standard of review to the Court Consultants' factual findings and recommendations. Under that standard, a reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Although deferential, this review "must be searching and careful," even though "the ultimate standard of review is a narrow one." *Id.*

Arbitrary and capricious review therefore presupposes that the decisionmaker examined relevant information and explained its reasoning. As the Supreme Court explained in *State Farm*, "the agency must examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A reviewing court "may not supply a reasoned basis for the action that the decisionmaker itself has not given." *Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Here, Paragraph 97 places the Consultants squarely in this posture. In their Decision, the Consultants state that a "Consultants' decision is immediately binding on the parties and

15

immediately effective as a provision of this Consent Decree" unless modified by the Court.  Their decisions are therefore entitled to deferential review only if the process produces findings capable of meaningful judicial evaluation under *Marsh* and *State Farm*.

The Consultants' January 5, 2026, memorandum establishes that they erroneously structured the mediation process in such a way as to prevent the creation of a record, notwithstanding the binding nature of their post-mediation findings. The memorandum states unequivocally: "The sessions are not to be recorded"; "Given that this mediation process is an extension of a federal court matter, there is to be no recording by any means"; and "Nothing said during the discussions is placed in the record or disclosed." (See Exhibit D).

At the same time, the Consultants acknowledge that their role extends beyond facilitation, stating "after mediation ends, we are to make findings and report to the Court on those findings and any recommendations" and "Any findings we make become part of the Decree, barring appeal by one of the Parties to the Court." *Id*.[3]

Thus, the Consultants simultaneously prohibited any recording or memorialization of factual submissions and discussions, while reserving to themselves the authority to issue binding factual findings subject to deferential review under Paragraph 97. That structure is incompatible with arbitrary-and-capricious review as articulated in *Marsh* and *State Farm*. Where a decisionmaker forecloses the creation of a record and then issues binding findings, the Court is deprived of the ability to determine whether those findings were "based on a consideration of the

---

[3] The relevant portion of Paragraph 96 states, "If the Parties are unable to agree...the Consultants will promptly issue a written decision, including written recommendations, if appropriate, with respect to the issues presented in the Notice of Dispute (the "Consultants' Decision)".  From the outset, Consultants declared they would issue written recommendations regardless of the ADR Process outcome.

relevant factors" or whether there exists a "rational connection between the facts found and the choice made." *Marsh*, 490 U.S. at 378; *State Farm*, 463 U.S. at 43.

Although the Consultants characterize the process as mediation, the process they implemented—and the legal consequences that flow from it—depart materially from mediation as recognized by the courts. Mediation is traditionally understood as "a flexible non-binding, dispute resolution process to facilitate negotiations among the parties to help them reach settlement." *In re Atlantic Pipe Corp.*, 304 F.3d 135, 144 (1st Cir. 2002).

Here, however, the Consultants' own memorandum confirms that mediation functioned only as a precursor to binding decision-making: "after mediation ends, we are to make findings," and "Any findings we make become part of the Decree." (See Exhibit D).

The Consultants also confirm in their Decision that the Decree provides a "Consultants' decision is immediately binding on the parties and immediately effective as a provision of this Consent Decree" unless modified by the Court under Paragraph 97. In substance, the ADR Process functioned as a hybrid adjudication: the Consultants gathered information exclusively off the record and then issued binding factual findings entitled to deferential review, while simultaneously foreclosing the creation of any record that would permit the court to evaluate those findings. (See Exhibit F).

Once findings are binding and entitled to deference, their legitimacy depends on adherence to a neutral, record-based process. The Consultants cannot rely on the ADR Process's informality to justify the absence of a record while simultaneously invoking Paragraph 97's deferential review standard which shields their conclusions from scrutiny.

Because Paragraph 97 requires the Court to apply an arbitrary-and-capricious standard of review to the Consultants' findings—and because those findings become binding components of

17

the Decree unless modified by the Court—the Consultants occupy the functional role of a decisionmaker whose conclusions must be susceptible to meaningful judicial review. In that posture, the governing question is not whether the Consultants acted in good faith, but whether their findings were reached through a process that permits the Court to determine what facts were considered and how those facts support the conclusions reached.

Any claim that the Defendants consented to this process by participating in mediation is unfounded as a matter of law and structure. The Defendants did not, and could not, waive their right to meaningful judicial review under Paragraph 97. While confidentiality and informality may be suitable for non-binding mediation, they cannot shield binding findings from review where the Decree requires arbitrary-and-capricious scrutiny. Parties cannot, through agreement or participation, authorize a process that prevents the Court from conducting the review mandated by the Decree.

That structural defect was compounded by the way the ADR Process was conducted. Plaintiffs did not present documentary evidence, sworn testimony, or any identified factual materials to support their assertions regarding lack of "best efforts," data deficiencies, or alleged noncompliance. The Consultants nevertheless permitted Plaintiffs to proceed without evidentiary support, rejected the existence of any burden on Plaintiffs, and then issued binding findings adverse to the Defendants—all while prohibiting the creation of any record of what was presented or considered.

Once the Consultants elected to issue binding factual findings entitled to deference, the process necessarily had to permit the Court to determine what information was before the Consultants, what evidence—if any— supported Plaintiffs' claims, and how competing factual assertions were evaluated. The Consultants' decision to prohibit any record, while simultaneously

18

allowing unsupported accusations to serve as the basis for binding findings, cannot be justified by mediation norms or by party consent. It represents a structural defect that invalidates deference, not a procedural choice the Defendants accepted.

### The Consultants' Decision is based, in part, on legal conclusions and cannot withstand de novo review.

The Consultants' Decision reflects substantive conclusions—most notably that the Department failed to use "best efforts" and that a "material violation" of the Consent Decree has occurred—by redefining, the Decree's "Best Efforts" standard. The Decision states: "ODMHSAS has not used 'best efforts' in creating and implementing the Plan" and that "[a] failure to use 'best efforts' constitutes a material violation of the Decree." (See Exhibit F).

Under *Marsh*, even under deferential review, a court must evaluate "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and the inquiry "must be searching and careful." *Marsh*, 490 U.S. at 378. Under *State Farm*, a reviewing court may set aside a decision where the decisionmaker "entirely failed to consider an important aspect of the problem," or "offered an explanation for its decision that runs counter to the evidence," and the decisionmaker must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." 463 U.S. at 43. A reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (quoting *Chenery*, 332 U.S. at 196).

Here, the Consultants' Decision does not disclose what facts were credited or rejected to support their "Best Efforts" and "material violation" conclusions. The Decisions instead asserts that the Consultants "relied on extensive information" in determining "Best Efforts". (See Exhibit F).

19

But the process itself was explicitly structured so that "Sessions were not taped," and confidentiality was defined by the Consultants as not repeating statements outside the mediation session. *Id*. That combination prevents the Court from determining what information was actually before the Consultants, what evidence was weighed, and how the Consultants evaluated competing factual claims—precisely the analysis *Marsh* and *State Farm* require.

Compounding the problem, the Consultants expressly rejected any burden on Plaintiffs— "No such burden exists in a mediation setting." *Id*. Yet the Consultants simultaneously asserted that "the Decree places authority to determine whether the Department has made 'best efforts' with the Consultants." *Id*.

In this posture, Paragraph 97 requires the Court to give deference to binding findings, but the Consultants' self-imposed record prohibition and confidentiality rule prevent the Court from performing the searching review required to determine whether those findings were based on relevant factors and supported by a reasoned explanation. Accordingly, the Consultants' "best efforts" and "material violation" Decision is not susceptible to the arbitrary-and-capricious review required by Paragraph 97 and cannot be afforded deference.

Finally, the January 5, 2026, memorandum confirms the ADR process was intentionally structured. The Consultants report discussing the memorandum and mediation process with Judge Frizzell, who endorsed their approach. This consultation is noted. (See Exhibit D).

However, Paragraph 97 of the Decree assigns this Court, not the Consultants, the responsibility to conduct an arbitrary and capricious review. To fulfill this role, the process must allow for a reviewable record and a clear explanation of the decision's basis. If the ADR process does not create such a record and relies on discretion rather than articulated reasoning, the Court cannot fully exercise its review as intended by the Decree.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants respectfully request that the Court grant the instant Motion for Review and Relief, stay the *Findings and Recommendations* issued by the Consultants on January 23, 2026, until further Order of the Court and that the Court issue guidance and authorization regarding brief submissions in support of and opposition to the instant Motion for Review.

Respectfully Submitted,

John M. O'Connor, OBA No. 6741
JOHN M. O'CONNOR, PLLC
15 West 6th Street, Suite 2505
Tulsa, OK 74119
(918) 584-8445 – telephone
john@johnmoconnorlaw.com


John M. Settle, OBA No. 8086
General Counsel
Keith Brecheen, OBA No. 33127
Assistant General Counsel
Oklahoma Department of Mental Health
and Substance Abuse Services
2000 N. Classen Blvd., Bldg. 600 E
Oklahoma City, OK 73106
(405) 248-9250
john.settle@odmhsas.org
keith.brecheen@odmhsas.org

**Counsel for Defendants**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of February 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

John M. Settle