# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| LESLIE BRIGGS, as next friend of T.W. and B.S.; EVAN WATSON, as next friend of C.R.; and, HENRY A. MEYER, III, as next friend of A.M., for themselves and for others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 23-cv-81-GKF-JFJ |
| GREGORY SLAVONIC, in his official capacity as the Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services, and HOLLY WEBB, in her in her official capacity as Executive Director of the Oklahoma Forensic Center, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# COMPETENCY RESTORATION PLAN

# DRAFT VERSION 1.2

EXHIBIT "G"

**Table of Contents**

**Introduction**

I.     Wait Times and Waitlist Trends

II.    Competency Evaluations, Re-evaluations and the Triage Process

III.   Competency Restoration in Jail – Pilot Program
       2.1 Initial Evaluations
       2.2 Re-evaluation of Waiting Individuals
            Initial One-Time Re-evaluation
            Ongoing Re-evaluation Process
            Triage and Admission Prioritization

IV.    Competency Restoration in Jail – Pilot Program
            Admission and Participation
            Curriculum and Services
            Safety and Suitability Screening

V.     Community-Based Outpatient Competency Restoration Program (Draft)
            Eligibility and Participation
            Outpatient Restoration Teams
            Failure or Inability to Participate
            Projected Outcomes and Impact

VI.    Staffing and Training Enhancements
       6.1 Staffing
            6.1.1   OFC Direct Care Staff
            6.1.2   Central Office Forensic Services Staff
            6.1.3   Contracted Providers and Evaluators
       6.2 Internal Training
            6.2.1   Central Office Forensic Services Staff
            6.2.2   Contracted Providers and Evaluators
            6.2.3   Qualified Forensic Evaluator Training
       6.3 External Training - Statewide Forensic Competency Training:
            6.3.1   Prosecutors
            6.3.2   Ongoing Training for Court Partners
            6.3.3   Statewide Training and Access to Information

VII.   Oversight and Data Monitoring

VIII.    Appendices

8.1 Appendix 1 – Data Charts
8.2 Appendix 2 – Bed Need Analysis
8.3 Appendix 3 – Cross Validation with Counties Process
8.4 Appendix 4 – Glossary
8.5 Appendix 5 – Central Office Forensic Services Team Workflow
8.6 Appendix 6 – Qualified Forensic Evaluator (QFE) Protocol
8.7 Appendix 7 – Triage Protocol (Draft)
8.8 Appendix 8 – Competency Evaluation Service Guidelines for Terminal Degree Providers
8.9      Appendix 9 – Competency Evaluation Services Guidelines for LPC/LCSW
8.10      Appendix 10 – Competency Restoration Programming Guidelines
8.11      Appendix 11 – Diagrams

**OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES**
**COMPETENCY RESTORATION PLAN**

**JANUARY 30, 2026, DRAFT VERSION 1.2**

**INTRODUCTION**

The Oklahoma Department of Mental Health and Substance Abuse Services (the "Department") submits this draft Competency Restoration Plan (the "Plan") pursuant to the March 10, 2025, Consent Decree entered in *Briggs v. Slavonic* (previously *Briggs v. Friesen* and *Briggs v. Slatton-Hodges*) (the "Decree"). The Plan is designed to improve the Department's delivery of competency evaluations and restoration treatment to Class Members, including significantly reducing wait times for restoration treatment.

This draft is hereby submitted to the Consultants and Class Counsel for comment and collaboration. The final version of the Plan will be the version approved by the Consultants.[1]

During the Department's continuing efforts to complete this latest version of the draft Plan, the Department has simultaneously been working diligently to complete the requirements of the Plan, including drafts of each of the specific components of the Plan, as set out in Section VI of the Decree.

This Plan is (i) a roadmap to get to the destination, (ii) an owner's manual documenting the systems required to get there, and (iii) a status report of the progress achieved since the Decree was entered. The challenges are numerous. Decades of underfunding and competing priorities have weakened the State's infrastructure for evaluating and restoring to competence people in the criminal justice system.

Temporary improvements are noteworthy, but reliable, durable, and sustainable systems are the only means to accomplish the goals of the Decree. Systems are collections of targeted processes. Resources are the remaining component of the systems: leadership, staff, facilities and funding.

This Plan is the summation of its components. It describes the Department's current competency restoration processes and identifies proposed operational components. It tracks how individuals move through the competency system, including evaluation, re-evaluation, triage, admission, restoration programming, and case monitoring.

This Plan summarizes existing restoration settings, including inpatient services at the Oklahoma Forensic Center, limited jail-based services, and proposed community-based outpatient

---

[1] Subject to the terms of the Consent Decree.

restoration. It also describes staffing, training, coordination with courts and system partners, and data tracking and reporting practices as reflected in this document.

## I.    Wait Times and Waitlist Trends

The data for the Department's restoration program as of March 2025 show an in-jail waitlist of 286 individuals in jails across the state under active commitment orders and average length of time for transport to the Oklahoma Forensic Center (OFC) as of late March 2025 as 279 days.

| | 3/25 | 4/25 | 5/25 | 6/25 | 7/25 | 8/25 | 9/25 | 10/25 | 11/25 | 12/25 | 1/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Number on the Waitlist** | 286 | 151 | 140 | 155 | 139 | 164 | 170 | 137 | 153 | 203 | 227 |
| **Average Length of Time on the Waitlist** | 279 | 239 | 237 | 220 | 193 | 99 | 114 | 81 | 74 | 88 | 94 |

While the number on the waitlist fluctuates from month to month the average length of time on the waitlist (awaiting transport to OFC) decreased. However, beginning in November and continuing through December and early January 2026, the waitlist increased steadily, surpassing 180 by mid-December and exceeding 200 by early January. During the same period, average wait times decreased to the high eighty (80) day range. This pattern reflects the accumulation of longer-stay cases rather than a system-wide slowdown.

This reversal coincided with the November 1, 2025, effective date of Senate Bill 1089. The provisions of Senate Bill 1089 restrict the transfer of individuals from Department facilities to non-Department facilities. Importantly, this includes contracted residential care facilities. Under the statute, courts must receive notice at least sixty (60) days prior to a proposed transfer and may schedule a hearing within thirty (30) days to determine whether the placement is approved. As a practical matter, residential providers are unable to hold bed space for extended periods, which limits placement options and delays discharge. These delays reduce bed turnover at the Oklahoma Forensic Center, affecting both new competency restoration admissions and in-person evaluations.

Data prior to November 1, 2025, reflected improving waitlist numbers, evaluation timelines, and lengths of stay. The subsequent legislative change demonstrated that these improvements were vulnerable to external constraints. The Department is working with legislators to pursue amendments to Senate Bill 1089 and is also updating internal processes to comply with the statute while continuing to strengthen overall competency programming.

## II.    Competency Evaluations, Re-evaluations and the Triage Process

The starting point of the competency restoration process begins with the initial competency evaluation. Timely completion of evaluations and prompt reporting of results to the courts are necessary to support efficient judicial proceedings. Re-evaluations play a critical role in managing movement within the restoration population. Through both the initial evaluation and subsequent re-evaluation process, individuals are monitored for changes in treatment needs. This ongoing triage allows emerging psychiatric acuity to be identified and addressed as early as possible.

| | 1/25 | 2/25 | 3/25 | 4/25 | 5/25 | 6/25 | 7/25 | 8/25 | 9/25 | 10/25 | 11/25 | 12/25 | 1/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Average Days from Order for Evaluation to Initial Evaluation** | 78 | 51 | 96 | 192 | 90 | 106 | 107 | 109 | 63 | 79 | 54 | 46 | 54 |
| **Re-Evaluations Completed** | 33 | 20 | 50 | 60 | 56 | 16 | 13 | 23 | 33 | 23 | 12 | 36 | 42 |

**Initial Evaluations:** Within twenty-four (24) hours of receipt of an order for evaluation and all other collateral materials necessary to initiate an evaluation, the Forensic Services staff shall assign the evaluation to a Qualified Forensic Evaluator (QFE). The evaluations are to be completed, and reports returned to the courts by the QFEs, within no more than thirty (30) days of receipt by the Department of an order for evaluation and all other collateral materials necessary to initiate an evaluation. All documents are accessed and kept with the Department's Treat to Competency portal (Portal). To simplify communication and document transmission, all QFEs have access to this portal, receive notifications of assignment and messages from Department Forensic Services staff. The Department utilizes a team of evaluators that includes terminal degree individuals as well as master's level professionals. The Department will continue to grow the number of QFEs in order to meet demand. This includes individuals on staff as well as contracted persons or agencies.

**Re-evaluation of Waiting Individuals:**

**Initial One-Time Re-evaluation**

The Department completed an initial one-time reassessment of all class members beginning after the entry of the Consent Decree, March 10, 2025. In this initial effort, terminal degree evaluators conducted evaluations across the state for those individuals still in county jail or out in the community on bail, awaiting restoration. The evaluations were conducted via telehealth as well as in person when necessary.

The parameters for those to be reevaluated as set by the Consent Decree are those who were identified as Class Members as of 03/10/2025 and excluded those who had been evaluated in the last thirty (30) days.

Directives that were established by Department leadership at the time also excluded those individuals who had been reevaluated within ninety (90) days of 03/10/2025.

At that time, Department leadership also understood the terms of the Consent Decree were such that the Department would not be penalized for failure to complete re-evaluations for individuals who were out of custody, provided that consistent and documented efforts had been made to conduct the evaluation.[2] This understanding also extended to cases in which the evaluation interview was completed by the applicable deadline, even if the written report had not yet been submitted to the court.

As a result of this re-evaluation effort, a number of individuals were found to have regained competency. For those still awaiting restoration, the updated evaluations provided current clinical information to guide the new documentation and waitlist process.

| Treat to Competency 3/10/2025 | 266 |
|---|---|
| Re-Evaluated in the Last 90 Days | 125 |
| Inpatient at OFC | 11 |
| Maintaining Competency | 15 |
| NTA/Transition to NTA | 2 |
| Crisis Stabilization | 2 |
| **Needing Re-Evaluation** | **111** |
| AWOL/Unable to Re-Eval | 8 |
| Re-Evaluation Completed | 103 |
| Not Competent | 55 |
| Found Competent | 21 |
| Awaiting Report | 27 |

---

[2] The original list was sent with other requested and required documents on June 8, 2025. Following the submission there was concern by the Consultants regarding the list of individuals and the appearance some individuals may have been overlooked and left off the list. Therefore, on June 11, 2025, a list was provided to the Consultants accounting for 48 individuals of concern.

**Ongoing Re-evaluation Process**

The Department follows a structured process for timely and consistent re-evaluation of individuals within the competency restoration process. Re-evaluations occur at defined program points, such as completion of restoration training modules, and at regularly scheduled intervals. Re-evaluations also occur upon request by restoration staff, counsel, guardians, or the court.

Qualified Forensic Evaluators complete re-evaluations according to the following schedule:

i. For individuals held in county jail or residing in the community while awaiting restoration services, evaluators conduct re-evaluations every ninety (90) days and submit the re-evaluation report to the court before the ninety (90) day period expires.

ii. For individuals actively participating in a restoration program, whether inpatient, community-based, or jail-based, evaluators conduct re-evaluations every forty-five (45) days and submit the report to the court within fourteen (14) days of the re-evaluation.

iii. When a restoration provider, attorney, guardian, or the court requests a re-evaluation outside these timeframes, evaluators complete the re-evaluation and submit the report to the court within fourteen (14) business days of the request.

**Triage and Admission Prioritization**

Effective operation of any program or facility requires clear admission criteria and a defined process for individuals who need expedited care. The Department has developed a draft Competency Restoration Triage Protocol to prioritize admissions and direct individuals to the most appropriate treatment setting. Beginning with the initial competency evaluation and continuing throughout the competency restoration process, staff screen individuals on an ongoing basis for triage purposes. Based on this screening, individuals are classified into one of two categories: expedited or standard. To maintain consistent application, the classification relies on clinical acuity and follows the definition of a "person requiring treatment" under 43A O.S. § 1-103(13)(a).

The draft triage process creates and maintains a dynamic admissions list. When an individual on the waitlist shows changes in clinical status, such as mental health deterioration or increased symptom severity, staff adjust the individual's treatment placement accordingly. This approach prioritizes admission of the most acute cases to appropriate treatment settings within ten (10) days, while allowing individuals with lower acuity to participate in jail-based or community-based restoration programming.

Under the Department's draft triage protocol, screening will begin at the initial competency evaluation and can occur at any point during the restoration process. The Forensic Services staff supports this process by monitoring timely submission of triage data in the Portal and coordinating follow-up actions to address identified treatment needs. A standardized, statewide triage protocol allows staff to identify acute needs promptly for every individual entering or participating in the restoration system and to track those needs within the Portal. This information also informs decisions related to acute bed capacity and staffing needs.

Prior to implementation of this process, the Department lacked a uniform method to identify individualized needs for individuals awaiting restoration services. As a result, acute care needs were difficult to manage consistently, and admission decisions were fragmented. This limited the Department's ability to provide clear information to court partners regarding admission practices and prioritization. *(See Appendix 7 – Triage Protocol)*

### III.     Competency Restoration in Jail – Pilot Program

The Department ceased support for competency restoration services delivered in county jails in the manner used prior to March 10, 2025. Under the current framework, the role of the Department and contracted providers within county jails is limited to medication administration and management, clinical support, and monitoring individuals as they progress through the competency restoration system.

The Department has begun working with county jails to explore development of structured jail-based competency restoration pilot programs consistent with Consent Decree requirements. Initial discussions have occurred with county jails in Rogers, Tulsa, and Cleveland Counties. These discussions remain preliminary, as each county presents distinct programmatic considerations and implementation challenges. At the same time, the Department has reviewed jail-based restoration programs in other states to help shape an approach that can work for participating counties.

After a pilot program has provided services for one (1) full year, the Department will evaluate program outcomes to determine whether, and under what conditions, expansion of jail-based restoration services is appropriate. The goal for each pilot site is to establish a dedicated restoration team minimally consisting of a psychologist or psychiatrist, a psychiatric nurse, and a case manager, all who will coordinate with jail staff. Other program components will include:

**Admission and Participation:** Individuals will move into available jail-based restoration programs once the court reviews the initial evaluation recommendations and issues the order of

commitment to the Department for competency restoration. Upon the Department's receipt of the order, the jail-based program will be notified via the Portal, within one (1) business day of a newly assigned individual for restoration. The restoration team will work with jail staff if necessary to move individuals to the correct area of the jail for services to begin. Services shall begin within three (3) business days of receiving the court's order of commitment.

**Curriculum and Services:** Each approved jail-based restoration program shall provide the curriculum developed at/for the OFC. This includes medication management, restoration group focused on legal education and awareness, and regular visitation by the treating clinician. Individual restoration sessions shall be made available based on need. Individuals will have the opportunity to demonstrate their learning through mock trial exercises and short quizzes. The structured curriculum and intense rubric are based in best practices as well as a compilation from other successful states jail restoration models.

**Safety and Suitability Screening:** The initial evaluation as well as triage protocol (currently in draft) as mentioned in section 2, will determine which individuals are most suitable for jail-based restoration. Only those evaluated who do not have immediate acute treatment needs will initially be recommended for an approved jail-based program. Those with acute psychiatric or medical needs will receive expedited admission to the appropriate treatment placement.

#### IV.    Community-Based Outpatient Restoration Program (Draft)

Oklahoma law does not currently expressly authorize structured, Department-administered community-based outpatient competency restoration programming. Department staff reviewed statutes from other states, and drafted statutory language for the 2026 legislative session. This language has been submitted to a State Representative for sponsorship. The language will expand competency restoration within 22 O.S. § 1175.7 to occur within the community via the Department or a contracted provider. The Department anticipates implementing this programming initially as a pilot, and pilot areas will be chosen based on competency population. At the conclusion of the first full year of programming, completion rates and cost analysis data will be reviewed to determine whether the pilot met its goals. If outcomes are favorable, the Department will draft protocols for expansion of community-based restoration services.

**Eligibility and Participation:** Once enacted, the courts would have the ability to order an individual to participate in community-based outpatient competency restoration based on a Qualified Forensic Evaluator's recommendation. The order shall require the individual's consent to and compliance with all terms and conditions of the Oklahoma Department of Mental Health and Substance Abuse Services community-based outpatient competency restoration program

and any other court-ordered release conditions. If the individual is in a county jail, such consent and compliance shall be conditions of release.

The participating individual shall maintain at least ninety percent (90%) attendance at all scheduled competency restoration education appointments with a local Department facility or a locally certified provider. The individual shall also maintain at least eighty-five percent (85%) compliance with prescribed medication, as recommended by the treating Department facility or locally certified provider, to prevent symptom relapse or clinical deterioration.

**Outpatient Restoration Teams:** Under the proposed model, the Department uses a community-based restoration team consisting of a case manager, peer support specialist, licensed clinician, and forensic psychiatrist or psychologist to deliver the curriculum developed and maintained by the Oklahoma Forensic Center. The team provides medication management, restoration groups focused on legal education and awareness, and regular appointments with the treating clinician. The team offers individual restoration sessions based on clinical need and gives individuals opportunities to demonstrate learning through mock trial exercises and short quizzes. These teams coordinate comprehensive restoration services, including legal education, psychiatric treatment with medication management, and other individualized services.

Nothing will prohibit an individual participating in community-based outpatient competency restoration from receiving additional treatment or support services, including peer support, case management, or therapy, as determined to be clinically appropriate or beneficial based on assessment by the local Department facility or a locally certified provider.

The community-based outpatient competency restoration provider is required to submit a written report to the court once per month regarding the individual's compliance and progress, or lack thereof. The report shall be submitted no later than the fifteenth (15th) day of each month for the individual's participation during the preceding month.

**Failure or Inability to Participate:** If the individual fails or refuses to participate in the ordered community-based outpatient competency restoration treatment, the provider shall report the violation to the court within seventy-two (72) hours of the violation. The report shall include a description of the violation. Upon receipt of the report, the court shall issue a warrant for the individual, who shall be taken into custody and returned to the county jail pending further order of the court.

If community-based outpatient competency restoration is unsuccessful, the court shall modify its order to require the individual to participate in inpatient competency restoration treatment. Upon issuance of the modified order, the court shall set a date certain for the individual to report to an inpatient forensic competency restoration program designated by the Department. If the

individual is in the county jail, the individual shall be transported to the designated inpatient forensic competency restoration program.

**Projected Outcomes and Impact:** Successful completion of community-based outpatient restoration services will free inpatient beds for individuals with higher clinical needs or those who cannot be served safely in an outpatient setting. Shifting appropriate individuals away from inpatient restoration is expected to reduce the waitlist and limit unnecessary pretrial detention. Once competency is restored, participation in community-based outpatient programming may also help move cases more quickly into other diversion options, including mental health court.

The following shows the number of out of custody individuals under order of commitment from March 2025 to January 2026:

| | 3/25 | 4/25 | 5/25 | 6/25 | 7/25 | 8/25 | 9/25 | 10/25 | 11/25 | 12/25 | 1/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Treat to Competency** | 15 | 14 | 14 | 12 | 11 | 13 | 13 | 13 | 13 | 16 | 18 |
| **Maintaining** | 22 | 21 | 18 | 16 | 15 | 17 | 16 | 16 | 15 | 11 | 8 |

## V.     Expanding Inpatient Restoration Capacity

While the Department continues to refine programmatic processes, those efforts depend on the availability of sufficient bed capacity to meet demand.

**Infrastructure and Facility Upgrades:** The Department has developed a plan to improve the physical environment and resources at OFC to meet modern environment-of-care standards. *(See Appendix 2)* Implementation will require receipt of necessary budgetary support in FY26 and future FY budgets. Renovation projects are expected to update safety features and treatment spaces in aging units, and equipment necessary for delivering evidence-based restoration programming (e.g., group therapy rooms and educational materials) will be enhanced. These upgrades, together with corresponding continuing education for OFC staff, are intended to improve treatment quality and clinical throughput.

Through these efforts, the hospital census has remained above 90% occupancy with no staffing-related closures, ensuring that beds are utilized optimally for those who need intensive care. The bed utilization rate will be closely monitored by the Department and the Consultants to ensure maximum efficiency in reducing the waitlist.

## VI.     Staffing and Training Enhancements

The foundation for the successful implementation and sustainability of Oklahoma's Competency Restoration Continuum lies in qualified, well-trained staff, but must also include communication and training with all system partners. The Department shall develop an internal training cadence to support educational onboarding, regularly scheduled continuing education, and point-in-time on-demand training needs. For partners external to the Department, such as county jail staff, judges, and attorneys, training must meet the functional need to ensure that changes in programming, policy, and practice are shared as soon as possible and that lines of communication remain open.

**Staffing**

**OFC Direct Care Staff:** Beginning in August 2025, the Department implemented staffing changes at the Oklahoma Forensic Center by revising existing contracts and entering into additional contracts for terminal-degree professionals and other direct care positions necessary to support facility operations.

The Department's staffing efforts at OFC focus on stabilizing psychiatric coverage and maintaining clinical capacity consistent with the facility's forensic role. OFC currently operates 268 beds with three full-time psychiatrists. The Department has determined that this level of coverage is not sustainable. To address this, the Department has supplemented coverage through contracted forensic psychiatrists and forensically trained professionals engaged through a staffing agency to support Department clinical staff.

Since August 2025, twenty (20) new staff have been hired at OFC, including psychiatrists, psychiatric nurses, therapists, behavioral health aides, and other support personnel required for day-to-day operations. The Department continues recruitment efforts in light of the challenges associated with staffing a rural forensic facility, including limitations on competitive compensation. The Department also continues to work with legislative partners regarding funding necessary to support current staffing needs at the OFC and anticipated growth.

**Central Office Forensic Services Staff:** Beginning in November 2024, the Department shifted agency communications and operational functions from the OFC to Central Office staff. This shift was intended to centralize and standardize aspects of the competency process, including court communications, documentation intake, data collection, and process review. Over time, this effort developed into a coordinated team approach between Central Office and OFC. Prior to this transition, the Department had not sufficiently supported OFC operations. The transition has allowed OFC staff to focus more directly on the core mission of timely competency restoration and the care of individuals within the competency continuum.

At its inception in November 2024, the Central Office Forensic Services Team consisted of three (3) staff responsible for overseeing evaluation assignments and managing provider engagement

for individuals held in county jails statewide. From the outset, these staff worked in coordination with the Department's information technology and data analytics staff to further develop the competency Portal and improve the collection and use of data for reporting and oversight purposes.

By May 2025, the forensic services team expanded to five members and adopted defined functional roles. Two staff provided technical and clinical support to providers working in county jails, including medication-related coordination and triage. Two staff were assigned responsibility for entering court documentation and assigning evaluators or providers. One staff member was designated to oversee the process and serve as the primary point of coordination between Central Office and OFC.

In August 2025, the forensic services team expanded to eight members as workload increased, and evaluation processes became more structured. One staff member was designated to enter all initial evaluation documentation received from the courts and assign evaluations to master's-level providers. A separate staff member assumed responsibility for coordinating evaluation assignments with contracted Ph.D. and M.D./D.O. evaluators and for coordinating with OFC when in-person evaluations required transportation. Due to the volume of filings, an additional staff member was assigned to conduct weekly reviews of the statewide court network to identify updates. Because Oklahoma County does not currently have a local provider available to maintain contact with individuals in jail, a Justice Services staff member was assigned to conduct weekly outreach for those cases.

Program oversight functions also expanded during this period. A division director now directly oversees the operational functions of the forensic services team, manages case verification processes, and coordinates with information technology and data analytics staff regarding the Portal. The Chief of Justice Services continues to oversee Central Office processes and works with OFC leadership and staff on implementation of updated procedures across the competency continuum.

> In January 2026, the Department opened an additional position on the forensic services team to provide direct oversight of programmatic timelines within forensic services and across competency programming. *(See Appendix 5, "Implemented Central Office Staffing Plan.")*

> **Contracted Providers and Evaluators:** The fluctuating demand for evaluations has resulted in a pool of locally contracted master's-level evaluators, psychologists, and psychiatrists with broad experience. This structure expands evaluative capacity and supports timely completion of evaluations. To promote consistency in evaluations and

reporting, the Department has developed a Qualified Forensic Evaluator policy that sets clear expectations and professional standards.

### Internal Training

**OFC Direct Care Staff**: Prior to Central Office involvement, the Oklahoma Forensic Center did not have a regular training schedule for staff, including comprehensive onboarding addressing the forensic population, program processes, and statutory deadlines. OFC staff receive training specific to their assigned roles, as well as interdisciplinary team training. Training includes a required twelve (12) hours per year of in-person continuing education focused on forensic mental health, competency restoration, and Oklahoma's competency continuum. Additional training is provided through discipline-specific lunch-and-learn sessions, on-demand instruction, and multi-day skills-based trainings or workshops. Training topics include evidence-based competency restoration practices, discharge planning, and other practices relevant to justice-involved individuals. Workshops provide continuing education on subjects such as motivational interviewing, trauma-informed care, restoration education, and ethical issues in forensic treatment.

**Central Office Forensic Services Staff:** As the Department shifted programmatic oversight and functions from the Oklahoma Forensic Center to Central Office, the need for staff with training in competency procedures, statutory requirements, and associated timelines increased. To address this need, supervisory staff conduct weekly staffing and group reviews of reports to monitor data entry, statutory timelines, and overall understanding of requirements. Forensic services staff also participate in training provided to OFC staff and other competency partners.

**Qualified Forensic Evaluator Training:** The Department will train, approve, and continuously monitor all Qualified Forensic Evaluators (QFEs) conducting competence evaluations to ensure adherence to established professional standards. A QFE means a licensed mental health professional at either the master's or doctoral level, licensed in the State of Oklahoma, to include:

- Master's level licensed professional counselors (LPC) as well as

- Master's level social workers (LCSW)

- Psychologists (Ph.D. or PsyD)

- Psychiatrists (M.D. or D.O.)

All QFEs are required to participate in comprehensive forensic training and demonstrate continued proficiency, skill, and professional conduct to conduct competence evaluations. Nondoctoral QFEs will be subject to enhanced training, approval, and monitoring

standards. Individuals providing training are required to have experience and/or professional certification in the topic being presented. Training for Nondoctoral QFEs will include topics specifically related to forensic psychology. A nondoctoral QFE is prohibited from conducting competence evaluations on first-degree felony cases or violent crimes such as murder, rape, robbery, assault, or incest.  A QFE may also request an evaluation transfer, when necessary, due to a conflict of interest or other professional concerns.

Initial QFE training will be held twice per year (May and October), beginning May 2026 and occur in person over 2 consecutive full days and an additional one half (1/2) day for a total of eighteen (18) hours of training.

The Department will also provide annual continuing education, focusing on topics related to enhancing evaluative skills, report writing, and any legal updates. Continuing education will be held in three (3) hour blocks, quarterly throughout the fiscal year (March, June, September, December) and must be attended in person. This training will begin in March 2026. *(See Appendix 6 – Qualified Forensic Evaluators (QFE) Protocol)*

**External Training – Statewide Forensic Competency Training:**

**Prosecutors:** In July 2025, the Department participated in a training conference hosted by the Oklahoma District Attorneys Council (DAC). The session was developed in partnership with the Office of the Oklahoma Attorney General and focused on recent changes to Oklahoma's competency system, including updates to processes, timelines, and available restoration pathways. The training provided prosecutors across the state with an overview of these changes and created an opportunity for direct dialogue between prosecutors and the Department's competency team.

Through this DAC panel engagement, the Department has received requests to appear at court hearings to provide factual, process-based information regarding the competency system. When requested and appropriate, the Department will continue to assist courts and prosecutors by explaining system operations and procedures, without assuming an advocacy role.

**Ongoing Training for Court Partners:** On July 9, 2026, the Department is scheduled to participate in training sessions coordinated and hosted by the Oklahoma Judicial Conference Education Committee (OJCEC) focused on competency-related topics and civil commitment processes. The Education Committee has developed a tentative agenda, subject to revision and final approval by the Chief Justice, consisting of two sessions on Thursday, July 9, 2026. The first session, featuring Judge Pipes and Judge Stout, is scheduled for 9:00 a.m. for fifty (50) minutes, followed by a Department-led session at 10:00 a.m. for fifty (50) minutes. Planning and coordination for these

sessions is ongoing, including the drafting of an agenda. The Department has been advised that the schedule remains in place and has been asked to provide any presentation materials, including PowerPoint slides or supporting resources, by early June to allow the Administrative Office of the Courts sufficient time for preparation. The Department will continue to coordinate with OJCEC and court partners and will remain responsive to any agenda updates or modifications as they occur.

The Department is working with the Oklahoma Sheriff's Association (OSA) and will begin attending monthly regional meetings in February 2026 with sheriff's and jail administrators across the state to provide program transparency, training and information. The Department has been informed that it will be included in the annual OSA conference in October 2026 to cover topics related to competency, jail support, reentry, and diversion.

The Department has begun discussions with the Oklahoma Indigent Defense System (OIDS) and is coordinating with OIDS leadership to develop a series of lunch-and-learn training sessions beginning in April 2026. The Department also plans to participate in a breakout session at the OIDS annual conference in fall 2026. The conference date has not yet been finalized.

**Statewide Training and Access to Information:** The Department is working on the online presence of forensic service information to ensure transparency of programmatic processes, population and changes. This will be available on the Department's website.

In the summer of 2026, the Department will host its first, two (2) day annual legal summit to provide updates and education for court partners from around the state. Judges, prosecutors and members of the defense bar will be invited to attend in person at the Department or virtually. There will be no on demand option for later viewing. Each day of training will address topics specific to the court partner's role.

## VII.    Oversight and Data Monitoring

The cross-validation process described in *Appendix 3* formalizes record comparison with county courts and provides a consistent method for identifying and correcting discrepancies. Accurate data is critical to tracking competency cases and reporting progress under the Consent Decree. The Department uses a defined process to review competency-related data and address discrepancies when they are identified.

Department Decision Support Services (DSS) reviews competency data using a standardized workflow outlined in Appendix 3 – Cross Validation with Counties Process. This review includes

checking entries for completeness, confirming key dates, and reviewing timeframes related to evaluations and restoration placement.

The Forensic Services Team works with DSS to compare Department records with county court records statewide. These comparisons focus on waitlist status, evaluation orders, restoration placement, and case movement. When differences are identified, staff review the records, verify accuracy, and correct the data as needed. This process continues to support reporting requirements and assists in identifying delays or gaps in case tracking.

## VIII.    APPENDICES

**Sources:** The improvements and data reported above are informed by the Consent Decree requirements and the progress documented since its implementation. Key reference points include the Consent Decree and associated status reports, which outline the mandated reforms, as well as analyses by oversight entities highlighting baseline issues that have now been addressed. These combined sources substantiate the significant reduction in wait times, the establishment of new restoration programs, and the enhancement of capacity and staffing in compliance with the court's order. All data provided (e.g. waitlist figures, program outcomes) are current as of January 27, 2026 (unless otherwise indicated) reflecting the Department's internal tracking and the Consultants' reports.

# Appendix 1 – Data Charts



 **Figure 1:** Patients on Competency Waitlist and Average Length of Time on Waitlist (ver. 1/27/2026).

# Appendix 2 – Bed Need Analysis

Paragraph 62 of the Consent Decree requires the Department to conduct a bed needs analysis. The Decision Support Services Division is responsible for developing and reviewing data relevant to inpatient bed demand for purposes of this requirement, as described below. For purposes of this analysis, bed capacity includes not only physical beds but also the staffing resources necessary to operate them. The Department reviewed current census and capacity data and developed projections of future inpatient bed needs. This analysis examines anticipated pressure on the broader behavioral health system alongside demand at the Oklahoma Forensic Center driven by the criminal justice system.

### Inpatient Bed Projection and Utilization Data

The model of projected inpatient beds uses the methodology and framework from the 2021 article *Benchmarks for Needed Psychiatric Beds for the United States: A Test of a Predictive Analytics Model* by Christopher G. Hudson. This study was designed to estimate a non-linear multivariate model of various levels of psychiatric disability throughout the U.S. for predicting the likely need in each state—whether it is more or less than what is currently provided—based in part on modeling the likely need under the counterfactual possibility of an optimal level of community mental health services. Furthermore, the model takes into consideration inpatient bed capacity per 100,000 adult population. The projection uses Oklahoma's adult population growth, inpatient bed census, the number of inpatient admissions, the number of inpatient discharges, the average length of stay, serious mental illness (SMI) rate changes, any mental illness rate changes, substance use disorder rate changes, 200% of the Federal Poverty Level estimates (those served by public funding), and insurance coverage.

Moreover, the model methodology and calculations incorporated work from the 2024 McKinsey Health Institute report, which was developed based on the Oklahoma behavioral health system to determine overall state need and demand. This model was designed to incorporate the current behavioral health capacity within the state, the potential available capacity within the state, and the risk and need of behavioral health services within the state. The model was designed to help the state enable data-backed prioritization of efforts and resources, improve effectiveness and efficiency of cross agency collaborations, and strengthen accountability and transparency within the behavioral health system by establishing a clear fact-base to make decisions from.

The graph on the following page shows the projected inpatient bed growth. Overall, the inpatient bed projection, as illustrated in the chart, anticipates a significant increase in the number of inpatient beds needed over the next decade. Over a five (5) year period, the projection indicates a rise in the range of 288 to 369 beds. Looking forward ten (10) years, the projected capacity needs further expansion, ranging from 320 to 445 beds, reflecting a substantial long-term growth needed by the ODMHSAS to accommodate inpatient clients.



ODMHSAS used a proportional linear projection to summarize and interpret bed capacity data. This method simplifies complex data by reducing multiple variables into a smaller set while preserving the key relationships among them. In effect, the projection presents the data in a more streamlined form that highlights overall patterns without altering the underlying trends.

The method evaluates how closely different variables relate to one another and uses that information to determine which elements of the data are most influential for projection

purposes. By focusing on these elements, the projection helps identify consistent patterns in bed capacity over time.

In the chart above, the linear projection is shown by the blue line and is used to illustrate the estimated maximum potential growth in bed capacity, based on the ten-year trend shown in orange. The projection is intended to show overall trend direction and relative growth rather than precise future bed counts.

In addition to the linear projection, the Department used a second projection generated in R, shown as the teal line in the chart above, to provide an additional projection range and better understand potential future bed demand. This projection uses a time-series statistical forecasting model that estimates future values based on historical patterns in the data. The model identifies trends and recurring patterns over time and extends those patterns forward to illustrate potential future conditions.

As reflected in the table below, current inpatient bed utilization within ODMHSAS facilities is approximately 93% of statewide capacity.

| Inpatient Bed Capacity and Utilization | | | | |
|---|---|---|---|---|
| Facility | Census | Capacity | Open Beds | % of Capacity |
| Carl Albert | 14 | 15 | 1 | 93.3% |
| Jim Taliaferro | 14 | 15 | 1 | 93.3% |
| Tulsa Center for Behavioral Health | 50 | 60 | 10 | 83.3% |
| Northwest Center for Behavioral Health | 20 | 20 | 0 | 100.0% |
| Griffin Memorial Hospital | 117 | 120 | 3 | 97.5% |
| **Total Inpatient Bed Capacity** | **215** | **230** | **15** | **93.5%** |

The inpatient bed projections, considered alongside current utilization levels, reflect sustained pressure on inpatient capacity both now and over time. This information is particularly relevant when reviewed in conjunction with the state's forensic bed capacity, census, and anticipated demand.

An overall occupancy rate of approximately ninety-three and one-half percent (93.5%) is notable. The National Institutes of Health identifies eighty-five percent (85%) utilization as an optimal operating level, above which facilities have limited flexibility to absorb unexpected increases in demand and may experience operational strain, overcrowding, and delays in care.

**OFC Bed Projection**

Paragraph 62 of the Consent Decree requires the Department to consider Oklahoma population growth and crime rates when assessing bed needs. The Decision Support Services Division developed a projection that incorporates both factors. In addition to statewide population trends, the model for Oklahoma Forensic Center bed needs considers crime rates as reflected in felony and misdemeanor court filings. The analysis also reviewed arrest data, arrest clearance rates, and index crime data.

The analysis further includes the number of individuals on the waitlist for competency restoration, the average length of stay and time spent on the waitlist, the average time to restoration, the number of individuals at OFC designated as Not Guilty by Reason of Mental Illness (NGRMI) or Not Guilty by Reason of Mental Illness or Defect (NGRMID), and the total existing population at OFC.

DSS applied a proportional linear projection that preserves the relationships within the original data relative to a defined baseline. This approach reflects historical population growth in Oklahoma using census data from 2018 through 2024.

Criminal case filing data from the Administrative Office of the Courts (AOC) for the years 2019 through 2024 were also incorporated. These filings represent official criminal cases filed statewide each year. DSS compared these filings to state population figures to determine the percentage of the population receiving a criminal filing in a given year. That percentage was averaged across the available years to reduce the effect of unusual fluctuations. The average was then applied to projected population growth to estimate future criminal filings.

The next step involved determining what portion of those criminal filings resulted in a competency evaluation with a finding of incompetency. These individuals make up the waitlist population. Five years of historical data were averaged to reduce distortion from outliers. That average was then applied to the projected criminal filings to estimate the number of individuals expected to be placed on the waitlist in future years.

Once the projected waitlist population was calculated, the current average length of stay for this group was applied to estimate the total number of bed days required. That total was divided by 365 to determine the number of beds needed to meet projected demand for the competency population.

The projection also incorporated OFC census and capacity data to evaluate future forensic bed needs. The model estimates bed demand based on current OFC length-of-stay figures and the time required for restoration. The effects of Senate Bill 1089, discussed earlier in this Plan, were also taken into account.

During development of the OFC bed projection, ODMHSAS staff consulted with a national expert in forensic bed projection modeling, as suggested by the Consent Decree Consultants. This review focused on identifying key variables commonly used in forensic bed projections. Where data were available, those variables were included in the model and may be incorporated more fully in future updates.

The graph on the following page shows the projected OFC bed need using the proportional linear projection described above. The blue line represents projected growth in bed demand for both competency and NGRMI populations, based on historical trends shown in yellow. Census data from 2020 through 2025 were used to establish recent utilization patterns. While the OFC census fluctuated during this period, it showed an overall upward trend, reflecting increasing and variable demand for forensic mental health beds.

Beginning in 2026, total bed needs were projected by applying current OFC length-of-stay assumptions to anticipated case volumes. This approach reflects cumulative demand over time rather than a snapshot of occupancy at a single point. The projection assumes no material changes to admission rates, clinical practices, discharge capacity, statutory requirements, or alternative placement availability during the projection period. Under these assumptions, total beds needed are estimated at 477 in 2026, increasing to 489 by 2030. Once this level is reached, demand is expected to remain consistently high.

Overall, the data show that while historical growth in the OFC census has been moderate, projected bed needs exceed current capacity. Without reductions in length of stay, increases in bed capacity, or greater availability of alternative placements—each addressed elsewhere in this Plan—the system is likely to continue operating under strain. A detailed competency bed space plan is included within the chart and reproduced later in the report, showing the anticipated movement of consumers, staff, and beds over time.

The Oklahoma Department of Mental Health and Substance Abuse Services will continue to work to reduce the waitlist and increase competency bed space.  In addition, the ODMHSAS will track the changes as they occur as detailed in the table below.

**Order of Consumer Movement Table**

The order of consumer movement table (below) illustrates by date, by sending facility, and by receiving facility the description of the consumer transfers. This information is displayed in the Competency Bed Space Plan graphic below the table.

| Order | Est. Date | Sending Facility | Receiving Facility | Description of consumer transfers |
|---|---|---|---|---|
| 1 | Early November | Griffin | Contractor Facility | Seven (7) Never to Attain (Civil Commitment) consumers transferred |

| 2 | Early November | OFC Original | Griffin | Seven (7) Never to Attain (Civil Commitment) consumers transferred |
| 3 | Early/Mid November | Central Office Hires | NCBH | One (1) RN hired to prepare for upcoming transfer of consumers |
| 4 | Mid November | OFC Original | Contractor Facility | Twenty (20) Never to Attain (Civil Commitment) consumers transferred |
| 5 | Early December | OFC Original | Griffin | Three (3) Never to Attain (Civil Commitment) consumers transferred |
| 6 | Mid December | Central Office Hires | Griffin | Unit 52-400 is being relocated to the Annex. Existing GMH staff will continue to provide coverage at the Annex location; therefore, staffing needs are limited to hiring two (2) additional LPNs, two (2) Nursing Coordinators, and one additional pharmacist |
| 7 | Early January 2026 | Griffin | SSM Annex | Thirty-two (32) Never to Attain (Civil Commitment) consumers transferred |
| 8 | Mid-January | Central Office Hires | Griffin | To support the thirty-two (32) Competency Restoration beds at GMH replacing the beds relocated to the Annex, we will need to hire the following estimated staff: seven (7) RNs, four (4) LPNs, twenty-one (21) Mental Health Technicians, eight (8) Fire & Safety staff, two (2) Recreational Therapists, one (1) Therapist, two (2) Case Managers, and three (3) Nursing Coordinators. Additional support staff will include two (2) kitchen staff, one (1) maintenance staff member, and two (2) housekeeping staff |
| 9 | Early February | Jails | Griffin | Thirty-two (32) Competency consumers transferred |
| 10 | Mid-February | OFC Original | Contractor Facility | Twenty (20) Never to Attain (Civil Commitment) consumers transferred |
| 11 | Mid / Late February | Griffin | Contractor Facility | Twenty (20) Never to Attain (Civil Commitment) consumers transferred |
| Order | Est. Date | Sending Facility | Receiving Facility | Description of consumer transfers |
| 12 | Mid-March | OFC Original | OFC Expansion | To increase inpatient capacity at the Oklahoma OFC, Department will relocate fifty-four (54) beds from an existing pod into three (3) newly constructed expansion units. These units have a combined capacity of sixty-three (63) beds, resulting in a net increase of nine (9) beds<br><br>Following the relocation, A Pod will be renovated, with each pod renovation expected to take approximately two (2) months. Patients will then be moved sequentially from B Pod into the renovated pods as the process continues through D Pod |

| Order | Est. Date | Sending Facility | Receiving Facility | |
|---|---|---|---|---|
| | | | | Subject to available staffing, the fourth expansion unit, with a capacity of twenty-one (21) beds, may also be opened. |
| 13 | Late February / Early March | OFC Expansion | OFC Original | Fifty-four (54) Competency consumers transferred |
| 14 | Mid-March | Jails | OFC Expansion | Nine (9) Competency consumers transferred |
| 15 | Early April | Jails and/or OFC Original | OFC Expansion | Subject to available staffing (15a), up to Twenty-One (21) Consumers moved in any combination from either jails (15b) and/or original beds to expansion beds (15c). |
| 16 | December | Central Office Hires | OFC Original | Subject to available staffing, preparation hiring for pod renovation and expansion of OFC. |
| 17 | January 2027 | Jails | OFC Original | To increase inpatient capacity at the Oklahoma OFC, ODMHSAS will relocate from twenty-seven (27) to fifty-four (54) beds from an existing pod into three (3) newly constructed expansion units. These units have a combined capacity of sixty-three (63) beds, resulting in a net increase of nine (9) beds.<br>Following the relocation, A Pod will be renovated, with each pod renovation expected to take approximately two (2) months. Patients will then be moved sequentially from B Pod into the renovated pods as the process continues through D Pod.<br>Subject to available staffing, the fourth expansion unit, with a capacity of twenty-one (21) beds, may also be opened. |
| 18 | March / April | Griffin | SSM Floor 1 | Fifty-seven (57) Acute consumers transferred, along with staff |
| 19 | March / April | TCBH | OPCC | Fifty-six (56) Acute consumers transferred, along with staff |
| Order | Est. Date | Sending Facility | Receiving Facility | |
| 20 | March / April | Griffin | SSM Floor 3 | Thirty-one (31) Acute consumers transferred, along with staff |
| 21 | June / July | Central Office Hires | SSM Floor 1 | New GMH: Staffing will follow the same ratios per 30–32 beds as outlined above for Order #8. Final staffing levels may be adjusted based on the final unit bed counts, which are still being determined by the architects in coordination with ODMHSAS for the new SSM main building. Because existing GMH staff will be transitioned to the new SSM facility, additional hiring will be limited to an estimated fourteen (14) RNs, eight (8) LPNs, forty-two (42) Mental Health Technicians, sixteen (16) Fire & Safety staff, four (4) Recreational Therapists, two (2) Therapists, four (4) Case Managers, and six (6) Nursing Coordinators. |

| 22 | June / July | Central Office Hires | SSM Floor 2 | **New GMH:** Staffing will follow the same ratios per 30–32 beds as outlined above for Order #8. Final staffing levels may be adjusted based on the final unit bed counts, which are still being determined by the architects in coordination with the Department for the new SSM main building. Because existing GMH staff will be transitioned to the new SSM facility, additional hiring will be limited to an estimated fourteen (14) RNs, eight (8) LPNs, forty-two (42) Mental Health Technicians, sixteen (16) Fire & Safety staff, four (4) Recreational Therapists, two (2) Therapists, four (4) Case Managers, and six (6) Nursing Coordinators |
| 23 | July / August | SSM Floor 1 | Department Infrastructure | Thirty-two (32) new beds will become available and are anticipated to serve acute consumers |
| 24 | July / August | SSM Floor 2 | Department Infrastructure | Thirty-nine (39) new beds will become available and are anticipated to serve acute consumers |
| 25 | June / July | Central Office Hires | SSM Floor 3 | **New GMH:** Staffing will follow the same ratios per 30–32 beds as outlined above for Order #8. Final staffing levels may be adjusted based on the final unit bed counts, which are still being determined by the architects in coordination with the Department for the new SSM main building. Because existing GMH staff will be transitioned to the new SSM facility, additional hiring will be limited to an estimated fourteen (14) RNs, eight (8) LPNs, forty-two (42) Mental Health Technicians, sixteen (16) Fire & Safety staff, four (4) Recreational Therapists, two (2) Therapists, four (4) Case Managers, and six (6) Nursing Coordinators |
| 26 | July / August | SSM Floor 3 | Department Infrastructure | Nine (9) new beds will become available and are anticipated to serve acute consumers |
| 27 | June / July | Central Office Hires | OPCC | To support this expansion, we will need to hire an estimated fourteen (14) RNs, eight (8) LPNs, forty-two (42) Mental Health Technicians, sixteen (16) Fire & Safety staff, four (4) Recreational Therapists, two (2) Therapists, four (4) Case Managers, and six (6) Nursing Coordinators, in addition to current staffing at TCBH. |
| 28 | July / August | OPCC | Department Infrastructure | Fifty (50) new beds will become available and are anticipated to serve acute consumers. |
| | | | | *version: 1/13/2026* |

# Competency Bed Space Plan



| Planned Total COMP Beds Available* | | |
|---|---|---|
| **Estimated Date** | **Number of Beds** | **Comment** |
| Late January '26 | 126 | (as of 1/13/2026) |
| Early February | 158 | |
| Late March | 167 | |
| December | 188 | |
| April '27 | 215-242 | (Based on staffing) |
| July '27 | 183-210 | (Griffin now closed) |
| | | |
| *These COMP Beds are referenced to the bed movement chart | | |
| plan of 1/13/2026 | | |

**Summary:** The Department's forensic bed capacity analysis and related plan are based on a capacity and throughput (bed-days) model rather than a static bed-count approach. The model connects demand, measured by annual admissions and waitlist inflow, with throughput, measured by length of stay, and capacity, measured by the number of staffed beds available over time. Bed need is calculated by dividing the total number of required bed-days by 365, which allows the Department to evaluate how changes in assumptions affect overall capacity needs.

The analysis relies on several inputs, including historical admissions to competency restoration, current waitlist size and movement, observed length of stay at the Oklahoma Forensic Center and contracted settings, and the time required to bring additional staffed beds online.

Length of stay is the primary factor affecting system performance. Historically, OFC length of stay has often exceeded one year, which limits annual throughput to approximately one individual per bed.

The model separates the population into individuals requiring competency restoration and individuals committed under Not Guilty by Reason of Mental Illness (NGRMI). Each group is analyzed using different admission rates and length-of-stay assumptions. The competency population largely drives waitlist pressure, while the NGRMI population primarily affects long-term census levels.

Analysis of different scenarios shows that reducing length of stay has a greater effect on improving system performance than adding beds alone. Delays in staffing significantly postpone progress even when physical beds are available. Increases in demand raise capacity needs in a direct and proportional manner, underscoring the importance of managing length of stay, facilitating movement through the system, and maintaining sufficient trained staff. These analyses provide a clear, data-based view of system capacity and reflect the requirements of the Consent Decree.

**References**

Hudson, CG. (2021). Benchmarks for Needed Psychiatric Beds for the United States: A Test of a Predictive Analytics Model. *International Journal of Environmental Research and Public Health* https://pmc.ncbi.nlm.nih.gov/articles/PMC8625568/

McKinsey Health Institute. (2024). ODMHSAS Behavioral Health (BH) System Diagnostic.

# Appendix 3 - Cross Validation with Counties Process

The Court Consultants recommended targeted injunctive relief to address concerns regarding the accuracy, reliability, and verification of forensic waitlist data and related length of stay calculations. Specifically, the Consultants advised the Department to establish a recurring, structured cross-verification process with Oklahoma counties to confirm consistency between Department records and county-level data. The Department accepted these recommendations and implemented corrective measures consistent with the requirements of Briggs.

Under these measures, the Department conducts cross-checks every other week with each of Oklahoma's seventy-seven (77) counties to reconcile the Department's waitlist records and the length of stay for each individual. Limited exceptions apply for very small counties when county participation is constrained due to availability, as documented in the Cross-Reference and Verification Process with Oklahoma Counties.

The Department has also strengthened its monthly reporting requirements. Each monthly status report is accompanied by a sworn affidavit confirming that the required every-other-week cross-checks were completed, identifying any discrepancies between Department and county records, and documenting the actions taken to resolve those discrepancies. In addition, the Department has expanded the scope of its monthly reporting to include a verified list of all individuals for whom initial forensic evaluations have been ordered. This verification uses the same county cross-check process and sworn-affidavit requirement.

Finally, The Department has committed to incorporating additional data summaries into the weekly reports (*See Weekly Report Sample*) and monthly reports, to support transparency, oversight, and ongoing compliance.

The following items include sections detailing:
1. Cross-Reference and Verification Process with Oklahoma Counties.
2. Cross-Reference and Verification Process – Sample Email
3. Cross-Reference Verification Sample Report
4. Process of Data Validation and Verification Table
5. IT Environment of the Treat to Competency Portal Diagram

**Cross-Reference and Verification Process with Oklahoma Counties**

- Every two (2) weeks, a report is automatically pulled from the Treat to Competency Portal.
  - It lists everyone on the waitlist, everyone currently maintaining competency, and anyone who has a court-ordered evaluation that hasn't been completed yet.
- The report is organized by county.
  - Each county's list is emailed to a designated court contact (judge, DA, PD/OIDS attorney, or court clerk—varies by county).
  - That contact is asked to verify the list and tell Department/Forensic Services if anyone is missing or listed incorrectly.
- The Department then compares their feedback against the "Treat to Competency" portal data to keep the system accurate and up to date.

**Cross-Reference and Verification Process – Sample Email**



*Note: this is the sample email sent every two (2) weeks to a designated court contact for the verification process.*

## Cross-Reference Verification Sample Report



| Id | Last Name | First Name | Custody Status | Competency Status | Confirm Accuracy (Y/N) | Confirming Party Initials |
|---|---|---|---|---|---|---|
| | | | In Custody | Waiting Transfer to OFC | | |
| | | | In Custody | Waiting Transfer to OFC | | |
| | | | Out of Custody | Waiting Transfer to OFC | | |

*Note: this is the sample report that is included with the email sent every two (2) weeks to a designated court contact for the verification process.*

## Process of Data Validation and Verification Table

| Process Stage | Purpose | Key Activities / Checks | Examples / Notes |
|---|---|---|---|
| Define verification criteria | Establish what "valid" data means | Set rules/standards for validity; define required fields; set acceptable ranges; specify format constraints; define uniqueness expectations | Required fields; acceptable ranges; format constraints; uniqueness |
| Identify and resolve repeated entries (duplicates) | Prevent duplicate or redundant records | Use fuzzy matching or clustering to detect repeats; define validation rules before collection; automate checks to reduce human error; maintain audit trails; regularly review/update verification processes | Fuzzy matching/ algorithmically matching clustering; automated duplicate detection; audit trail for corrections |
| Data profiling | Understand dataset shape and detect anomalies early | Analyze data structure, patterns, and anomalies using tools; identify missing values, outliers, inconsistent formats | Tools noted: SQL, Excel, Tableau, R (and other software) |
| Validation checks | Verify data meets defined rules | Apply automated and/or manual checks; confirm formatting correctness | Format checks for dates, emails, phone numbers |

| Range and format checks | Ensure values are plausible and properly typed | Range checks; format enforcement; data type validation; uniqueness checks; logic checks | Age must be > 0; email contains "@"; numeric values within expected limits; duplicate records flagged where not allowed |
|---|---|---|---|
| Cross verification | Ensure consistency across systems | Compare data across multiple sources/systems; confirm consistency between systems | Cross-check between OSCN and Avatar EHR (used at OFC); repeated mention of format checks (dates/emails/phones) |
| Referential integrity verification | Ensure relationships across tables/datasets are valid | Validate keys and references across tables; confirm referenced IDs exist | Every order references a valid patient ID |
| Correction and reverification | Fix errors and confirm fixes work | Correct errors manually or via scripts; re-run verification checks to confirm corrections are successful | Manual correction; automated scripts; re-run checks |
| Audit trail maintenance | Accountability and compliance | Maintain records of verification activities; track changes and corrections | Text also repeats "fix errors" and "re-run checks" here, consistent with auditability emphasis |
| Final approval | Release verified data for use | Mark data as verified once checks pass; complete approval/sign-off workflow | Sign-off may involve data stewards and/or QA teams |

*Note: Department Decision Support Services conducts data validation and verification using a standardized workflow as outlined in the table above which supports accuracy, consistency, and completeness. This process is applied to all competency-related information within the Treat to Competency Portal, which resides in the IT environment shown in the diagram below.*

**IT Environment of the Treat to Competency Portal Diagram**



Note: This diagram illustrates the IT environment that the Treat to Competency Portal resides. The Live Database stores operational data in real time, providing immediate access by portal users. At night, a replication process securely transfers data from the Live Database to a Secondary Database. The Secondary Database is used for analytics, validation, and reporting.

## Weekly Report Sample

| Topic / Content | Deliverables / Desired Outcome | Notes | | | | | | | | Who |
|---|---|---|---|---|---|---|---|---|---|---|
| Data Review | Share current data | • **Current Waitlist:** 6/4/25: 170; 6/11/25: 165; 6/18/25: 157; 6/25/25: 155; 7/9/25: 153; 7/16/25: 146; 7/23/25: 136; 07/30/25: 139; 08/06/25: 141; 08/13/25: 146; 08/20/25: 164; 08/27/25: 164; 09/03/25: 165; 09/10/25: 171; 09/17/25: 161; 09/24/25: 164; 10/01/25: 170; 10/08/25: 146; 10/15/25: 146; 10/22/25: 139; 10/29/25: 137; 11/05/25: 135; 11/10/25: 138; 11/18/25: 142; 11/25/25: 153; 12/2/25: 12/9/25: 177; 12/16/25: 180; 12/22/25: 193; 12/29/25: 203; 01/6/26: 204; 01/13/26: 218; **1/20/26: 225**<br>• **Average Length of Time on Waitlist:** 6/4/25: 214 days, 6/11/25: 215; 6/18/25: 215; 6/25/25: 220; 7/9/25: 208; 7/16/25: 196.4; 7/23/25: 189 7; 07/30/25: 192.6; 08/06/26: 165; 08/13/25: 156; 08/20/25: 169; 08/27/25: 99; 09/03/25: 100; 9/10/25: 95; 09/17/25: 118; 09/24/25: 117; 10/01/25: 114; 10/08/25: 93; 10/15/25: 81; 10/22/25: 79; 10/29/25: 81; 11/05/25: 75; 11/10/25: 74; 11/18/25: 75; 11/25/25: 74; 12/2/25: 77; 12/9/25: 78; 12/16/25: 83; 12/22/25: 86; 12/29/25: 88; 01/6/26: 89; 01/13/26: 91; **1/20/26: 94**<br>• **Median Length of Time on Waitlist:** 09/03/25: 89 days; 09/10/25: 83; 9/17/25: 70; 09/24/25: 63; 10/01/25: 62; 10/08/25: 62; 10/15/25: 61; 10/22/25: 61; 10/29/25: 61; 11/05/25: 62; 11/10/25: 66; 11/18/25: 62; 11/25/25: 63; 12/2/25: 69; 12/9/25: 71; 12/16/25: 78; 12/22/25: 78; 12/29/25: 78; 01/6/26: 78; 01/13/26: 77; **1/20/26: 83** | | | | | | | | | Dedra/ David/ Holly |

| | June | July | Aug | Sept | Oct | Nov | Dec | Jan as of 1/20 |
|---|---|---|---|---|---|---|---|---|
| **Number of admissions to OFC:** | 29 | 24 | 23 | 28 | 44 | 8 | 7 | 5 |
| **Number of criminal cases dismissed:** | 15 | 4 | 0 | 7 | 13 | 1 | 4 | 0 |
| **Number of criminal cases sentenced:** | 11 | 9 | 9 | 5 | 9 | 14 | 4 | 2 |
| **Number of initial evaluation orders:** | 56 | 56 | 39 | 49 | 53 | 45 | 72 | 20 |
| Misdemeanor | 11 | 8 | 5 | 5 | 10 | 4 | 11 | 4 |
| Both | 15 | 19 | 11 | 21 | 18 | 21 | 22 | 5 |
| Felony | 30 | 29 | 23 | 23 | 25 | 20 | 39 | 11 |
| **Number of initial evaluations completed:** | 70 | 122 | 83 | 67 | 70 | 76 | 76 | 29 |
| Competent | 43 | 58 | 31 | 32 | 31 | 37 | 28 | 11 |
| Incompetent | 21 | 55 | 47 | 30 | 34 | 32 | 41 | 17 |
| Incomplete | 6 | 9 | 5 | 5 | 5 | 7 | 7 | 1 |
| **Number of reevaluations completed:** | 16 | 13 | 23 | 33 | 33 | 19 | 36 | 16 |
| Competent | 7 | 9 | 11 | 11 | 18 | 9 | 13 | 9 |
| Incompetent | 8 | 4 | 9 | 21 | 15 | 9 | 23 | 5 |
| Incomplete | 1 | 0 | 3 | 1 | 0 | 1 | 0 | 2 |

*Note: Each week, the Department meets with the Court Consultants to review a weekly report. This weekly report is based on data from the Treat to Competency Portal.  It includes the following information:*

1. *The current and historical data on the waitlist.*
2. *The average (and median) length of time individuals spend on the waitlist.*
3. *The number of evaluation orders/number of initial evaluations/number of re-evaluations.*

# Appendix 4 – Glossary

1. **Class Member** – Individual covered by the Briggs v. Friesen Consent Decree requirements.

2. **Clinical Acuity** – A measure of the severity of a person's behavioral health symptoms, and the person's functioning, to determine the appropriate level of care.

3. **Community-Based Outpatient Competency Restoration** – A proposed program where eligible defendants receive competency restoration services while living in the community instead of being hospitalized or remaining incarcerated in county jail.

4. **Competency Restoration** – Process of providing treatment to restore a defendant's mental capacity to meet the legal standard for trial through a combination of behavioral health treatment, education about the legal process, and medication.

5. **Competent / Competency** – The current ability of a person charged with a crime to understand the charges and court process, and to help their lawyer in a reasonable and informed way.

6. **Consent Decree** – The Court approved settlement in *Briggs v. Friesen* (March 10, 2025) requiring the State of Oklahoma, through the Department, to fix delays in restoring defendants to competency by meeting specific timelines and standards for evaluations and treatment.

7. **Court Order of Commitment** – Legal directive requiring a defendant to be admitted for restoration services.

8. **Diversion** – Redirecting a defendant away from jail or prison and into treatment or another program that addresses the underlying treatment need which led to legal involvement.

9. **Evidence-Based Practices** – Services or treatments that research has shown to be effective in producing reliable results with the population affected.

10. **Expedited Placement** – Admission to an appropriate treatment placement for individuals with acute needs.

11. **Fine Structure** – The rules for calculating and collecting money from the state if it does not meet the limits within the consent decree.

12. **Fines Account** – A dedicated account, managed by a neutral third party, where collected fines are deposited and used to improve mental health and competency restoration services.

13. **Forensic Evaluator / Qualified Forensic Evaluator** – A licensed mental health professional or terminal degree individual approved by the state to assess whether a defendant meets competency criteria.

14. **Consultants** – Three independent experts appointed under the terms of the Consent Decree to oversee and approve this plan and to monitor progress.

15. **Incompetent / Incompetency** – The present inability of a person charged with a crime to understand the charges filed against the person and court processed involved, and to assist their lawyer in a reasonable and informed way.[3]

16. **Initial Competency Evaluation** – First assessment to determine if a defendant meets the legal competency standard.

17. **Inpatient Bed Utilization** – The percentage of available treatment beds that are currently being used.

18. **Inpatient Clinical Staff** – Medical and mental health professionals, such as psychiatrists, nurses, therapists, and behavioral health aides, who provide treatment and support to patients in a hospital or secure facility setting.

19. **Jail-Based Competency Restoration** – A program that provides competency restoration services inside a jail for defendants who are able to participate outside of a hospital setting.

20. **Length of Stay (LOS)** – The amount of time a person spends in a treatment program, from admission to discharge.

21. **Maximum Allowable Wait Time** – The longest period a defendant is allowed to wait for competency restoration under the consent decree before fines or other penalties apply.

22. **Medication Management** – Ongoing psychiatric oversight of prescribed medications.

23. **Mentally Incompetent Person** – Any person who has been adjudicated mentally or legally incompetent by an appropriate district court.

24. **Never to Attain (NTA)** – A person designated by the court as incompetent, who meets the definition of a person requiring treatment under 43A O.S. § 1-103, and who is not capable of achieving competency with treatment within a reasonable period of time as defined by 22 O.S. § 1175.1.

---

[3] 22 O.S. § 1175.1(4)

25. **Not Guilty by Reason of Mental Illness (NGRMI) / Not Guilty by Reason of Mental Illness or Defect (NGRMID)** – Legal verdicts meaning a defendant committed the act but is not legally responsible because of a mental illness at the time of the crime.

26. **Oklahoma Forensic Center (OFC)** – The state's primary secure psychiatric hospital for defendants who need competency restoration.

27. **Phased Standards** – Step-by-step deadlines in the consent decree that gradually reduce the maximum time allowed for a defendant to wait for services.

28. **Qualified Forensic Evaluator (QFE)** – Department -approved professional authorized to conduct competency evaluations.

29. **Re-evaluation** – Follow-up evaluation to assess whether a defendant's competency status has changed while awaiting restoration.

30. **Restoration Curriculum** – Standardized educational and therapeutic program designed to improve a defendant's legal understanding and ability to participate in their defense.

31. **Restoration Team** – A group of professionals who work together to provide competency restoration services. This may include doctors, nurses, clinicians, case managers, and peer support specialists.

32. **Serious Mental Illness (SMI)** – A mental, behavioral, or emotional disorder resulting in serious functional impairment, which substantially interferes with or limits one or more major life activities.

33. **Standard Placement** – Admission timeline for individuals without acute needs.

34. **Stipulated Fines** – Monetary penalties imposed for non-compliance with court-ordered timelines.

35. **Throughput** – Rate at which individuals move through restoration programs from admission to completion.

36. **Treat to Competency Portal** – A Department online system that tracks court orders, evaluation and restoration timelines, waitlist data, and progress in competency restoration cases.

37. **Triage** – Process of prioritizing defendants for restoration services based on clinical acuity and legal factors.

    a. **Triage, Expedited** – A triage category for individuals with the most urgent mental health needs, requiring admission to treatment within the shortest allowed time under the consent decree.

    b. **Triage, Standard** – A triage category for individuals whose mental health needs are less urgent, allowing for placement in treatment within regular timeframes.

38. **Waitlist / Waitlist Backlog** – A list of individuals court-ordered to competency restoration but not yet admitted to a program, because there are not enough treatment beds or staff.

## Appendix 5 – Central Office Forensic Services Team Workflow

**(1) ORDER for EVALUATION RECEIVED**
- Order and other documents come to forensicservices@odmhsas.org , this is the Central Office Competency Team (CO Comp Team) contact.
- When received the information is loaded into the competency portal by CO Comp Team Initial Eval Team Member.
- If more information is needed, the team member will follow up with the court and note in the portal more information has been requested. All orders should include:
  - Application for Order to Determine Competence (MUST HAVE)
  - Probable Cause Affidavit for each current case number (MUST HAVE)
  - Criminal Information for each current case number (MUST HAVE)
  
  GREAT TO HAVE BUT NOT NECESSARY FOR THE EVAL TO MOVE FORWARD:
  - Any police reports or witness statements (current case(s))
  - Booking sheet (current case(s))
  - Full Date of Birth
  - Full Social Security Number
  - Any other records referenced in the Order or Application

**(2) EVALUATION ASSIGNMENT**
- Once all necessary documentation is received evaluation assignments will be made within 1 business day by the CO Comp Team Initial Eval Team Member. The assigned entity will receive notification from the portal that an evaluation needs to be completed.
- Assignments can be made to providers, psychiatric staff at OFC or contracted forensic evaluators.
  - CCBHC competency staff will be assigned those evaluations that fall within their provider area.
  - Psychiatric staff at OFC will receive assignments which include cases:
    - High risk in nature such as capital crime.
    - Which indicate other co-occurring symptomology, i.e., developmental disability, dementia, etc.
    - Currently under orders originating out of Tulsa County.
  - Other Contracted Forensic Evaluators will receive assignments which include cases indicating co-occurring symptomology, developmental disability, intellectual disability, dementia, TBI, etc.
- All initial evaluations and reports shall be completed and submitted within 30 days of receipt of all necessary documentation.

- o The assigned party must provide the date of the scheduled evaluation in the portal.
- o The CO Comp Team Initial Eval Team Member will notify the Court utilizing a template report, when all documentation has been received, the evaluation assigned to an evaluator and scheduled to proceed.
- All evaluating staff should also be aware of indicators that an individual may qualify for alternative disposition including community based, nursing care, Never to Attain (NTA), MHC, AOT/COOP and reach out to the CO Comp Team Initial Eval Team Member prior to the expiration of the thirty (30) day evaluation timeline for next steps. This could lead to reassignment of the evaluation, staffing of the case or pursuing other legal options.

**(3) EVALUATION REPORT to COURT**
- Once complete the evaluation report shall be sent by the evaluating entity to the judge, district attorney, defense attorney.
- The report should include:
  - o Notation of the mental illness leading to the determination of incompetence.
  - o Recommended course of restoration care; community based, jail based, or OFC as well as triage level, if a higher level of care is needed.
  - o Likelihood of the defendant's attaining competence within a reasonable period.
  - o Whether the person is a person requiring treatment as defined by 43A O.S. § 1-103 (triage protocol).
- Provider shall upload the evaluation directly to the portal.
- If the individual refuses (or is unable due to complications, symptomatology) to participate in the evaluation, notification should be sent within 24 hours of the attempt to CO Comp Team Initial Eval Team Member. The initial attempt shall be notated by the provider within the competency portal. Other approaches/opportunities to complete the evaluation will be staffed with the provider by the CO Comp Team. If other attempts are not successful a notice shall be sent to the Court (DA and defense) by CO Comp Team Initial Eval Team Member after three (3) business days of the final attempt.

**(4) POST EVALUATION COMPETENCY HEARING**
- Once the evaluation is received by the Court a hearing will be held to either issue an Order of Commitment or a finding of competence and prosecution will proceed.
- To support expediting the process, after seven (7) business days of providing the report to the Court the CO Comp Team Initial Eval Team Member will verify documentation of receipt and the setting of further hearing on OSCN.

     o  If there is no notation on OSCN of receipt of evaluation within seven (7) business days, then CO Comp Team Initial Eval Team Member will send a templated letter to the Court to ensure the receipt of the documents for scheduling of further hearing.

**(5) ORDER of COMMITMENT**
- The Court will notify the CO Comp Team Initial Eval Team Member via forensicservices@odmhsas.org of the Courts determination and provide copies of the orders.
  - o  To assist the Court, the Department can provide a template court order which will also include a document containing information regarding diversion options, stabilization steps if crisis care is needed and processes on dismissing criminal matters if the individual is diverted. The order will also include the Courts notation highlighting the recommended course of restoration care; community based, jail-based, OFC, or if a higher level of care is needed.
- If the order stipulates to the evaluation and the finding of incompetency and jail based or community-based competency restoration is pursued, then the CO Comp Team Initial Eval Team Member will assign the community-provider through the competency portal within 3 business days of receipt of the order. All previous orders and documentation will be transferred in the portal from "initial evaluations" to the active "patients" record system. Patient status (in or out of jail custody) will be notated.
- If the order dismisses the competency order and criminal charges, the CO Comp Team Initial Eval Team Member will send notification to the provider.  All orders and documentation shall be uploaded to the competency portal and the patient's chart is notated inactive.

**(6) COMPETENCY RESTORATION CARE OR ASSISTANCE STARTS**
- The treating provider begins services within 3 business days of notification of assignment and documents each contact and any information received concerning the patient within the competency portal.
  - o  The provider shall provide services as dictated by the current Competency Statement of Work.
    - ▪  Contact Notes shall be entered at each contact.
    - ▪  Any other information received from jail staff, family or others shall be documented to include who the information was received from.
    - ▪  Should admission to crisis stabilization be necessary the provider will document in competency portal a "NEED FOR HIGHER LEVEL OF CARE"

for the patient, describing the situation and include triage documentation.

    a. CO Comp Team Field Rep will receive notification of the designation and must review the flag within 2 business days, enter a note within the portal and proceed to staff the case and assist with placement of the patient.

**(7) REPORT TO THE COURT**

- Within seven (7) days of initiating services, the CO Comp Team Field Rep shall send notice to the Judge, District Attorney, and Defense that restoration support has started with the date of first provider contact and medical provider appointment. This will be on a templated letter.
  - o All documentation will be uploaded to the competency portal.
- Every thirty (30) days the CO Comp Team shall send an update to the Judge, District Attorney, and Defense
  - o Providers shall email reports by the 5th of the month for the previous month's services to the CO Comp Team forensic services email.
  - o The reports will be reviewed by the CO Comp Team Field Rep and distributed to the Court.
  - o All documentation will be uploaded to the competency portal.
- If the patient is awaiting movement to a higher level of care reporting to the Court will occur weekly to keep the court and attorney's apprised of patient placement.

**(8) "PERSON REQUIRING TREATMENT" (43A O.S. § 1-103) DURING EVALUATION OR COMPETENCY RESTORATION CARE (Prior to Triage Protocol Approval)**

- If during the evaluation or restoration care, the individual meets the criteria of a person requiring treatment, the treating provider shall take immediate action to notify the CO Comp Team Field Rep. This should occur within the same business day but no more than seventy-two (72) hours after determined need. The triage screening must be included in the request.
- The provider shall also make notation in the competency portal by selecting a need for "Higher Level of Care" within a service note and completing the required text boxes. This will trigger a notification to the CO Comp Team.
- If the Court agrees to stabilization the CO Comp Team will notify the provider and ask they complete the necessary assessments (LMHP).
- Once the patient no longer meets the definition of a person requiring treatment, the patient must receive re-evaluation for competency within at least seventy (72) hours of discharge.

- o Provider shall upload the report as well as any recommendations and other relevant documentation to the competency portal. Including the discharge summary for continuation of care.
- If the court will not issue a bond, the provider shall communicate with the jail medical provider, create a safety plan and provide more frequent visits due to the escalated treatment need.  Any safety plan or alteration in care within the jail shall be documented within the portal.
- If the patient is receiving outpatient-based mental health services:
  - o The patient should be transported to a URC, crisis unit or inpatient care unit to address the immediate treatment need.
  - o Once the patient no longer meets the definition of a person requiring treatment, the patient must receive re-evaluation for competency within at least seventy-two (72) hours of discharge.
    - ▪ Provider shall upload the report as well as any recommendations and other relevant documentation to the competency portal. Including the discharge summary for continuation of care.

**(9)  RISK FLAGS**

- If during evaluation or restoration support, the provider indicates risk flags within the competency portal, flags will be initially reviewed by the CO Comp Team Field Rep and if indicated will reach out to the provider to schedule further staffing and up to clinical consultation.
- If the risk flag is *Refusal to Take Medications*, the CO Comp Team Field Rep will review with the community provider. If necessary, documentation will be completed and sent to the Department Legal Division in the event a forced medication hearing is needed.

**(10)    NEVER TO ATTAIN**

- At any point prior to the end of competency time limits, the provider believes the patient is unlikely to attain competency, this shall be documented within the portal, including any supportive documentation. The provider should also select the flag of *Review for Never to Attain* within the portal on the patient chart. The CO Comp Team will be notified and begin to work with the provider to schedule further evaluations (LMHP and MHE), to occur within thirty (30) business days. Once evaluations have been completed and the recommendation is the patient is likely never to attain competency, the provider must also supply documentation for appropriate placement recommendations for the patient. Placement recommendation must be listed on the MHE.  MHE must be signed by (2) LMHP's or (1) LMHP and (1) Terminal Degree.
- The CO Comp Team will provide a completed report to the Department legal team within three (3) business days of the finding and all documentation provided.

- The court will then conduct a hearing to determine if the patient should be civilly committed to treatment services.
- While never to attain will be a continuously reviewed status throughout the competency evaluation and treatment processes this process **must** begin ninety (90) days prior to statutory timelines to ensure placement.

**(11)   RE-EVALUATION**

- At any time during restoration care, the treating provider identifies that the patient has improved and a re-evaluation is appropriate, they will make indication in the competency portal, which will alert The CO Comp Team to be aware a re-evaluation shall be occurring within the next fourteen (14) business days.
- If the patient is found to be competent, the evaluation report shall be sent by the evaluating entity to the judge, district attorney, defense attorney. The report shall also be uploaded into the competency portal, with notation of finding.
- To support expediting the process, after seven (7) business days of providing the report to the Court the CO Comp Team Field Rep will verify receipt of documentation and the setting of further hearing on OSCN.
- If there is no notation on OSCN of receipt of re-evaluation within seven (7) business days, then CO Comp Team Field Rep will send a templated letter to the Court to ensure the receipt of the documents for scheduling of further hearing.
- If the court stipulates to the finding of competent the CO Comp Team Field Rep will change the status of the patient to "maintain competency" within the portal and the provider shall maintain contact and medications throughout court proceedings to support competency through case disposition. All information shall continue to be documented within the competency portal.
- The physicians of the jail and community provider shall collaborate to ensure changes in medication do not adversely affect the patients' mental health status or their ability to continue with court proceedings. Jail physicians have final authority regarding the medications their staff administer, and providers should ensure medications necessary are provided to the jail if not currently included within their formulary.

**(12)   MAINTAINING COMPETENCY**

- If an individual is reevaluated and opined competent the Court stipulates to the finding of competent the CO Comp Team will change the status of the individual to "maintain competency" within the portal.
- CO Comp Team will send a letter to the Court reiterating stipulation of competence and notifying the Court provider will continue maintenance of care until case disposition or resolution.

- Provider shall maintain contact and medications as stipulated above based on the individual's location (jail or community) throughout court proceedings to support competency through case disposition or resolution.
- Contractor shall continue to document all information in the portal as instructed above based on the individual's location (jail or community).

# Appendix 6 – Qualified Forensic Evaluators (QFE) Protocol

**PURPOSE**

The Oklahoma Department of Mental Health and Substance Abuse Services (Department) shall train, approve, and continuously monitor all Qualified Forensic Evaluators (QFEs) conducting competence evaluations to ensure adherence to established professional standards.

A QFE means a licensed mental health professional at either the master's or doctoral level, licensed in the State of Oklahoma, to include:

> Master's level licensed professional counselors (LPC) as well as
> Master's level social workers (LCSW)
> Psychologist (Ph.D. or PsyD)
> Psychiatrist (M.D. or D.O.)

**PROCEDURE**

All QFEs shall participate in comprehensive forensic training and demonstrate continued proficiency, skill, and professional conduct in order to conduct competence evaluations. QFE's will be subject to enhanced training, approval, and monitoring standards. A nondoctoral QFE may be prohibited from conducting competence evaluations on cases of first-degree murder, rape, robbery, or incest.  A QFE may also request an evaluation transfer, when necessary, due to a conflict of interest or other professional concerns.

1. **Training**
    a. Initial Evaluator Training shall occur on two (2) consecutive full days and one half (1/2) day for a total of eighteen (18) hours of training. This training will be held in person and shall include but is not limited to the following topics:
        i. Introduction to Oklahoma's Criminal Justice System
            1. Including the utilization of diversion based on the Sequential Intercept Model
        ii. Motivational Interviewing for behavioral health populations
        iii. Ethics in competency evaluations
        iv. Walk through sections of Oklahoma's Evaluation Template
        v. Use of records and collateral information
        vi. Evaluation concerns: malingering, TBI, etc.
        vii. Competency Portal walk-through
        viii. Mock testimony and testifying basics.
    b. A test for understanding will be administered at the end of each training day.

    **c.** Twelve (12) hours of annual continuing education are required of all evaluators. Continuing education will be provided by the Department, focusing on topics related to enhancing evaluative skills and report writing. Topics will also include any legal updates. Continuing education will be available in three (3) hour blocks, held quarterly throughout the fiscal year.

    **d.** Initial and continuing education trainings will be recorded and made available for later reference.

**2. Monitoring**

    **a. Mentors**

        **i.** The Department will provide four (4) psychiatrists, who under the leadership of the Oklahoma Forensic Center (OFC) Forensic Services Director shall provide oversight and mentorship to all QFEs.

        **ii.** Each psychiatrist will be assigned a region of the state or provider catchment area at the beginning of the fiscal year. Assignment will rotate annually, at the turn of the fiscal year.

        **iii.** The assigned psychiatrist will be responsible to mentor the approved QFEs in their area in accordance with the Department's standards.

    **b. Mentor Responsibilities**

        **i.** Mentor shall meet with QFEs within their assigned area at a minimum of once per month to provide technical assistance and support regarding the evaluative process and report writing, for the first twelve (12) months post training completion.

        **ii.** Mentor shall be responsible to review all reports for newly trained QFE's within their first ninety (90) days of completion of training and then review 25% of a QFE's report caseload monthly for an additional nine (9) months. Evaluation report timelines for reports to Court partners still apply. Mentor name and credentials shall be listed at the bottom of the reviewed evaluations, notated as; Reviewed by: Joe Smith, M.D.

        **iii.** After the initial twelve (12) months of successful mentorship, a QFE will be considered formally approved.

        **iv.** Mentors will continue to conduct periodic reviews of approved QFE's evaluation reports at a rate of 10% quarterly.

        **v.** Mentor shall provide direct written feedback to QFE and document any verbal feedback. All written feedback shall be provided to the point of contact within the Department Forensic Services team.

      **vi.** Mentor shall document an evaluation as green, yellow, and red based on adherence to the evaluation template, and training protocols. Yellow or red reports shall result in further mentor meetings, instruction, and training.

**c.** **QFE Status**

      **i.** If an approved QFE receives two (2) documented red reports from a mentor within one fiscal year, the QFE will no longer be considered an approved QFE and shall be removed from the statewide QFE roster. Removal from the statewide QFE roster shall nullify any contracts between the Department and the QFE for evaluative services.

      **ii.** If a court or other attorney contacts the Department with concerns for a QFE, Forensic Services will notify the mentor, and the mentor must contact the QFE within seventy (72) hours to discuss concerns and review evaluations. Documentation of the concern, resulting conversation and review must be sent to the point of contact within the Department Forensic Services team.

      **iii.** If a mentor has a concern for a QFE's continued work, the mentor shall request a staffing with the OFC Forensic Services Director and the point of contact within the Department Forensic Services team.

**d.** **QFE Roster and Records**

      **i.** The Forensic Services point of contact will maintain the roster of all QFEs, including their status.

      **ii.** The roster shall be available via the Department's website and updated monthly. The link shall be provided to all Oklahoma District Courts.

      **iii.** The Forensic Services point of contact will maintain all mentor records for QFEs, as well as data analyses of QFE evaluation trends.

**Oklahoma Department of Mental Health and Substance Abuse Services (ODMHSAS) Qualified Forensic Evaluator Training**

<u>Initial Evaluator Training:</u>

This training is mandatory when an individual is initially onboarding to conduct competence evaluations on behalf of the Department. Individuals holding a current board certification in Forensic Psychiatry or Forensic Psychology will be exempt from the initial evaluator training upon providing proof of certification. Providing proof of attendance to annual continuing education will also assist with exemption from Department required annual training hours. It will be necessary for board certified individuals, prior to beginning evaluations, to meet with Department Forensic Services staff to understand navigating the Competency Portal, template requirements and triage process.

This training will be held twice per year (May and October) and occur in person over 2 consecutive full days and an additional one half (1/2) day for a total of 18 hours of training.

<u>Trainers:</u>

Clayton Morris, M.D. Chief Medical Officer ODMHSAS
Chandler Hicks, DO
Jeffrey Sanders, M.D., M.H.A
Reagan Gill, DO
Andrea Golden-Muse, First Assistant General Counsel ODMHSAS
Dedra Hansbro, LPC-C, Chief of Justice Services ODMHSAS

Day One: 8:30am – 4:30pm (1 hour lunch break)
- Introduction to the criminal justice system
- Building understanding regarding competency to stand trial
- History and basis of competency to stand trial case law
- Foundational components of a competency evaluation
- Forensic Competency Evaluation
    - Assessing legal knowledge
    - Mental Status Exam
    - Violence/Risk Assessment
- Diagnosis

- o Personality Disorders
- o Mood Disorders
- o Substance Use
- o Trauma

Day Two: 8:30am – 4:30pm (1 hour lunch break)
- Complete *Diagnosis* from Day One
- Report Writing
  - o Initial evaluation
  - o Re-evaluation modifications
- Challenging Mental Statuses and further evaluation need
  - o Neurocognitive Disorders
  - o Intellectual Disability
- Special Circumstance Evaluations
  - o Malingering
  - o Adolescent/Juvenile populations
- ODMH Statement of Work Review
  - o Communication with the forensic services team
  - o Evaluation timelines
  - o Reporting requirements
- Utilizing the Treat to Competency Portal

Day Three: 8:30am – 12:30pm
- Mock testimony with example redacted evaluations

**Annual Continuing Education Training:**

The Department will provide annual continuing education, focusing on topics related to enhancing evaluative skills, report writing, and any legal updates. Continuing education will be held in 3-hour blocks, quarterly throughout the fiscal year (March, June, September, December) and must be attended in person.

**Trainers:**

Clayton Morris, M.D. Chief Medical Officer ODMHSAS
Chandler Hicks, DO
Jeffrey Sanders, M.D., M.H.A
Reagan Gill, DO

Andrea Golden-Muse, First Assistant General Counsel ODMHSAS

Dedra Hansbro, LPC-C, Chief of Justice Services ODMHSAS

Continuing Education March: 9:00am – 12:00pm
- Report Writing Updates
  - o  Initial evaluation
  - o  Re-evaluation modifications
- Legal update review
- Mock testimony exercise with redacted evaluation

Continuing Education June: 9:00am – 12:00pm
- Mental status exam
- Violence/Risk Assessment
- Diagnosis
  - o  Personality Disorders
  - o  Mood Disorders
  - o  Substance Use
  - o  Trauma

Continuing Education September: 9:00am – 12:00pm
- ODMH Statement of Work Updates
  - o  Evaluation timelines
  - o  Reporting requirements
- Treat to competency portal updates
- Legal update review
- Mock testimony exercise with redacted evaluation

Continuing Education December: 9:00am – 12:00pm
- Challenging Mental Statuses and further evaluation need
  - o  Neurocognitive Disorders
  - o  Intellectual Disability
- Special Circumstance Evaluations
  - o  Malingering
  - o  Adolescent/Juvenile populations

**Annual Legal Summit:**

The Department will host a 2-day annual summit (June or July) to provide updates and education for court partners from around the state. Judges, prosecutors and members of the defense bar will be invited to attend in person at the Department or virtually. There will be no on demand option for later viewing. Each day we will address topics specific to the court partner's role.

**Trainers:**

Clayton Morris, M.D. Chief Medical Officer ODMHSAS

John Settle, General Counsel ODMHSAS

Andrea Golden-Muse, First Assistant General Counsel ODMHSAS

Dedra Hansbro, LPC-C, Chief of Justice Services ODMHSAS

Tammy Westcott, J.D., Division Director of Diversion Programs ODMHSAS

Stephanie Cottrell, Division Director of Screening and Reentry

Topics will cover items listed below:

Day One: 8:30am – 4:30pm (1 hour lunch break) Judicial Training

- Functions of ODMH Legal Division
- Title 43A updates and other legal updates impacting ODMH actions
- Forensic Competency
  - Hearing timeliness
  - Reviews and reporting
    - Options for Competency Courts
  - Stabilization needs while under commitment (43A)
  - Forced medications and orders for treatment
  - Never to attain population
- Civil Commitment
- Screenings for diversion decision making
- Diversions
  - Pre-trial
  - Drug Court
  - Mental Health Court
    - Court Ordered Outpatient (AOT)
  - Veterans Diversion Options

Day Two: 8:30am – 4:30pm (1 hour lunch break) Prosecution and Defense Bar Training (breakouts can occur, specific to role)

- Functions of ODMH Legal Division
- Title 43A updates and other legal updates impacting ODMH actions
- Forensic Competency
    - o Hearing timeliness
    - o Reviews and reporting
    - o Stabilization needs while under commitment (43A)
    - o Forced medications and orders for treatment
    - o Never to attain population
- Civil Commitment
- Screenings for diversion decision making
- Diversions
    - o Pre-trial
    - o Drug Court
    - o Mental Health Court
        - ▪ Court Ordered Outpatient (AOT)
    - o Veterans Diversion Options

# Appendix 7 – Triage Protocol (DRAFT)

**PURPOSE**

The Oklahoma Department of Mental Health and Substance Abuse Services (the "Department") will use this policy to address the need of those individuals referred to the Oklahoma Competency System who need an expedited, higher level of care.

The goal of this process is to ensure swift identification of persons with needs as defined in Title 43A and to establish uniform criteria and procedures, clinical and administrative, to prioritize and expedite placement and treatment for those individuals entering or within the Oklahoma Competency System.

**PROCEDURE**

All individuals entering or within the Oklahoma Competency System shall be triaged upon initial competency evaluation. A new triage screening shall be completed after the initial triage screening by provider Licensed Mental Health Provider (LMHP) staff to update the triage level if symptoms and/or behaviors warrant it.

**Triage Protocol**

    a.  **At initial evaluation**

        i.  Evaluator will document within the summary of the evaluation report the triage designation for the individual.

        ii.  The triage level will be entered into the Treat to Competency Portal (portal) within seventy-two hours of completion of the evaluation interview, excluding weekends and holidays. A full evaluation report is not required at this time; however, the evaluation deadline remains in effect.

        iii.  An evaluation report will be deemed incomplete and returned to the evaluator if the triage designation is not present.

        iv.  If triage information is not entered into the portal within seventy-two (72) hours of the scheduled evaluation date, excluding weekends and holidays, the Forensic Services Team will contact the evaluator to request the information and that it be entered into the portal before the end of day.

    b.  **Post-commitment order (Individuals not admitted to OFC)**

        i.  Local provider will ensure an LMHP completes a new screening for all individuals committed to The Department for restoration care and awaiting admission to OFC, either in county jail or in the community on bond if symptoms and/or behaviors warrant it.

        ii.  The triage level will be entered into the Treat to Competency Portal

within seventy-two (72) hours of completion of the screening, excluding weekends and holidays.

iii.  The Forensic Services Team will contact the local provider if triage information has not been entered into the Treat to Competency Portal within twenty-one (21) days post-commitment order. Triage screening will continue every twenty-one (21) days thereafter until admission to OFC, return of a competent re-evaluation, or disposition of the case, whichever occurs first.

**c.  Triage Re-evaluation (Individuals not admitted to OFC)**

i.  When a provider determines that an individual's symptoms and/or behaviors warrant a triage re-evaluation, such shall be done within seventy- two (72) hours.

ii.  The triage re-evaluation and new triage level will be entered into the Treat to Competency Portal within seventy-two (72) hours of completion of the evaluation interview, excluding weekends and holidays.

**2.  Triage Guidelines**

The following levels determine the priority for an individual's placement into a higher level of care or expedited admission to the OFC. In accordance with Title 43A of Oklahoma Statutes if an individual meets at least one of the criteria than the individual shall be placed on the expedited list.

| Triage Level | Criteria | Examples |
|---|---|---|
| Level 1: Expedited | • Acute Psychosis as defined by Title 43A<br>• Serious Behavioral Dysregulation<br>• Medically Dangerous Behavior<br>• Physical or verbal threats to harm self or others<br>• Behavior creating increased risk for additional criminal charges. | • Disorganized behavior, including the involvement/use of bodily fluid or excrement.<br>• Refusing food or fluids<br>• Refusing medically necessary medications (blood pressure, Insulin)<br>• Total refusal of prescribed psychiatric medication which is likely lead to serious short-term harm.<br>• Segregated while incarcerated due to risk of harm |

| Level 2: Standard | • Presence of psychosis, intellectual disability, or other neurocognitive disorder rendering the individual psychotic<br>• Stable behavior<br>• No agitation or violence | • Consistently completing activities of daily living<br>• Eating and drinking within normal limits<br>• Interactions with jail or facility staff are not volatile/combative |
| --- | --- | --- |

3. **Placement and Interventions**
   a. **Expedited**
      i. Placement in the appropriate location for treatment should occur within twenty-one (21) days of receipt of the commitment order.
      ii. Individuals listed as expedited will be prioritized for admission at an appropriate placement, including placement in a crisis stabilization bed if warranted.
      iii. The individual's most acute symptoms will be documented in the portal using flags, either by the evaluator during the initial evaluation or by the local provider after a commitment order is issued. These flags will:
         1. Alert the Forensic Services Team; and
         2. Appear on the admission list after a commitment order has been issued, to support prioritization for OFC admission.
      iii. If the individual is in county jail and either a commitment order has not been issued or immediate admission to OFC is unavailable, the Forensic Services Team will collaborate with court partners to facilitate an appropriate release for civil commitment diversion or in-patient crisis stabilization at a Department facility, which may include:
         1. Carl Albert Community Mental Health Center
         2. Griffin Memorial Hospital
         3. Jim Talliaferro Community Mental Health Center
         4. Northwest Center for Behavioral Health
         5. Tulsa Center for Behavioral Health
      iv. The Forensic Services Team will work with the local provider to secure the LMHP statement and/or assist with facilitating telehealth screening with the receiving treatment center to complete admission criteria documentation.
         1. The receiving facility will work with the county jail to coordinate transport.
         2. The Forensic Services Team will collaborate with the local provider and send a letter to court partners to ensure

notification of placement. Standard reporting requirements, which include submitting reports every thirty (30) days to court partners, will remain in place.

    v. If immediate admission to OFC is unavailable and the district court does not agree to civil commitment or release to crisis stabilization, the Forensic Services Team will coordinate with the local provider to document a safety plan with the county jail that includes increased provider contact. The safety plan will be added to the individual's portal file.

**b. Standard**

    i. Placement at an appropriate placement for treatment should occur within twenty-one (21) days of order of commitment.

    ii. Placement recommendation should indicate whether the evaluator or triage screener believes the individual is an appropriate participant for outpatient services including any specific outpatient needs or jail-based restoration if available in the county.

    iii. If admission to an appropriate placement for treatment is not available within twenty-one (21) days following the issuance of a commitment order, and the individual remains in county jail:

        1. The Forensic Services Team will assign a local provider to initiate contact within three (3) business days. This provider will also arrange a prescriber appointment to begin medications, as clinically appropriate.

        2. The local provider will document all contact with individual within the portal.

        3. The Forensic Services Team will collaborate with the local provider and send a letter to court partners to ensure proper notification of placement. The standard requirement to report to court partners every thirty (30) days will remain in effect.

**4. Clinical Consultation**

If at any time during any of the above listed processes an evaluator or provider is uncertain regarding determination or next step, they shall email the Forensic Services Team, forensicservices@odmhsas.org and request immediate clinical consultation with the teams clinically trained staff.

**5. Training**

The Forensic Services Team will provide quarterly training to all Department approved evaluators and LMHP staff assigned to conduct triage screenings. The Forensic Services Team will schedule trainings at the start of each fiscal year and will be available to potential attendees. The Forensic Services Team will provide on-demand technical assistance to all providers at the evaluator's or provider's request.

6.  **Process Monitoring and Analysis**

    Information entered into the Treat to Competency Portal will enable the Forensic Services Team to monitor evaluator and provider compliance with data entry and timeline requirements. Department data analysts will generate reports for the Forensic Services Team to support program evaluation, assess effectiveness, and identify service gaps. The team will review these reports weekly for ongoing tracking.

# Appendix 8 – Competency Evaluation Service Guidelines for Terminal Degree Providers – Contract Example

**PURPOSE**

This contract is to provide competency evaluations, re-evaluations, and testimony, if required as a result of those reports for the Oklahoma Department of Mental Health and Substance Abuse Services (Department).

**REQUIRED ACTIVITIES**

- Contractor shall be responsible for all competency evaluations and re-evaluations as assigned by the Department Forensic Services team.
- Contractor shall ensure all documentation and reporting timelines are followed per OMDHAS policy. At a minimum this includes;
  - Timelines for evaluation reports to be loaded into the Treat to Competency portal and submitted to Court partners. At this time this is thirty (30) days from the date the Department received the order or evaluation.
  - Timelines for re-evaluation reports to be loaded into the Treat to Competency portal and submitted to Court partners. At this time this is fourteen (14) days from the date the Department requested the revaluation.
    - An informative letter notifying the individual remains incompetent can be produced at a re-evaluation in lieu of a full report but must still document the statutory requirements.
  - Timelines for reporting triage level for an individual. Currently this is seventy-two (72) hours after the completion of the evaluation and identification of an expedited care need per the Department Triage policy.
- Contractor shall ensure all reporting follows the Department training and issued templates.
- Evaluations may be completed via telehealth. If this is not conducive to an accurate evaluation, the evaluator must notify the Forensic Services team to within forty-eight (48) hours to discuss next steps, such as rescheduling to complete the evaluation in person at the jail or having the person transported to the Oklahoma Forensic Center for completion.
- Contractor must make any notes in the Treat to Competency portal to ensure accurate information is provided to Court partners.
- Contractor shall attend the Initial Evaluator Training, a total of eighteen (18) hours and successfully complete testing/surveying for understanding.
- Contractor shall participate in the Department's Qualified Forensic Evaluator (QFE) process to remain a contracted evaluator.
- Contractor shall notify the Department Forensic Services team with seventy-two (72) hours of receiving a subpoena so the Department legal can assist with preparation and intervention if necessary.

**REQUIRED DELIVERABLES AND PERFORMANCE MONITORING**

- Contractor shall provide the Forensic Services Team the monthly number of evaluations they can complete within policy deadlines to ensure consistent assignment and monitoring.
  - This can be provided prior to June 30th for the next fiscal year, or on a quarterly basis. If a quarterly basis is chosen, this must be given by the 5th day of the month before the next quarter begins.
- Contractor shall comply with all the Department's QFE processes.
- Contractor shall maintain State of Oklahoma licensure and abide by all required laws and regulations of their profession.
- OMDHSAS will monitor fidelity and performance based on guidelines within the QFE process.

# Appendix 9 – Competency Evaluation Service Guidelines for LPC/LCSW – Contract Example

**PURPOSE**

This contract is to provide competency evaluations, re-evaluations, and testimony, if required as a result of those reports for the Oklahoma Department of Mental Health and Substance Abuse Services (Department).

**REQUIRED ACTIVITIES**

- Contractor shall be responsible for all competency evaluations and re-evaluations as assigned by the Department's Forensic Services team.
- Contractor shall ensure all documentation and reporting timelines are followed per OMDHAS policy. At a minimum this includes;
  - Timelines for evaluation reports to be loaded into the Treat to Competency portal and submitted to Court partners. At this time this is thirty (30) days from the date the Department receives the order or evaluation.
  - Timelines for re-evaluation reports to be loaded into the Treat to Competency portal and submitted to Court partners. At this time this is fourteen (14) days from the date the Department requested the revaluation.
    - An informative letter notifying the individual remains incompetent can be produced at a re-evaluation in lieu of a full report but must still document the statutory requirements.
  - Timelines for reporting triage level for an individual. Currently this is seventy-two (72) hours after the completion of the evaluation and identification of an expedited care need per the Department's Triage policy.
- Contractor shall ensure all reporting follows the Department's training and issued templates.
- Evaluations may be completed via telehealth. If this is not conducive to an accurate evaluation, the evaluator must notify the Forensic Services team to within forty-eight (48) hours to discuss next steps, such as rescheduling to complete the evaluation in person at the jail or having the person transported to the Oklahoma Forensic Center for completion.
- Contractor must make any notes in the Treat to Competency portal to ensure accurate information is provided to Court partners.
- Contractor shall attend the Initial Evaluator Training, a total of eighteen (18) hours and successfully complete testing/surveying for understanding.
- Contractor shall participate in the Department's Qualified Forensic Evaluator (QFE) process to remain a contracted evaluator.
- Contractor shall notify the Department's Forensic Services team within seventy-two (72) hours of receiving a subpoena so the Department's legal staff assist with preparation and intervention if necessary.

**REQUIRED DELIVERABLES AND PERFORMANCE MONITORING**

- Contractor shall be responsible for all competency evaluations within their service area and based on licensure requirements as outlined within the QFE process.
- Contractor shall comply with all the Department's QFE processes.
- Contractor shall maintain State of Oklahoma licensure and abide by all required laws and regulations of their profession.
- OMDHSAS will monitor fidelity and performance based on guidelines within the QFE process.

## Appendix 10 – Competency Restoration Programming Guidelines – Contract Example

**PURPOSE:**

Contractor will provide services for individuals assessed as not competent within Contractor's service area, and testimony as a result of services provided, if required for the Oklahoma Department of Mental Health and Substance Abuse Services (Department).

**REQUIRED ACTIVITIES:**

**Jail-Based Competency Restoration Services (Approved Pilot Sites):**
- Services to individuals identified as not competent who are in the jails within the Contractor catchment area shall:
  - Begin within 3 business days of notification from the Department via the competency portal.
  - Be provided to each individual, in-person (not telehealth), minimally one (1) time weekly. Telehealth can occur for services provided in excess of once weekly services.
  - Provide access to appropriate medications that best facilitate treatment and recovery.
    - Address emergent needs within twenty-four (24) hours.
    - All other medicinal needs within two (2) weeks from initial contact.
  - Ensure that individuals are prescribed medication appropriate to their diagnosis and current symptom presentation; medication adherence status; changes to symptom severity; and any immediate concerns to the safety or welfare of the individual based on their observed conditions.
  - Include, once medications have stabilized any significant symptomology, education and skills training targeted at any remaining gaps in competency needs. This restoration education and support shall only be provided by a Department approved restorer.
    - Restoration education, support and skills training shall:
      - Be provided with the intent to enable individuals to obtain a factual and rational understanding of legal proceedings and restoration of their ability to consult with legal counsel.
      - Use a competency restoration education curriculum provided by the Department.
      - Provide restoration curriculum to individuals in multiple learning formats including, but not limited to, discussion, reading, and video experiential methods such as role-playing or mock trial. Program individuals with accommodations needs shall receive adapted materials and approach, as needed.
- Contractor shall enter all information into the competency portal on any visits, services

provided, or information received regarding the individual within two (2) business days of contact or receipt of information.

- Contractor shall write a progress letter on all individuals currently assigned to them for restoration services and submit this via forensicservices@odmhsas.org by the 5th day of every month for the previous month's services. The Department will review, forward to the Court and upload to the portal.

**Jail-Based Restoration Assistance Services (Non-pilot Sites):**
- Services to individuals identified as not competent who are in the jails located within the Contractor catchment area shall:
  - Begin within 3 business days of notification from the Department via the competency portal.
  - Be provided to each individual, in-person (not telehealth), minimally one (1) time weekly. Telehealth can occur for services provided in excess of once weekly services.
  - Provide access to appropriate medications that best facilitate treatment and recovery.
    - Address emergent needs within twenty-four (24) hours.
    - All other medicinal needs within two (2) weeks from initial contact.
  - Ensure that individuals are prescribed medication appropriate to their diagnosis and current symptom presentation; medication adherence status; changes to symptom severity; and any immediate concerns to the safety or welfare of the individual based on their observed conditions.
- Contractor shall enter all information into the competency portal on any visits, services provided, or information received regarding the individual within two (2) business days of contact or receipt of information.
- Contractor shall write a progress letter on all individuals currently assigned to them for assistance services and submit this via forensicservices@odmhsas.org by the 5th day of every month for the previous month's services. The Department will review, forward to the Court and upload to the portal.

**Outpatient Restoration Assistance:**
- Treatment services to individuals identified as not competent who are released by the court within the Contractor catchment area shall:
  - Begin within three (3) business days of notification from the Department via the competency portal.
  - Be provided to each individual, in-person (including telehealth), minimally 3 times per week.
  - Include team-based care approaches with person-centered treatment planning to address barriers to competency and case management to support community tenure.
  - Minimally include ensuring that individuals are prescribed medication appropriate to their diagnosis and current symptom presentation; medication adherence status; changes to symptom severity; and any immediate concerns to the safety or welfare of the individual based on their observed conditions.

- Contractor shall enter all information into the competency portal on any visits, services provided, or information received within two (2) business days of contact or receipt of information.
- Contractor shall develop written policies and procedures for outpatient restoration assistance. Policy and procedures should include:
  - Any differences, when compared with traditional processes, in intake, assessment, and treatment planning specific to the population served under this contract to expedite engagement and care.
  - Service coordination and continuity of care planning.
  - Documentation and communication processes for staff. Maintenance of competency after restoration and before adjudication or criminal proceeding resolution.
  - Staff training requirements.

**Community-Based Competency Restoration Services (When legislatively approved):**

- Treatment services to individuals identified as not competent who are released by the court to receive community-based competency restoration services within the Contractor catchment area shall:
  - Begin within three (3) business days of notification from the Department via the competency portal.
  - Be provided to each individual, in-person (including telehealth), minimally 3 times per week.
  - Include team-based care approaches with person-centered treatment planning to address barriers to competency and case management to support community tenure.
  - Minimally include ensuring that individuals are prescribed medication appropriate to their diagnosis and current symptom presentation; medication adherence status; changes to symptom severity; and any immediate concerns to the safety or welfare of the individual based on their observed conditions.
  - Include, once medications have stabilized any significant symptomology, education and skills training targeted at any remaining gaps in competency needs. Education and skills training shall:
    - Be provided with the intent to enable individuals to obtain a factual and rational understanding of legal proceedings and restoration of their ability to consult with legal counsel.
    - Use a competency restoration education curriculum provided by the Department.
    - Provide restoration curriculum to individuals in multiple learning formats including, but not limited to, discussion, reading, and video experiential methods such as role-playing or mock trial. Program individuals with accommodations needs shall receive adapted materials and approach, as needed.
- Contractor shall enter all information into the competency portal on any visits, services provided, or information received within two (2) business days of contact or receipt of information.

- Contractor shall develop written policies and procedures for community-based competency services. Policy and procedures should include:
  - Any differences, when compared with traditional processes, in intake, assessment, and treatment planning specific to the population served under this contract to expedite engagement and care.
  - Service coordination and continuity of care planning.
  - Documentation and communication processes for staff.
  - Maintenance of competency after restoration and before adjudication or criminal proceeding resolution.
  - Staff training requirements including, but not limited to, adjudicative competency overview training; competency restoration psychoeducational training; forensic evaluator training (when applicable); competency screeners and symptom tools; identifying, precenting, and reporting abuse, neglect, and exploitation in accordance with applicable state and federal laws.

**"Person Requiring Treatment" (43A O.S. § 1-103) During Assistance or Restoration Care (In or Out of Jail):**

- If during restoration care or assistance, the individual meets the criteria of a person requiring treatment, the treating provider shall take immediate action to notify the Department via forensicservices@odmhsas.org. This should occur within the same business day but no more than seventy-two (72) hours after determined need. The provider shall follow the process outlined in the *Triage Protocol* and make notation in the competency portal by selecting a need for "Higher Level of Care" within a service note and completing the required text boxes for restoration service individuals. This will trigger a notification to the Department. At this time the Department's staff will reach out to Court partners for decisions surrounding stabilization or diversion.

If the person is in jail and the Court agrees to stabilization:

- The Department will notify Contractor to precede immediately with the necessary assessments to obtain crisis care. Once complete the assessment documents should be returned via forensicservices@odmhsas.org and Contractor shall upload them to the portal.
- Contractor and the Department will work together for State crisis bed placement.
- Once the individual no longer meets the definition of a person requiring treatment, the individual must receive re-evaluation within three (3) business days of discharge. Re-evaluation shall not be completed by an evaluator who has provided the individual direct care.
- Upon return, medications will be continued at the jail unless the jail physically documents the need to discontinue. The physicians of the jail and community provider shall collaborate to ensure changes in medication do not adversely affect the individuals' mental health status or their ability to continue with court proceedings. Jail physicians have final authority regarding the administration of

medications.

If the person is in jail and the Court declines stabilization:
- Contractor shall communicate with the jail medical provider and:
  - Establish a safety plan.
  - Establish a visit schedule to occur more than once weekly due to the escalated treatment need.
- Contractor shall upload into the portal documentation of the safety plan and/or alteration in care within the jail.
- Contractor shall reinitiate the process for request for stabilization if symptoms continue to deteriorate.

If the person is out of jail:
- The above *Person Requiring Treatment* protocol shall be followed.
- The individual should be transported to a crisis or inpatient unit to address the immediate treatment need.
- Once the individual no longer meets the definition of a person requiring treatment, the individual must receive re-evaluation within three (3) business days of discharge. Re-evaluation shall not be completed by an evaluator who has provided the individual care.
- Contractor shall continue outpatient-based services per *Community-Based Competency Restoration Services* outlined above.

**Re-Evaluation During Competency Restoration/Assistance:**
- All individuals receiving active restoration care or assistance, in jail, or in the community shall be reevaluated at a minimum of every ninety (90) days.
- Individuals receiving restoration treatment at the OFC shall be reevaluated at a minimum of every forty-five (45) days.
- All re-evaluation processes shall follow the *Qualified Forensic Evaluator (QFE)* protocol.
- If during restoration care, Contractor identifies the individual has improved and a re-evaluation is appropriate prior to the ninety (90) or forty-five (45) day timeline, Contractor will report this in the competency portal.
- A re-evaluation and report shall then be completed within fourteen (14) business days of the notification. Re-evaluation cannot be completed by an evaluator who has provided the individual care.

**Specific Population Designations or Concerns:**
Never to Attain (NTA):
- If at any point prior to the end of competency time limits, the Contractor believes the individual is unlikely to attain competency, this shall be documented within the portal, including any supportive documentation.

- Contractor shall select the flag of *Review for Never to Attain* within the portal on the individual's chart. Contractor shall document circumstances which lead to the consideration for *Never to Attain*. The Department will be notified and begin to work with the Contractor to schedule further evaluations, to occur within thirty (30) business days.
- Once evaluations have been completed and the recommendation is the individual is likely never to attain competency, the Contractor must work with the Department staff and supply documentation for appropriate placement recommendations for the individual.

Failure to Progress:

- If an individual receiving community-based or jail-based competency services has not demonstrated progress within forty-five (45) days from the start of restoration care, the Department will staff with the provider and if necessary, provide clinical consultation of the Department's Competency staff.
- If after an additional forty-five (45) days (total ninety (90)) of attempted care the individual continues to exhibit lack of progress or participation in restoration care the individual will be referred for admission to OFC. The Department will notify the Court and document in the portal within three (3) business days of the determination of lack of progress and referral.
- Throughout the failure to progress review process, staffing and consultation the Department can also request a review of a finding of *Never to Attain*.

Maintaining Competency:

- If an individual is reevaluated and opined competent the Court stipulates to the finding of competent the Department will change the status of the individual to "maintain competency" within the portal.
- Contractor shall maintain contact and medications as stipulated above based on the individual's location (jail or community) throughout court proceedings to support competency through case disposition or resolution.
- Contractor shall document all information in the portal as instructed above based on the individual's location (jail or community).

**REQUIRED STAFF TRAINING, DELIVERABLES, AND PERFORMANCE MONITORING:**

It is the Contractor's responsibility to recruit LMHP's for the Contractor's service area. If turnover occurs, the Department will assist in training new evaluators, however, the Contractor will need to recruit replacements as soon as possible.

All Restoration Care Providers are Required to:

- Attend Restoration Bootcamp prior to administering restoration care.

- Attend required annual continuing education.

Specific Programmatic Monitoring for all Competency Program Contractors:

- The Department's Field Services staff will actively review entries in the Competency Portal to ensure the above-mentioned timelines are being met.

- Contractor shall provide documentation of staff training and credentials upon request by the Department.

- Contractor shall provide policies, procedures, and other requested documentation to the Department.

- Billed services will be subject to verification in accordance with requirements in the Department's Services Manual.

# Appendix 11 – Diagrams

## 1. Competency Process Diagram



## 2. Triage Process Diagram

