# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LESLIE BRIGGS, as next friend of   )
T.W. and B.S.,   )
EVAN WATSON, as next friend of C.R.,   )
and   )
HENRY A. MEYER, III, as next friend   )
of A.M., for themselves and for others   )
similarly situated,   )
   )
       Plaintiffs,   )
   )
vs.   )   Case No. 23-cv-00081-GKF-JFJ
   )
GREGORY SLAVONIC, in his official   )
capacity as Interim Commissioner of the   )
Oklahoma Department of Mental Health   )
and Substance Abuse Services, and   )
HOLLY WEBB, in her official capacity   )
as Executive Director of the Oklahoma   )
Forensic Center,   )
   )
       Defendants.   )

## OPINION AND ORDER

This matter comes before the court on the Motion for Review of, and Relief From, Court Consultants' Decision [Doc. 142] of defendants Gregory Slavonic, in his official capacity as Interim Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services, and Holly Webb, in her official capacity as Executive Director of the Oklahoma Forensic Center. For the reasons set forth below, the motion is denied.

### Background and Procedural History

This case relates to Oklahoma's competency restoration system. On March 1, 2023, plaintiffs filed the Class Action Complaint alleging that, due to a lack of forensic beds, persons who were declared incompetent in Oklahoma state court criminal proceedings were forced to wait prolonged periods of time to receive court-ordered competency restoration treatment and, during

the waiting period, the persons received little to no mental health treatment in violation of Due Process rights secured by the Fourteenth Amendment to the U.S. Constitution, among others.

In 2024, after months of efforts, the parties, including then-Commissioner Allie Friesen, reached a negotiated settlement. On joint motion of the parties, on March 10, 2025, the court granted the Motion for Final Approval and Entry of Consent Decree, appointed Class Counsel, and certified the Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). [Doc. 115]. Contemporaneously therewith, the court entered the Consent Decree in this matter, designed to, among other things, "ensure implementation, monitoring, enforcement and, when necessary, modification of [a strategic] Plan to improve the Department's delivery of competency evaluations and timely Restoration Treatment." [Doc. 116, p. 7, ¶ 14].

To provide a mechanism of monitoring, enforcing, and reporting compliance with the Consent Decree, the court appointed Neil Gowensmith, Ph.D.; John Petrila, J.D.; and Darren Lish, Ph.D. as "Consultants" to:

> (i) investigate, monitor, and make findings with respect to Defendants' compliance with the terms of this Consent Decree; (ii) report the status of Defendants' compliance or progress (or lack thereof) to the Court and the Parties; (iii) advise, recommend, and facilitate methods to the Department regarding plans and practices for improving the delivery of competency evaluations and Restoration Treatment to Class Members, including addressing the short-term and long-term compliance with the Restoration Treatment timeframes set out herein; and (iv) serve as mediators for disputes between the Parties regarding any aspect of this Consent Decree as set out in the Dispute Resolution Process in Section VIII below.

[*Id.* at p. 15, ¶ 38].

The Consent Decree provided a ninety-day period for defendants, "in consultation with the Consultants and Class Counsel" to "develop and begin to implement the Plan" and further required that "[t]he Plan's components must be approved by the Consultants." The Decree mandated that defendants use "Best Efforts" to develop and implement the Plan. [*Id.* at p. 21, ¶ 54]. The Decree

defines "Best Efforts" as "taking reasonable steps, actions and measures, consistent with best professional standards, practices and guidelines to accomplish or bring about the intended and described result." [*Id.* at p. 8, ¶ 18].

The Decree also includes a dispute resolution process applicable where, among other things, a party believes that another party has not complied with a provision of the Consent Decree, or a party disagrees or objects to the Consultants' findings, recommendations, approval or disapproval of any Plan component. [*Id.* at pp. 37-38, ¶ 96]. The enumerated process is set forth as follows:

96.  . . . To initiate the Dispute Resolution Process, a Party must give written notice to the other Parties and the Consultants that includes a reasonably detailed description of the alleged noncompliance or other matter(s) being challenged, and the basis of the challenge ("Notice of Dispute"). Within fourteen (14) days of receipt of a Notice of Dispute, the Parties must meet and confer in good faith to attempt to resolve the noticed issues. If the Parties are unable to agree to a resolution in their meet and confer efforts, the Parties shall engage in consultants-led mediation for a period of no more than thirty (30) calendar days, which shall be initiated upon any Party's written request for mediation. The Consultants shall determine the mediation rules and procedures, including the time and location. If the Parties are unable to agree on a resolution following the thirty (30) calendar days after a Party requests mediation, the Consultants will promptly issue a written decision, including recommendations, if appropriate, with respect to the issues presented in the Notice of Dispute (the "Consultants' Decision"). A Consultants' Decision is binding on the Parties and immediately effective as a provision of this Consent Decree until and unless it is modified or rejected by the Court in accordance with the following Paragraph 97. The costs of a Consultants-led mediation, and the drafting and issuance of Consultants' Decisions, shall be borne by Defendants.

97.  Any Party may file a motion with the Court seeking review of a Consultants' Decision, or seeking relief related to any issue embraced in a Notice of Dispute that led to a Consultants' Decision, including a request for contempt remedies for Material Violations. However, except for emergencies requiring immediate relief, no Party may seek relief for any dispute related to, or alleged non-compliance with, the terms of this Consent Decree without first obtaining a Consultants' Decision through the Dispute Resolution Process described in the preceding Paragraph 96. The Court, in considering a Party's motion for review of, or for relief related to, a

Consultants' Decision will apply an arbitrary and capricious standard of review to Consultants' factual findings and recommendations.

[*Id.* ¶¶ 96-97].   Finally, pursuant to the Decree, "[i]f the Court finds that Defendants have committed a Material Violation of this Consent Decree, the Court may order immediate injunctive relief, impose liquidated damages, attorney's fees, or fashion any other relief deemed appropriate to address the Material Violations."   [*Id.* at p. 39, ¶ 100].   "Material Violation" means "any failure to use Best Efforts to adhere to any plans or methods implemented by the Department so as to comply with the terms of this Consent Decree."   [*Id.* at p. 11, ¶ 28].

On September 26, 2025, the Consultants issued the September 2025 Status Report with respect to the Department's compliance with fifteen enumerated Decree requirements.   [Doc. 124]. Of the those provisions, the Consultants concluded that five were "still outstanding" or "not met," six were "partially met," and one was met.   Additionally, the Consultants designated one category as "unknown because of a lack of information from [the Department]" and one as "not clear."   [*Id.* at pp. 45, 50].   One requirement was not applicable until the beginning of the next legislative session.   [*Id.* at p. 52].

The Consultants provided three "priority recommendations" to "accelerate progress from [the Department], as well as to ultimately alleviate the suffering of individuals with acute psychosis who remain in county jails while they wait for competency restoration services."   [*Id.* at pp. 57-59].   Additionally, for those categories as "outstanding," "not met," or "unknown," the Consultants provided recommendations for additional relief pursuant to the court's authority under the Decree to order injunctive and other equitable relief.   [*Id.* at pp. 115-22].

Plaintiffs subsequently filed a Motion for Injunctive Relief.   [Doc. 126].   In an Order of November 5, 2025, the court denied the motion, reasoning that the disputes must first be addressed through the Consent Decree's Dispute Resolution Process.   *See* [Doc. 139].

4

That same day, pursuant to paragraph 96 of the Decree, plaintiffs provided a Notice of Dispute identifying eleven (11) areas of alleged noncompliance. *See* [Doc. 142-1].

On November 24, 2025, the parties met and conferred, but issues remained unresolved. Accordingly, on December 14, 2025, plaintiffs requested mediation. [Doc. 144-2].

The Consultants scheduled mediation for January 12, 2026, with potential to continue to January 13, 2026, if necessary. [Doc. 144-4]. In correspondence of December 15, 2025, the Consultants identified the issues subject to mediation, which were ten of the eleven topics included in the Notice of Dispute. [*Id.*].

On January 5, 2026, the Consultants issued correspondence to the parties setting forth the structure of, and process to be utilized in, the mediation. [Doc. 142-4].

On January 12, 2026, the parties attended the Consultants-led mediation. No additional session was held on January 13, 2026.

On January 23, 2026, the Consultants issued the Findings and Recommendations from Mediation ("Consultants' Decision"). [Doc. 140]. In the Decision, the Consultants explicitly concluded that the Department had not used Best Efforts to (1) develop and implement the strategic Plan, and (2) develop and implement an In-Jail Competency Restoration Program as required by paragraph 74 of the Decree. [*Id.* at pp. 9-10].

On February 2, 2026, defendants filed the Motion for Review of, and Relief from, Court Consultants' Decision. [Doc. 142]. On February 12, 2026, plaintiffs responded in opposition [Doc. 144], and, on February 18, 2026, defendants filed a reply. [Doc. 146]. The court held a hearing on the motion on Tuesday, February 24, 2026. [Doc. 148].

**Analysis**

Defendants assert two primary objections to the Consultants' Decision.  First, defendants contend that the factual findings in the Consultants' Decision are arbitrary and capricious because, among other reasons, the Consultants "ignored and rejected the express definition of 'Best Efforts' in Paragraph 18 of the Decree."  [Doc. 142, p. 7].  Second, defendants contend that the Dispute Resolution Process denies them Due Process.  [*Id.*].  For ease of analysis, the court first considers defendants' due process challenge.

A.    *Due Process Challenge*

Defendants argue "if Consultants' erroneous Decision is allowed to stand, Defendants will be deprived of the due process rights afforded by the Constitution."  [*Id.*].  The Fifth Amendment to the U.S. Constitution states: "No person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Similarly, the Oklahoma Constitution states:  "No person shall be deprived of life, liberty, or property, without due process of law."  Okla. Const. art. 2, § 7.  The U.S. Supreme Court has recognized that "[t]he word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union."  *South Carolina v. Katzenbach*, 383 U.S. 301, 323-24 (1966); *see also Oklahoma ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.,* 455 F.3d 1107, 1113-14 (10th Cir. 2006) ("Oklahoma concedes that, as a State, it is not protected by the Due Process Clause of the Fifth Amendment."); *Carl v. Bd. of Regents of the Univ. of Okla.*, 577 P.2d 912, 915 (Okla. 1978) ("This is because [the state entity] has no rights, privileges and

immunities protectable under the Federal or State Constitutions.").[1]  Defendants identify no other authority establishing due process rights in the dispute resolution context.  Thus, defendants fail to establish a right to due process and are not entitled to relief from the Consultants' Decision on this basis.

Further, by entering into the Consent Decree, defendants waived the right to object to the Dispute Resolution Process included therein.  *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202-03 (10th Cir. 2014); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 526 (10th Cir. 1992) ("It is uncontested that a party to a consent judgment is thereby deemed to waive any objections it has to matters within the scope of the judgment.").

Additionally, defendants have not shown that due process required an evidentiary hearing or creation of a record in the context of the Consent Decree.  A consent decree is to be construed as a contract.[2]  *United States v. N. Colo. Water Conservancy Dist.*, 608 F.2d 422, 430 (10th Cir. 1979).  Thus, the court must consider traditional principles of contract interpretation.  *See Joseph*

---

[1] Plaintiffs have sued Commissioner Slavonic and Ms. Webb in their official capacities as Interim Commissioner of the Department of Mental Health and Substance Abuse Services and Executive Director of the Oklahoma Forensic Center, respectively.  It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Further, although "official-capacity actions for prospective relief are not *treated as actions* against the State" for purposes of Eleventh Amendment immunity, *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex Parte Young*, 209 U.S. 123 (1908) (emphasis added)), defendants cite no authority for the proposition that the "obvious fiction" of *Ex Parte Young* as relates to Eleventh Amendment immunity extends a due process right under the Fifth Amendment nor has the court identified any such authority.  *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997).  Moreover, the court has entered the Consent Decree which "mandates *the State*, through its named officials, to administer a significant federal program."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004) (emphasis added). Thus, the State, not the individual named defendants, is the real party in interest with respect to enforcement of the Consent Decree.  For all of these reasons, defendants fail to establish a constitutional right to due process.

[2] "A consent decree is a negotiated agreement that is entered as a judgment of the court."  *Johnson v. Lodge #93 of Fraternal Order of Police*, 393 F.3d 1096, 1101 (10th Cir. 2004).  "Consent decrees, therefore, have characteristics both of contracts and of final judgments on the merits."  *Id.* (quoting *Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 193 (10th Cir. 1993)).

*A. ex rel. Corrine Wolfe v. Ingram,* 275 F.3d 1253, 1266 (10th Cir. 2002). "Under Oklahoma contract law, '[i]f the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated.'" *Brent Elec. Co. v. Int'l Bhd. of Elec. Workers Local Union No. 584*, 110 F.4th 1196, 1215 (10th Cir. 2024) (quoting *Whitehorse v. Johnson*, 156 P.3d 41, 47 (Okla. 2007)). "Unless some technical term is used in a manner meant to convey a specific technical concept, language in a contract is given its plain and ordinary meaning." *Brent Elec. Co.*, 110 F.4th at 1215 (quoting *K&K Food Servs., Inc. v. S&H, Inc.,* 3 P.3d 705, 708 (Okla. 2000)).

As previously stated, the Consent Decree provides that, after a good faith attempt to resolve disputed issues, "the Parties shall engage in consultants-led mediation." [Doc. 116, p. 38, ¶ 96]. "The Consultants shall determine the mediation rules and procedures, including the time and location." [*Id.*]. Nothing in the Decree requires any specific formal process, including an evidentiary hearing or record. Nor would due process, which "is flexible,'" and "calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez,* 583 U.S. 281, 314 (2018); *see also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 (1982) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."). Had defendants wished to include further protective provisions, they could have negotiated them into the Decree. *See Oklahoma ex rel. Okla. Tax Comm'n,* 455 F.3d at 1115.

Current defense counsel, who was not involved in the negotiation of the Consent Decree, now suggests that, during negotiations, "the focus was on deliverables, and not the dispute

resolution process." Accordingly, counsel asserts that modification of the Decree is necessary, both with respect to the Dispute Resolution Process and the definition of "Best Efforts."[3]

"[C]onsent decrees are, in effect, final decisions within the meaning of rule 60(b)." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1190 (10th Cir. 2018). Thus, a party seeking to modify a consent decree must satisfy Rule 60(b). *Id.* at 1194. As recognized by the Tenth Circuit,

> a court should deny a party's request for a modification under Rule 60(b)(5) if the party merely establishes that "it is no longer convenient [for the moving party] to live with the terms of a consent decree." Furthermore, a modification should be denied "where a party relies upon events that actually were anticipated at the time it entered into a decree."

*Jackson,* 880 F.3d at 1194 (internal citation omitted) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 383, 385 (1992)).

As previously stated, the Consent Decree states that "[t]he Consultants shall determine the mediation rules and procedures, including the time and location." [*Id.* at p. 38, ¶ 96]. Accordingly, the parties contemplated that the Consultants would structure the mediation and provided them broad authority to do so. Further, the Decree defines "Best Efforts" without reference to defendants' capacity and provides that "[t]he Consultants are authorized to monitor, investigate and make findings regarding the Department's efforts to attain compliance with th[e] Consent Decree's terms, *including whether the Department has used Best Efforts to implement the Plan*." [*Id.* at p. 17, ¶ 45 (emphasis added)]. Defendants cannot now claim surprise that the Consultants applied the Decree's language to determine whether the Department had utilized "Best Efforts." For the foregoing reasons, defendants "rel[y] upon events that actually were anticipated at the time it entered into [the] decree" and have established only that "it is no longer convenient [for them]

---

[3] As to "Best Efforts," defendants assert that the definition must be modified to account for defendants' capacity.

to live with the terms of [the] consent decree." *See Jackson,* 880 F.3d at 1194.  Defendants' request to modify the Consent Decree is denied.

      B.     *Factual Findings*

      The Consent Decree provides that, "[t]he Court, in considering a Party's motion for review of, or for relief related to, a Consultants' Decision will apply an arbitrary and capricious standard of review to Consultants' factual findings and recommendations."  [Doc. 116, p. 38, ¶ 97]. Pursuant to the "arbitrary and capricious" standard of review, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"  *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  The initial decisionmaker "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  "This inquiry must 'be searching and careful,' but 'the ultimate standard of review is a narrow one.'"  *Marsh,* 490 U.S. at 378 (quoting *Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 416).  The court may not "substitute its judgment for that of the" decisionmaker, nor may the court "supply a reasoned basis for the . . . action that the [decisionmaker] itself has not given."  *Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 43.

      Defendants seek review of two factual findings in the Consultants' Decision:  (1) that defendants failed to use "Best Efforts" to develop and implement the strategic Plan; and (2) that defendants failed to use "Best Efforts" as to the Jail-Based Competency Restoration Plan, a component of the strategic Plan.  The court separately considers each objection.

1.    Strategic Plan

Defendants first criticize the Consultants for "improperly appl[ying] a strict adherence standard to determine if 'Best Efforts' had been met" and "conflat[ing] missed interim timelines or incomplete approval processes with a lack of effort." [Doc. 142, p. 12]. However, in concluding that defendants failed to utilize Best Efforts, the Consultants acknowledged the history of the Plan, including that the Plan was due on June 8, but not submitted until August 12, 2025. The August 12 draft "fell far short of the Decree's requirements," and the Consultants provided an explanation as to why. [Doc. 140, p. 7]. The Consultants further recognized that, during the period from June 6, 2025 to August 12, 2025, there was "no communication" between the Department and the Consultants/Class Counsel regarding the development of the Plan. Likewise, between the critique of the August Plan and the January 12, 2026 mediation, there "no communication" between the Department and the Court Consultants regarding the Plan development. [*Id.*]. Finally, the Consultants acknowledged the Department's continued failure to provide requested information. Thus, it is clear that the Consultants concluded that defendants' failure to remedy identified deficiencies, provide requested information, and communicate with the Consultants and Class Counsel (as required by the Decree) was unreasonable, and the decision was not limited to defendants' noncompliance. The Consultants' Decision was therefore based on "consideration of the relevant factors" and there was no "clear error of judgment." *Marsh*, 490 U.S. at 378.

Defendants also cite evidence of its efforts to comply with the Decree. [Doc. 142, p. 13]. The court acknowledges defendants' staff, who have faced uncertainty and limited financial resources since the Decree's entry, and their work directed to compliance. However, the court does not apply a *de novo* review and is not free to "substitute its judgment for that of the" decisionmaker. *Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 43. Nor would it because, as

previously stated, having reviewed the Consultants' Decision, it is clear that the Consultants have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of the United States, Inc*., 463 U.S. at 43.

### 2.    Jail-Based Competency Restoration Program

The Consent Decree requires that, within ninety days of entry,

> the Defendants, in consultation with Class Counsel and the Consultants, shall develop and begin to implement a pilot in-jail restoration program in Tulsa County and in one other Oklahoma county, to be approved by the Consultants; such plan will include the development of written policies and procedures for best practices specific to the operation of an in-jail restoration program.

[Doc. 116, pp. 27-28, ¶ 74].  As discussed above, the Consultants found that the Department had failed to utilize Best Efforts with respect to this requirement.  [Doc. 140, p. 10]

Defendants contend that the Consultants' Decision in this regard is arbitrary and capricious because the Tulsa County Jail informed the Department that it lacked space and "the 'Best Efforts' standard does not require Defendants to compel action by independent county officials or to overcome barriers outside its legal authority."  [Doc. 142, p. 16].  The Department also criticizes the Consultants for "disregard[ing]" the explanation that the Tulsa County facility had no space available because it had contracted with officials to house ICE detainees.  However, the Consultants' Decision is not so limited.  Rather, in finding a failure to utilize "Best Efforts," the Consultants noted:  (1) the Department had submitted draft policies for the Jail-Based Competency Restoration program, but the policies had not been developed in collaboration with the Consultants and Class Counsel as required by the Decree; (2) that only a "few isolated conversations may have occurred" with Tulsa County and that no other substantive conversations had occurred with other County sheriffs since August 12; and (3) no documents had been provided that are essential to

creating a Jail-Based Competency Restoration Program, such as a Request for Proposals. [Doc. 140, p. 10].

Based on the foregoing, it is clear that the Consultants did not "disregard" Tulsa County's explanation. Rather, the Consultants relied upon defendants' failure to communicate with them and Class Counsel as required by the Decree, to take any substantive action with respect to a second County, and to create the requisite documents. Thus, a "rational connection" exists "between the facts found and the choice made," and the Consultants' Decision is regard is not arbitrary and capricious.[4] *Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 43.

**Conclusion**

WHEREFORE, the Motion for Review of, and Relief From, Court Consultants' Decision [Doc. 142] of defendants Gregory Slavonic, in his official capacity as Interim Commissioner of the Oklahoma Department of Mental Health and Substance Abuse Services, and Holly Webb, in her official capacity as Executive Director of the Oklahoma Forensic Center, is denied. The Consultants' Findings and Recommendations From Mediation [Doc. 140] are affirmed.

IT IS SO ORDERED this 27th day of February, 2026.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[4] During the February 24 hearing, defendants also cited evidence of their alleged compliance with respect to the Jail-Based Competency Restoration requirements. However, as previously stated, the court does not apply a *de novo* review. *Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 43.